

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 5, 2015**

**United States Bankruptcy Judge**

---

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | **CASE NO. 14-32821-11** |
| | § | |
| **SEARS METHODIST RETIREMENT** | § | **CHAPTER 11** |
| **SYSTEM, INC.,** *et al.*[1] | § | |
| | § | **Jointly Administered** |
| Debtors. | § | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
CONFIRMING PLAN DEBTORS' SECOND AMENDED JOINT PLAN OF
<u>REORGANIZATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE</u>**
[RELATES TO DOCUMENT NO. 770]

WHEREAS Sears Methodist Retirement System, Inc., Sears Caprock Retirement

Corporation, Sears Methodist Centers, Inc., Sears Methodist Foundation, Sears Panhandle

---

[1] The debtors in these Chapter 11 Cases, along with the last four (4) digits of their taxpayer identification numbers, are: Sears Methodist Retirement System, Inc. (6330), Canyons Senior Living, L.P. (8545), Odessa Methodist Housing, Inc. (9569), Sears Brazos Retirement Corporation (8053), Sears Caprock Retirement Corporation (9581), Sears Methodist Centers, Inc. (4917), Sears Methodist Foundation (2545), Sears Panhandle Retirement Corporation (3233), Sears Permian Retirement Corporation (7608), Sears Plains Retirement Corporation (8233), Sears Tyler Methodist Retirement Corporation (0571) and Senior Dimensions, Inc. (4016). The mailing address of each of the debtors, solely for purposes of notices and communications, is 2100 Ross Avenue, 21st Floor, c/o Paul Rundell, Dallas, Texas 75201.

Retirement Corporation, Sears Permian Retirement Corporation, Sears Plains Retirement Corporation, Sears Tyler Methodist Retirement Corporation, and Senior Dimensions, Inc., as debtors and debtors in possession in the above-captioned cases (collectively, the "Plan Debtors" and, together with the remaining debtors and debtors in possession in the above-captioned cases, the "Debtors"), having jointly proposed and filed with the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") (i) the *Plan Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, dated as of December 6, 2014 [Dkt. No. 595], as amended by the *Plan Debtors' Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, dated as of January 15, 2015 [Dkt. No. 685] and the *Plan Debtors' Second Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, dated as of February 26, 2015 [Dkt. No. 770] (as further modified, amended, and/or supplemented from time to time, including as modified herein, the "Plan"),[2] a copy of which is annexed hereto as Exhibit A, (ii) that certain related *Disclosure Statement for Plan Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code,* dated as of December 6, 2014 [Dkt. No. 596], as amended by the *Amended Disclosure Statement for Plan Debtors' Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, dated as of January 15, 2015 [Dkt. No. 686] (as further modified, amended, and/or supplemented from time to time, the "Disclosure Statement"), and (iii) the *Plan Supplement to the Plan Debtors' Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, dated February 17, 2015 [Dkt. No. 737], as amended by the *Notice of First Supplement to Plan Supplement to the Plan Debtors' Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, dated as of February 25, 2015

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan or in the Rundell Declaration (as defined below).

[Dkt. No. 757] (as amended, modified, and/or supplemented from time to time, the "Plan Supplement"); and

WHEREAS, on January 21, 2015, the Bankruptcy Court entered the *Order (I) Approving Disclosure Statement, (II) Establishing Procedures for the Solicitation and Tabulation of Votes to Accept or Reject the Plan Debtors' Chapter 11 Plan, (III) Scheduling a Confirmation Hearing, and (IV) Approving Related Notice Procedures* [Dkt. No. 694] (the "Disclosure Statement Order"), which, among other things, approved the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code, scheduled a hearing to consider confirmation of the Plan (the "Confirmation Hearing"), and approved certain procedures for the solicitation of votes to accept or reject the Plan (the "Solicitation Procedures"); and

WHEREAS, the appropriate Ballots for voting on the Plan were duly transmitted to Holders of Claims entitled to vote on the Plan in accordance with the Solicitation Procedures as set forth in the *Declaration of Craig Johnson of Garden City Group, LLC Certifying the Methodology for the Tabulation of Votes On and Results of Voting With Respect to the Plan Debtors' Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code,* dated as of February 25, 2015 [Dkt. No. 755] (the "Voting Certification"); and

WHEREAS, on February 27, 2015, the Plan Debtors filed that certain *Declaration of Paul B. Rundell in Support of Confirmation of the Plan Debtors' Second Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 771] (the "Rundell Declaration") and *Memorandum of Law (I) in Support of Confirmation of the Plan Debtors' Second Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code and (II) in Reply to Outstanding Objections Thereto* [Dkt. No. 768] (the "Memorandum of Law")

in support of confirmation of the Plan; and

WHEREAS, certain responses or objections to confirmation of the Plan having been filed prior to the Confirmation Hearing (together with any objections raised at the Confirmation Hearing, the "Objections"); and

WHEREAS, due notice of the Confirmation Hearing has been given to Holders of Claims against and Interests in the Plan Debtors and other parties in interest in compliance with title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas (the "Local Rules"), and the Disclosure Statement Order as established by the affidavits of service, mailing, and/or publication filed with the Bankruptcy Court, including (1) the *Affidavit of Service*, dated February 4, 2015, filed by GCG, Inc., the Plan Debtors' Voting Agent ("GCG") [Dkt. No. 718], and (2) the *Affidavit of Publication*, dated February 4, 2015, filed by GCG [Dkt. No. 719] (collectively, the "Confirmation Hearing Notice Affidavits"); and

WHEREAS, notice of the Confirmation Hearing, as evidenced by the Confirmation Hearing Notice Affidavits, is sufficient under the circumstances and no further notice is required; and

WHEREAS, the Bankruptcy Court having held the Confirmation Hearing on February 27, 2015, to consider confirmation of the Plan and the Objections having been resolved, overruled, or withdrawn prior to or during the Confirmation Hearing; and

NOW, THEREFORE, based upon the Bankruptcy Court's consideration of the entire record of these Chapter 11 Cases and the Confirmation Hearing, including (1) the Disclosure Statement, the Plan, the Plan Supplement, and the Voting Certification, (2) the Plan Debtors'

Memorandum of Law, (3) the Rundell Declaration, and (4) the Confirmation Hearing Notice

Affidavits; and all Objections to confirmation of the Plan having been resolved, withdrawn, or

otherwise overruled as set forth herein; and upon the arguments of counsel and the evidence

adduced at the Confirmation Hearing; and the Bankruptcy Court having found the Plan should be

confirmed as reflected by the Bankruptcy Court's rulings made herein and at the Confirmation

Hearing; and after due deliberation and sufficient cause appearing therefor, the Bankruptcy Court

hereby **FINDS, DETERMINES, AND CONCLUDES** that:

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.    <u>Findings and Conclusions</u>.  The findings and conclusions set forth herein and on

the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and

conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made

applicable herein by Rules 7052 and 9014 of the Bankruptcy Rules.  To the extent any of the

following findings of fact constitute conclusions of law, they are adopted as such.  To the extent

any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    <u>Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a))</u>.  The

Bankruptcy Court has jurisdiction over the Plan Debtors' Chapter 11 Cases pursuant to 28

U.S.C. §§ 157 and 1334.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C.

§ 157(b) and the Bankruptcy Court has jurisdiction to enter a final order with respect thereto.

Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Plan

Debtors are eligible debtors under section 109 of the Bankruptcy Code.  The Plan Debtors are

proper plan proponents under section 1121(a) of the Bankruptcy Code.

C.    <u>Judicial Notice</u>.  The Bankruptcy Court takes judicial notice of the docket of the

Chapter 11 Cases maintained by the Clerk of the Bankruptcy Court and/or its duly appointed

EAST\90690279.8

agent, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of these Chapter 11 Cases.

D.    Burden of Proof.  The Plan Debtors have the burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.  The Plan Debtors have met their burden with respect to each applicable element of section 1129 of the Bankruptcy Code.

E.    Chapter 11 Petitions.  On June 10, 2014 (the "Petition Date"), the Plan Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Bankruptcy Court.  By prior order of the Bankruptcy Court, the Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015. The Plan Debtors continued as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases.

F.    Statutory Committee of Unsecured Creditors.    On June 19, 2014, the Office of the United States Trustee for the Northern District of Texas (the "United States Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code.

G.    Modifications to the Plan.  As a result of certain concerns raised by interested parties in the Chapter 11 Cases prior to and during the Confirmation Hearing, the Plan Debtors have agreed to certain modifications that have been incorporated into the Plan, described below, and/or otherwise provided for herein (the "Modifications").   To the extent there are any inconsistences between the Plan and the Modifications, the Modifications shall control.

1.      Pursuant to an agreement reached among the Plan Debtors, TMF, and the

Obligated Group Bond Trustee, the Undeveloped Properties will not be deeded over to TMF on

the Effective Date nor will they be transferred to the Liquidating Trust as provided in the Plan.

Rather, the Obligated Group Bond Trustee and TMF have agreed to file by no later than March

19, 2015 agreed procedures that will govern a sale process for the Undeveloped Properties under

section 363 of the Bankruptcy Code (the "Agreed Undeveloped Properties Sale Procedures").  If

the Obligated Group Bond Trustee and TMF do not file such Agreed Undeveloped Properties

Sale Procedures with the Bankruptcy Court by March 19, 2015, then the automatic stay with

respect to the Undeveloped Properties will automatically be lifted, the Undeveloped Properties

will be deemed abandoned by the Plan Debtors, the Undeveloped Properties will remain subject

to the existing Liens and interests of TMF and the Obligated Group Bond Trustee with the same

validity, priority, force and effect such Liens and interests had as of the Petition Date, and all

parties in interest may exercise remedies against the Undeveloped Properties under applicable

state law.

2.      In response to concerns raised by the Creditors' Committee with respect to

payment of Administrative Expense Claims, the Plan Debtors have agreed to modify Sections

2.1(a) and (b) of the Plan.  Therefore, Sections 2.1(a) and (b) of the Plan shall be replaced in

their entirety with the following provisions:

2.1      *Administrative Expense Claims*.

(a)      **Treatment.**      Except as otherwise provided in
Section 2.1(b) of the Plan or to the extent that a Holder of an
Allowed Administrative Expense Claim agrees to different
treatment with the Plan Debtors or Liquidating Trustee, each
Holder of an Allowed Administrative Expense Claim shall receive
Cash in an amount equal to the unpaid amount of such Allowed
Administrative Expense Claim on the later of the Effective Date or
the date on which such Administrative Expense Claim becomes an

Allowed Administrative Expense Claim, or as soon thereafter as is reasonably practicable; *provided, however*, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Plan Debtors, as Debtors in Possession, or liabilities arising under obligations incurred by the Plan Debtors, as Debtors in Possession, prior to the Effective Date, shall be paid by the Plan Debtors, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions, including, but not limited to, the budgets related to the DIP Loan Agreements, Cash Collateral Orders and all other orders entered by the Bankruptcy Court related to the foregoing. In addition, Allowed Administrative Expense Claims of the United States Trustee for statutory fees under 28 U.S.C. § 1930 incurred prior to the Effective Date shall be paid on the Effective Date by the Plan Debtors, and thereafter, as such fees may thereafter accrue and be due and payable, by the Liquidating Trustee in accordance with the applicable schedule for payment of such fees.

(b) ***Administrative Expense Claims Bar Date***. To be eligible to receive Distributions under the Plan on account of an Administrative Expense Claim, including, but not limited to, a Claim pursuant to section 503(b)(9) of the Bankruptcy Code (a "Section 503(b)(9) Claim"), that is not otherwise Allowed by the Plan, a request for payment of an Administrative Expense Claim or Proof of Claim must have been or be filed with the Bankruptcy Court on or before the Administrative Expense Claims Bar Date (unless such request for payment or Proof of Claim has already been filed with the Bankruptcy Court). **Any Administrative Expense Claims, including Section 503(b)(9) Claims, that are not asserted in accordance herewith and with Section 2.1 of the Plan shall be deemed disallowed under the Plan and shall be forever barred against the Plan Debtors, their Estates, the Liquidating Trust, or any of their Assets or property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.** In connection with Section 503(b)(9) Claims only, objections to such Claims must be filed on or before forty-five (45) days following the filing of the Claim or the Effective Date, whichever is later. If no objection is timely filed in accordance with the foregoing sentence, the Section 503(b)(9) Claim shall be deemed Allowed and the requested amount shall be promptly paid by the Liquidating Trustee. In the event a timely objection to a Section 503(b)(9) Claim is filed with the Bankruptcy Court, the Liquidating Trustee shall pay such

Section 503(b)(9) Claim within five (5) Business Days after the date such Claim is Allowed by Order of the Bankruptcy Court. With respect to Administrative Expense Claims, other than Section 503(b)(9) Claims, filed in accordance herewith and Section 2.1(a) of the Plan, the Liquidating Trustee shall pay the full unpaid amount as is Allowed by the Bankruptcy Court within five (5) Business Days after the date that such Claim is Allowed by Order of the Bankruptcy Court.

3.      The Plan Debtors have also agreed to add language to the Plan providing a procedure for seeking payment for Claims arising under the Perishable Agricultural Commodities Act ("PACA Claim").    Therefore, the following provision has been added to Section 2 of the Plan:

To be eligible to receive Distributions under the Plan on account of a Claim under the Perishable Agricultural Commodities Act ("PACA Claim"), a request for payment of a PACA Claim or Proof of Claim must have been or be filed with the Bankruptcy Court on or before thirty (30) days following the Effective Date. **Any PACA Claims that are not asserted in accordance herewith shall be deemed disallowed under the Plan and shall be forever barred against the Plan Debtors, their Estates, the Liquidating Trust, or any of their Assets or property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.** Objections to any PACA Claims must be filed on or before forty-five (45) days following the filing of the Claim or the Effective Date, whichever is later.  If no objection is timely filed in accordance with the foregoing sentence, the PACA Claim shall be deemed Allowed and the requested amount shall be promptly paid by the Liquidating Trustee.  In the event a timely objection is filed to a PACA Claim with the Bankruptcy Court, the Liquidating Trustee shall pay such PACA Claim within five (5) Business Days after the date such Claim is Allowed by Order of the Bankruptcy Court.

4.      The Plan Debtors have also agreed to modify the Plan so that it reflects reduced dollar amounts in Section 7.16 of the Plan pertaining to *de minimis* distributions. Therefore, Section 7.16 of the Plan states as follows:

***Fractional Dollars; De Minimis Distributions***. Notwithstanding any other provision of this Plan, Cash payments of fractions of dollars shall not be made. Whenever any Distribution to a Holder of a Claim would otherwise call for Distribution of Cash in a fractional dollar amount, the actual Distribution of such Cash shall be rounded to the nearest whole dollar (up or down), with half dollars (or less) being rounded down. Neither the Plan Debtors nor the Liquidating Trustee shall be required to make any Cash payment of less than ten dollars ($10.00) with respect to any Claim or Interest unless a request therefor is made in writing to the Plan Debtors or the Liquidating Trustee, as applicable; *provided, however*, that neither the Plan Debtor nor the Liquidating Trustee shall have any obligation to make any Distribution, whether final or not, unless and until the total amount of such Distribution to a specific Holder of an Allowed Claim or Interest is equal to or greater than five dollars ($5.00).

5.     Section 14.2 of the Plan has been revised to reflect the dissolution of the

Creditors' Committee in connection with all of the Debtors' Chapter 11 Cases, not just the Plan

Debtors' Chapter 11 Cases, on the Effective Date. Therefore, Section 14.2 of the Plan states as

follows:

**14.2    *Dissolution of Creditors' Committee***. On the Effective Date, the Creditors' Committee shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Debtors' Chapter 11 Cases.

6.     The Plan Debtors have agreed to revise Section 6.8(j)(i) to require the

Liquidating Trustee to provide notice and an opportunity to object to Beneficiaries before

abandoning a Cause of Action. Therefore, Section 6.8(j)(i) of the Plan states as follows:

***The Liquidating Trust's Exclusive Authority to Pursue, Settle, or Abandon Causes of Action***. From and after the Effective Date, prosecution and settlement of all Causes of Action, including Avoidance Actions, transferred to the Liquidating Trust shall be the sole responsibility of the Liquidating Trust pursuant to the Plan and this Confirmation Order. From and after the Effective Date, the Liquidating Trust shall have the rights, powers, and interests of the Plan Debtors' Estates to pursue, settle or abandon such Causes of Action as the sole representative of the Plan Debtors' Estates pursuant to Bankruptcy Code section 1123(b)(3) and subject to the terms of the Plan, the Confirmation Order, and the Liquidating

Trust Agreement. Notwithstanding the foregoing, before abandoning any Cause of Action, the Liquidating Trustee shall provide notice and an opportunity to object to such abandonment to all Beneficiaries. Proceeds recovered from all Causes of Action will be deposited into the Liquidating Trust and will be distributed by the Liquidating Trustee to the Beneficiaries in accordance with the provisions of the Plan and Liquidating Trust Agreement. All Causes of Action, including Avoidance Actions, that are not expressly released or waived under the Plan are reserved and preserved and vest in the Liquidating Trust in accordance with the Plan. No Person may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Plan Debtors or Liquidating Trustee will not pursue any and all available Causes of Action against such Person. The Liquidating Trustee expressly reserves all Causes of Action, except for any Causes of Action against any Person that are expressly released or waived under the Plan, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of confirmation or consummation of the Plan. No claims or Causes of Action against the Released Parties shall be transferred to the Liquidating Trust, the Liquidating Trustee shall not have standing to pursue such claims or Causes of Action, and all such claims and Causes of Action shall be waived, released and discharged pursuant to the Plan.

7.    The Plan Debtors have agreed to clarify that the Liquidating Trustee's exclusive authority to object to Claims is limited only to General Unsecured Claims. Therefore, Section 8.2 of the Plan states as follows:

8.2    ***Objections to Claims***. The Plan Debtors (before the Effective Date) or the Liquidating Trustee (on or after the Effective Date), as applicable, shall have the exclusive authority to file, settle, compromise, withdraw or litigate to judgment any objections to General Unsecured Claims as permitted under this Plan. Any objections to General Unsecured Claims shall be filed and served on or before the later of (i) one hundred eighty (180) days after the Effective Date or (ii) such date as may be fixed by the Bankruptcy Court. From and after the Effective Date, the Liquidating Trustee may settle or compromise any Disputed Claim without approval of the Bankruptcy Court. The Plan Debtors and the Liquidating Trustee reserve all rights to resolve any Disputed

Claim outside the Bankruptcy Court under applicable governing law.

**Notice and the Solicitation Process**

H.      _Solicitation_.   On or around January 23, 2015, and in accordance with the Disclosure Statement Order and Solicitation Procedures approved thereby, the Plan Debtors caused GCG to transmit and serve the Confirmation Hearing Notice (as defined in the Disclosure Statement Order),[3] the appropriate Ballots and voting instructions (collectively, the "Solicitation Package") on the Holders of Claims in the following Classes (collectively, the "Voting Classes"):

| Plan Debtor | Impaired Classes Entitled to Vote |
| --- | --- |
| SMRS | Class 3- Obligated Group Bond Claims<br>Class 4- Other Secured Claims<br>Class 6- Deficiency Claims<br>Class 7- General Unsecured Claims |
| Panhandle | Class 3- Obligated Group Bond Claims<br>Class 5- Deficiency Claims<br>Class 6- General Unsecured Claims |
| Permian | Class 3- Obligated Group Bond Claims<br>Class 5- Deficiency Claims<br>Class 6- General Unsecured Claims |
| SMC | Class 3- Obligated Group Bond Claims<br>Class 4- Other Secured Claims<br>Class 7- Deficiency Claims<br>Class 8- General Unsecured Claims |
| SMF | Class 3- Obligated Group Bond Claims<br>Class 4- Other Secured Claims<br>Class 5-Deficiency Claims<br>Class 6- General Unsecured Claims |
| Tyler | Class 3- Tyler Bond Claims<br>Class 4- Other Secured Claims |

---

[3] In accordance with the Disclosure Statement Order and Solicitation Procedures, the Confirmation Hearing Notice directed parties in interest to certain websites at which they could obtain electronic copies of the Plan and Disclosure Statement and provided instructions on how to request and obtain hard copies of the Plan and Disclosure Statement.

|  | Class 6- Deficiency Claims<br>Class 7- General Unsecured Claims |
|---|---|
| Caprock | Class 3- Caprock Secured Loan Claim<br>Class 5- Deficiency Claims<br>Class 6- General Unsecured Claims |
| Plains | Class 3- Plains Secured Loan Claim<br>Class 4- Deficiency Claims<br>Class 5- General Unsecured Claims |
| SDI | Class 3- Other Secured Claims<br>Class 4- General Unsecured Claims |

The Voting Classes were the only Classes of Creditors entitled to vote to accept or reject the Plan. As evidenced by the Voting Certification and the Confirmation Hearing Notice Affidavits, the Solicitation Packages were transmitted and served in compliance with the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order, and other applicable law. The period during which the Plan Debtors solicited acceptances to the Plan was a reasonable period of time for Holders entitled to vote on the Plan to make an informed decision to accept or reject the Plan.

On or around January 23, 2015, and in accordance with the Disclosure Statement Order and Solicitation Procedures approved thereby, the Plan Debtors caused GCG to transmit and serve the Confirmation Hearing Notice and Non-Voting Notice (as defined in the Disclosure Statement Order) on the following Classes, referred to herein as the "Deemed Accepting Classes":

| Plan Debtor | Unimpaired Classes Deemed to Accept Plan |
|---|---|
| SMRS | Class 1- Other Priority Claims<br>Class 2- Secured Tax Claims |
| Panhandle | Class 1- Other Priority Claims<br>Class 2- Secured Tax Claims<br>Class 4- Entrance Deposit Refund Claims |

EAST\90690279.8

| | |
|---|---|
| Permian | Class 1- Other Priority Claims<br>Class 2- Secured Tax Claims<br>Class 4- Entrance Deposit Refund Claims |
| SMC | Class 1- Other Priority Claims<br>Class 2- Secured Tax Claims<br>Class 6- Entrance Deposit Refund Claims |
| SMF | Class 1- Other Priority Claims<br>Class 2- Secured Tax Claims |
| Tyler | Class 1- Other Priority Claims<br>Class 2- Secured Tax Claims<br>Class 5- Entrance Deposit Refund Claims |
| Caprock | Class 1- Other Priority Claims<br>Class 2- Secured Tax Claims<br>Class 4- Entrance Deposit Refund Claims |
| Plains | Class 1- Other Priority Claims<br>Class 2- Secured Tax Claims |
| SDI | Class 1- Other Priority Claims<br>Class 2- Secured Tax Claims |

Pursuant to section 1126(f) of the Bankruptcy Code, the Plan Debtors were not required to solicit votes from the Holders of Claims in the Deemed Accepting Classes as each such Class is Unimpaired under the Plan, and thus, the Holders of such Claims are deemed to have accepted the Plan.

On or around January 23, 2015, and in accordance with the Disclosure Statement Order and Solicitation Procedures approved thereby, the Plan Debtors caused GCG to transmit and serve the Confirmation Hearing Notice and Non-Voting Notice (as defined in the Disclosure Statement Order) on the following Classes, referred to herein as the "Deemed Rejecting Classes":

| Plan Debtor | Impaired Classes Deemed to Reject Plan |
|---|---|
| SMRS | Class 5- LCS Secured Claim |
| Panhandle | Class 7- Interests in Panhandle |
| Permian | Class 7- Interests in Permian |
| SMC | Class 5- LCS Secured Claim<br>Class 9- Interests in SMC |
| SMF | Class 7-Intersts in SMF |
| Tyler | Class 8- Interests in Tyler |
| Caprock | Class 7- Interests in Caprock |
| Plains | Class 6- Interests in Plains |
| SDI | Class 5- Interests in SDI |

The Plan Debtors were not required to solicit votes from the Holders of Claims or Interests in the Deemed Rejecting Classes as each such Holder will not receive or retain any property under the Plan and, thus, the Holders of such Claims or Interests, as applicable, are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.

I.    Notice.  As evidenced by the Confirmation Hearing Notice Affidavits and/or the Rundell Declaration, and in compliance with the Disclosure Statement Order, the Plan Debtors also caused the following to occur:

a.    On or around January 23, 2015, the Plan Debtors caused the Resident Notice (as defined in the Disclosure Statement Order) to be posted prominently in various locations at each of the Plan Debtors' Facilities.  The Resident Notice, among other things, notified residents of the filing of the Plan, the deadline for objecting to the Plan, and the date and time of the Confirmation Hearing.

b.    On or around January 23, 2015, the Plan Debtors caused the Publication Notice (as defined in the Disclosure Statement Order) to be published in the *Dallas Morning News*.

15

c. On or around January 23, 2015, the Plan Debtors caused the Confirmation Hearing Notice to be posted on the Electronic Municipal Market Access database in connection with the Obligated Group Bonds and Tyler Bonds.

d. On or around January 23, 2015, the Plan Debtors caused the Confirmation Hearing Notice to be served on all parties requesting notice under Rule 2002 of the Bankruptcy Rules.

J. <u>No Other or Further Notice or Solicitation Required</u>. As evidenced by the Voting Certification and Confirmation Hearing Notice Affidavits, the transmittal and service of the Plan, the Disclosure Statement and the Ballots were adequate and sufficient under the circumstances, and all parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to confirmation of the Plan) have been given due, proper, timely, and adequate notice in accordance with the Disclosure Statement Order, and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law, and such parties have had sufficient opportunity to appear and be heard with respect thereto. The solicitation of votes on the Plan complied with the Solicitation Procedures and Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law. No other or further notice or re-solicitation is required.

K. <u>Good Faith Solicitation</u>. Based on the record before the Bankruptcy Court in these Chapter 11 Cases, the Plan Debtors and their successors, predecessors, partners, representatives, control persons, members, officers, directors, employees, agents and their respective attorneys and other advisors (i) have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law,

rule, or regulation governing the adequacy of disclosure in connection with all their respective activities relating to the solicitation of votes on the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and (ii) shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan and, therefore, are not, and on account of any such offer, issuance, and solicitation will not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of the securities under the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and, to the extent such parties are listed therein, the exculpation provisions set forth in Section 11.6 of the Plan.

L.    _Voting_.  As evidenced by the Voting Certification, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Plan, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and applicable non-bankruptcy law.

M.    _Plan Supplement_.  All documents contained in the Plan Supplement, including the Liquidating Trust Agreement, comply with the terms of the Plan, and the filing, notice, and service of such documents were done in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, and no other or further notice is or shall be required.

**Compliance with the Requirements of Section 1129 of the Bankruptcy Code**

N.    _Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))_.  The Plan complies with the applicable provisions of the Bankruptcy Code and, as required by Bankruptcy Rule 3016, the Plan is dated, identifies the Plan Debtors as plan proponents, and clearly identifies

17

the injunction proposed under the Plan, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

a. <u>Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))</u>. With the exception of Administrative Expense Claims, Accrued Professional Compensation Claims, Priority Tax Claims, and DIP Claims which need not be classified, Section 3 of the Plan classifies the Classes of Claims against and Interests in each of the Plan Debtors. The Claims and Interests placed in each Class are substantially similar to the other Claims and Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and the Plan does not unfairly discriminate between Holders of Claims and Interests in each Class or between Classes. Accordingly, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

b. <u>Unimpaired Classes Specified (11 U.S.C. § 1123(a)(2))</u>. Section 3 of the Plan specifies which Classes of Claims and Interests are Unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

c. <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>. Section 3 and 4 of the Plan specify which Classes of Claims and Interests are Impaired under the Plan within the meaning of section 1124 of the Bankruptcy Code and clearly specify the treatment of the Claims and Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

d. <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>. The Plan provides for the same treatment for each Claim or Interest in each respective Class unless the Holder of a particular

Claim or Interest has agreed to less favorable treatment for such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

e. <u>Implementation of the Plan (11 U.S.C. § 1123(a)(5))</u>. The Plan and the various documents and agreements set forth in the Plan Supplement provide adequate and proper means for the implementation of the Plan, including, without limitation, (i) the establishment of the Liquidating Trust and the appointment of the Liquidating Trustee, (ii) the vesting of the Liquidating Trust Assets in the Liquidating Trust free and clear of all Liens, Claims, and Interests, all to the extent provided under the Plan and this Confirmation Order, to be administered in accordance with the terms of the Plan and the Liquidating Trust Agreement for the benefit of the Liquidating Trust's Beneficiaries, and (iii) the disbursement of the Net Sale Proceeds to the Secured Lenders, as applicable. Accordingly, the Plan satisfies section 1123(a)(5) of the Bankruptcy Code.

f. <u>Non-Voting Equity Securities/Allocation of Voting Power (11 U.S.C. § 1123(a)(6))</u>. The Plan does not provide for the issuance of nonvoting equity securities, therefore section 1123(a)(6) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases.

g. <u>Appointment of Liquidating Trustee (11 U.S.C. § 1123(a)(7))</u>. Section 6.8 of the Plan and the Liquidating Trust Agreement contain provisions regarding the manner of selection of the Liquidating Trustee and any successor Liquidating Trustee that are consistent with the interests of Holders of Claims and with public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

h. <u>Earnings from Personal Services (11 U.S.C. § 1123(a)(8))</u>. Section 1123(a)(8) of the Bankruptcy Code applies only to individual debtors and is not applicable to these Chapter 11 Cases.

i.   Impairment/Unimpairment of Classes of Claims and Interests (11 U.S.C. § 1123(b)(1)).   As permitted by section 1123(b)(1) of the Bankruptcy Code, pursuant to Sections 3 and 4 of the Plan, Claims or Interests in the Voting Classes and Deemed Rejecting Classes are Impaired and Claims or Interests in the Deemed Accepting Classes are Unimpaired.

j.   Assumption and Rejection (11 U.S.C. § 1123(b)(2)).   Section 9 of the Plan governs the assumption and rejection of Executory Contracts and Unexpired Leases pursuant to sections 363 and 365 of the Bankruptcy Code, as applicable, thereby satisfying section 1123(b)(2) of the Bankruptcy Code.

k.   Settlement/Retention of Claim or Interests (11 U.S.C. § 1123(b)(3)).   Sections 6.8 and 11.15 of the Plan provide for the retention of Causes of Action not expressly settled or released under the Plan.   Thus, the Plan satisfies the requirements of section 1123(b)(3) of the Bankruptcy Code.

l.   Sale of All or Substantially All Assets (11 U.S.C. § 1123(b)(4)).   As contemplated by section 1123(b)(4) of the Bankruptcy Code, the Plan provides for the sale of substantially all of the assets of the Obligated Group Sellers, Tyler, Caprock and Plains, with the Net Sale Proceeds to be paid to the Plan Debtors' Secured Lenders, as applicable.   Thus, the Plan satisfies section 1123(b)(4) of the Bankruptcy Code.

m. Modification of Rights (11 U.S.C. § 1123(b)(5)).   As permitted by section 1123(b)(5) of the Bankruptcy Code, the Plan modifies the rights of Holders of Claims and Interests in the Voting Classes and Deemed Rejecting Classes.   The Plan leaves unaffected the rights of Holders of Claims in the Deemed Accepting Classes.

n.   Additional Plan Provisions (11 U.S.C. § 1123(b)(6)).   As permitted by section 1123(b)(6) of the Bankruptcy Code, the Plan includes other appropriate provisions not

inconsistent with the applicable provisions of the Bankruptcy Code, including, without limitation, certain release, exculpation, and injunction provisions in Section 11 of the Plan. Based upon the facts and circumstances of these Chapter 11 Cases, the release, exculpation, and injunction provisions in the Plan are integral and critical parts of the Plan, and the Released Parties and Exculpated Parties have relied on the efficacy and conclusive effects of such releases and injunctions when making concessions and exchanging consideration in connection with the Chapter 11 Cases and the Plan.  Such release, exculpation, and injunction provisions in Section 11 of the Plan are:   (i) in exchange for the good, valuable, and reasonably equivalent consideration provided by the Released Parties; (ii) in the best interests of the Plan Debtors, their Estates, and their Creditors; (iii) fair, equitable, and reasonable; and (iv) a bar to any of the Releasing Parties as set forth in the Plan asserting any Claims or Causes of Action released pursuant to the Plan.   Accordingly, based upon the record of these Chapter 11 Cases, the representations of the parties, and/or the evidence proffered, adduced, and/or presented at the Confirmation Hearing, the Bankruptcy Court finds that the release, exculpation, and injunction provisions set forth in Section 11 of the Plan are consistent with the Bankruptcy Code and applicable law and are appropriate under the circumstances.

     o.  Sale of Exempt Property (11 U.S.C. § 1123(c)).   The Plan Debtors are not individuals.   Accordingly, section 1123(c) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

     p.  Cure of Defaults (11 U.S.C. § 1123(d)).   Except as otherwise provided in the Plan, or in any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, including, but not limited to, the Obligated Group APA, Tyler APA, Caprock APA, Plains APA and any other asset purchase agreement entered into by the

Plan Debtors in connection with the Sales, each of the Executory Contracts and Unexpired Leases of the Plan Debtors shall be deemed rejected as of the Effective Date, unless such Executory Contract or Unexpired Lease: (1) was assumed or rejected previously by the applicable Plan Debtor; (2) expired or terminated pursuant to its own terms before the Effective Date; (3) is the subject of a motion to assume or reject filed on or before the Effective Date; or (4) is identified as an Executory Contract or Unexpired Lease to be assumed in connection with the Sales. As required by Bankruptcy Code section 365(b)(1), any monetary amounts by which any Executory Contract or Unexpired Lease that may be assumed in connection with the Sales is in default shall be satisfied by payment or provision for payment of the required cure amount, if any. Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

O. <u>The Plan Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>. The Plan Debtors, as plan proponents, have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order, and other applicable law in transmitting the Plan, the Disclosure Statement, the Plan Supplement, the Ballots, and related documents and notices and in soliciting and tabulating the votes on the Plan. Accordingly, the Plan satisfies the requirements of section 1129(a)(2) of the Bankruptcy Code.

P. <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>. The Plan Debtors have proposed the Plan, including the Plan Supplement and all documents necessary to effectuate the Plan, and the transactions contemplated by the Plan in good faith and not by any means forbidden by law, thereby satisfying the requirements of section 1129(a)(3) of the Bankruptcy Code. The Plan Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement, and the record of the Confirmation Hearing and other

proceedings held in these Chapter 11 Cases. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Plan Debtors' assets and distributions to Creditors. Further, the Plan's classification, exculpation, release, and injunction provisions are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code and applicable case law in the Fifth Circuit, have been negotiated in good faith and at arms' length, are integral to the Plan, and supported by valuable consideration.

Q.      Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).    Any payments made or promised by the Plan Debtors for services or for costs and expenses incurred in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, have been approved by, or are subject to approval of, the Bankruptcy Court as reasonable. Accordingly, the Plan satisfies the requirements of section 1129(a)(4) of the Bankruptcy Code.

R.      Directors, Officers, and Trustees (11 U.S.C. § 1129(a)(5)).    The Plan satisfies section 1129(a)(5) of the Bankruptcy Code as the identity of the Liquidating Trustee has been fully disclosed in the Plan Supplement and at the Confirmation Hearing, and the appointment of the Liquidating Trustee is consistent with the interests of Holders of Claims against the Plan Debtors and with public policy.

S.      No Rate Changes (11 U.S.C. § 1129(a)(6)).    The Plan does not provide for any rate changes over which a governmental regulatory commission has jurisdiction. Accordingly, section 1129(a)(6) of the Bankruptcy Code is not applicable to these Chapter 11 Cases.

T.      Best Interest of Creditors (11 U.S.C. § 1129(a)(7)).    Each Holder of an Impaired Claim or Interest (i) has accepted the Plan, (ii) will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the

amount that such Holder would receive or retain if the Plan Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date, or (iii) has agreed to receive less favorable treatment. Therefore, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

U. <u>Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))</u>. The Cram Down Classes are Impaired under the Plan and have rejected or are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. As set forth herein, and pursuant to section 1129(b)(1) of the Bankruptcy Code, the Plan may be confirmed notwithstanding the fact that the Cram Down Classes are Impaired under the Plan and have rejected or are deemed to have rejected the Plan.

As evidenced by the Voting Certification, the Accepting Classes voted to accept the Plan in accordance with sections 1126(b) and (c) of the Bankruptcy Code, and such Classes do not include insiders of the Debtors (as that term is defined in section 101(31) of the Bankruptcy Code).

V. <u>Treatment of Administrative Expense Claims and Priority Claims (11 U.S.C. § 1129(a)(9))</u>. The treatment of Claims under the Plan of the type specified in section 507(a)(1) through 507(a)(8) of the Bankruptcy Code, if any, complies with the provisions of section 1129(a)(9) of the Bankruptcy Code.

W. <u>Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10))</u>. As evidenced by the Voting Certification, section 1129(a)(10) of the Bankruptcy Code is satisfied as the Accepting Classes have accepted the Plan, determined without including any acceptances of the Plan by any insider.

X.     Feasibility (11 U.S.C. § 1129(a)(11)).   The information in the Disclosure Statement, the Plan Supplement, the Rundell Declaration, and the evidence proffered or adduced at or prior to the Confirmation Hearing (a) is reasonable, persuasive and credible, (b) has not been controverted by other evidence, and (c) establishes that the Plan is feasible and that there is a reasonable prospect that the Plan Debtors being able to meet their financial obligations under the Plan and that confirmation of the Plan is not likely to be followed by the liquidation or need for further financial reorganization of the Plan Debtors, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

Y.     Payment of Fees (11 U.S.C. § 1129(a)(12)).   As provided in Section 14.1 of the Plan, all fees payable under section 1930 of title 28 of the United States Code have either been paid or will be paid under the Plan, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.   Allowed Administrative Expense Claims of the United States Trustee for statutory fees under 28 U.S.C. § 1930 shall be paid on the Effective Date and thereafter, as such fees may thereafter accrue and be due and payable, by the Liquidating Trustee in accordance with the applicable schedule for payment of such fees.   All statutory fees under 28 U.S.C. § 1930 with respect to the period prior to the Effective Date shall be paid by the Plan Debtors from funds of the Estates on or prior to the Effective Date as and when such fees become due and payable.

Z.     Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).   The Plan Debtors have no obligations for retiree benefits as that term is defined in section 1114 of the Bankruptcy Code, thus the requirements of section 1129(a)(13) of the Bankruptcy Code are not applicable.

AA.     No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)).   The Plan Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support

obligation.   Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

BB.    <u>Plan Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15))</u>.   The Plan Debtors are not individuals.   Accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

CC.    <u>Applicable Non-Bankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16))</u>. All transfers of property under the Plan have been made in accordance with applicable provisions of nonbankruptcy law that govern the transfer of such property by a corporation that is not a moneyed, business or commercial corporation or trust, thereby satisfying the requirements of section 1129(a)(16) of the Bankruptcy Code.

DD.    <u>No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b))</u>.   Based upon the evidence proffered, adduced, and presented by the Plan Debtors at the Confirmation Hearing, in the Disclosure Statement, and in the Rundell Declaration, the Plan does not discriminate unfairly and is fair and equitable with respect to the Cram Down Classes as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code, because no Holder of any Claim or Interest that is junior to such Classes will receive or retain any property under the Plan on account of such junior Claim or Interest, and no Holder of a Claim in a Class senior to such Classes is receiving more than 100% recovery on account of its Claim.    Thus, the Plan may be confirmed notwithstanding the deemed rejection of the Plan by these Classes.

EE.    <u>Only One Plan (11 U.S.C. § 1129(c))</u>.   The Plan is the only plan being confirmed in these Chapter 11 Cases.   Thus, the Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code.

FF.    <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.  Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

GG.    <u>Exemption from Transfer Tax (11 U.S.C. § 1146(a))</u>.  All transactions contemplated by the Plan, and the purchase, sale, and assignment transactions under the Plan are not subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, sales or use tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment.

HH.    <u>Modifications of the Plan (11 U.S.C. § 1127)</u>.  Any modifications made to the Plan since the solicitation thereof, including the Modifications described herein, do not constitute changes that materially and adversely change the treatment of any Claims or Interests.  Accordingly, these modifications comply in all respects with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, and none of the modifications requires additional disclosure or resolicitation of votes on the Plan.  Under Bankruptcy Rule 3019(a), all Creditors that previously accepted the Plan are deemed to have accepted the Plan as modified.  The Plan as modified shall constitute the Plan submitted for confirmation.

II.    <u>Implementation</u>.  All documents and agreements necessary to implement the Plan, including those contained in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arm's length and are in the best interests of the Plan Debtors, and shall, upon completion of documentation and execution, and subject to the

occurrence of the Effective Date, be valid, binding, and enforceable agreements and shall not be in conflict with any federal or state law.

JJ.    <u>Injunction, Exculpation, and Releases</u>.    The Bankruptcy Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the injunction, exculpation, and releases set forth in Section 11 and elsewhere in the Plan and this Confirmation Order.  Section 105(a) of the Bankruptcy Code permits issuance of injunction and approval of the releases and exculpations set forth in Section 11 and elsewhere in the Plan and this Confirmation Order, if, as has been established here based upon the record in the Chapter 11 Cases and the evidence presented in the Rundell Declaration and the Confirmation Hearing, such provisions (i) were integral to the agreement amount the various parties in interest and are essential to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (ii) confer substantial benefits on the Plan Debtors' Estates, (iii) are fair, equitable, and reasonable, and (iv) are in the best interests of the Plan Debtors, their Estates, and parties in interest.

Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the releases, exculpation, and injunction set forth in the Plan and implemented by this Confirmation Order are fair, equitable, reasonable, and in the best interests of the Plan Debtors, their Estates and Creditors.  The Rundell Declaration and the record of the Confirmation Hearing and the Chapter 11 Cases are sufficient to support the releases, exculpation, and injunction provided for in Section 11 of the Plan.  Accordingly, based upon the record of the Chapter 11 Cases, the representations of the parties, and/or the evidence proffered, adduced, and/or presented in the Rundell Declaration and the Confirmation Hearing, the Bankruptcy Court finds that the injunction, exculpation, and releases set forth in Section 11 of the Plan are consistent with the

Bankruptcy Code and applicable law. The failure to implement the injunction, release, and exculpation provisions of the Plan would seriously impair the Plan Debtors' ability to confirm the Plan.

KK. <u>Preservation of Causes of Action</u>. It is in the best interests of the Plan Debtors, and Holders of Claims against and Interests in the Plan Debtors that all Causes of Action, including, without limitation, any avoidance or recovery actions under sections 502, 510, 541, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code and any other Causes of Action that may be pending or exist on the Effective Date, except as otherwise expressly provided in the Plan or this Confirmation Order, shall vest in the Liquidating Trust, and from and after the Effective Date, the Liquidating Trust shall have exclusive rights, powers, and interests of the Estates to pursue, settle, or, subject to the Plan, abandon such Causes of Action as the sole representative of the Estates pursuant to section 1123(b)(3) of the Bankruptcy Code.

LL. <u>Satisfaction of Confirmation Requirements</u>. Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

<b><u>ORDER</u></b>

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

1. <u>Findings of Fact and Conclusions of Law</u>. The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though more fully set forth herein.

2. <u>Notice of the Confirmation Hearing</u>. Notice of the Confirmation Hearing complied with the terms of the Disclosure Statement Order, was appropriate and satisfactory

based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

3.      <u>Plan Modifications</u>.  The modifications and amendments to the Plan through the date hereof, including the Modifications described herein, meet the requirements of section 1127(a) and (c) of the Bankruptcy Code, such modifications do not materially and adversely affect the treatment of the Claim of any Creditor of Interest Holder within the meaning of Bankruptcy Rule 3019(a), and no further solicitation or voting is required.  The Plan is hereby amended to include the Modifications described herein.

4.      <u>Solicitation and Tabulation</u>.  The solicitation and tabulation of votes on the Plan complied with applicable bankruptcy and nonbankruptcy law, were appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and were in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order and applicable non-bankruptcy law.

5.      <u>Confirmation of the Plan</u>.  The Plan and each of its provisions and exhibits, including the Plan Supplement, as modified in accordance with section 1127 of the Bankruptcy Code, shall be, and hereby are, CONFIRMED pursuant to section 1129 of the Bankruptcy Code. The documents contained in the Plan Supplement are authorized and approved.  Each provision of the Plan, as modified herein, is authorized and approved and shall have the same validity, binding effect, and enforceability as every other provision of the Plan.  The terms of the Plan, as previously modified, as modified at the Confirmation Hearing, and as modified herein, are incorporated by reference into and are an integral part of this Confirmation Order.  The failure specifically to describe, include, or refer to any particular article, section, or provision of the Plan, Plan Supplement, or any related document in this Confirmation Order shall not diminish

or impair the effectiveness of such article, section, or provision, it being the intent of the Bankruptcy Court that the Plan and all related documents be approved and confirmed in their entirety.

6.    Objections.  All Objections, responses to, and statements and comments, if any, in opposition to or inconsistent with the Plan, other than those withdrawn with prejudice in their entirety prior to, or on the record at, the Confirmation Hearing, shall be, and hereby are, OVERRULED and DENIED in their entirety.  All withdrawn objections are deemed withdrawn with prejudice.

7.    Incorporation of Sale Orders and Related Agreements.  The Plan is amended as necessary to incorporate the Bankruptcy Court's previous orders approving of the Obligated Group Sale, Tyler Sale, Caprock Sale and Plains Sale [Dkt. Nos. 559, 639, 713, and 717] and the terms of the related asset purchase and sale agreements and transaction documents, and nothing in the Plan or this Confirmation Order shall affect the rights of the parties to the Sales, which shall survive confirmation of this Plan.

8.    Undeveloped Properties.  The Obligated Group Bond Trustee and TMF shall file the Agreed Undeveloped Properties Sale Procedures by no later than March 19, 2015.  In the event the Obligated Group Bond Trustee and TMF do not file the Agreed Undeveloped Properties Sale Procedures by March 19, 2015, then the automatic stay with respect to Undeveloped Properties will automatically be lifted, the Undeveloped Properties will be deemed abandoned by the Plan Debtors, the Undeveloped Properties will remain subject to the existing Liens and interests of TMF and the Obligated Group Bond Trustee with the same validity, priority, force and effect such Liens and Interests had as of the Petition Date, and all

parties in interest may exercise remedies against the Undeveloped Properties under applicable state law.

9.    Satisfaction of Claims.  To the fullest extent provided under section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided herein or in the Plan, the Distributions, rights, and treatment that are provided in the Plan shall be in full and final satisfaction and settlement, as of the Effective Date, of all Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Plan Debtors' Estates, the Plan Debtors, or any of the Plan Debtors' assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (i) a Proof of Claim or Interest based upon such Claim, debt, right, or Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code, (ii) a Claim or Interest based upon such Claim, debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code, or (iii) the Holder of such a Claim or Interest has accepted the Plan.  This Confirmation Order shall be a judicial determination of the satisfaction of all Claims and Interests subject to the Effective Date occurring, except as otherwise expressly provided herein or in the Plan.

10.    Compromise of Controversies.  Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits

provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The entry of this Confirmation Order shall constitute this Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Plan Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable. After the Effective Date, the Liquidating Trustee, on behalf of the Plan Debtors, may, and shall have the exclusive right to, compromise and settle any Claims against the Plan Debtors or Liquidating Trust, as the case may be, and Causes of Action against any other Person or Entity subject to the provisions of the Plan.

11.    _Administrative Expense Claims._  To be eligible to receive Distributions under the Plan on account of an Administrative Expense Claim, including, but not limited to, a Claim pursuant to section 503(b)(9) of the Bankruptcy Code ("Section 503(b)(9) Claims"), that is not otherwise Allowed by the Plan, a request for payment of an Administrative Expense Claim or Proof of Claim must have been or be filed with the Bankruptcy Court on or before the Administrative Expense Claims Bar Date (unless such request for payment or Proof of Claim has already been filed with the Bankruptcy Court).  **Any Administrative Expense Claims, including Section 503(b)(9) Claims, that are not asserted in accordance herewith and with Section 2.1 of the Plan shall be deemed disallowed under the Plan and shall be forever barred against the Plan Debtors, their Estates, the Liquidating Trust, or any of their Assets or property, and the Holder thereof shall be enjoined from commencing or**

33

**continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.** In connection with Section 503(b)(9) Claims only, objections to such Claims must be filed on or before forty-five (45) days following the filing of the Claim or the Effective Date, whichever is later. If no objection is timely filed in accordance with the foregoing sentence, the Section 503(b)(9) Claim shall be deemed Allowed and the requested amount shall be promptly paid by the Liquidating Trustee. In the event a timely objection to a Section 503(b)(9) Claim is filed with the Bankruptcy Court, the Liquidating Trustee shall pay such Section 503(b)(9) Claim within five (5) Business Days after the date such Claim is Allowed by Order of the Bankruptcy Court. With respect to Administrative Expense Claims, other than Section 503(b)(9) Claims, filed in accordance herewith and Section 2.1(a) of the Plan, the Liquidating Trustee shall pay the full unpaid amount as is Allowed by the Bankruptcy Court within five (5) Business Days after the date that such Claim is Allowed by Order of the Bankruptcy Court.

12. <u>PACA Claims</u>. To be eligible to receive Distributions under the Plan on account of a Claim under the Perishable Agricultural Commodities Act ("<u>PACA Claim</u>"), a request for payment of a PACA Claim or Proof of Claim must have been or be filed with the Bankruptcy Court on or before thirty (30) days following the Effective Date (unless such request for payment or Proof of Claim has already been filed with the Bankruptcy Court). **Any PACA Claims that are not asserted in accordance herewith shall be deemed disallowed under the Plan and shall be forever barred against the Plan Debtors, their Estates, the Liquidating Trust, or any of their Assets or property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.** Objections to any PACA Claims must be filed on or before forty-five (45) days following the filing of the Claim or the Effective Date, whichever is later.

If no objection is timely filed in accordance with the foregoing sentence, the PACA Claim shall be deemed Allowed and the requested amount shall be promptly paid by the Liquidating Trustee. In the event a timely objection is filed to a PACA Claim with the Bankruptcy Court, the Liquidating Trustee shall pay such PACA Claim within five (5) Business Days after the date such Claim is Allowed by Order of the Bankruptcy Court.

13. <u>Accrued Professional Compensation Claims</u>. All Professionals seeking payment of Accrued Professional Compensation Claims shall (a) file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred in the Chapter 11 Cases by the date that is thirty (30) days after the Effective Date and (b) be paid (i) the full unpaid amounts as is Allowed by the Bankruptcy Court within five (5) Business Days after the date that such Claim is Allowed by Order of the Bankruptcy Court, or (ii) upon such other terms as may be mutually agreed upon between the Holder of such an Allowed Accrued Professional Compensation Claim and the Plan Debtors or Liquidating Trustee. **Any Accrued Professional Compensation Claim that is not asserted in accordance herewith and with Section 2.2 of the Plan shall be deemed disallowed under the Plan and shall be forever barred against the Plan Debtors, their Estates, the Liquidating Trust, or any of their Assets or property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.**

14. <u>Prepetition and Administrative Claims of McLennan County and Smith County</u>. Notwithstanding any other provision in the Plan, this Confirmation Order or the Liquidating

Trust Agreement, the prepetition and Administrative Expense Claims of McLennan County and

Smith County[4] shall be treated as follows:

(a)     McLennan County is the holder of an Administrative Expense Claim for year 2015 ad valorem real property taxes on undeveloped property located in Waco, Texas and owned by SMF.  McLennan County shall retain its Liens that secure all amounts ultimately owed for tax year 2015.  Any sale or transfer of the property that does not result in payment of ad valorem property taxes shall be subject to the Liens that secure all amounts ultimately owed in connection with such taxes.  McLennan County is not required to file an Administrative Expense Claim and request for payment as a condition of allowance of its Administrative Expense Claim for year 2015 ad valorem real property taxes.  TMF and the Obligated Group Bond Trustee reserve the right to object to such taxes.

(b)     Pursuant to the terms of the *Order Authorizing and Approving (I) the Sale of Substantially All of the Assets of Debtor Sears Tyler Methodist Retirement Corporation to Successful Bidder and (II) Related Relief* [Dkt. No. 717], Smith County's Liens that secure year 2015 ad valorem property taxes plus any penalties and interest that may accrue shall remain attached to the property sold and become the responsibility of the purchaser.  Nothing in the Plan or this Confirmation Order shall be construed to prevent Smith County from collecting all amounts owed for tax year 2015 or enforcing the Liens that secure all amounts owed for tax year 2015 against the property and/or the purchaser.  Smith County shall receive postpetition and post-Effective Date interest on its Claim, to the extent such Claim is deemed allowed as either a Secured Claim or an Administrative Expense Claim, at the state statutory rate pursuant to 11 U.S.C. §§ 506(b), 511 and 1129 until its prepetition Claim for tax years 2011 through 2014 is paid in full.  Smith County shall retain its first priority Liens against the proceeds of the Tyler Sale to secure all amounts ultimately owed on its Claim, to the extent such Claim is deemed allowed as either a Secured Claim or an Administrative Expense Claim.  As adequate protection of the liens that secure Smith County's prepetition Claim, and pending the resolution of any objections thereto, the Debtors, Liquidating Trustee, Tyler Bond Trustee or the Tyler DIP Lender shall deposit the amount of $161,653.30 into a segregated account.  Smith County's Liens shall attach to those funds with the same validity, priority and extent that they attached to the property sold.  The amount of these funds shall not be dispositive of the amount of Smith County's Claim or limit the amount that Smith County shall receive upon the allowance of its Claim.  Nothing in the Plan or this Confirmation Order shall be construed to limit the rights of Tyler, the Liquidating Trustee, and/or the Tyler Bond

---

[4] Smith County means Smith County, Smith County Emergency Service District No. 2 and Tyler Junior College.

Trustee to object to the Claims or Liens of Smith County with respect to the Tyler property within sixty (60) days after the Effective Date, all of which objections are expressly preserved.  If no objection is timely filed in accordance with the foregoing sentence, the Claims or Liens sought by Smith County shall be deemed Allowed under the Plan.  Smith County shall receive payment of all amounts owed on its prepetition Claim within five (5) Business Days after such Claim is Allowed by Order of the Bankruptcy Court or deemed Allowed under the Plan.

15.    <u>Liquidating Trust</u>.

(a)    <u>Establishment of Liquidating Trust</u>.    On the Effective Date, the Liquidating Trustee shall sign the Liquidating Trust Agreement and, in his capacity as Liquidating Trustee, accept all Liquidating Trust Assets on behalf of the Beneficiaries thereof, and be authorized to obtain, seek the turnover, liquidate, and collect all of the Liquidating Trust Assets not in his possession.  The Liquidating Trust will then be deemed created and effective without any further action by the Bankruptcy Court or any Person as of the Effective Date.    The Liquidating Trust shall be established for the purposes of (i) liquidating any non-Cash Liquidating Trust Assets; (ii) prosecuting and resolving the Causes of Action; (iii) maximizing recovery of the Liquidating Trust Assets for the benefit of the Beneficiaries; and (iv) distributing the proceeds of the Liquidating Trust Assets to the Beneficiaries in accordance with the Plan and the Liquidating Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except only in the event and to the extent necessary for, and consistent with, the liquidating purpose of the Liquidating Trust.

(b)    <u>Appointment of Liquidating Trustee</u>.  Harold Kessler is appointed as the Liquidating Trustee.  The Liquidating Trustee shall have such powers, duties, and responsibilities as is provided for in the Plan and the Liquidating Trust Agreement and shall be compensated in accordance with the Plan and the Liquidating Trust Agreement.

(c)    <u>Beneficiaries of the Liquidating Trust</u>.    The Holders of Allowed Deficiency Claims and General Unsecured Claims against the Plan Debtors entitled to Distributions shall be the Beneficiaries of the Liquidating Trust.  Such Beneficiaries shall be bound by the Liquidating Trust Agreement.  The interests of the Beneficiaries in the Liquidating Trust shall be uncertificated and nontransferable except upon death of the interest holder or by operation of law.

(d)    <u>Vesting and Transfer of Liquidating Trust Assets to the Liquidating Trust</u>.  Pursuant to section 1141 of the Bankruptcy Code, as of the Effective Date, all Liquidating Trust Assets shall vest in the Liquidating Trust and all Assets dealt with in the Plan shall be free and clear of all Liens, Claims

and Interests, without any further action of any of the Plan Debtors or any partners, employees, officers, directors, members, partners, shareholders, agents, advisors, or representatives of the Plan Debtors.  Upon completion of the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Plan Debtors will have no further interest in, or with respect to, the Liquidating Trust Assets or the Liquidating Trust.

(e)     No Substantive Consolidation.  The formation and implementation of the Liquidating Trust is not, and shall not be deemed to constitute or cause in effect, a substantive consolidation of the Plan Debtors.  The Liquidating Trustee shall maintain separate accounts for each of the Plan Debtors, and shall not commingle Liquidating Trust Assets of the various Plan Debtors. Except to the extent a Liquidating Trust Asset is allocable to a particular Plan Debtor, all Liquidating Trust Assets and the proceeds therefrom will be allocated to the Estates pursuant to the Shared Services Allocation for the period June 10, 2014 to December 31, 2014.

(f)     Retention of Professionals.  The Liquidating Trustee shall have the right to retain the services of attorneys, accountants, and other professionals (collectively, the "Liquidating Trust Professionals") that are necessary to assist the Liquidating Trustee in the performance of his duties pursuant to the Plan, the Liquidating Trust Agreement and this Confirmation Order. The reasonable fees and expenses of such professionals shall be paid by the Liquidating Trustee from the Liquidating Trust Assets upon submission of monthly statements ("Liquidating Trust Monthly Fee Statements") for services rendered and cost incurred to the Liquidating Trustee and Bond Trustees for review and approval.  The Liquidating Trustee and Bond Trustees will have thirty (30) days from receipt of each Liquidating Trust Monthly Fee Statement to object to the Liquidating Trust Monthly Fee Statement.  In the event that any objection is received by the relevant Liquidating Trust Professional that cannot be promptly resolved by the Liquidating Trust Professional and the objecting party, the dispute will be submitted by the Liquidating Trustee to the Bankruptcy Court for adjudication.  The Bankruptcy Court will retain jurisdiction to adjudicate objections to Liquidating Trust Monthly Fee Statements.  In the event that no objection is raised to a Liquidating Trust Monthly Fee Statement within the thirty (30) day period, the requested amount in the Liquidating Trust Monthly Fee Statement will be promptly paid by the Liquidating Trustee, subject to any requirements under the Plan.

(g)     Liquidating Trust Expenses.  Subject to the provisions of the Liquidating Trust Agreement, all costs, expenses and obligations incurred by the Liquidating Trustee in administering the Plan, the Liquidating Trust, or in any manner connected, incidental or related thereto, in effecting distributions from, as applicable, the Liquidating Trust shall be a charge against the Liquidating Trust Assets remaining from time to time in the

hands of the Liquidating Trustee. Such expenses shall be paid in accordance with the Liquidating Trust Agreement.

(h)    Liquidating Trust's Exclusive Authority to Pursue, Settle or Abandon Causes of Action. From and after the Effective Date, prosecution and settlement of all Causes of Action, including Avoidance Actions, transferred to the Liquidating Trust shall be the sole responsibility of the Liquidating Trust pursuant to the Plan and this Confirmation Order. From and after the Effective Date, the Liquidating Trust shall have the rights, powers, and interests of the Plan Debtors' Estates to pursue, settle or abandon such Causes of Action as the sole representative of the Plan Debtors' Estates pursuant to Bankruptcy Code section 1123(b)(3) and subject to the terms of the Plan, the Confirmation Order, and the Liquidating Trust Agreement. Notwithstanding the foregoing, before abandoning any Cause of Action, the Liquidating Trustee shall provide notice and an opportunity to object to such abandonment to all Beneficiaries. Proceeds recovered from all Causes of Action will be deposited into the Liquidating Trust and will be distributed by the Liquidating Trustee to the Beneficiaries in accordance with the provisions of the Plan and Liquidating Trust Agreement. All Causes of Action, including Avoidance Actions, that are not expressly released or waived under the Plan are reserved and preserved and vest in the Liquidating Trust in accordance with the Plan. No Person may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Plan Debtors or Liquidating Trustee will not pursue any and all available Causes of Action against such Person. The Liquidating Trustee expressly reserves all Causes of Action, except for any Causes of Action against any Person that are expressly released or waived under the Plan, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of confirmation or consummation of the Plan. No claims or Causes of Action against the Released Parties shall be transferred to the Liquidating Trust, the Liquidating Trustee shall not have standing to pursue such claims or Causes of Action, and all such claims and Causes of Action shall be waived, released and discharged pursuant to the Plan.

(i)    Settlement of Causes of Action. Settlement by the Liquidating Trust of any Cause of Action transferred to the Liquidating Trust shall require: (i) approval only of the Liquidating Trustee if the amount claimed by the Liquidating Trust against a defendant is less than one million dollars ($1,000,000); and (ii) approval of the Liquidating Trustee and the Bankruptcy Court, upon notice and a hearing, if the amount claimed by the

EAST\90690279.8

Liquidating Trust against a defendant is unliquidated or equals to or exceeds one million dollars ($1,000,000).

(j)     Federal Income Tax Treatment of the Liquidating Trust.  For federal income tax purposes, the Liquidating Trust's Beneficiaries shall be treated as if they had received a distribution from the Estates of an undivided interest in each of the Liquidating Trust Assets (to the extent of the value of their respective share in the applicable assets) and then contributed such interests to the Liquidating Trust, and the Liquidating Trust's Beneficiaries will be treated as the grantors and owners thereof.

(k)     Limitation of Liability.  No recourse will ever be had, directly or indirectly, against the Liquidating Trustee, his employees, professionals, representatives, agents, successors or assigns, by legal or equitable proceedings or by virtue of any statute or otherwise, or any deed of trust, mortgage, pledge or note, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Liquidating Trust under the Plan or by reason of the creation of any indebtedness by the Liquidating Trust or the Liquidating Trustee under the Plan.  All such liabilities under the Plan will be enforceable only against, and will be satisfied only out of, the Liquidating Trust Assets.  The Liquidating Trust and the Liquidating Trustee and their respective officers, directors, employees, professionals, representatives, agents, successors or assigns will not be liable for any act they may do, or omit to do hereunder in good faith and in the exercise of their sound judgment; *provided, however*, that this section will not apply to any gross negligence or willful misconduct by the Liquidating Trust and the Liquidating Trustee or their respective officers, directors, employees, professionals, representatives, agents, successors or assigns.

(l)     Term of Liquidating Trust.  The Liquidating Trustee shall be discharged and the Liquidating Trust shall be terminated, at such time as (i) all Disputed Claims have been resolved, (ii) all of the Liquidating Trust Assets have been liquidated, (iii) all duties and obligations of the Liquidating Trustee under the Liquidating Trust Agreement have been fulfilled, (iv) all Distributions required to be made by the Liquidating Trust under the Plan and the Liquidating Trust Agreement have been made, and (v) the Plan Debtors' Chapter 11 Cases have been closed; *provided, however*, that in no event shall the Liquidating Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the fifth anniversary (or the end of any extension period approved by the Bankruptcy Court), determines that a fixed period extension not to exceed one (1) year is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.

16.    <u>General Authorizations</u>.    The Plan Debtors and the Liquidating Trustee are authorized to execute, deliver, file, or record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other agreements and/or documents, and take such acts and actions as may be reasonably necessary or appropriate to effectuate, implement, consummate, and/or further evidence the terms and conditions of the Plan and any transactions described in or contemplated by the Plan.    The Plan Debtors or Liquidating Trustee, as applicable, may, and all Holders of Allowed Claims receiving Distributions pursuant to the Plan, at the request or direction of the Plan Debtors or Liquidating Trustee, as applicable, shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.    Prior to, on, or after the Effective Date (as appropriate), all matters expressly provided for under the Plan that would otherwise require approval of the officers, directors, partners, or managers, direct or indirect, of the Plan Debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as applicable) pursuant to the applicable law of the State of Texas and any other relevant jurisdiction, without any further vote, consent, approval, authorization, or other action by such officers, directors, partners, or managers of the Plan Debtors or notice to, order of, or hearing before, the Bankruptcy Court.

17.    <u>Assumption and Rejection of Executory Contracts and Unexpired Leases</u>.    Except as otherwise provided in the Plan, or in any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, including, but not limited to, the Obligated Group APA, Tyler APA, Caprock APA, Plains APA and any other asset purchase agreement entered into by the Plan Debtors in connection with the Sales, each of the Executory Contracts and Unexpired Leases of the Plan Debtors shall be deemed rejected as of the Effective

41

Date, unless such Executory Contract or Unexpired Lease: (1) was assumed or rejected previously by the applicable Plan Debtor; (2) expired or terminated pursuant to its own terms before the Effective Date; (3) is the subject of a motion to assume or reject filed on or before the Effective Date; or (4) is identified as an Executory Contract or Unexpired Lease to be assumed in connection with the Sales.

18.     <u>Rejection Damages</u>.     Except as otherwise provided in orders entered by the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Bankruptcy Court and served on counsel to the Plan Debtors and the Liquidating Trustee on or before the date that is thirty (30) days after the date of entry of an order of the Bankruptcy Court (including this Confirmation Order) approving such rejection; *provided, that* any such Claims arising from the rejection of an Unexpired Lease shall be subject to the cap on rejection damages imposed by Bankruptcy Code section 502(b)(6).     Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion and shall not be enforceable against the Plan Debtors or the Liquidating Trustee, the Plan Debtors' Estates or their property without the need for any objection by the Plan Debtors or the Liquidating Trustee or further notice to, or action, order or approval of the Bankruptcy Court.     All Allowed Claims arising from the rejection of the Plan Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims against the applicable Plan Debtor and shall be treated in accordance with the Plan.

19.     <u>Claims Objections</u>.     The Plan Debtors (before the Effective Date) or the Liquidating Trustee (on or after the Effective Date), as applicable, shall have the exclusive

authority to file, settle, compromise, withdraw or litigate to judgment any objections to General Unsecured Claims as permitted under the Plan. Any objections to claims shall be filed and served on or before the later of (i) one hundred eighty (180) days after the Effective Date or (ii) such date as may be fixed by the Bankruptcy Court. From and after the Effective Date, the Liquidating Trustee may settle or compromise any Disputed Claim without approval of the Bankruptcy Court. The Plan Debtors and the Liquidating Trustee reserve all rights to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law. Notwithstanding the foregoing, each of Tyler, the Tyler Bond Trustee, and the Liquidating Trustee shall have the authority to object to the allowance of any Class 2 - Secured Tax Claims against Tyler and challenge the validity, nature, extent or perfection of any liens related thereto (including, without limitation, the Claim asserted by Smith County).

20. <u>Distributions</u>. The provisions of the Plan governing distributions and procedures for resolving and treating Disputed Claims under the Plan are approved and found to be fair and reasonable.

21. <u>Consents and Approvals</u>. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or governmental authority with respect to the implementation or consummation of the Plan and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement, any documents, instruments or agreement that may be necessary or appropriate for the implementation or consummation of the Plan, and any other acts referred to in, or contemplated by the Plan and the Disclosure Statement.

22. <u>Immediate Binding Effect</u>. Notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or any other Bankruptcy Rule, but subject to Section 10.2 of the Plan, on the Effective

Date, and effective as of the Effective Date, the Plan and the Liquidating Trust Agreement shall be immediately effective and enforceable and deemed binding upon the Plan Debtors, the Liquidating Trustee, the Liquating Trust, the Bond Trustees, the Secured Lenders, any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Persons that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions described in the Plan, each Person acquiring property under the Plan, any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Plan Debtors, any other party in interest in the Chapter 11 Cases, and the respective heirs, executors, administrators, successors, or assigns, if any, of any of the foregoing.

23.    Releases by the Plan Debtors.    On and after the Effective Date, the Released Parties are deemed released and discharged by the Plan Debtors and their Estates from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Plan Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Plan Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Plan Debtors, the Plan Debtors' Chapter 11 Cases, the Sales or the transactions or events giving rise to any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Plan Debtor and any Released Party, the restructuring of Claims and Interests before or during the Plan Debtors' Chapter 11 Cases, the negotiation, formulation or preparation of the Plan, the Disclosure Statement, any Plan Supplement or

EAST\90690279.8

related agreements, instruments or other documents (collectively, the "Plan Debtor Released Claims"), other than Plan Debtor Released Claims against a Released Party arising out of the gross negligence, willful misconduct, intentional fraud, or criminal liability of any such person or entity.

24.      Releases by Holders of Claims.   On the Effective Date, except as otherwise provided herein and except for the right to enforce the Plan, all persons who (i) voted to accept the Plan or who are presumed or deemed to have voted to accept the Plan under section 1126(f) of the Bankruptcy Code, (ii) are entitled to vote to accept or reject the Plan and who vote to reject the plan or abstain from voting, and (iii) do not mark their Ballots as opting out of the releases granted under Section 11.5 of the Plan, shall, to the fullest extent permitted by applicable law, be deemed to forever release, waive and discharge the Released Parties of and from all Liens, Claims, Causes of Action, liabilities, encumbrances, security interests, interests or charges of any nature or description whatsoever relating to the Plan Debtors, the Chapter 11 Cases or affecting property of the Plan Debtors' Estates, whether known or unknown, suspected or unsuspected, scheduled or unscheduled, contingent or not contingent, unliquidated or fixed, admitted or disputed, matured or unmatured, senior or subordinated, whether assertable directly or derivatively by, through, or related to any of the Released Parties and their successors and assigns whether at law, in equity or otherwise, based upon any condition, event, act, omission occurrence, transaction or other activity, inactivity, instrument or other agreement of any kind or nature occurring, arising or existing prior to the Effective Date in any way relating to or arising out of, in whole or in part, the Plan Debtors, the Chapter 11 Cases, the pursuit of confirmation of the Plan, the negotiation and consummation of the Sales, the consummation of the Plan or the administration of the Plan, including without limitation, the negotiation and

solicitation of the Plan, all regardless of whether (a) a proof of claim or equity interest has been filed or is deemed to have been filed, (b) such claim or equity interest is allowed or (c) the Holder of such claim or equity interest has voted to accept or reject the plan, except for willful misconduct or gross negligence.

25.    Exculpation.  None of the Exculpated Parties shall have or incur any liability to any Holder of a Claim or Interest, or other party in interest, or any of their respective members, officers, directors, employees, advisors, professionals, attorneys or agents or any of their successors and assigns, with respect to any Exculpated Claim, including, without limitation, any act or omission in connection with, related to, or arising out of, in whole or in part, the Plan Debtors' Chapter 11 Cases, except for their willful misconduct or gross negligence as determined by a Final Order of a court of competent jurisdiction, and, in all respects, the Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

26.    Injunction.  From and after the Effective Date, all persons who have held, hold or may hold Claims against or Interests in the Plan Debtors are permanently enjoined from commencing or continuing in any manner, any cause of action released or to be released pursuant to the Plan or this Confirmation Order.

From and after the Effective Date, to the extent of the releases and exculpation granted in the Plan, the Releasing Parties shall be permanently enjoined from commencing or continuing in any manner against the Released Parties and the Exculpated Parties and their assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any claim, demand, liability, obligation, debt, right, cause of action, interest or remedy released or to be released pursuant to the Plan.

Except as otherwise expressly provided in the Plan, the Plan Supplement or related documents, or for obligations issued pursuant to the Plan, all persons who have held, hold or may hold Claims or Interests that have been released, discharged, or are subject to exculpation, are permanently enjoined, from and after the Effective Date, from taking any of the following actions: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against such persons on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting or enforcing any encumbrance of any kind against such persons or the property or estates of such persons on account of or in connection with or with respect to any such Claims or Interests; and (d) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, settled or discharged pursuant to the Plan.

The rights afforded in the Plan and the treatment of all Claims or Interests therein shall be in exchange for and in complete satisfaction of all Claims or Interests of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, against the Plan Debtors or any of their assets, property or Estates. On the Effective Date, all such Claims against the Plan Debtors shall be fully released and discharged, and the Interests shall be cancelled (except as otherwise expressly provided in the Plan).

27. <u>Injunction Against Interference with the Plan</u>. Upon entry of this Confirmation Order, all Holders of Claims and Interests, the Plan Debtors, and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the Plan Debtors', the Liquidating Trust's,

the Liquidating Trustee's, and their respective affiliates', employees', advisors', officers' and directors', and agents' implementation or consummation of the Plan.

28. <u>Claims of State of Texas, Any Agency Thereof or the AG</u>. Notwithstanding any provision of this Confirmation Order or any Plan provision to the contrary, nothing in this Confirmation Order or Plan is intended to release or shall release, discharge, nullify, preclude or enjoin the future prosecution of any claim, liability, or cause of action by the State of Texas, any agency thereof, or the Texas Attorney General on behalf of the public interest in charity, for any matter known or unknown, previously asserted or unasserted, by way of example but not limitation a future suit being brought by the Texas Attorney General on behalf of the public interest in charity seeking to recover from the Debtor entities themselves any claim covered by insurance and/or any claim against the Debtors' Current Officers and/or Directors, and/or the Debtors' Former Officers and/or Directors, and/or any claims against ANY non-Debtor third parties. Such causes of action may include but are not limited to, claims or causes of action arising prepetition for breach of fiduciary duty, defalcation, negligence, gross negligence, waste, mismanagement, misallocation of charitable funds, fraud or statutory violations of the laws of the state applicable to corporations and their directors and officers, including, but not limited to, the Texas Trust Code, the Texas Uniform Prudent Management of Institutional Funds Act, the Texas Deceptive Trade Practices-Consumer Protection Act, and the Texas Business Organizations Code. Prior to filing suit against any of the Debtors' Current Officers and/or Directors or the Debtors' Former Officers and/or Directors, the Office of the Texas Attorney General agrees that, in the exercise of good faith and reasonable judgment on behalf of the public interest in charity, it will purposefully consider the advisability of providing the

EAST\90690279.8

defendant a copy of the suit and a reasonable opportunity to discuss settlement in advance of suit being filed.

29.     <u>Defenses Available</u>.  No provision of this Confirmation Order or the Plan is intended to limit any defenses available to any of the Debtors' officers or directors, including, but not limited to, the defenses set forth in Section 84.004 of the Texas Civil Practice and Remedies Code.

30.     <u>Funds Held by SMF</u>.  Notwithstanding any provision of this Confirmation Order or any Plan provision to the contrary, no temporarily or permanently restricted charitable funds shall be distributed or otherwise administered under the Plan.  No funds held by SMF shall be distributed under the Plan, including, but not limited to, the funds held by the Texas Methodist Foundation referenced in Section II.B.2.e of the Disclosure Statement.  All such funds including, but not limited to, those funds held by Texas Methodist Foundation shall be held subject to distribution pursuant to a further order of a court of competent jurisdiction.  Nothing in this Confirmation Order or the Plan shall serve to prejudice the rights of any party, including, but not limited to, the rights of any party from asserting an interest in or claim against such funds including some or all of the funds held by SMF, inclusive of those the funds held by the Texas Methodist Foundation referenced in Section II.B.2.e of the Disclosure Statement, and all such rights are expressly preserved.  As of February 28, 2015, the balance of funds held by the Texas Methodist Foundation for SMF was $1,749,711.60.

31.     <u>Release of Liens</u>.  Except as otherwise provided in the Plan and this Confirmation Order, or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the

Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released and discharged. Except as otherwise provided in the Plan and this Confirmation Order, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Plan Debtors' Estates shall be fully released and discharged on the Effective Date without any further action of any party, including, but not limited to, further order of the Bankruptcy Court or filing updated schedules or statements typically filed pursuant to the Uniform Commercial Code. The liens of the Secured Lenders on their respective Encumbered Excluded Assets shall not be released or discharged until such assets are distributed to the applicable Secured Lender in accordance with the Plan.

32. <u>Corporate Action</u>. Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects (whether to occur before, on or after the Effective Date). All matters provided for in the Plan involving the corporate structure of the Plan Debtors, and any corporate action required by the Plan Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the directors or officers of the Plan Debtors.

33. <u>Cancellation of Documents</u>. On the Effective Date, except to the extent otherwise provided in the Plan or herein, any and all notes, instruments, debentures, certificates and other documents evidencing Claims and Interests in the Plan Debtors, including, without limitation, the Financing Documents, shall be deemed inoperative and unenforceable against the Plan Debtors and the Plan Debtors shall have no continuing obligations thereunder; *provided, however*, that (a) the Bond Financing Documents shall continue in effect for purposes of allowing Holders of Obligated Group Bond Claims and Tyler Bond Claims to receive

Distributions under the Plan and (b) the Bond Financing Documents shall remain operative and enforceable with respect to any Person, other than the Plan Debtors, which has rights and/or obligations thereunder.  Without limiting the preceding sentence, as of the Effective Date, the Bonds shall be cancelled without further action by any party, and the Obligated Group Bonds, the Tyler Bonds and any other documents related to the Obligated Group Bonds and Tyler Bonds shall be deemed to continue in effect solely to the extent they relate to and are necessary to (i) allow applicable Distributions pursuant to the Plan and applicable Bond Financing Documents, (ii) permit the applicable Bond Trustee to be compensated for fees and reimbursed for expenses, including expenses of its professionals, assert its charging lien and enforce its indemnity and other rights and protections with respect to and pursuant to the Bond Financing Documents and any other documents related to the Obligated Group Bonds and the Tyler Bonds; (iii) permit the applicable Bond Trustees to set one or more record dates and distribution dates with respect to the distribution of funds to beneficial holders of the Obligated Group Bonds and the Tyler Bonds; (iv) permit the Bond Trustees to appear in the Chapter 11 Cases with respect to matters relevant to the Obligated Group Bonds and Tyler Bonds, (v) otherwise continue to govern relationships of the Bond Trustees and holders of the Obligated Group Bonds and Tyler Bonds; and (vi) permit the Bond Trustees to perform any functions that are necessary in connection with the foregoing clauses (i) through (v).

34.  <u>Dissolution of the Plan Debtors</u>.  On the Effective Date and upon the Plan Debtors causing the Liquidating Trust Assets to be transferred to the Liquidating Trust in accordance with section 6.8 of the Plan, the Plan Debtors shall have no further duties or responsibilities in connection with implementation of the Plan.  Upon entry of a final decree closing the Plan Debtors' Chapter 11 Cases, the Plan Debtors shall be deemed dissolved for all purposes in

51

accordance with applicable state law without the need to take any further action or file any plan of dissolution, notice, or application with the Secretary of State of the State of Texas.

35. <u>Preservation of Causes of Action of the Plan Debtors</u>. In accordance with section 1123(b) of the Bankruptcy Code, and except where such Causes of Action have been expressly released (including, for the avoidance of doubt, pursuant to the releases by the Plan Debtors and exculpation provisions provided in the Plan), the Plan Debtors and Liquidating Trustee shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, including, but not limited to, any claims against former officers and directors, advisors or third parties (exclusive of the Obligated Group Bond Trustee and its former and current employees, agents, representatives, advisors, consultants and attorneys) involved in the 2013 Restructuring and the use of Garrison Restricted Cash as well as claims against LCS, whether arising before or after the Petition Date, and the Liquidating Trustee's rights to commence, prosecute or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Plan Debtors have agreed to waive preference claims under section 547 of the Bankruptcy Code against third party, non-insider vendors, except for certain vendors whose identities were disclosed in the Plan Supplement. The Plan Debtors and Liquidating Trustee may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Creditors and Beneficiaries. No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Plan Debtors or Liquidating Trustee, as applicable, will not pursue any and all available Causes of Action against them. Except with respect to Causes of Action as to which the Plan Debtors and Liquidating Trustee have released any Person or Person on or before the Effective Date, the Plan Debtors and Liquidating Trustee, as applicable, expressly reserve all rights to

EAST\90690279.8

prosecute any and all Causes of Action against any Person, except as otherwise expressly provided in the Plan.

36.     Conditions to Effective Date.  The Plan shall not become effective unless and until the conditions set forth in Section 10.2 of the Plan have been satisfied or waived pursuant to Section 10.3 of the Plan.  In the event that one or more of the conditions specified in Section 10.2 of the Plan have not been satisfied or waived in accordance with Section 10.3 of the Plan, (i) this Confirmation Order shall be vacated, (ii) no Distributions under the Plan shall be made, (iii) the Plan Debtors and all Holder of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (iv) all of the Plan Debtors' obligations with respect to Claims and Interests shall remain unchanged and nothing contained in the Plan or in this Confirmation Order shall constitute or deemed a waiver or release of any Claims or Interests in or against the Plan Debtors or any other Person or to prejudice in any manner the rights of the Plan Debtors or any person in any further proceedings involving the Plan Debtors or otherwise.

37.     Retention of Jurisdiction.  Notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, pursuant to Section 13 of the Plan and sections 105 and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and have exclusive jurisdiction over any matters arising under the Bankruptcy Code, arising in or related to the Chapter 11 Cases or the Plan, or that relates to the matters set forth in Section 13 of the Plan.

38.     Payment of Statutory Fees.  All fees then due and payable pursuant to 28 U.S.C. § 1930 shall be paid on or before the Effective Date by the Plan Debtors.  All such fees that become due and payable thereafter shall be paid by the Liquidating Trust.  The Plan Debtors or Liquidating Trust, as applicable, shall pay quarterly fees to the United States Trustee until the

EAST\90690279.8

Chapter 11 Cases are closed or converted and/or upon the entry of a final decree. The Liquidating Trust shall file post-confirmation quarterly reports or any pre-confirmation monthly operating reports not filed as of the Confirmation Hearing in conformance with the U.S. Trustee Guidelines.

39. <u>Dissolution of the Creditors' Committee</u>. On the Effective Date, the Creditors' Committee shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Debtors' Chapter 11 Cases, except for the purposes of (i) any appeal or request for reconsideration, stay pending appeal, other disputes, or litigation regarding the Plan or this Confirmation Order, and (ii) prosecuting and/or objecting to applications described in Section 2 of the Plan.

40. <u>Documents and Instruments</u>. Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan and this Confirmation Order.

41. <u>Exemption from Certain Taxes</u>. Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property in contemplation of, in connection with, or pursuant to the Plan, including the transfer of the Plan Debtors' Facilities in connection with the Sales, shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and this Confirmation Order directs the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to (1) the creation of any mortgage, deed of trust, lien or other

security interest; (2) the making or assignment of any lease or sublease; (3) any transaction authorized by of the Plan; or (4) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including: (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation or dissolution; (c) deeds; or (d) assignments executed in connection with any transaction occurring under the Plan.

42.     <u>The Automatic Stay</u>.  The stay in effect in these Chapter 11 Cases pursuant to sections 105 or 362(a) of the Bankruptcy Code shall continue to be in effect until the Effective Date, and at that time shall be dissolved and of no further force of effect, subject to the injunctions set forth in the Plan, this Confirmation Order, and/or sections 524 and 1141 of the Bankruptcy Code; *provided, however*, that nothing herein shall bar the filing of financing documents (including Uniform Commercial Code financing statements, security agreements, leases, mortgages, trust agreements, and bills of sale) or the taking of such actions as are necessary to effectuate the transactions specifically contemplated by the Plan or by this Confirmation Order prior to the Effective Date.

43.     <u>Conflicts Between Confirmation Order and Plan</u>.   The provisions of this Confirmation Order and the Plan shall be construed in a manner consistent with each other so as to effect the purpose of each; *provided, however*, that, if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

EAST\90690279.8

44. <u>Provisions of Plan and Confirmation Order Nonseverable and Mutually Dependent</u>. The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

45. <u>Reversal/Stay/Modification/Vacatur of Confirmation Order</u>. If any or all of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Bankruptcy Court or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Plan Debtors or the Liquidating Trustee, as applicable, pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

46. <u>Governing Law</u>. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflicts of laws, shall govern the rights, obligations, construction, and implementation of the Plan and the transactions consummated or to be consummated in connection therewith.

47. <u>Applicable Non-Bankruptcy Law</u>. Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan and related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

48.    <u>Effectiveness of All Actions</u>.  All actions authorized to be taken pursuant to the Plan shall be effective on, prior to, or after, the Effective Date pursuant to this Confirmation Order, without further application to, or order of, the Bankruptcy Court, or further action by the respective officers or directors of the Plan Debtors and with the effect that such actions has been taken by unanimous action of such officers and directors.

49.    <u>Notice of Confirmation Order and Occurrence of Effective Date</u>.  In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Plan Debtors shall serve notice of the entry of this Confirmation Order and the occurrence of the Effective Date, substantially in the form annexed hereto as <u>Exhibit B</u> (the "<u>Notice of Confirmation and Effective Date</u>"), to the United States Trustee, all parties that hold a Claim or Interest in these Chapter 11 Cases, and any other party requesting notice under Bankruptcy Rule 2002.  The Notice of Confirmation and Effective Date shall also be posted on the Plan Debtors' case information website, available at http://cases.gcginc.com/smr, on the Electronic Municipal Market Access database, available at http://emma.msrb.org, as posted under the respective bond issues, and at each of the Facilities.  Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of entry of this Confirmation Order and the occurrence of the Effective Date.

50.    <u>Substantial Consummation</u>.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

51.    <u>No Waiver</u>.  The failure to specifically include any particular provision of the Plan in this Confirmation Order will not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of this Bankruptcy Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

52. <u>Waiver of Stay</u>. The stay of this Confirmation Order provided by any Bankruptcy Rule (including, without limitation, Bankruptcy Rules 3020(e), 6004(h), and 6006(d)) is hereby waived. This Confirmation Order shall be effective and enforceable immediately upon its entry by the Bankruptcy Court.

### ###END OF ORDER###

Order submitted by:

DLA PIPER LLP (US)

By: */s/ Vincent P. Slusher*
Vincent P. Slusher, State Bar No. 00785480
vincent.slusher@dlapiper.com
Andrew Zollinger, State Bar No. 24063944
andrew.zollinger@dlapiper.com
DLA Piper LLP (US)
1717 Main Street, Suite 4600
Dallas, Texas 75201-4629
Telephone: (214) 743-4500
Facsimile: (214) 743-4545

Thomas R. Califano (admitted *pro hac vice*)
thomas.califano@dlapiper.com
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone: (212) 335-4500
Facsimile: (212) 335-4501

Attorneys for the Debtors and Debtors in Possession

## Exhibit A

## THE PLAN

**Exhibit B**

**NOTICE OF CONFIRMATION AND EFFECTIVE DATE**

Vincent P. Slusher, State Bar No. 00785480
vincent.slusher@dlapiper.com
Andrew Zollinger, State Bar No. 24063944
andrew.zollinger@dlapiper.com
DLA Piper LLP (US)
1717 Main Street, Suite 4600
Dallas, Texas 75201-4629
Telephone: (214) 743-4500
Facsimile: (214) 743-4545

Thomas R. Califano (admitted *pro hac vice*)
thomas.califano@dlapiper.com
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York  10020-1104
Tel:  (212) 335-4500
Fax:  (212) 335-4501

ATTORNEYS FOR THE DEBTORS
AND DEBTORS IN POSSESSION

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **CASE NO. 14-32821-11** |
| | § | |
| **SEARS METHODIST RETIREMENT** | § | **CHAPTER 11** |
| **SYSTEM, INC.,** *et al.*[1] | § | |
| | § | **Jointly Administered** |
| | § | |
| **Debtors.** | § | |

**NOTICE OF (I) ENTRY OF ORDER CONFIRMING THE PLAN DEBTORS'
SECOND AMENDED JOINT PLAN OF REORGANIZATION PURSUANT TO
CHAPTER 11 OF THE BANKRUPTCY CODE AND (II) EFFECTIVE DATE**

**PLEASE TAKE NOTICE** that an order (the "Confirmation Order") of the Honorable Stacey G.C. Jernigan, United States Bankruptcy Judge for the Northern District of Texas, approving the *Plan Debtors' Second Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, dated February 26, 2015 [Dkt. No. 770] (including all exhibits thereto and as the same may be further amended, modified or supplemented from time to

---

[1] The debtors in these chapter 11 cases, along with the last four (4) digits of their taxpayer identification numbers, are: Sears Methodist Retirement System, Inc. (6330), Canyons Senior Living, L.P. (8545), Odessa Methodist Housing, Inc. (9569), Sears Brazos Retirement Corporation (8053), Sears Caprock Retirement Corporation (9581), Sears Methodist Centers, Inc. (4917), Sears Methodist Foundation (2545), Sears Panhandle Retirement Corporation (3233), Sears Permian Retirement Corporation (7608), Sears Plains Retirement Corporation (8233), Sears Tyler Methodist Retirement Corporation (0571) and Senior Dimensions, Inc. (4016).  The mailing address of each of the debtors, solely for purposes of notices and communications, is 2100 Ross Avenue, 21st Floor, c/o Paul Rundell, Dallas, Texas 75201.

time, the "Plan"), was entered on March [•], 2015 [Dkt. No. •]. Unless otherwise defined in this notice, capitalized terms used herein shall have the meanings ascribed to them in the Plan and Confirmation Order.

**PLEASE TAKE FURTHER NOTICE** that copies of the Plan, Confirmation Order, and other related documents may be obtained by (i) accessing the website maintained by the Plan Debtors' Voting Agent, GCG, Inc., available at http://cases.gcginc.com/smr, (ii) accessing the Electronic Municipal Market Access database, available at http://emma.msrb.org, as posted under the respective bond issues, or (iii) accessing the Bankruptcy Court's website at http://www.txnb.uscourts.gov. Note that a PACER password is needed to access documents on the Bankruptcy Court's website. Any party in interest wishing to obtain hard copies of the Plan, Confirmation Order, and other related documents may request such copies by (i) contacting the Plan Debtors' Voting Agent, GCG, Inc., at (844) 322-8219, (ii) contacting Evelyn Rodriguez at DLA Piper LLP (US) at (212) 776-3764, or (iii) contacting the Office of the Clerk of the Court, Earle Cabell Federal Building, 1100 Commerce St., Rm. 125, Dallas, TX 75242.

**PLEASE TAKE FURTHER NOTICE** that the Effective Date of the Plan is expected to occur on March [•], 2015.

**PLEASE TAKE FURTHER NOTICE** that the Plan and its provisions are binding on the Plan Debtors, the Liquidating Trustee, the Liquating Trust, the Bond Trustees, the Secured Lenders, and any holder of a Claim against or Interest in the Plan Debtors, as provided in the Plan.

**PLEASE TAKE FURTHER NOTICE** that, as set forth in the Confirmation Order, the deadline to file a request for payment of an Administrative Expense Claim, Section 503(b)(9) Claim, or PACA Claim, or a Proof of Claim related to the foregoing, must have been or be filed with the Bankruptcy Court on or before thirty (30) days after the Effective Date (unless such request for payment or Proof of Claim has already been filed with the Bankruptcy Court).

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise provided in orders entered by the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Bankruptcy Court and served on counsel to the Plan Debtors and the Liquidating Trustee on or before the date that is thirty (30) days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection.

Dated: March [•], 2015
      Dallas, Texas

                             **DLA PIPER LLP (US)**

                             By: */s/ Vincent P. Slusher*
                             Vincent P. Slusher, State Bar No. 00785480
                             vincent.slusher@dlapiper.com
                             Andrew Zollinger, State Bar No. 24063944
                             andrew.zollinger@dlapiper.com
                             DLA Piper LLP (US)

1717 Main Street, Suite 4600
Dallas, Texas 75201-4629
Telephone: (214) 743-4500
Facsimile: (214) 743-4545

Thomas R. Califano (admitted *pro hac vice*)
thomas.califano@dlapiper.com
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York  10020-1104
Tel:  (212) 335-4500
Fax:  (212) 335-4501

Attorneys for the Debtors
and Debtors in Possession

3

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | CASE NO. 14-32821-11 |
| | § | |
| **SEARS METHODIST RETIREMENT** | § | **CHAPTER 11** |
| **SYSTEM, INC.,** *et al.*[1] | § | |
| | § | **Jointly Administered** |
| Debtors. | § | |

## PLAN DEBTORS' SECOND AMENDED JOINT PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

Vincent P. Slusher, State Bar No. 00785480
vincent.slusher@dlapiper.com
Andrew Zollinger, State Bar No. 24063944
andrew.zollinger@dlapiper.com
DLA Piper LLP (US)
1717 Main Street, Suite 4600
Dallas, Texas 75201-4629
Telephone: (214) 743-4500
Facsimile: (214) 743-4545

Thomas R. Califano (admitted *pro hac vice*)
thomas.califano@dlapiper.com
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Tel:  (212) 335-4500
Fax:  (212) 335-4501

*Attorneys for the Debtors and*
*Debtors in Possession*

Dated: February 26, 2015

---

[1] The debtors in these chapter 11 cases, along with the last four (4) digits of their taxpayer identification numbers, are: Sears Methodist Retirement System, Inc. (6330), Canyons Senior Living, L.P. (8545), Odessa Methodist Housing, Inc. (9569), Sears Brazos Retirement Corporation (8053), Sears Caprock Retirement Corporation (9581), Sears Methodist Centers, Inc. (4917), Sears Methodist Foundation (2545), Sears Panhandle Retirement Corporation (3233), Sears Permian Retirement Corporation (7608), Sears Plains Retirement Corporation (8233), Sears Tyler Methodist Retirement Corporation (0571) and Senior Dimensions, Inc. (4016).  The mailing address of each of the debtors, solely for purposes of notices and communications, is 2100 Ross Avenue, 21st Floor, c/o Paul Rundell, Dallas, Texas 75201.

# TABLE OF CONTENTS

**Page**

SECTION 1.  DEFINITIONS AND INTERPRETATION .................................................... 1

    1.1  Definitions.............................................................................................. 1

    1.2  Interpretation, Application of Definitions and Rules of Construction................. 19

    1.3  Computation of Time ........................................................................... 19

SECTION 2.  ADMINISTRATIVE AND PRIORITY CLAIMS ....................................... 19

    2.1  Administrative Expense Claims........................................................... 19

    2.2  Accrued Professional Compensation Claims....................................... 21

    2.3  Priority Tax Claims.............................................................................. 23

    2.4  DIP Claims.......................................................................................... 23

SECTION 3.  CLASSIFICATION OF CLAIMS AND INTERESTS ............................... 23

    3.1  Classified Claims Against and Interests in the Plan Debtors.............................. 23

    3.2  SMRS .................................................................................................. 24

    3.3  Panhandle ............................................................................................ 25

    3.4  Permian ............................................................................................... 25

    3.5  SMC .................................................................................................... 26

    3.6  SMF..................................................................................................... 26

    3.7  Tyler .................................................................................................... 27

    3.8  Caprock ............................................................................................... 28

    3.9  Plains ................................................................................................... 28

    3.10 SDI ...................................................................................................... 29

SECTION 4.  TREATMENT OF CLAIMS AND INTERESTS ....................................... 29

    4.1  SMRS .................................................................................................. 29

    4.2  Panhandle ............................................................................................ 31

    4.3  Permian ............................................................................................... 32

    4.4  SMC. ................................................................................................... 34

    4.5  SMF..................................................................................................... 36

    4.6  Tyler .................................................................................................... 37

    4.7  Caprock ............................................................................................... 39

    4.8  Plains ................................................................................................... 41

    4.9  SDI ...................................................................................................... 42

EAST\86867991.14

**TABLE OF CONTENTS**
(continued)

**Page**

SECTION 5.        ACCEPTANCE OR REJECTION OF THE PLAN ..................................... 43

5.1    Holders of Claims and Interests Entitled to Vote ................................ 43

5.2    Classes Deemed to Reject ..................................................................... 44

5.3    Classes Deemed to Accept .................................................................... 44

5.4    Acceptance by a Class .......................................................................... 44

5.5    Cramdown Under Section 1129(b) of the Bankruptcy Code .............................. 44

5.6    Ballots ................................................................................................. 45

SECTION 6.        MEANS FOR IMPLEMENTATION ............................................. 45

6.1    Obligated Group Sale ........................................................................... 45

6.2    Tyler Sale ............................................................................................ 48

6.3    Caprock Sale ....................................................................................... 50

6.4    Plains Sale ........................................................................................... 52

6.5    Transfer of Undeveloped Properties to Liquidating Trust ................................. 54

6.6    Transition of Management and Operations Agreements for VLB Homes .......... 54

6.7    Sources of Consideration ...................................................................... 55

6.8    Liquidating Trust ................................................................................. 55

SECTION 7.        DISTRIBUTIONS ........................................................................ 60

7.1    Distribution Record Date ..................................................................... 60

7.2    Date of Distributions ........................................................................... 61

7.3    Disbursing Agent ................................................................................. 61

7.4    Rights and Powers of Disbursing Agent ................................................ 61

7.5    Delivery of Distributions in General...................................................... 61

7.6    Payments and Distributions on Disputed Claims................................... 62

7.7    Manner of Payment .............................................................................. 62

7.8    Undeliverable Distributions and Unclaimed Property ........................... 62

7.9    Withholding and Reporting Requirements ............................................ 62

7.10   Surrender Instruments .......................................................................... 62

7.11   Setoffs ................................................................................................. 63

7.12   Insurance Claims.................................................................................. 63

7.13   Applicability of Insurance Policies....................................................... 63

EAST\86867991.14

# TABLE OF CONTENTS
(continued)

**Page**

7.14    No Postpetition Interest ................................................................................. 63

7.15    Distributions Free and Clear .......................................................................... 63

7.16    Fractional Dollars; De Minimis Distributions ................................................ 63

7.17    Single Satisfaction of Claims ........................................................................ 64

SECTION 8.        PROCEDURES FOR DISPUTED CLAIMS ............................................. 64

8.1    Allowance of Claims and Interests ................................................................. 64

8.2    Objections to Claims ...................................................................................... 64

8.3    Estimation of Claims ...................................................................................... 64

8.4    No Distribution Pending Allowance ............................................................... 65

8.5    Distributions after Allowance ........................................................................ 65

8.6    Preservations of Rights to Settle Claims ........................................................ 65

8.7    Disallowed Claims ......................................................................................... 65

SECTION 9.        EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................... 65

9.1    Assumption and Rejection of Executory Contracts and Unexpired Leases ........ 65

9.2    Inclusiveness .................................................................................................. 66

9.3    Rejection Claims ............................................................................................ 66

9.4    Cure of Defaults ............................................................................................. 66

9.5    Full Release and Satisfaction ......................................................................... 66

9.6    Reservation of Rights ..................................................................................... 66

SECTION 10.        CONDITIONS PRECEDENT TO CONFIRMATION AND THE
            EFFECTIVE DATE ................................................................................ 67

10.1    Conditions Precedent to Confirmation .......................................................... 67

10.2    Conditions Precedent to the Effective Date ................................................... 67

10.3    Waiver of Conditions ..................................................................................... 68

10.4    Effect of Failure of Conditions ...................................................................... 68

SECTION 11.        EFFECT OF CONFIRMATION ............................................................. 68

11.1    Immediate Binding Effect .............................................................................. 68

11.2    Compromise and Settlement of Claims, Interests and Controversies ................ 68

11.3    Discharge of Claims and Termination of Interests ......................................... 68

11.4    Releases by the Plan Debtors ......................................................................... 69

EAST\86867991.14

# TABLE OF CONTENTS
(continued)

**Page**

| | | |
|---|---|---|
| 11.5 | Releases by Holders of Claims | 69 |
| 11.6 | Exculpation | 70 |
| 11.7 | Injunction | 70 |
| 11.8 | Term of Injunctions or Stays | 72 |
| 11.9 | Injunction Against Interference with Plan | 72 |
| 11.10 | Release of Liens | 72 |
| 11.11 | Effectuating Documents and Further Transactions | 72 |
| 11.12 | Corporate Action | 73 |
| 11.13 | Cancellation of Documents | 73 |
| 11.14 | Dissolution of the Plan Debtors | 73 |
| 11.15 | Preservation of Causes of Action of the Plan Debtors | 74 |
| SECTION 12. | MODIFICATION, REVOCATION OR WITHDRAWAL OF THIS PLAN | 74 |
| 12.1 | Modification and Amendments | 74 |
| 12.2 | Effect of Confirmation on Modifications | 74 |
| 12.3 | Revocation or Withdrawal of this Plan | 74 |
| SECTION 13. | RETENTION OF JURISDICTION | 75 |
| SECTION 14. | MISCELLANEOUS PROVISIONS | 77 |
| 14.1 | Payment of Statutory Fees | 77 |
| 14.2 | Dissolution of Creditors' Committee | 77 |
| 14.3 | Section 1125(e) Good Faith Compliance | 77 |
| 14.4 | Substantial Consummation | 77 |
| 14.5 | Section 1146 Exemption | 77 |
| 14.6 | Closing of the Chapter 11 Cases | 77 |
| 14.7 | Plan Supplement | 77 |
| 14.8 | Further Assurances | 77 |
| 14.9 | Exhibits Incorporated | 78 |
| 14.10 | Inconsistency | 78 |
| 14.11 | No Admissions | 78 |
| 14.12 | Reservation of Rights | 78 |

EAST\86867991.14

**TABLE OF CONTENTS**
(continued)

**Page**

14.13   Successors and Assigns ........................................................................................ 78

14.14   Entire Agreement ................................................................................................ 78

14.15   Notices ................................................................................................................ 78

14.16   Severability ......................................................................................................... 79

14.17   Governing Law ................................................................................................... 79

14.18   Request for Confirmation Pursuant to Bankruptcy Code Sections 1129(a) and 1129(b) ......................................................................................................... 79

EAST\86867991.14

## INTRODUCTION

On the Petition Date, Sears Methodist Retirement System, Inc. ("***SMRS***"), Sears Brazos Retirement Corporation ("***Brazos***"), Canyons Senior Living, L.P. ("***CSL***"), Odessa Methodist Housing, Inc. ("***OMH***"), Sears Caprock Retirement Corporation ("***Caprock***"), Sears Methodist Centers, Inc. ("***SMC***"), Sears Methodist Foundation ("***SMF***"), Sears Panhandle Retirement Corporation ("***Panhandle***"), Sears Permian Retirement Corporation ("***Permian***"), Sears Plains Retirement Corporation ("***Plains***"), Sears Tyler Methodist Retirement Corporation ("***Tyler***") and Senior Dimensions, Inc. ("***SDI***," and collectively with SMRS, Brazos, CSL, OMH, Caprock, SMC, SMF, Panhandle, Permian, Plains and Tyler, the "***Debtors***") each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

SMRS, Caprock, SMC, SMF, Panhandle, Permian, Plains, Tyler and SDI (collectively, the "***Plan Debtors***") propose this *Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* (as it may be further amended, modified, or supplemented from time to time, together with any and all exhibits and schedules attached hereto or referenced herein, this "***Plan***") for the resolution and satisfaction of all Claims against and Interests in the Plan Debtors. The remaining Debtors, namely Brazos, CSL and OMH, do not join in this Plan as their Chapter 11 Cases will be dismissed outside of this Plan for reasons set forth in the Disclosure Statement.

Subject to certain restrictions and requirements set forth in Bankruptcy Code section 1127 and Bankruptcy Rule 3019, the Plan Debtors reserve the right to alter, amend, modify, revoke, or withdraw this Plan prior to its substantial consummation. Reference is made to the Disclosure Statement for a discussion of the Debtors' history and assets, a summary and analysis of this Plan, and certain related matters, including the distributions to be made under this Plan and the risk factors relating to consummation of this Plan. Capitalized terms used but not defined herein have the meanings ascribed to them in Section 1 of this Plan.

## SECTION 1.   DEFINITIONS AND INTERPRETATION

1.1   ***Definitions***.

The following terms used herein shall have the respective meanings below:

***1998 Bond Indenture*** means that certain Indenture of Trust, dated as of August 1, 1998, between Abilene Health and Chase Bank of Texas, N.A., as predecessor to the Obligated Group Bond Trustee, as amended and supplemented, including, without limitation, in connection with the issuance of the Series 1999 Bonds.

***2013 Bond Indenture*** means that certain Indenture of Trust, dated as of May 1, 2013, between Red River and the Obligated Group Bond Trustee, as amended and supplemented.

***2013 Restructuring*** means the refinancing plan completed on May 9, 2013 in connection with the Obligated Group Bonds.

***Abilene Health*** means Abilene Health Facilities Development Corporation, a nonstock nonprofit health facilities development corporation duly organized and existing under the laws of the State of Texas.

*Accrued Professional Compensation* means, at any given time, all accrued, contingent and/or unpaid fees (including success fees) for legal, financial advisory, investment banking, accounting and other services and obligations for reimbursement of expenses rendered or incurred before the Effective Date under sections 328, 330(a), 331 or 363 of the Bankruptcy Code by any retained Professional in the Chapter 11 Cases, or under section 503 of the Bankruptcy Code, that the Bankruptcy Court has not denied by a Final Order, all to the extent that any such fees and expenses have not been previously paid and all subject to the amounts set forth in the respective budgets attached to the DIP Loan Agreements, the Cash Collateral Orders and all other orders entered by the Bankruptcy Court related to the foregoing.

*Administrative Expense Claim* means any Claim for payment of costs and expenses of administration pursuant to sections 503(b), 507(a)(2) or 507(b) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date and through the Effective Date of preserving the Plan Debtors' Estates and operating the businesses of the Plan Debtors; (b) compensation for Accrued Professional Compensation; (c) all fees and charges assessed against the Estates pursuant to 28 U.S.C. § 1930; and (d) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4) and (5) of the Bankruptcy Code.

*Administrative Expense Claims Bar Date* means the first Business Day that is at least thirty (30) days after the Effective Date or such other date ordered by the Bankruptcy Court.

*Alfredo Gonzalez* means the Alfredo Gonzalez Texas State Veterans Home, located in McAllen, Texas and managed and operated by SDI.

*Allowed* means, with reference to any Claim against the Plan Debtors, a Claim (i) as to which no objection or request for estimation has been filed on or before any deadline therefor set by the Bankruptcy Court or the expiration of such other applicable period fixed by the Bankruptcy Court or this Plan; (ii) as to which any objection has been settled, waived, withdrawn or denied by a Final Order or in accordance with this Plan; or (iii) that is allowed (a) by a Final Order, (b) by an agreement between the Holder of such Claim and the Plan Debtor or Liquidating Trustee or (c) pursuant to the terms of this Plan; *provided, however*, that, notwithstanding anything herein to the contrary, by treating a Claim as "Allowed" under clause (i) above (the expiration of the applicable deadline), neither the Plan Debtors nor the Liquidating Trustee waives their rights to contest the amount and validity of any disputed, contingent and/or unliquidated Claim in the time, manner and venue in which such Claim would have been determined, resolved or adjudicated if the Chapter 11 Cases had not been commenced. An Allowed Claim shall be net of any valid setoff exercised with respect to such Claim pursuant to the provisions of the Bankruptcy Code and applicable law. Moreover, any portion of a Claim that is satisfied, released, or waived during the Chapter 11 Cases is not an Allowed Claim. Unless otherwise specified in this Plan, in section 506(b) of the Bankruptcy Code or by Final Order of the Bankruptcy Court, "Allowed" Claims shall not, for purposes of Distributions under this Plan, include interest on such Claim accruing from and after the Petition Date.

*Ambrosio Guillen* means the Ambrosio Guillen Texas State Veterans Home, located in El Paso, Texas and managed and operated by SDI.

2

*Assets* means all assets of the Plan Debtors of any nature whatsoever, including, without limitation, all property of the Plan Debtors' Estates pursuant to Bankruptcy Code section 541, Cash, Avoidance Actions, Causes of Action, equipment, inventory, tax refunds, claims of right, interests and property, real and personal, tangible and intangible, and proceeds of any of the foregoing.

*Avoidance Actions* means causes of action arising under Bankruptcy Code sections 502, 510, 541, 544, 545, 547, 548, 549, 550, 551 or 553, or under related state or federal statutes and common law, including, without limitation, fraudulent transfer laws, whether or not litigation is commenced to prosecute such causes of action.

*Ballot* means the ballots upon which Holders of Impaired Claims entitled to vote on this Plan have indicated their acceptance or rejection of this Plan in accordance with the instructions regarding voting.

*Bankruptcy Code* means title 11 of the United States Code, as now in effect or hereafter applicable to these Chapter 11 Cases.

*Bankruptcy Court* means the United States Bankruptcy Court for the Northern District of Texas having jurisdiction over the Chapter 11 Cases.

*Bankruptcy Rules* means the Federal Rules of Bankruptcy Procedure, as amended, and the local rules of the Bankruptcy Court, as applicable to these Chapter 11 Cases.

*Beneficiaries* means Holders of Allowed General Unsecured Claims and Deficiency Claims against the Plan Debtors' Estates as beneficiaries of the Liquidating Trust, as defined in the Liquidating Trust Agreement.

*Bond Financing Documents* means the Obligated Group Bond Documents and the Tyler Bond Documents.

*Bond Trustees* means the Obligated Group Bond Trustee and the Tyler Bond Trustee.

*Business Day* means any day of the calendar week, except Saturday, Sunday, a "legal holiday," as defined in Bankruptcy Rule 9006(a), or any day on which commercial banks are authorized or required by law to close in Dallas, Texas.

*Caprock* shall have the meaning set forth in the Introduction.

*Caprock APA* shall have the meaning set forth in section 6.3(a).

*Caprock Assets* shall have the meaning set forth in section 6.3(a).

*Caprock DIP Facility* means the debtor in possession financing facility established pursuant to the Caprock DIP Loan Agreement.

**Caprock DIP Lender** means the lender (or lenders) party to the Caprock DIP Loan Agreement from time to time, each in its (or their) capacity as such.

**Caprock DIP Loan Agreement** means the credit agreement and related security agreements, mortgages and similar documents governing the Caprock DIP Facility by and between Caprock and the Caprock DIP Lender.

**Caprock Encumbered Excluded Assets** shall have the meaning set forth in section 6.3(c).

**Caprock Excluded Assets** shall have the meaning set forth in section 6.3(c).

**Caprock Loan Agreement** means that certain Amended and Restated Reimbursement and Credit Agreement, dated as of May 20, 2013, between Caprock and the Caprock Secured Lender.

**Caprock Purchase Price** shall have the meaning set forth in section 6.3(a).

**Caprock Sale** shall have the meaning set forth in section 6.3(a).

**Caprock Sale Motion** shall have the meaning set forth in section 6.3(a).

**Caprock Secured Lender** means Santander Bank, N.A., in its capacity as successor administrative agent and lender to Sovereign Bank, N.A., under the Caprock Loan Agreement.

**Caprock Secured Loan Claim** means the Claim of the Caprock Secured Lender arising under or related to the Caprock Loan Agreement.

**Caprock Stalking Horse** shall have the meaning set forth in section 6.3(a).

**Caprock Successful Bidder** shall have the meaning set forth in section 6.3(f).

**Cash** means cash and cash equivalents including, without limitation, checks and wire transfers; *provided, that* other than as set forth in the Obligated Group Bond Documents or the Tyler Bond Documents, as applicable, no Distributions to be made in Cash under this Plan shall be comprised of any funds held by the Obligated Group Bond Trustee pursuant to the Obligated Group Bond Documents or the Tyler Bond Trustee pursuant to the Tyler Bond Documents.

**Cash Collateral Order** means any order, whether interim or final, allowing the use by the Plan Debtors during the Chapter 11 Cases of the cash collateral of the Secured Lenders, as applicable.

**Causes of Action** means any claim, cause of action, controversy, demand, agreement, right (including to legal or equitable remedies), action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license,

and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.   Cause of Action also includes:   (a) any right of setoff, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

*Chapter 11 Case* means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code; and (b) when used with reference to all Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court under case number 14-32821-11.

*Claim* has the meaning set forth in section 101(5) of the Bankruptcy Code.

*Class* means a class or category of Claims as classified and described in Section 3 of this Plan pursuant to Bankruptcy Code section 1122.

*Collateral* means any property or interest in property of the Estates subject to a Lien, charge or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or other applicable law.

*Confirmation Date* means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the Bankruptcy Court's docket in each of the Plan Debtors' Chapter 11 Cases.

*Confirmation Hearing* means the hearing on confirmation of this Plan pursuant to Bankruptcy Code section 1129.

*Confirmation Order* means the order entered by the Bankruptcy Court confirming this Plan in accordance with chapter 11 of the Bankruptcy Code.

*Contingent Claim* means any contingent or unliquidated Claim asserted or which may be asserted against any of the Plan Debtors.

*Craig* means the Craig Methodist Retirement Community, a senior living facility located in Amarillo, Texas and owned by Panhandle.

*Creditor* means a Holder of a Claim.

*Creditors' Committee* means the statutory committee of unsecured creditors appointed in the Chapter 11 Cases by the United States Trustee for the Northern District of Texas on June 19, 2014 pursuant to section 1102 of the Bankruptcy Code.

***Cure*** means the payment of Cash by the Plan Debtors, the Successful Bidders, or the Liquidating Trustee, as applicable, as necessary to (i) cure a monetary default by a Plan Debtor in accordance with the terms of an Executory Contract or Unexpired Lease of a Plan Debtor, and (ii) permit that Plan Debtor to assume such Executory Contract or Unexpired Lease under section 365(a) of the Bankruptcy Code.

***CSL*** shall have the meaning set forth in the Introduction.

***Debtors*** means SMRS, Panhandle, Permian, SMC, SMF, Brazos, Tyler, Caprock, Plains, SDI, OMH and CSL, as debtors and debtors in possession, and includes the Estates.

***Debtors' Current Officers and/or Directors*** shall mean all of the Debtors' current officers and directors, including but not limited to those individuals listed on <u>Exhibit A</u> hereto.

***Debtors' Former Officers and/or Directors*** shall mean all of the Debtors' former officers and directors, including but not limited to those individuals listed on <u>Exhibit B</u> hereto.

***Debtors in Possession*** means the Debtors in their capacity as debtors in possession in the Chapter 11 Cases pursuant to Bankruptcy Code sections 1101, 1107(a) and 1108.

***Deficiency Claim*** means, to the extent the value of any property securing a Claim is less than the amount of such Claim, the difference between such value and such Claim.

***DIP Claim*** means any Claim derived from or based upon, as applicable, the Obligated Group DIP Loan Agreement, the SDI DIP Loan Agreement, the Tyler DIP Loan Agreement and the Caprock DIP Loan Agreement.

***DIP Lenders*** means, collectively, the Obligated Group DIP Lender, the SDI DIP Lender, the Tyler DIP Lender and the Caprock DIP Lender.

***DIP Loan Agreements*** means, collectively, the Obligated Group DIP Loan Agreement, the SDI DIP Loan Agreement, the Tyler DIP Loan Agreement and the Caprock DIP Loan Agreement.

***Disallowed Claim*** means any Claim or portion thereof which has been disallowed by a Final Order and includes any Claim which is not an Allowed Claim for any other reason.

***Disclosure Statement*** means the Amended Disclosure Statement for the Plan Debtors' Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code, dated January 15, 2015, as the same may be altered, modified, or amended.

***Disputed Claim*** means a Claim that has neither been Allowed nor disallowed pursuant to a Final Order of the Bankruptcy Court, and (a) if no Proof of Claim has been filed by the applicable deadline: (i) a Claim that has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; or (ii) a Claim that has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but as to which a Plan Debtor, the

Liquidating Trustee, or any other party in interest has interposed an objection or request for estimation which has not been withdrawn or determined by a Final Order; or (b) if a Proof of Claim or other request for payment has been filed by the applicable deadline: (i) a Claim for which no corresponding Claim has been or hereafter is listed on the Schedules or Allowed in this Plan; (ii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but the nature or amount of the Claim or as asserted in the Proof of Claim varies from the nature and amount of such Claim as listed on the Schedules to the extent of such positive variance; (iii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; or (iv) a Claim for which a timely objection or request for estimation is interposed by the Plan Debtors, the Liquidating Trustee, or any other party in interest which has not been withdrawn or determined by a Final Order.

**Distribution** means Cash, property, interests in property or other value distributed to Holders of Allowed Claims, or their designated agents, under this Plan.

**Distribution Record Date** means five (5) Business Days prior to the Confirmation Date.

**Effective Date** means the first Business Day after the Confirmation Date on which the conditions precedent specified in Section 10 of this Plan have been either satisfied or waived.

**Encumbered Excluded Assets** means, collectively, the Obligated Group Encumbered Excluded Assets, the Tyler Encumbered Excluded Assets, the Caprock Encumbered Excluded Assets and the Plains Encumbered Excluded Assets.

**Entrance Deposit Refund Claim** means a Claim or Contingent Claim of a resident or former resident of one of the Facilities relating to or arising out of a Residency Agreement, including, without limitation, a Claim for the refund of an entrance fee deposit paid by the resident pursuant thereto.

**Estates** means the estate created in each Debtor's Chapter 11 Case containing all property and other interests of the Debtor pursuant to Bankruptcy Code section 541.

**Excluded Assets** means, collectively, the Obligated Group Excluded Assets, the Tyler Excluded Assets, the Caprock Excluded Assets and the Plains Excluded Assets.

**Exculpated Claim** means any claim related to any act or omission in connection with, relating to or arising out of (i) any in-court or out-of-court forbearance or restructuring arrangement involving the Plan Debtors, except any claim relating to or arising out of the 2013 Restructuring against any third party other than the Obligated Group Bond Trustee and its current and former employees, agents, representatives, advisors, consultants and attorneys, (ii) the Chapter 11 Cases, (iii) the negotiation or consummation of the Sales, (iv) the negotiation, administration or consummation of any DIP Loan Agreement or cash collateral arrangement in the Chapter 11 Cases, (v) the formulation, preparation, dissemination, negotiation or filing of the Disclosure Statement or this Plan or any contract, instrument, release or other agreement or

document created or entered into in connection with the Disclosure Statement or this Plan, (vi) the filing of the Chapter 11 Cases, (vii) the pursuit of confirmation of this Plan, (viii) the administration and implementation of this Plan, or (ix) the Distribution of property under this Plan and/or any other related agreement; *provided*, *however*, that Exculpated Claims shall not include any act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct to the extent imposed by applicable non-bankruptcy law. No Cause of Action, obligation or liability expressly preserved by the Plan or the Plan Supplement constitutes an Exculpated Claim.

*Exculpated Party* means each of: (i) the Plan Debtors, (ii) the Creditors' Committee; (iii) the Obligated Group Bond Trustee, (iv) the Tyler Bond Trustee, (v) the DIP Lenders, (vi) the Secured Lenders, (vii) the Liquidating Trustee, (viii) the Liquidating Trust, and (ix) the current and former officers, directors, members, managers, employees, attorneys, consultants and advisors, each in their respective capacities as such, of each of the foregoing.

*Executory Contract* means a contract to which one or more of the Plan Debtors is a party that is capable of assumption or rejection under section 365 of the Bankruptcy Code.

*Exchanged Bonds* means the Series 2013A Bonds and $3,725,000 in principal amount of Series 2013D Bonds issued by Red River pursuant to the 2013 Bond Indenture.

*Facilities* means, collectively, Wesley Court, Craig, Parks, Mesa Springs, Meadow Lake, Garrison, Desert Haven Retirement Community, Canyons Retirement Community, and the VLB Homes.

*Final Order* means an order or judgment of the Bankruptcy Court entered by the Clerk of the Bankruptcy Court on the docket in the Chapter 11 Cases, which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument, or rehearing shall have expired; *provided*, *however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024, may be filed relating to such order shall not cause such order to not be a Final Order.

*Financing Documents* means, collectively, the Obligated Group Bond Documents, Tyler Bond Documents, the Caprock Loan Agreement, the Plains Loan Agreement, the TMF Loan Documents, the Obligated Group DIP Loan Agreement, the Tyler DIP Loan Agreement, the Caprock DIP Loan Agreement, the SDI DIP Loan Agreement and all documents and agreements related to the foregoing.

**Garrison** means The Mildred and Shirley L. Garrison Geriatric Education and Care Center, a geriatric learning center and nursing facility located in Lubbock, Texas on the campus of Texas Tech University and owned by Plains.

**Garrison Restricted Cash** shall have the meaning ascribed to such term in the Disclosure Statement.

**General Unsecured Claim** means any Claim asserted against any Plan Debtor which is not included within the other specifically defined Classes hereunder or which is otherwise determined by the Bankruptcy Court to be a General Unsecured Claim.

**Governmental Unit** has the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

**HFDC** means HFDC of Central Texas, Inc., a nonstock nonprofit health facilities development corporation duly organized and existing under the laws of the State of Texas.

**Holder** means the legal or beneficial holder of a Claim or Interest.

**Impaired** means, with respect to a Claim or Interest, that such Class of Claims or Interests is impaired within the meaning of Bankruptcy Code section 1124.

**Insurance Policies** means, collectively, all of the Plan Debtors' insurance policies.

**Interest** means the interest of any Holder in an equity security of any Plan Debtor, within the meaning of Bankruptcy Code section 101(16) represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership or membership interest in any of the Plan Debtors, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest, including a partnership, limited liability company or similar interest in a Plan Debtor.

**Lamun Lusk Sanchez** means Lamun Lusk Sanchez Texas State Veterans Home, located in Big Spring, Texas and managed and operated by SDI.

**LCS** means Life Care Services LLC.

**LCS Secured Claim** means the third Lien on the undeveloped property located in Abilene, Texas and owned by SMC.

**Lien** has the meaning set forth in section 101(37) of the Bankruptcy Code.

**Liquidating Trust** means the grantor trust to be created upon the Effective Date for the benefit of the Beneficiaries.

9

***Liquidating Trust Agreement*** means the agreement, substantially in the form included in the Plan Supplement, governing the operations of the Liquidating Trust, as it may be subsequently modified from time to time.

***Liquidating Trust Assets*** means the assets held in the Liquidating Trust comprised of (i) the Excluded Assets from the Sales, to the extent such assets are not encumbered by a Lien; (ii) all Causes of Action of the Plan Debtors, except those expressly waived herein, and (iii) all other unencumbered assets of the Plan Debtors' Estates remaining after all required payments have been made pursuant to the Plan, Confirmation Order and Liquidating Trust Agreement, as applicable, on the Effective Date.

***Liquidating Trust Distributable Cash*** means the Liquidating Trust Cash and any other assets of the Liquidating Trust reduced to Cash net of all expenses and costs of operating or effectuating the duties of the Liquidating Trust and establishing any reserves as the Liquidating Trustee may determine is necessary in its sole discretion pursuant to the terms of this Plan and the Liquidating Trust Agreement.

***Liquidating Trust Monthly Fee Statements*** shall have the meaning set forth in section 6.8(f).

***Liquidating Trust Professionals*** shall have the meaning set forth in section 6.8(f).

***Liquidating Trustee*** means the individual or entity designated and retained as the trustee to the Liquidating Trust, as of the Effective Date or as soon as reasonably practicable thereafter, as the fiduciary responsible for administering the Liquidating Trust.

***Management Transfer Agreement*** shall have the meaning set forth in section 6.6.

***Meadow Lake*** means Meadow Lake Retirement Community, a senior living facility located in Tyler, Texas and owned by Tyler.

***Mesa Springs*** means Mesa Springs Retirement Village, a senior living facility located in Abilene, Texas and owned by Caprock.

***Net Sale Proceeds*** means the gross proceeds of the Sales, net of (i) the indemnification obligations of the applicable Plan Debtors; (ii) 100% of the amounts allocated for payment of Professionals' fees and expenses set forth in the respective budgets attached to the DIP Loan Agreements, the Cash Collateral Orders and all other orders entered by the Bankruptcy Court related to the foregoing that have not been previously paid; (iii) 110% of the amounts allocated for payment of administrative expenses set forth in the respective budgets attached to the DIP Loan Agreements, the Cash Collateral Orders and all other orders entered by the Bankruptcy Court related to the foregoing that have not been previously paid; (iv) the amount of the DIP Claims associated with a particular Sale; and (v) the taxes and customary costs associated with each of the respective Sales.

***New Manager*** means Touchstone Veterans Management, Ltd.

10

*Non-Exchanged Bonds* means the approximately $3,965,000 in aggregate outstanding principal amount of the Series 1998A Bonds, Series 1999 Bonds and Series 2003A Bonds.

*Obligated Group* means SMRS, Permian, SMC, Panhandle, SMF and Brazos.

*Obligated Group APA* shall have the meaning set forth in section 6.1(a).

*Obligated Group Assets* shall have the meaning set forth in section 6.1(a).

*Obligated Group Bond Claims* means any and all Claims in respect of the Obligated Group Bonds.

*Obligated Group Bond Documents* means, collectively, the Obligated Group Master Trust Indenture, the 1998 Bond Indenture, the related supplemental bond indentures, the 2013 Bond Indenture, and the promissory notes, loan agreements, mortgages and other documents related to the Obligated Group Bonds.

*Obligated Group Bond Trustee* means (i) Wells Fargo Bank, N.A., in its capacity as trustee under the Obligated Group Master Trust Indenture; (ii) Wells Fargo Bank, N.A., in its capacity as trustee under the 2013 Bond Indenture; (iii) Wells Fargo Bank, N.A., in its capacity as trustee under the 1998 Bond Indenture; and (iv) any successor trustee in such capacities.

*Obligated Group Bonds* means, collectively, the Non-Exchanged Bonds, the Series 2013A Bonds, the Series 2013B Bonds, the Series 2013C Bonds and the Series 2013D Bonds.

*Obligated Group DIP Facility* means any debtor in possession financing facility or facilities established pursuant to the Obligated Group DIP Loan Agreement.

*Obligated Group DIP Lender* means the lender (or lenders) party to the Obligated Group DIP Loan Agreement from time to time, each in its (or their) capacity as such.

*Obligated Group DIP Loan Agreement* means the credit agreement and related security agreements, mortgages and similar documents governing the Obligated Group DIP Facility by and between the Debtors and the Obligated Group DIP Lender.

*Obligated Group Encumbered Excluded Assets* shall have the meaning set forth in section 6.1(c).

*Obligated Group Excluded Assets* shall have the meaning set forth in section 6.1(c).

*Obligated Group Facilities* means, collectively, Parks, Wesley Court and Craig.

*Obligated Group Loan Agreement* means that certain Loan Agreement, dated as of May 1, 2013, between Red River and SMRS.

***Obligated Group Master Trust Indenture*** means that certain Amended and Restated Master Trust Indenture, dated August 1, 1998 and effective as of May 1, 2013, between the Debtors and the Obligated Group Bond Trustee, as amended or supplemented.

***Obligated Group Purchase Price*** shall have the meaning set forth in section 6.1(a).

***Obligated Group Sale*** shall have the meaning set forth in section 6.1(a).

***Obligated Group Sale Motion*** shall have the meaning set forth in section 6.1(a).

***Obligated Group Sellers*** shall have the meaning set forth in section 6.1(a).

***Obligated Group Stalking Horse*** shall have the meaning set forth in section 6.1(a).

***Obligated Group Successful Bidder*** shall have the meaning set forth in section 6.1(f).

***OMH*** shall have the meaning set forth in the Introduction.

***Other Priority Claim*** means any Claim entitled to priority under Bankruptcy Code sections 507(a)(4) and 507(a)(5).

***Other Secured Claim*** means a Secured Claim other than the DIP Claims, Secured Tax Claims, Obligated Group Bond Claims, Tyler Bond Claims, Caprock Secured Loan Claim and Plains Secured Loan Claim.

***PACA Claim*** shall mean a Claim filed under the Perishable Agricultural Commodities Act.

***Panhandle*** shall have the meaning set forth in the Introduction.

***Parks*** means Parks Methodist Retirement Village, a senior living facility located in Odessa, Texas and owned by Permian.

***Permian*** shall have the meaning set forth in the Introduction.

***Person*** means an individual, corporation, partnership, limited liability company, joint venture, association, joint stock company, trust, estate, unincorporated organization, governmental unit, government (or agency or political subdivision thereof), or other entity, including, without limitation, the Debtors.

***Petition Date*** means June 10, 2014.

***Plains*** shall have the meaning set forth in the Introduction.

***Plains APA*** shall have the meaning set forth in section 6.4(a).

*Plains Assets* shall have the meaning set forth in section 6.4(a).

*Plains Encumbered Excluded Assets* shall have the meaning set forth in section 6.4(c).

*Plains Excluded Assets* shall have the meaning set forth in section 6.4(c).

*Plains Loan Agreement* means that certain Loan Agreement, dated as of December 1, 2011, among Plains, Plains Secured Lender and Red River.

*Plains Purchase Price* shall have the meaning set forth in section 6.4(a).

*Plains Sale* shall have the meaning set forth in section 6.4(a).

*Plains Sale Motion* shall have the meaning set forth in section 6.4(a).

*Plains Secured Lender* means Prosperity Bank, N.A., in its capacity as successor lender to American State Bank, under the Plains Loan Agreement.

*Plains Secured Loan Claim* means all Claims arising under or related to the Plains Loan Agreement.

*Plains Stalking Horse* shall have the meaning set forth in section 6.4(a).

*Plan* means the Plan Debtors' Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated January 15, 2015, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, or the terms hereof, as the case may be, together with any and all exhibits and schedules hereto.

*Plan Debtor Released Claims* shall have the meaning set forth in section 11.4.

*Plan Debtors* shall have the meaning set forth in the Introduction.

*Plan Supplement* means the compilation of documents and forms of documents, schedules, and exhibits to this Plan, to be filed ten (10) days prior to the Confirmation Hearing, as amended, supplemented, or modified from time to time in accordance with the terms hereof, the Bankruptcy Code and the Bankruptcy Rules.

*Priority Claim* means any Claim entitled to priority pursuant to Bankruptcy Code section 507(a) other than an Administrative Expense Claim, Accrued Professional Compensation Claim, Priority Tax Claims or DIP Claim.

*Priority Tax Claim* means any Claim of a governmental unit of a kind entitled to priority under Bankruptcy Code section 507(a)(8), if Allowed.

***Pro Rata*** shall mean the proportion that the amount of a Claim in a particular Class or Classes bears to the aggregate amount of all Claims in such Class or Classes, unless the Plan otherwise provides.

***Professional Fee Allocations*** shall have the meaning set forth in section 2.2(b).

***Professionals*** means all professionals employed in these Chapter 11 Cases pursuant to Bankruptcy Code sections 327, 363 and 1103.

***Proof of Claim*** means a proof of Claim filed against any of the Plan Debtors in the Chapter 11 Cases.

***Red River*** means Red River Health Facilities Development Corporation, a nonstock health facilities development corporation duly organized and existing under the laws of the State of Texas.

***Related Persons*** means, with respect to any Person, such Person's predecessors, successors, assigns and present and former affiliates (whether by operation of law or otherwise) and each of their respective members, partners, equity holders, certificate holders, officers, directors, employees, representatives, advisors, attorneys, auditors, agents, and professionals, in each case acting in such capacity on or any time prior to or after the Petition Date, and any Person claiming by or through any of them.

***Released Parties*** means (i) the Plan Debtors, (ii) the Creditors' Committee, (iii) the Obligated Group Bond Trustee, (iv) the Tyler Bond Trustee; (v) the Secured Lenders, (vi) the DIP Lenders, (vii) the Liquidating Trustee, (viii) the Liquidating Trust, and (ix) the current and former officers, directors, members, managers, employees, attorneys, consultants and advisors, each in their respective capacities as such, of each of the foregoing, except for the former officers, directors, members, managers and employees of the Plan Debtors which shall not be considered Released Parties.  LCS shall not be a Released Party.

***Releasing Parties*** means all Persons who have held, hold or may hold Claims or Interests that have been released, discharged or are subject to exculpation pursuant to this Plan.

***Residency Agreement*** means those certain residence and care agreements entered into by and between the residents of the Facilities and the Facilities and any additional documents related thereto.

***Sales*** means, collectively, the Obligated Group Sale, the Tyler Sale, the Caprock Sale and the Plains Sale.

***Schedules*** means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs, if any, filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

*SDI* shall have the meaning set forth in the Introduction.

*SDI DIP Facility* means any debtor in possession financing facility or facilities established pursuant to the SDI DIP Loan Agreement.

*SDI DIP Lender* means the lender (or lenders) party to the SDI DIP Loan Agreement from time to time, each in its (or their) capacity as such.

*SDI DIP Loan Agreement* means the credit agreement and related security agreements, mortgages and similar documents governing the SDI DIP Facility by and between SDI and the SDI DIP Lender.

*Secured Claim* means any Claim of a Creditor that is secured by property of the Estates, to the extent of the value of the Creditor's interest in the Estate's interest in such property, as provided in Bankruptcy Code section 506(a).  Secured Claim also means a Claim of a Creditor that is subject to setoff under Bankruptcy Code section 553, to the extent of the amount subject to setoff, as provided in Bankruptcy Code section 506(a).  To the extent the value of any property securing such Claim is less than the amount of such Claim, the difference between such value and such Claim is a *"Deficiency Claim"* unless the holder of such Claim validly elects under Section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent allowed.

*Secured Lenders* means, collectively, the Obligated Group Bond Trustee, the Tyler Bond Trustee, the Caprock Secured Lender, the Plains Secured Lender and TMF.

*Secured Tax Claim* means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under Bankruptcy Code section 507(a)(8) (determined irrespective of any time limitations therein), and including any related Secured Claim for penalties.

*Series 1998A Bonds* means those certain Series 1998A Abilene Health Facilities Development Corporation Bonds, issued by Abilene Health pursuant to the 1998 Bond Indenture.

*Series 1999 Bonds* means those certain Series 1999 Abilene Health Facilities Development Corporation Bonds, issued by Abilene Health pursuant to the 1998 Bond Indenture.

*Series 2003A Bonds* means those certain Series 2003A Abilene Health Facilities Development Corporation Bonds, issued by Abilene Health pursuant to the 1998 Bond Indenture.

*Series 2009 Notes* means those certain notes issued by Tyler as required by the Tyler Original Loan Agreement.

*Series 2009A Bonds* means those certain Series 2009A Term Retirement Facility Revenue Bonds, issued by HFDC pursuant to the Tyler Original Bond Indenture.

**Series 2009B Bonds** means those certain Series 2009B Term Retirement Facility Revenue Bonds, issued by HFDC pursuant to the Tyler Original Bond Indenture.

**Series 2011 Note** means that certain note providing for the repayment of the proceeds of the Series 2011 Bonds loaned to Tyler under the Tyler Loan Agreement.

**Series 2011A Bonds** means those certain Series 2011A Retirement Facility Revenue Bonds, issued by HFDC pursuant to the Tyler Supplemental Bond Indenture No.1.

**Series 2011B Bonds** means those certain Series 2011B Retirement Facility Revenue Bonds, issued by HFDC pursuant to the Tyler Supplemental Bond Indenture No.1.

**Series 2013A Bonds** means those certain Series 2013A Retirement Facility Revenue Bonds, issued by Red River pursuant to the 2013 Bond Indenture.

**Series 2013B Bonds** means those certain Series 2013B Retirement Facility Revenue Bonds, issued by Red River pursuant to the 2013 Bond Indenture.

**Series 2013C Bonds** means those certain Series 2013C Retirement Facility Revenue Bonds, issued by Red River pursuant to the 2013 Bond Indenture.

**Series 2013D Bonds** means those certain Series 2013D Retirement Facility Revenue Bonds, issued by Red River pursuant to the 2013 Bond Indenture.

**Shared Services Allocations** shall have the meaning set forth in section 2.1(c).

**SMC** shall have the meaning set forth in the Introduction.

**SMF** shall have the meaning set forth in the Introduction.

**SMRS** shall have the meaning set forth in the Introduction.

**Successful Bidders** means, collectively, the Obligated Group Successful Bidder, the Tyler Successful Bidder, the Caprock Successful Bidder and the Plains Successful Bidder.

**System** means the Sears Methodist Retirement System, which includes the Debtors, Sears Methodist Senior Housing, LLC, Texas Senior Management, Inc., Senior Living Assurance, Inc. and Southwest Assurance Company, Ltd.

**TMF** means the Texas Methodist Foundation.

**TMF Loan Documents** means all agreements and documents related to or arising out of the $3.2 million loan by TMF to SMRS.

**TMF Secured Claim** means the Secured Claim of the Texas Methodist Foundation.

**Tyler** shall have the meaning set forth in the Introduction.

*Tyler APA* shall have the meaning set forth in section 6.2(a).

*Tyler Assets* shall have the meaning set forth in section 6.2(a).

*Tyler Bond Claims* means any and all Claims in respect of the Tyler Bonds and the Tyler Notes.

*Tyler Bond Documents* means, collectively, the Tyler Master Trust Indenture, the Tyler Bond Indenture, the Tyler Notes, and the promissory notes, loan agreements, mortgages and other documents related to the Tyler Bonds.

*Tyler Bond Indenture* means, collectively, the Tyler Original Bond Indenture and the Tyler Supplemental Bond Indenture No. 1.

*Tyler Bond Trustee* means (i) UMB Bank, N.A., in its capacity as successor trustee under the Tyler Bond Indenture, (ii) UMB Bank, N.A., in its capacity as successor master trustee under the Tyler Master Trust Indenture, and (iii) any successor trustee in either capacity.

*Tyler Bonds* means, collectively, the Series 2009A Bonds, the Series 2009B Bonds, the Series 2011A Bonds and the Series 2011B Bonds.

*Tyler DIP Facility* means any debtor in possession financing facility or facilities established pursuant to the Tyler DIP Loan Agreement.

*Tyler DIP Lender* means the lender (or lenders) party to the Tyler DIP Loan Agreement from time to time, each in its (or their) capacity as such.

*Tyler DIP Loan Agreement* means the note purchase agreement and related security agreements, mortgages and similar documents governing the Tyler DIP Facility by and between Tyler and the Tyler DIP Lender.

*Tyler Encumbered Excluded Assets* shall have the meaning set forth in section 6.2(c).

*Tyler Excluded Assets* shall have the meaning set forth in section 6.2(c).

*Tyler Loan Agreement* means, collectively, the Tyler Original Loan Agreement and Amendment No. 1 to the Tyler Original Loan Agreement, dated as of February 1, 2011, between HFDC and Tyler.

*Tyler Master Trust Indenture* means the Tyler Original Master Trust Indenture, as supplemented by Supplemental Indenture Number 1, dated as of November 11, 2009, Supplemental Indenture Number 2, dated as of February 1, 2011, and Supplemental Indenture Number 3, dated as of May 1, 2012.

*Tyler Notes* means, collectively, the Series 2009 Notes and the Series 2011 Note.

***Tyler Original Bond Indenture*** means that certain Indenture of Trust, dated as of November 1, 2009, between HFDC and the Tyler Bond Trustee.

***Tyler Original Loan Agreement*** means that certain Loan Agreement, dated as of November 1, 2009, between HFDC and Tyler.

***Tyler Original Master Trust Indenture*** means that that certain Master Trust Indenture, Deed of Trust and Security Agreement, dated as of November 1, 2009, between Tyler and the Tyler Bond Trustee.

***Tyler Purchase Price*** shall have the meaning set forth in section 6.2(a).

***Tyler Sale*** shall have the meaning set forth in section 6.2(a).

***Tyler Sale Motion*** shall have the meaning set forth in section 6.2(a).

***Tyler Stalking Horse*** shall have the meaning set forth in section 6.2(a).

***Tyler Successful Bidder*** shall have the meaning set forth in section 6.2(f).

***Tyler Supplemental Bond Indenture No.1*** means that certain Supplemental Bond Indenture No. 1, dated as of February 1, 2011, between the HFDC and the Tyler Bond Trustee.

***Undeveloped Properties*** means that certain undeveloped real property located in Abilene, Texas owed by SMC and that certain undeveloped real property located in Waco, Texas owned by SMF.

***Unexpired Lease*** means a lease to which one or more of the Plan Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

***Unimpaired*** means, with respect to a Claim or Interest, a Class of Claims or Interests that is not Impaired within the meaning of Bankruptcy Code section 1124.

***United States Trustee*** means the Office of the United States Trustee for the Northern District of Texas.

***VLB*** means the Veterans Land Board of Texas.

***VLB Homes*** means, collectively, Alfredo Gonzalez, Ambrosio Guillen and Lamun Lusk Sanchez.

***Voting Agent*** means GCG, Inc.

***Voting Record Date*** shall have the meaning ascribed to such term in the Disclosure Statement.

***Wesley Court*** means Wesley Court Methodist Retirement Community, a senior living facility located in Abilene, Texas and owned by SMC.

18

        1.2    ***Interpretation, Application of Definitions and Rules of Construction***. Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, this Plan, as the same may be amended, supplemented, waived, or modified from time to time.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein.  A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to this Plan.  The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  Unless otherwise provided, any reference in this Plan to an existing document, exhibit or schedule means such document, exhibit or schedule as it may have been amended, restated, revised, supplemented or otherwise modified.  If a time or date is specified for any payments or other Distribution under this Plan, it shall mean on or as soon as reasonably practicable thereafter.  Further, where appropriate from a contextual reading of a term, each term includes the singular and plural form of the term regardless of how the term is stated and each stated pronoun is gender neutral.  In the event of any ambiguity or conflict between this Plan and the Disclosure Statement, the provisions of this Plan shall govern.  Any reference to the "Liquidating Trustee" shall be deemed to include a reference to the "Liquidating Trust" and any reference to the "Liquidating Trust" shall be deemed to include a reference to the "Liquidating Trustee" unless the context otherwise required.

        1.3    ***Computation of Time***.  Bankruptcy Rule 9006 shall apply to all computations of time periods prescribed or allowed by this Plan unless otherwise set forth herein or provided by the Bankruptcy Court.

## SECTION 2.    ADMINISTRATIVE AND PRIORITY CLAIMS

        2.1    ***Administrative Expense Claims***.

        (a)    ***Treatment***.  Except as otherwise provided in Section 2.1(b) of the Plan or to the extent that a Holder of an Allowed Administrative Expense Claim agrees to different treatment with the Plan Debtors or Liquidating Trustee, each Holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to the unpaid amount of such Allowed Administrative Expense Claim on the later of the Effective Date or the date on which such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is reasonably practicable; *provided, however*, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Plan Debtors, as Debtors in Possession, or liabilities arising under obligations incurred by the Plan Debtors, as Debtors in Possession, prior to the Effective Date, shall be paid by the Plan Debtors, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions, including, but not limited to, the budgets related to the DIP Loan Agreements, Cash Collateral Orders and all other orders entered by the Bankruptcy Court related to the foregoing.  In addition, Allowed Administrative Expense Claims of the United States Trustee for statutory fees under 28 U.S.C. §

1930 incurred prior to the Effective Date shall be paid on the Effective Date by the Plan Debtors, and thereafter, as such fees may thereafter accrue and be due and payable, by the Liquidating Trustee in accordance with the applicable schedule for payment of such fees.

(b) ***Administrative Expense Claims Bar Date***. To be eligible to receive Distributions under the Plan on account of an Administrative Expense Claim, including but not limited to a Claim pursuant to section 503(b)(9) of the Bankruptcy Code ("Section 503(b)(9) Claims"), that is not otherwise Allowed by the Plan, a request for payment of an Administrative Expense Claim must have been or be filed with the Bankruptcy Court on or before the Administrative Expense Claims Bar Date. Any Administrative Expense Claims, including Section 503(b)(9) Claims, that are not asserted in accordance herewith and with Section 2.1 of the Plan shall be deemed disallowed under the Plan and shall be forever barred against the Plan Debtors, their Estates, the Liquidating Trust, or any of their Assets or property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim. In connection with Section 503(b)(9) Claims only, objections to such Claims must be filed on or before forty-five (45) days following the filing of the Claim or the Effective Date, whichever is later. If no objection is timely filed in accordance with the foregoing sentence, the Section 503(b)(9) Claim shall be deemed Allowed and the requested amount shall be promptly paid by the Liquidating Trustee. In the event that an objection is timely filed in connection with a Section 503(b)(9) Claim that cannot be promptly resolved, the dispute will be submitted by the Liquidating Trustee to the Bankruptcy Court for adjudication. With respect to Administrative Expense Claims, other than Section 503(b)(9) Claims, filed in accordance herewith and Section 2.1(a) of the Plan, the Liquidating Trustee shall pay the full unpaid amount as is Allowed by the Bankruptcy Court within five (5) Business Days after the date that such Claim is Allowed by Order of the Bankruptcy Court.

To be eligible to receive Distributions under the Plan on account of a Claim under the Perishable Agricultural Commodities Act ("PACA Claim"), a request for payment of a PACA Claim must have been or be filed with the Bankruptcy Court on or before thirty (30) days following the Effective Date. Any PACA Claims that are not asserted in accordance herewith shall be deemed disallowed under the Plan and shall be forever barred against the Plan Debtors, their Estates, the Liquidating Trust, or any of their Assets or property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim. Objections to any PACA Claims must be filed on or before forty-five (45) days following the filing of the Claim or the Effective Date, whichever is later. If no objection is timely filed in accordance with the foregoing sentence, the PACA Claim shall be deemed Allowed and the requested amount shall be promptly paid by the Liquidating Trustee. In the event that an objection is timely filed in connection with a PACA Claim that cannot be promptly resolved, the dispute will be submitted by the Liquidating Trustee to the Bankruptcy Court for adjudication.

(c) ***Allocation of Allowed Administrative Expense Claims***. Allowed Administrative Expense Claims (other than Allowed Accrued Professional Compensation Claims) incurred solely in connection with a particular Plan Debtor shall be paid from that Plan Debtor's Estate. Administrative Expense Claims incurred on behalf of all of the Plan Debtors

shall be paid by each of the Plan Debtors in accordance with the following allocation formulas (the "**Shared Services Allocations**"):[2]

        (i)      With respect to Allowed Administrative Expense Claims incurred during the period from the Petition Date through and including December 31, 2014, the following allocation formula shall be applied to allocate such Claims among the Plan Debtors:

| Debtor | Allocation Percentages for Allowed Administrative Expense Claims Incurred On Behalf of All Debtors from the Petition Date to December 31, 2014 |
|---|---|
| Obligated Group | 36.1% |
| Caprock | 8.7% |
| Tyler | 9.8% |
| SDI | 34.0% |
| Plains | 10.2% |
| CSL | 0.9% |
| OMH | 0.3% |
| **Total** | **100%** |

        (ii)      With respect to Allowed Administrative Expense Claims incurred during the period from January 1, 2015 through and including February 28, 2015, the following allocation formula shall be applied to allocate such Claims among the Plan Debtors:

| Debtor | Allocation Percentages for Allowed Administrative Expense Claims Incurred On Behalf of All Debtors from January 1, 2015 to February 28, 2015 |
|---|---|
| Obligated Group | 66.2% |
| Caprock | 15.8% |
| Tyler | 18.0% |
| **Total** | **100%** |

    2.2    ***Accrued Professional Compensation Claims***.

        (a)      ***Treatment.***    All Professionals seeking payment of Accrued Professional Compensation Claims shall (i) file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred in the Plan Debtors' Chapter 11 Cases by the date that is thirty (30) days after the Effective Date and (ii) be paid (a) the full unpaid amount as is Allowed by the Bankruptcy Court within five (5) Business Days after the date that such Claim is Allowed by Order of the Bankruptcy Court, or (b) upon such other terms as may be mutually agreed upon between the Holder of such an Allowed Accrued Professional Compensation Claim and the Plan Debtors or Liquidating Trustee; *provided, however*, in no event shall any amounts paid to any Professional exceed the amounts

---

[2] The Shared Services Allocations have been calculated based upon each Debtor's respective revenue share in the System. After December 31, 2014, the activity related to the Chapter 11 Cases of certain of the Plan Debtors will decrease significantly due to the sale and/or change in ownership and management of the Facilities of those Plan Debtors. Accordingly, a different formula will be applied to Administrative Expense Claims and Accrued Professional Compensation Claims (as reflected below) incurred after December 31, 2014.

set forth for such Professional in the budgets attached to the DIP Loan Agreements, the Cash Collateral Orders and all other orders entered by the Bankruptcy Court related to the foregoing. Any Accrued Professional Compensation Claim that is not asserted in accordance with this Section 2.2 shall be deemed disallowed under this Plan and shall be forever barred against the Plan Debtors, the Plan Debtors' Estates, the Liquidating Trust, or any of their Assets or property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

(b)     ***Allocation of Allowed Accrued Professional Compensation Claims***.   Accrued Professional Compensation Claims incurred by a Professional solely in connection with a particular Plan Debtor shall be paid from that Plan Debtor's Estate.  Accrued Professional Compensation Claims incurred on behalf of all of the Plan Debtors shall be paid by each of the Plan Debtors in accordance with the following allocation formulas (the "***Professional Fee Allocations***"):[3]

(i)     With respect to Allowed Accrued Professional Compensation Claims incurred during the period from the Petition Date through and including December 31, 2014, the following allocation formula shall be applied to allocate such Claims among the Plan Debtors:

| Debtor | Allocation Percentages for Allowed Accrued Professional Compensation Claims Incurred On Behalf of All Debtors from the Petition Date to December 31, 2014 |
|---|---|
| Obligated Group | 55.0% |
| Caprock | 15.0% |
| Tyler | 15.0% |
| SDI | 4.0% |
| Plains | 10.0% |
| CSL | 0.8% |
| OMH | 0.2% |
| **Total** | **100%** |

(ii)     With respect to Allowed Accrued Professional Compensation Claims incurred during the period from January 1, 2015 through and including February 28, 2015, the following allocation formula shall be used to allocate such Claims among the Plan Debtors:[4]

---

[3] Like the Shared Services Allocations, the Professional Fee Allocations are based on a particular Debtor's respective revenue share in the System.  However, certain adjustments have made to the Professional Fee Allocations to reflect the anticipated fees and costs to be incurred by Professionals in connection with each Debtor's Chapter 11 Case.
[4] Although not reflected in the allocation formula, the Estates of SDI and Plains have reserved funds for payment of professional fees and expenses for the period January 1, 2015 to March 1, 2015.

| Debtor | Allocation Percentages for Allowed Accrued Professional Compensation Claims Incurred On Behalf of All Debtors from January 1, 2015 to February 28, 2015 |
|---|---|
| Obligated Group | 60% |
| Caprock | 20% |
| Tyler | 20% |
| **Total** | **100%** |

2.3 ***Priority Tax Claims***. Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a different treatment of such Claim, each Holder of an Allowed Priority Tax Claim, if any such Claim exists, shall receive Cash in an amount equal to the unpaid portion of such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the date that is ninety (90) calendar days after the Effective Date.

2.4 ***DIP Claims***. On the Effective Date, the Plan Debtors shall pay Cash to each Holder of an Allowed DIP Claim, which shall include accrued and unpaid interest, costs and expenses up to the time of such payment, in an amount equal to the unpaid amount of such Allowed DIP Claim in full and complete satisfaction of such Claim and all obligations and commitments thereunder shall be terminated. Upon payment or satisfaction in full of all obligations under the DIP Loan Agreements, any and all liens and security interests securing obligations thereunder shall be deemed terminated and shall be of no further force and effect.

## SECTION 3. CLASSIFICATION OF CLAIMS AND INTERESTS

3.1 ***Classified Claims Against and Interests in the Plan Debtors***. Except as set forth herein, all Claims against and Interests in a particular Plan Debtor are placed in a particular Class for that Plan Debtor. The Plan Debtors have not classified Administrative Expense Claims, Accrued Professional Compensation Claims, Priority Tax Claims or DIP Claims. In addition, the Plan Debtors have not classified any Claims they may have against any other Plan Debtor as the Plan Debtors shall be deemed to have waived and released any Claims each may have against another Plan Debtor.

The following tables classify Claims against and Interests in each of the Plan Debtors for all purposes, including voting, confirmation and Distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. This Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. A Claim or Interest is in a particular Class only to the extent that any such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date. Each Class set forth below is treated hereunder as a distinct Class for voting and Distribution purposes.

Subject to all other applicable provisions of this Plan (including its Distribution provisions), classified Claims shall receive the treatment described in Section 4 herein. This Plan will not provide any Distributions on account of a Claim to the extent that such Claim has

23

been disallowed, released, withdrawn, waived, or otherwise satisfied or paid as of the Effective Date, including, without limitation, payments by third parties.

     3.2    ***SMRS***.

The following table designates the Classes of Claims against and Interests in **SMRS** and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept the Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject the Plan, or (iv) deemed to accept the Plan.

| Class | Claims and Interests | Status | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) | 100% |
| 3 | Obligated Group Bond Claims | Impaired | Yes | 33-39%[5] |
| 4 | Other Secured Claims | Impaired | Yes | TBD |
| 5 | LCS Secured Claim | Impaired | No (deemed to reject) | 0% |
| 6 | Deficiency Claims | Impaired | Yes | TBD |
| 7 | General Unsecured Claims | Impaired | Yes | TBD |

---

[5] Although Holders of Obligated Group Bond Claims may assert their Claims against more than one Estate, each such Claim is subject to the single satisfaction rule. The estimated recovery for Holders of Obligated Group Bond Claims is calculated based upon (a) the Obligated Group Purchase Price of $42,500,000 offered by the Obligated Group Stalking Horse, which remains subject to higher or better offers that may be submitted by other interested parties; (b) certain indemnification obligations of the Obligated Group Sellers described herein; (c) certain assumptions regarding the Administrative Expense Claims, Accrued Professional Compensation Claims and DIP Claims related to the Obligated Group; and (d) certain assumptions regarding ordinary costs and taxes associated with the closing on the Obligated Group Sale. In the event the Obligated Group Sellers accept an offer that is higher or better than the Obligated Group Stalking Horse's offer, the estimated recovery for Holders of Obligated Group Bond Claims may increase.

3.3 *Panhandle*.

The following table designates the Classes of Claims against and Interests in **Panhandle**, a direct subsidiary of SMRS, and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept the Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject the Plan, or (iv) deemed to accept the Plan.

| Class | Claims and Interests | Status | Entitled to Vote | Estimated Recovery |
|-------|----------------------|--------|------------------|--------------------|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) | 100% |
| 3 | Obligated Group Bond Claims | Impaired | Yes | 33-39% |
| 4 | Entrance Deposit Refund Claims | Unimpaired | No (deemed to accept) | -- |
| 5 | Deficiency Claims | Impaired | Yes | TBD |
| 6 | General Unsecured Claims | Impaired | Yes | TBD |
| 7 | Interests in Panhandle | Impaired | No (deemed to reject) | 0% |

3.4 *Permian*.

The following table designates the Classes of Claims against and Interests in **Permian**, a direct subsidiary of SMRS, and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept the Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject the Plan, or (iv) deemed to accept the Plan.

| Class | Claims and Interests | Status | Entitled to Vote | Estimated Recovery |
|-------|----------------------|--------|------------------|--------------------|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) | 100% |
| 3 | Obligated Group Bond Claims | Impaired | Yes | 33-39% |
| 4 | Entrance Deposit Refund Claims | Unimpaired | No (deemed to accept) | -- |
| 5 | Deficiency Claims | Impaired | Yes | TBD |
| 6 | General Unsecured Claims | Impaired | Yes | TBD |
| 7 | Interests in Permian | Impaired | No (deemed to reject) | 0% |

3.5    *SMC*.

The following table designates the Classes of Claims against and Interests in **SMC**, a direct subsidiary of SMRS, and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept the Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject the Plan, or (iv) deemed to accept the Plan.

| Class | Claims and Interests | Status | Entitled to Vote | Estimated Recovery |
|-------|----------------------|--------|------------------|--------------------|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) | 100% |
| 3 | Obligated Group Bond Claims | Impaired | Yes | 33-39% |
| 4 | Other Secured Claims | Impaired | Yes | TBD |
| 5 | LCS Secured Claim | Impaired | No (deemed to reject) | 0% |
| 6 | Entrance Deposit Refund Claims | Unimpaired | No (deemed to accept) | -- |
| 7 | Deficiency Claims | Impaired | Yes | TBD |
| 8 | General Unsecured Claims | Impaired | Yes | TBD |
| 9 | Interests in SMC | Impaired | No (deemed to reject) | 0% |

3.6    *SMF*.

The following table designates the Classes of Claims against and Interests in **SMF**, a direct subsidiary of SMRS, and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept the Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject the Plan, or (iv) deemed to accept the Plan.

| Class | Claims and Interests | Status | Entitled to Vote | Estimated Recovery |
|-------|----------------------|--------|------------------|--------------------|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) | 100% |
| 3 | Obligated Group Bond Claims | Impaired | Yes | 33-39% |
| 4 | Other Secured Claims | Impaired | Yes | TBD |
| 5 | Deficiency Claims | Impaired | Yes | TBD |
| 6 | General Unsecured Claims | Impaired | Yes | TBD |
| 7 | Interests in SMF | Impaired | No (deemed to reject) | 0% |

3.7 *Tyler*.

The following table designates the Classes of Claims against and Interests in **Tyler**, a direct subsidiary of SMRS, and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept the Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject the Plan, or (iv) deemed to accept the Plan.

| Class | Claims and Interests | Status | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) | 100% |
| 3 | Tyler Bond Claims | Impaired | Yes | 36-42%[6] |
| 4 | Other Secured Claims | Impaired | Yes | TBD |
| 5 | Entrance Deposit Refund Claims | Unimpaired | No (deemed to accept) | -- |
| 6 | Deficiency Claims | Impaired | Yes | TBD |
| 7 | General Unsecured Claims | Impaired | Yes | TBD |
| 8 | Interests in Tyler | Impaired | No (deemed to reject) | 0% |

---

[6] The estimated recovery for Holders of the Tyler Bond Claims is calculated based upon (a) the Tyler Purchase Price of $20,000,000 offered by the Tyler Stalking Horse, which remains subject to higher or better offers that may be submitted by other interested parties; (b) certain indemnification obligations of Tyler described herein; (c) certain assumptions regarding the Administrative Expense Claims, Accrued Professional Compensation Claims and DIP Claims related to Tyler; and (d) certain assumptions regarding ordinary costs and taxes associated with the closing on the Tyler Sale. In the event Tyler accepts an offer that is higher or better than the Tyler Stalking Horse's offer, the estimated recovery for Holders of the Tyler Bond Claims may increase.

### 3.8    *Caprock*.

The following table designates the Classes of Claims against and Interests in **Caprock**, a direct subsidiary of SMRS, and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept the Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject the Plan, or (iv) deemed to accept the Plan.

| Class | Claims and Interests | Status | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) | 100% |
| 3 | Caprock Secured Loan Claim | Impaired | Yes | 58-64%[7] |
| 4 | Entrance Deposit Refund Claims | Unimpaired | No (deemed to accept) | -- |
| 5 | Deficiency Claims | Impaired | Yes | TBD |
| 6 | General Unsecured Claims | Impaired | Yes | TBD |
| 7 | Interests in Caprock | Impaired | No (deemed to reject) | 0% |

### 3.9    *Plains*.

The following table designates the Classes of Claims against and Interests in **Plains**, a direct subsidiary of SMRS, and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept the Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject the Plan, or (iv) deemed to accept the Plan.

| Class | Claims and Interests | Status | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) | 100% |
| 3 | Plains Secured Loan Claim | Impaired | Yes | 58-65%[8] |
| 4 | Deficiency Claims | Impaired | Yes | TBD |
| 5 | General Unsecured Claims | Impaired | Yes | TBD |
| 6 | Interests in Plains | Impaired | No (deemed to reject) | 0% |

---

[7] The estimated recovery for the Holder of the Caprock Secured Loan Claim is calculated based upon (a) the Caprock Purchase Price of $6,600,000 offered by the Caprock Stalking Horse; (b) certain indemnification obligations of Caprock described herein; (c) certain assumptions regarding the Administrative Expense Claims, Accrued Professional Compensation Claims and DIP Claims related to Caprock; and (d) certain assumptions regarding ordinary costs and taxes associated with the closing on the Caprock Sale.

[8] The estimated recovery for the Holder of the Plains Secured Loan Claim is calculated based upon (a) the Plains Purchase Price of $6,240,000 offered by the Plains Stalking Horse; (b) certain indemnification obligations of Plains described herein; (c) certain assumptions regarding the Administrative Expense Claims and Accrued Professional Compensation Claims related to Plains; and (d) the ordinary costs and taxes associated with the closing on the Plains Sale.

3.10 **SDI**

| Class | Claims and Interests | Status | Entitled to Vote | Estimated Recovery |
|-------|---------------------|--------|-----------------|-------------------|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | 100% |
| 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) | 100% |
| 3 | Other Secured Claims | Impaired | Yes | TBD |
| 4 | General Unsecured Claims | Impaired | Yes | TBD |
| 5 | Interests in SDI | Impaired | No (deemed to reject) | 0% |

**SECTION 4.    TREATMENT OF CLAIMS AND INTERESTS**

4.1 *SMRS*.

(a) ***Other Priority Claims (Class 1)***.  This Class consists of all Allowed Other Priority Claims against SMRS that are specified as having priority in Bankruptcy Code section 507(a), if any such Claims exist as of the Effective Date.  Except to the extent that a Holder of an Allowed Other Priority Claim against SMRS has agreed to a different treatment of such Claim, each such Holder shall receive, in full and final satisfaction, settlement, release, and discharge of each such Allowed Other Priority Claim against SMRS, Cash in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date the Other Priority Claim becomes an Allowed Claim, and (iii) the date for payment provided by any agreement or arrangement between SMRS or the Liquidating Trustee and the Holder of the Allowed Other Priority Claim against SMRS.

(b) ***Secured Tax Claims (Class 2)***.  This Class consists of all Allowed Secured Tax Claims against SMRS that, absent the secured status of such Claim, would be entitled to priority in right of payment under Bankruptcy Code section 507(a), if any such Claims exist as of the Effective Date.  Each Holder of an Allowed Secured Tax Claim against SMRS shall receive, in full and final satisfaction, settlement, release, and discharge of each such Allowed Secured Tax Claim, Cash in an amount equal to such Allowed Secured Tax Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date the Secured Tax Claim becomes an Allowed Claim, and (iii) the date for payment provided by any agreement or arrangement between SMRS or the Liquidating Trustee and the Holder of the Secured Tax Claim against SMRS.  SMRS and the Liquidating Trustee specifically reserve the right to challenge the validity, nature, and perfection of, and to avoid pursuant to the provisions of the Bankruptcy Code and other applicable law, any purported liens relating to the Secured Tax Claims against SMRS.

(c) ***Obligated Group Bond Claims (Class 3)***.  This Class consists of all Claims of the holders of the Obligated Group Bonds against SMRS, which Claims shall be deemed Allowed pursuant to this Plan in the aggregate amount of $95,858,814, which amount includes (i) unpaid principal and (ii) accrued but unpaid interest as of the Petition Date.  Upon the terms and subject to the conditions set forth in this Plan, in full and final satisfaction, settlement, release, and discharge of each Allowed Obligated Group Bond Claim against SMRS, each holder of an outstanding Obligated Group Bond will receive, (i) on the Effective Date or as

soon as practicable thereafter, its Pro Rata share of the Net Sale Proceeds of the Obligated Group Sale and the Obligated Group Encumbered Excluded Assets; and (ii) its Pro Rata share of Distributions made to Holders of Allowed Deficiency Claims and Allowed General Unsecured Claims set forth in Classes 6 and 7 of SMRS. All Distributions to the holders of the Obligated Group Bonds under this Plan shall be transferred to the Obligated Group Bond Trustee, and shall be administered, applied and distributed in accordance with the Obligated Group Bond Documents.

(d)     *Other Secured Claims (Class 4)*.  This Class consists of the Other Secured Claims against SMRS, including the TMF Secured Claim.  Upon the terms and subject to the conditions set forth in this Plan, on the Effective Date or as soon as practicable thereafter, in full and final satisfaction, settlement, release, and discharge of the Allowed Other Secured Claims against SMRS, the Holders of Allowed Other Secured Claims against SMRS will receive, on the Effective Date or as soon as practicable thereafter, the Collateral that secures their Claims.  In particular, on the Effective Date or as soon as practicable thereafter, the Undeveloped Properties shall be transferred to the Liquidating Trust, subject to the existing Liens and interests of TMF and the Obligated Group Bond Trustee, to be sold or otherwise disposed of with the consent of TMF and the Obligated Group Bond Trustee.

(e)     *LCS Secured Claim (Class 5)*.  This Class consists of the LCS Secured Claim.  The LCS Secured Claim has no value, will receive no Distribution and is deemed to reject the Plan.

(f)     *Deficiency Claims (Class 6)*.  This Class consists of all Deficiency Claims against SMRS, including the Allowed Deficiency Claims of the holders of the Obligated Group Bonds against SMRS.  Except to the extent that a Holder of an Allowed Deficiency Claim against SMRS agrees to a different treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of each Allowed Deficiency Claim against SMRS, each Holder of an Allowed Deficiency Claim against SMRS will receive, along with holders of Allowed General Unsecured Claims in Class 7 of SMRS, its Pro Rata share of the Liquidating Trust Distributable Cash attributable to SMRS's Estate as soon as practicable as determined by the Liquidating Trustee.  SMRS and the Liquidating Trustee reserve their rights, however, to dispute the validity of any Deficiency Claim against SMRS, whether or not objected to prior to the Effective Date.

(g)     *General Unsecured Claims (Class 7).*  This Class consists of all General Unsecured Claims against SMRS.  Except to the extent that a Holder of an Allowed General Unsecured Claim against SMRS agrees to a different treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of each Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim against SMRS, along with Holders of Allowed Deficiency Claims in Class 6 of SMRS, will receive its Pro Rata share of the Liquidating Trust Distributable Cash attributable to SMRS's Estate as soon as practicable as determined by the Liquidating Trustee.  SMRS and the Liquidating Trustee reserve their rights, however, to dispute the validity of any General Unsecured Claim against SMRS , whether or not objected to prior to the Effective Date.

4.2    *Panhandle.*

(a)    ***Other Priority Claims (Class 1).***  This Class consists of all Allowed Other Priority Claims against Panhandle that are specified as having priority in Bankruptcy Code section 507(a), if any such Claims exist as of the Effective Date.  Except to the extent that a Holder of an Allowed Other Priority Claim against Panhandle has agreed to a different treatment of such Claim, each such Holder shall receive, in full and final satisfaction, settlement, release, and discharge of each such Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date the Other Priority Claim becomes an Allowed Claim, and (iii) the date for payment provided by any agreement or arrangement between Panhandle or the Liquidating Trustee and the Holder of the Allowed Other Priority Claim against Panhandle.

(b)    ***Secured Tax Claims (Class 2).***  This Class consists of all Allowed Secured Tax Claims against Panhandle that, absent the secured status of such Claim, would be entitled to priority in right of payment under Bankruptcy Code section 507(a), if any such Claims exist as of the Effective Date.  Each Holder of an Allowed Secured Tax Claim against Panhandle shall receive, in full and final satisfaction, settlement, release, and discharge of each such Allowed Secured Tax Claim, Cash in an amount equal to such Allowed Secured Tax Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date the Secured Tax Claim becomes an Allowed Claim, and (iii) the date for payment provided by any agreement or arrangement between Panhandle or the Liquidating Trustee and the Holder of the Secured Tax Claim against Panhandle.  Panhandle and the Liquidating Trustee specifically reserve the right to challenge the validity, nature, and perfection of, and to avoid pursuant to the provisions of the Bankruptcy Code and other applicable law, any purported liens relating to the Secured Tax Claims against Panhandle.

(c)    ***Obligated Group Bond Claims (Class 3).***  This Class consists of all Claims of the holders of the Obligated Group Bonds against Panhandle, which Claims shall be deemed Allowed pursuant to this Plan in the aggregate amount of $95,858,814, which amount includes (i) unpaid principal and (ii) accrued but unpaid interest as of the Petition Date.  Upon the terms and subject to the conditions set forth in this Plan, in full and final satisfaction, settlement, release, and discharge of each Allowed Obligated Group Bond Claim against Panhandle, each holder of an outstanding Obligated Group Bond will receive, (i) on the Effective Date or as soon as practicable thereafter, its Pro Rata share of the Net Sale Proceeds of the Obligated Group Sale and the Obligated Group Encumbered Excluded Assets; and (ii) its Pro Rata share of all Distributions made to Holders of Allowed Deficiency Claims and Allowed General Unsecured Claims set forth in Classes 5 and 6 of Panhandle.  All Distributions to the holders of the Obligated Group Bonds under this Plan shall be transferred to the Obligated Group Bond Trustee, and shall be administered, applied and distributed in accordance with the Obligated Group Bond Documents.

(d)    ***Entrance Deposit Refund Claims (Class 4).***  This Class consists of all Entrance Deposit Refund Claims against Panhandle.  The Residency Agreements of Holders of Allowed Entrance Deposit Refund Claims against Panhandle, and all obligations thereunder, will be assumed and assigned by Panhandle to the Obligated Group Successful

31

Bidder pursuant to section 365 of the Bankruptcy Code and such Holders will have the same rights under their respective Residency Agreements as they had before the Petition Date.

(e) **Deficiency Claims (Class 5)**. This Class consists of all Deficiency Claims against Panhandle, including Allowed Deficiency Claims of the holders of the Obligated Group Bonds against Panhandle. Except to the extent that a Holder of an Allowed Deficiency Claim agrees to a different treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of each Allowed Deficiency Claim against Panhandle, each Holder of an Allowed Deficiency Claim against Panhandle will receive, along with Holders of Allowed General Unsecured Claims in Class 6 of Panhandle, its Pro Rata share of the Liquidating Trust Distributable Cash attributable to Panhandle's Estate as soon as practicable as determined by the Liquidating Trustee. Panhandle and the Liquidating Trustee reserve their rights, however, to dispute the validity of any Deficiency Claim against Panhandle, whether or not objected to prior to the Effective Date.

(f) **General Unsecured Claims (Class 6)**. This Class consists of all General Unsecured Claims against Panhandle. Except to the extent that a Holder of an Allowed General Unsecured Claim against Panhandle agrees to a different treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of each Allowed General Unsecured Claim against Panhandle, each Holder of an Allowed General Unsecured Claim against Panhandle will receive, along with Holders of Allowed Deficiency Claims in Class 5 of Panhandle, its Pro Rata share of the Liquidating Trust Distributable Cash attributable to Panhandle's Estate as soon as practicable as determined by the Liquidating Trustee. Panhandle and the Liquidating Trustee reserve their rights, however, to dispute the validity of any General Unsecured Claim against Panhandle, whether or not objected to prior to the Effective Date.

(g) **Interests in Panhandle (Class 7)**. This Class consists of SMRS's ownership interests in Panhandle, which will be cancelled as of the Effective Date. SMRS shall not be entitled to a Distribution on account of its Interests in Panhandle.

4.3 **Permian.**

(a) **Other Priority Claims (Class 1)**. This Class consists of all Allowed Other Priority Claims against Permian that are specified as having priority in Bankruptcy Code section 507(a), if any such Claims exist as of the Effective Date. Except to the extent that a Holder of an Allowed Other Priority Claim against Permian has agreed to a different treatment of such Claim, each such Holder shall receive, in full and final satisfaction, settlement, release, and discharge of each such Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date the Other Priority Claim becomes an Allowed Claim, and (iii) the date for payment provided by any agreement or arrangement between Permian or the Liquidating Trustee and the Holder of the Allowed Other Priority Claim against Permian.

(b) **Secured Tax Claims (Class 2)**. This Class consists of all Allowed Secured Tax Claims against Permian that, absent the secured status of such Claim, would be entitled to priority in right of payment under Bankruptcy Code section 507(a), if any such Claims

exist as of the Effective Date. Each Holder of an Allowed Secured Tax Claim against Permian shall receive, in full and final satisfaction, settlement, release, and discharge of each such Allowed Secured Tax Claim, Cash in an amount equal to such Allowed Secured Tax Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date the Secured Tax Claim becomes an Allowed Claim, and (iii) the date for payment provided by any agreement or arrangement between Permian or the Liquidating Trustee and the Holder of the Secured Tax Claim against Permian. Permian and the Liquidating Trustee specifically reserve the right to challenge the validity, nature, and perfection of, and to avoid pursuant to the provisions of the Bankruptcy Code and other applicable law, any purported liens relating to the Secured Tax Claims against Permian.

(c) *Obligated Group Bond Claims (Class 3)*. This Class consists of all Claims of the holders of the Obligated Group Bonds against Permian, which Claims shall be deemed Allowed pursuant to this Plan in the aggregate amount of $95,858,814, which amount includes (i) unpaid principal and (ii) accrued but unpaid interest as of the Petition Date. Upon the terms and subject to the conditions set forth in this Plan, in full and final satisfaction, settlement, release, and discharge of each Allowed Obligated Group Bond Claim against Permian, each holder of an outstanding Obligated Group Bond will receive, (i) on the Effective Date or as soon as practicable thereafter, its Pro Rata Share of the Net Sale Proceeds of the Obligated Group Sale and the Obligated Group Encumbered Excluded Assets; and (ii) its Pro Rata share of all Distributions made to Holders of Allowed Deficiency Claims and Allowed General Unsecured Claims set forth in Classes 5 and 6 of Permian. All Distributions to the holders of the Obligated Group Bonds under this Plan shall be transferred to the Obligated Group Bond Trustee, and shall be administered, applied and distributed in accordance with the Obligated Group Bond Documents.

(d) *Entrance Deposit Refund Claims (Class 4)*. This Class consists of all Entrance Deposit Refund Claims against Permian. The Residency Agreements of Holders of Allowed Entrance Deposit Refund Claims against Permian, and all obligations thereunder, will be assumed and assigned by Permian to the Obligated Group Successful Bidder under section 365 of the Bankruptcy Code and such Holders will have the same rights under their respective Residency Agreements as they had before the Petition Date.

(e) *Deficiency Claims (Class 5)*. This Class consists of all Deficiency Claims against Permian, including the Allowed Deficiency Claims of the holders of the Obligated Group Bonds against Permian. Except to the extent that a Holder of an Allowed Deficiency Claim against Permian agrees to a different treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of each Allowed Deficiency Claim against Permian, each Holder of an Allowed Deficiency Claim against Permian will receive, along with Holders of Allowed General Unsecured Claims in Class 6 of Permian, its Pro Rata share of Liquidating Trust Distributable Cash attributable to Permian's Estate as soon as practicable as determined by the Liquidating Trustee. Permian and the Liquidating Trustee reserve their rights, however, to dispute the validity of any Deficiency Claim against Permian, whether or not objected to prior to the Effective Date.

(f)     ***General Unsecured Claims (Class 6).***  This Class consists of all General Unsecured Claims against Permian.  Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a different treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of each Allowed General Unsecured Claim against Permian, each Holder of an Allowed General Unsecured Claim against Permian will receive, along with Holders of Allowed Deficiency Claims in Class 5 of Permian, its Pro Rata share of Liquidating Trust Distributable Cash attributable to Permian's Estate as soon as practicable as determined by the Liquidating Trustee.  Permian and the Liquidating Trustee reserve their rights, however, to dispute the validity of any General Unsecured Claim against Permian, whether or not objected to prior to the Effective Date.

(g)     ***Interests in Permian (Class 7).***  This Class consists of SMRS's ownership interests in Permian, which will be cancelled as of the Effective Date.  SMRS shall not be entitled to a Distribution on account of its Interests in Permian.

4.4     ***SMC.***

(a)     ***Other Priority Claims (Class 1)***.  This Class consists of all Allowed Other Priority Claims against SMC that are specified as having priority in Bankruptcy Code section 507(a), if any such Claims exist as of the Effective Date.  Except to the extent that a Holder of an Allowed Other Priority Claim against SMC has agreed to a different treatment of such Claim, each such Holder shall receive, in full and final satisfaction, settlement, release, and discharge of each such Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date the Other Priority Claim becomes an Allowed Claim, and (iii) the date for payment provided by any agreement or arrangement between SMC or the Liquidating Trustee and the Holder of the Allowed Other Priority Claim against SMC.

(b)     ***Secured Tax Claims (Class 2)***.  This Class consists of all Allowed Secured Tax Claims against SMC that, absent the secured status of such Claim, would be entitled to priority in right of payment under Bankruptcy Code section 507(a), if any such Claims exist as of the Effective Date.  Each Holder of an Allowed Secured Tax Claim shall receive, in full and final satisfaction, settlement, release, and discharge of each such Allowed Secured Tax Claim, Cash in an amount equal to such Allowed Secured Tax Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date the Secured Tax Claim becomes an Allowed Claim, and (iii) the date for payment provided by any agreement or arrangement between SMC or the Liquidating Trustee and the Holder of the Secured Tax Claim against SMC. SMC and the Liquidating Trustee specifically reserve the right to challenge the validity, nature, and perfection of, and to avoid pursuant to the provisions of the Bankruptcy Code and other applicable law, any purported liens relating to the Secured Tax Claims against SMC.

(c)     ***Obligated Group Bond Claims (Class 3)***.  This Class consists of all Claims of the holders of the Obligated Group Bonds against SMC, which Claims shall be deemed Allowed pursuant to this Plan in the aggregate amount of $95,858,814, which amount includes (i) unpaid principal and (ii) accrued but unpaid interest as of the Petition Date.  Upon the terms and subject to the conditions set forth in this Plan, in full and final satisfaction,

settlement, release, and discharge of each Allowed Obligated Group Bond Claim against SMC, each holder of an outstanding Obligated Group Bond will receive, (i) on the Effective Date or as soon as practicable thereafter, its Pro Rata share of the Net Sale Proceeds of the Obligated Group Sale and the Obligated Group Encumbered Excluded Assets; and (ii) its Pro Rata share of all Distributions made to Holders of Allowed Deficiency Claims and Allowed General Unsecured Claims in Classes 7 and 8 of SMC. All Distributions to the holders of the Obligated Group Bonds under this Plan shall be transferred to the Obligated Group Bond Trustee, and shall be administered, applied and distributed in accordance with the Obligated Group Bond Documents.

(d)     *Other Secured Claims (Class 4)*.  This Class consists of the Other Secured Claims against SMC, including the TMF Secured Claim.  Upon the terms and subject to the conditions set forth in this Plan, on the Effective Date or as soon as practicable thereafter, in full and final satisfaction, settlement, release, and discharge of the Allowed Other Secured Claims against SMC, the Holders of Allowed Other Secured Claims against SMC will receive, on the Effective Date or as soon as practicable thereafter, the Collateral that secures their Claims. In particular, on the Effective Date or as soon as practicable thereafter, the Undeveloped Properties shall be transferred to the Liquidating Trust, subject to the existing Liens and interests of TMF and the Obligated Group Bond Trustee, to be sold or otherwise disposed of with the consent of TMF and the Obligated Group Bond Trustee.

(e)     *LCS Secured Claim (Class 5)*.  This Class consists of the LCS Secured Claim.  The LCS Secured Claim has no value, will receive no Distribution and is deemed to reject the Plan.

(f)     *Entrance Deposit Refund Claims (Class 6)*.  This Class consists of all Entrance Deposit Refund Claims against SMC.  The Residency Agreements of Holders of Allowed Entrance Deposit Refund Claims against SMC, and all obligations thereunder, will assumed and assigned by SMC to the Obligated Group Successful Bidder under section 365 of the Bankruptcy Code and such Holders will have the same rights under their respective Residency Agreements as they had before the Petition Date.

(g)     *Deficiency Claims (Class 7)*.  This Class consists of all Deficiency Claims against SMC, including Allowed Deficiency Claims of the holders of the Obligated Group Bonds against SMC.  Except to the extent that a Holder of an Allowed Deficiency Claim agrees to a different treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of each Allowed Deficiency Claim against SMC, each Holder of an Allowed Deficiency Claim will receive, along with Holders of Allowed General Unsecured Claims in Class 8, its Pro Rata share of Liquidating Trust Distributable Cash attributable to SMC's Estate as soon as practicable as determined by the Liquidating Trustee.  SMC and the Liquidating Trustee reserve their rights, however, to dispute the validity of any Deficiency Claim against SMC, whether or not objected to prior to the Effective Date.

(h)     *General Unsecured Claims (Class 8)*.  This Class consists of all General Unsecured Claims against SMC.  Except to the extent that a Holder of an Allowed General Unsecured Claim against SMC agrees to a different treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of each Allowed General Unsecured Claim

against SMC, each Holder of an Allowed General Unsecured Claim against SMC will receive, along with Holders of Allowed Deficiency Claims in Class 7 of SMC, its Pro Rata share of Liquidating Trust Distributable Cash attributable to SMC's Estate as soon as practicable as determined by the Liquidating Trustee. SMC and the Liquidating Trustee reserve their rights, however, to dispute the validity of any General Unsecured Claim against SMC, whether or not objected to prior to the Effective Date.

(i) *Interests in SMC (Class 9).* This Class consists of SMRS's ownership interests in SMC, which will be cancelled as of the Effective Date. SMRS shall not be entitled to a Distribution on account of its Interests in SMC.

4.5 *SMF*.

(a) *Other Priority Claims (Class 1)*. This Class consists of all Allowed Other Priority Claims against SMF that are specified as having priority in Bankruptcy Code section 507(a), if any such Claims exist as of the Effective Date. Except to the extent that a Holder of an Allowed Other Priority Claim against SMF has agreed to a different treatment of such Claim, each such Holder shall receive, in full and final satisfaction, settlement, release, and discharge of each such Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date the Other Priority Claim becomes an Allowed Claim, and (iii) the date for payment provided by any agreement or arrangement between SMF or the Liquidating Trustee and the Holder of the Allowed Other Priority Claim against SMF.

(b) *Secured Tax Claims (Class 2)*. This Class consists of all Allowed Secured Tax Claims against SMF that, absent the secured status of such Claim, would be entitled to priority in right of payment under Bankruptcy Code section 507(a), if any such Claims exist as of the Effective Date. Each Holder of an Allowed Secured Tax Claim against SMF shall receive, in full and final satisfaction, settlement, release, and discharge of each such Allowed Secured Tax Claim, Cash in an amount equal to such Allowed Secured Tax Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date the Secured Tax Claim becomes an Allowed Claim, and (iii) the date for payment provided by any agreement or arrangement between SMF or the Liquidating Trustee and the Holder of the Secured Tax Claim. SMF and the Liquidating Trustee specifically reserve the right to challenge the validity, nature, and perfection of, and to avoid pursuant to the provisions of the Bankruptcy Code and other applicable law, any purported liens relating to the Secured Tax Claims against SMF.

(c) *Obligated Group Bond Claims (Class 3)*. This Class consists of all Claims of the holders of the Obligated Group Bonds against SMF, which Claims shall be deemed Allowed pursuant to this Plan in the aggregate amount of $95,858,814, which amount includes (i) unpaid principal and (ii) accrued but unpaid interest as of the Petition Date. Upon the terms and subject to the conditions set forth in this Plan, in full and final satisfaction, settlement, release, and discharge of each Allowed Obligated Group Bond Claim against SMF, each holder of an outstanding Obligated Group Bond will receive, (i) on the Effective Date or as soon as practicable thereafter, its Pro Rata share of the Net Sale Proceeds of the Obligated Group Sale and the Obligated Group Encumbered Excluded Assets; and (ii) its Pro Rata share of all

Distributions made to Holders of Allowed Deficiency Claims and Allowed General Unsecured Claims set forth in Classes 5 and 6 of SMF. All Distributions to the holders of the Obligated Group Bonds under this Plan shall be transferred to the Obligated Group Bond Trustee, and shall be administered, applied and distributed in accordance with the Obligated Group Bond Documents.

(d) ***Other Secured Claims (Class 4)***. This Class consists of the Other Secured Claims against SMF, including the TMF Secured Claim. Upon the terms and subject to the conditions set forth in this Plan, on the Effective Date or as soon as practicable thereafter, in full and final satisfaction, settlement, release, and discharge of the Allowed Other Secured Claims against SMF, the Holders of Other Secured Claims against SMF will receive, on the Effective Date or as soon as practicable thereafter, the Collateral that secures their Claims. In particular, on the Effective Date or as soon as practicable thereafter, the Undeveloped Properties shall be transferred to the Liquidating Trust, subject to the existing Liens and interests of TMF and the Obligated Group Bond Trustee, to be sold or otherwise disposed of with the consent of TMF and the Obligated Group Bond Trustee

(e) ***Deficiency Claims (Class 5)***. This Class consists of all Deficiency Claims against SMF, including Allowed Deficiency Claims of the holders of the Obligated Group Bonds against SMF. Except to the extent that a Holder of an Allowed Deficiency Claim against SMF agrees to a different treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of each Allowed Deficiency Claim against SMF, each Holder of an Allowed Deficiency Claim against SMF will receive, along with Holders of Allowed General Unsecured Claims in Class 6 of SMF, its Pro Rata share of the Liquidating Trust Distributable Cash attributable to SMF's Estate as soon as practicable as determined by the Liquidating Trustee. SMF and the Liquidating Trustee reserve their rights, however, to dispute the validity of any Deficiency Claim against SMF, whether or not objected to prior to the Effective Date.

(f) ***General Unsecured Claims (Class 6)***. This Class consists of all General Unsecured Claims against SMF. Except to the extent that a Holder of an Allowed General Unsecured Claim against SMF agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of each Allowed General Unsecured Claim against SMF, each Holder of an Allowed General Unsecured Claim against SMF will receive, along with the Holders of Allowed Deficiency Claims in Class 5 of SMF, its Pro Rata share of the Liquidating Trust Distributable Cash attributable to SMF's Estate as soon as practicable as determined by the Liquidating Trustee. SMF and the Liquidating Trustee reserve their rights, however, to dispute the validity of any General Unsecured Claim against SMF, whether or not objected to prior to the Effective Date.

(g) ***Interests in SMF (Class 7)***. This Class consists of SMRS's ownership interests in SMF, which will be cancelled as of the Effective Date. SMRS shall not be entitled to a Distribution on accounts its Interests in SMF.

37

4.6     ***Tyler.***

(a)     ***Other Priority Claims (Class 1)***.   This Class consists of all Allowed Other Priority Claims against Tyler that are specified as having priority in Bankruptcy Code section 507(a), if any such Claims exist as of the Effective Date.   Except to the extent that a Holder of an Allowed Other Priority Claim against Tyler has agreed to a different treatment of such Claim, each such Holder shall receive, in full satisfaction of such Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date; (ii) the date the Other Priority Claim becomes an Allowed Claim; or (iii) the date for payment provided by any agreement or arrangement between Tyler and the Holder of the Allowed Other Priority Claim against Tyler.

(b)     ***Secured Tax Claims (Class 2)***.   This Class consists of all Allowed Secured Tax Claims against Tyler that, absent the secured status of such Claim, would be entitled to priority in right of payment under Bankruptcy Code section 507(a), if any such Claims exist as of the Effective Date.   Each Holder of an Allowed Secured Tax Claim against Tyler shall receive, in full and final satisfaction, settlement, release, and discharge of each such Allowed Secured Tax Claim, Cash in an amount equal to such Allowed Secured Tax Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date the Secured Tax Claim becomes an Allowed Claim, and (iii) the date for payment provided by any agreement or arrangement between Tyler or the Liquidating Trustee and the Holder of the Secured Tax Claim against Tyler.   Tyler and the Liquidating Trustee specifically reserve the right to challenge the validity, nature, and perfection of, and to avoid pursuant to the provisions of the Bankruptcy Code and other applicable law, any purported liens relating to the Secured Tax Claims against Tyler.

(c)     ***Tyler Bond Claims (Class 3)***.   This Class consists of all Claims of the holders of the Tyler Bonds against Tyler, which Claims shall be deemed Allowed pursuant to this Plan in the aggregate amount of $46,618,421, which includes (i) unpaid principal and (ii) accrued but unpaid interest as of the Petition Date.   Upon the terms and subject to the conditions set forth in this Plan, in full and final satisfaction, settlement, release, and discharge of each Allowed Tyler Bond Claim, each Holder of an outstanding Tyler Bond Claim will receive, (i) on the Effective Date or as soon as practicable thereafter, its Pro Rata share of the Net Sale Proceeds of the Tyler Sale and the Tyler Encumbered Excluded Assets; and (ii) its Pro Rata share of all Distributions made to Holders of Allowed Deficiency Claims and Allowed General Unsecured Claims set forth in Classes 5 and 6 for Tyler.   All Distributions to the holders of the Tyler Bonds under this Plan shall be transferred to the Tyler Bond Trustee, and shall be administered, applied and distributed in accordance with the Tyler Bond Documents.

(d)     ***Other Secured Claims (Class 4)***.   This Class consists of all Other Secured Claims against Tyler related to certain vehicles owned by Tyler.   To the extent the loan agreements related to such Other Secured Claims are not assumed and assigned by Tyler to the Tyler Successful Bidder under section 365 of the Bankruptcy Code, on the Effective Date or as soon as practicable thereafter, Tyler will transfer title to such vehicles to the respective Holders of such Other Secured Claims against Tyler.

(e)     ***Entrance Deposit Refund Claims (Class 5)***.  This Class consists of all Entrance Deposit Refund Claims against Tyler.  The Residency Agreements of Holders of Allowed Entrance Deposit Refund Claims against Tyler, and all obligations thereunder, will assumed and assigned by Tyler to the Tyler Successful Bidder under section 365 of the Bankruptcy Code and such Holders will have the same rights under their respective Residency Agreements as they had before the Petition Date.

(f)     ***Deficiency Claims (Class 6)***.  This Class consists of all Deficiency Claims against Tyler, including Allowed Deficiency Claims of the holders of Tyler Bonds.  Except to the extent that a Holder of an Allowed Deficiency Claim  against Tyler agrees to a different treatment of such Claim, in full and final satisfaction and discharge of and in exchange for each Allowed Deficiency Claim against Tyler, each Holder of an Allowed Deficiency Claim against Tyler will receive, along with Holders of Allowed General Unsecured Claims in Class 7 of Tyler, its Pro Rata share of Liquidating Trust Distributable Cash attributable to Tyler's Estate as soon as practicable as determined by the Liquidating Trustee.  Tyler and the Liquidating Trustee reserve their rights, however, to dispute the validity of any Deficiency Claim against Tyler, whether or not objected to prior to the Effective Date.

(g)     ***General Unsecured Claims (Class 7)***.  This Class consists of all General Unsecured Claims against Tyler.  Except to the extent that a Holder of an Allowed General Unsecured Claim against Tyler agrees to a different treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of each Allowed General Unsecured Claim against Tyler, each Holder of an Allowed General Unsecured Claim against Tyler will receive, along with Holders of Allowed Deficiency Claims of Class 6 of Tyler, its Pro Rata share of Liquidating Trust Distributable Cash attributable to Tyler's Estate as soon as practicable as determined by the Liquidating Trustee.  Tyler and the Liquidating Trustee reserve their rights, however, to dispute the validity of any General Unsecured Claim against Tyler, whether or not objected to prior to the Effective Date.

(h)     ***Interests in Tyler (Class 8)***.  This Class consists of SMRS's ownership interests in Tyler, which will be cancelled as of the Effective Date.  SMRS shall not be entitled to a Distribution on account of its Interests in Tyler.

4.7     ***Caprock.***

(a)     ***Other Priority Claims (Class 1)***.  This Class consists of all Allowed Other Priority Claims against Caprock that are specified as having priority in Bankruptcy Code section 507(a), if any such Claims exist as of the Effective Date.  Except to the extent that a Holder of an Allowed Other Priority Claim against Caprock has agreed to a different treatment of such Claim, each such Holder shall receive, in full satisfaction of such Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date; (ii) the date the Other Priority Claim becomes an Allowed Claim; or (iii) the date for payment provided by any agreement or arrangement between Caprock and the Holder of the Allowed Other Priority Claim against Caprock.

(b) **Secured Tax Claims (Class 2)**. This Class consists of all Allowed Secured Tax Claims against Caprock that, absent the secured status of such Claim, would be entitled to priority in right of payment under Bankruptcy Code section 507(a), if any such Claims exist as of the Effective Date. On the Effective Date or as soon thereafter as is reasonably practicable, each Holder of an Allowed Secured Tax Claim against Caprock shall receive, in full and final satisfaction, settlement, release, and discharge of each such Allowed Secured Tax Claim, Cash in an amount equal to such Allowed Secured Tax Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date the Secured Tax Claim becomes an Allowed Claim, and (iii) the date for payment provided by any agreement or arrangement between Caprock or the Liquidating Trustee and the Holder of the Secured Tax Claim against Caprock. Caprock and the Liquidating Trustee specifically reserve the right to challenge the validity, nature, and perfection of, and to avoid pursuant to the provisions of the Bankruptcy Code and other applicable law, any purported liens relating to the Secured Tax Claims against Caprock.

(c) **Caprock Secured Loan Claim (Class 3)**. This Class consists of the Claim of the Caprock Secured Lender related to the Caprock Loan Agreement, which Claim shall be deemed Allowed pursuant to the Plan in the amount of $6,922,982.01. Upon the terms and subject to the conditions set forth in this Plan, in full and final satisfaction, settlement, release, and discharge of the Caprock Secured Loan Claim, the Caprock Secured Lender shall receive (i) on the Effective Date or as soon as practicable thereafter, the Net Sale Proceeds of the Caprock Sale and the Caprock Encumbered Excluded Assets; and (ii) its Pro Rata share of all Distributions made to Holders of Allowed General Unsecured Claims and Allowed Deficiency Claims set forth in Class 5 and 6 of Caprock.

(d) **Entrance Deposit Refund Claims (Class 4)**. This Class consists of all Entrance Deposit Refund Claims against Caprock. The Residency Agreements of Holders of Allowed Entrance Deposit Refund Claims against Caprock, and all obligations thereunder, will assumed and assigned by Caprock to the Caprock Successful Bidder under section 365 of the Bankruptcy Code and such Holders will have the same rights under their respective Residency Agreements as they had before the Petition Date.

(e) **Deficiency Claims (Class 5)**. This Class consists of all Deficiency Claims against Caprock, including the Allowed Deficiency Claim of the Caprock Secured Lender. Except to the extent that a Holder of an Allowed Deficiency Claim against Caprock agrees to a different treatment of such Claim, in full and final satisfaction and discharge of and in exchange for each Allowed Deficiency Claim against Caprock, each Holder of an Allowed Deficiency Claim against Caprock will receive, along with the Holders of Allowed General Unsecured Claims in Class 6 of Caprock, its Pro Rata share of Liquidating Trust Distributable Cash attributable to Caprock's Estate as soon as practicable as determined by the Liquidating Trustee. Caprock and the Liquidating Trustee reserve their rights, however, to dispute the validity of any Deficiency Claim against Caprock, whether or not objected to prior to the Effective Date.

(f) **General Unsecured Claims (Class 6).** This Class consists of all General Unsecured Claims against Caprock. Except to the extent that a Holder of an Allowed

General Unsecured Claim against Caprock agrees to a different treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of each Allowed General Unsecured Claim against Caprock, each Holder of an Allowed General Unsecured Claim against Caprock will receive, along with the Holders of Allowed Deficiency Claims in Class 5 of Caprock, its Pro Rata share of Liquidating Trust Distributable Cash attributable to Caprock's Estate as soon as practicable as determined by the Liquidating Trustee. Caprock and the Liquidating Trustee reserve their rights, however, to dispute the validity of any General Unsecured Claim against Caprock, whether or not objected to prior to the Effective Date.

(g)     ***Interests in Caprock (Class 7)***.  This Class consists of SMRS's ownership interests in Caprock, which will be cancelled as of the Effective Date. SMRS shall not be entitled to a Distribution on account of its Interests in Caprock.

4.8     ***Plains.***

(a)     ***Other Priority Claims (Class 1)***.  This Class consists of all Allowed Other Priority Claims against Plains that specified as having priority in Bankruptcy Code section 507(a), if any such Claims exist as of the Effective Date. Except to the extent that a Holder of an Allowed Other Priority Claim against Plains has agreed to a different treatment of such Claim, each such Holder shall receive, in full satisfaction of such Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date; (ii) the date the Other Priority Claim becomes an Allowed Claim; or (iii) the date for payment provided by any agreement or arrangement between Plains and the Holder of the Allowed Other Priority Claim against Plains.

(b)     ***Secured Tax Claims (Class 2)***.  This Class consists of all Allowed Secured Tax Claims against Plains that, absent the secured status of such Claim, would be entitled to priority in right of payment under Bankruptcy Code section 507(a), if any such Claims exist as of the Effective Date. Each Holder of an Allowed Secured Tax Claim against Plains shall receive, in full and final satisfaction, settlement, release, and discharge of each such Allowed Secured Tax Claim, Cash in an amount equal to such Allowed Secured Tax Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date the Secured Tax Claim becomes an Allowed Claim, and (iii) the date for payment provided by any agreement or arrangement between Plains or the Liquidating Trustee and the Holder of the Secured Tax Claim against Plains. Plains and the Liquidating Trustee specifically reserve the right to challenge the validity, nature, and perfection of, and to avoid pursuant to the provisions of the Bankruptcy Code and other applicable law, any purported liens relating to the Secured Tax Claims against Plains.

(c)     ***Plains Secured Loan Claim (Class 3)***.  This Class consists of the Claim of the Plains Secured Lender related to the Plains Loan Agreement, which Claim shall be deemed Allowed pursuant to the Plan in the amount of $8,234,000. Upon the terms and subject to the conditions set forth in this Plan, (i) on the Effective Date or as soon as practicable thereafter, in full and final satisfaction, settlement, release, and discharge of the Plains Secured Loan Claim, the Plains Secured Lender shall receive the Net Sale Proceeds of the Plains Sale and the Plains Encumbered Excluded Assets; and (ii) its Pro Rata share of all Distributions made to

Holders of Allowed Deficiency Claims and Allowed General Unsecured Claims in Classes 4 and 5 of Plains.

(d) **Deficiency Claims (Class 4)**. This Class consists of all Deficiency Claims against Plains, including the Allowed Deficiency Claims of the Plains Secured Lender. Except to the extent that a Holder of an Allowed Deficiency Claim against Plains agrees to a different treatment of such Claim, in full and final satisfaction and discharge of and in exchange for each Allowed Deficiency Claim against Plains, each Holder of an Allowed Deficiency Claim against Plains will receive, along with Holders of General Unsecured Claims in Class 5 of Plains, its Pro Rata share of Liquidating Trust Distributable Cash attributable to Plains's Estate as soon as practicable as determined by the Liquidating Trustee. Plains and the Liquidating Trustee reserve their rights, however, to dispute the validity of any Deficiency Claim against Plains, whether or not objected to prior to the Effective Date.

(e) **General Unsecured Claims (Class 5)**. This Class consists of all General Unsecured Claims against Plains. Except to the extent that a Holder of an Allowed General Unsecured Claim against Plains agrees to a different treatment of such Claim, in full and final satisfaction and discharge of and in exchange for each Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim against Plains will receive, along with Holders of Allowed Deficiency Claims in Class 4 of Plains, its Pro Rata share of Liquidating Trust Distributable Cash attributable to Plains's Estate as soon as practicable as determined by the Liquidating Trustee. Plains and the Liquidating Trustee reserve their rights, however, to dispute the validity of any General Unsecured Claim against Plains, whether or not objected to prior to the Effective Date.

(f) **Interests in Plains (Class 6)**. This Class consists of SMRS's ownership interests in Plains, which will be cancelled as of the Effective Date. SMRS shall not be entitled to a Distribution on account of its Interests in Plains.

4.9 **SDI**

(a) **Other Priority Claims (Class 1)**. This Class consists of all Allowed Other Priority Claims against SDI that are specified as having priority in Bankruptcy Code section 507(a), if any such Claims exist as of the Effective Date. Except to the extent that a Holder of an Allowed Other Priority Claim against SDI has agreed to a different treatment of such Claim, each such Holder shall receive, in full satisfaction of such Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date; (ii) the date the Other Priority Claim becomes an Allowed Claim; or (iii) the date for payment provided by any agreement or arrangement between SDI and the Holder of the Allowed Other Priority Claim against SDI.

(b) **Secured Tax Claims (Class 2)**. This Class consists of all Allowed Secured Tax Claims against SDI that, absent the secured status of such Claim, would be entitled to priority in right of payment under Bankruptcy Code section 507(a), if any such Claims exist as of the Effective Date. Each Holder of an Allowed Secured Tax Claim against SDI shall receive, in full and final satisfaction, settlement, release, and discharge of each such Allowed Secured

Tax Claim, Cash in an amount equal to such Allowed Secured Tax Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date the Secured Tax Claim becomes an Allowed Claim, and (iii) the date for payment provided by any agreement or arrangement between SDI or the Liquidating Trustee and the Holder of the Secured Tax Claim against SDI. SDI and the Liquidating Trustee specifically reserve the right to challenge the validity, nature, and perfection of, and to avoid pursuant to the provisions of the Bankruptcy Code and other applicable law, any purported liens relating to the Secured Tax Claims against SDI.

(c) *Other Secured Claims (Class 3)*. This Class consists of all Other Secured Claims against SDI related to certain vehicles owned by SDI. To the extent the loan agreements related to such Other Secured Claims are not assumed and assigned by SDI to the New Manager under section 365 of the Bankruptcy Code, on the Effective Date or as soon as practicable thereafter, SDI will transfer the title to such vehicles to the respective Holders of such Allowed Other Secured Claims against SDI.

(d) *General Unsecured Claims (Class 4).* This Class consists of all General Unsecured Claims against SDI. Except to the extent that a Holder of an Allowed General Unsecured Claim against SDI agrees to a different treatment of such Claim, in full and final satisfaction and discharge of and in exchange for each Allowed General Unsecured Claim against SDI, each Holder of an Allowed General Unsecured Claim against SDI will receive its Pro Rata share of Liquidating Trust Distributable Cash attributable to SDI's Estate as soon as practicable as determined by the Liquidating Trustee. SDI and the Liquidating Trustee reserve their rights, however, to dispute the validity of any General Unsecured Claim against SDI, whether or not objected to prior to the Effective Date.

(e) *Interests in SDI (Class 5)*. This Class consists of SMRS's ownership interests in SDI, which will be cancelled as of the Effective Date. SMRS shall not be entitled to a Distribution on account of its Interests in SDI.

## SECTION 5. ACCEPTANCE OR REJECTION OF THE PLAN.

5.1 *Holders of Claims and Interests Entitled to Vote*. Pursuant to section 1126 of the Bankruptcy Code, each Impaired Class of Claims or Interests that will receive a Distribution pursuant to this Plan may vote separately to accept or reject this Plan. Each Holder of an Allowed Claim in such an Impaired Class shall receive a Ballot and may cast a vote to accept or reject this Plan. The following Classes of each of the Plan Debtors are Impaired and entitled to vote:

| Plan Debtor | Impaired Classes Entitled to Vote |
|:---:|:---:|
| SMRS | 3, 4, 6 and 7 |
| Panhandle | 3, 5 and 6 |
| Permian | 3, 5 and 6 |
| SMC | 3, 4, 7 and 8 |
| SMF | 3, 4, 5 and 6 |
| Tyler | 3, 4, 6 and 7 |

| Caprock | 3, 5 and 6 |
| Plains | 3, 4 and 5 |
| SDI | 3 and 4 |

5.2    ***Classes Deemed to Reject***.  The following Classes of each of the Plan Debtors are Impaired, are not entitled to a Distribution and are deemed to reject the Plan:

| Plan Debtor | Impaired Classes Deemed to Reject Plan |
| --- | --- |
| SMRS | 5 |
| Panhandle | 7 |
| Permian | 7 |
| SMC | 5 and 9 |
| SMF | 7 |
| Tyler | 8 |
| Caprock | 7 |
| Plains | 6 |
| SDI | 5 |

5.3    ***Classes Deemed to Accept***.  The following Classes of the Plan Debtors are Unimpaired, not entitled to vote to accept or reject the Plan and are deemed to accept the Plan:

| Plan Debtor | Unimpaired Classes Deemed to Accept Plan |
| --- | --- |
| SMRS | 1 and 2 |
| Panhandle | 1, 2 and 4 |
| Permian | 1, 2 and 4 |
| SMC | 1, 2 and 6 |
| SMF | 1 and 2 |
| Tyler | 1, 2 and 5 |
| Caprock | 1, 2 and 4 |
| Plains | 1 and 2 |
| SDI | 1 and 2 |

5.4    ***Acceptance by a Class.***  A Class of Claims entitled to vote to accept or reject this Plan accepts this Plan if the Holders of Claims in such voting Class that hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Claims that complete and return Ballots in such Class vote to accept this Plan.  A Class of Interests is deemed to accept this Plan if this Plan has been accepted by Holders of at least two-thirds (2/3) of the amount of the Allowed Interests held by Holders of such Interests who vote in such Class.

5.5    ***Cramdown Under Section 1129(b) of the Bankruptcy Code***.  If all applicable requirements for confirmation of this Plan are met as set forth in section 1129(a) of the Bankruptcy Code except subsection (8) thereof, the Plan Debtors may request that the

Bankruptcy Court confirm this Plan in accordance with section 1129(b) of the Bankruptcy Code on the bases that this Plan is fair and equitable and does not discriminate unfairly with respect to each Class of Claims or Interests that is Impaired under, and has not accepted or is deemed to reject, this Plan.

      5.6    ***Ballots***.  Each Holder of a Claim or Interest entitled to vote on this Plan will be asked to complete and return a Ballot to the Voting Agent, which will compile the votes so received.

## SECTION 6.   MEANS FOR IMPLEMENTATION

      6.1    ***Obligated Group Sale.***

      (a)    ***Selection of Stalking Horse.***  On November 24, 2014, SMC, Permian and Panhandle (collectively, the "***Obligated Group Sellers***") filed a motion [Docket No. 583] (the "***Obligated Group Sale Motion***") seeking an order authorizing and approving of, among other things, (i) the sale (the "***Obligated Group Sale***") of substantially all of the Obligated Group Sellers' Assets and related business operations (collectively, the "***Obligated Group Assets***") free and clear of all liens, claims, interests and encumbrances to Yellow Rose Health Holdings LLC, a Nevada limited liability company (the "***Obligated Group Stalking Horse***"), pursuant to that certain Asset Purchase and Sale Agreement with the Obligated Group Stalking Horse (the "***Obligated Group APA***"), (ii) certain bid procedures to be employed in connection with the Obligated Group Sale, and (iii) certain bid protections offered to the Obligated Group Stalking Horse, including the payment of a break-up fee in the amount of One Million Two Hundred Thousand Dollars ($1,200,000) and an expense reimbursement in an amount up to One Hundred Thousand Dollars ($100,000) to be paid in accordance with the terms and conditions set forth in the Obligated Group APA.   Pursuant to the Obligated Group APA, the Obligated Group Sellers have agreed to sell the Obligated Group Assets for Forty Two Million Five Hundred Thousand Dollars ($42,500,000) (the "***Obligated Group Purchase Price***") and to assume and assign certain Executory Contracts and Unexpired Leases to the Obligated Group Stalking Horse, subject to higher or otherwise better offers and the Obligated Group Bond Trustee's right to credit bid under section 363(k) of the Bankruptcy Code.

      On December 23, 2014, the Bankruptcy Court entered an order approving and authorizing, among other things, the Obligated Group Sellers' proposed bid procedures to be employed in connection with the Obligated Group Sale and the bid protections offered to the Obligated Group Stalking Horse [Docket No. 640].

      (b)    ***Purchased Assets***.  As more fully described in section 1.1 of the Obligated Group APA, the Obligated Group Assets include, but are not limited to, the following:

            (i)    certain real property located in Abilene, Odessa and Amarillo, Texas, together with all buildings, structures, fixtures and other improvements located in, on, at, under, above or attached to such land;

(ii)    all inventory used or held for use at Parks, Wesley Court and Craig;

(iii)    all furniture, fixtures, equipment, tools, machinery, vehicles and all other tangible personal property owned by the Obligated Group Sellers and used in connection with Parks, Wesley Court and Craig;

(iv)    to the extent assignable or transferable, all personal property leases with respect to ownership of Parks, Wesley Court and Craig; and

(v)    to the extent assignable or transferable, all general intangibles related to the ownership, possession, lease or use of the Obligated Group Assets, including without limitation, lien waivers, surety agreements, bonds, warranties, guaranties, utility use agreements, covenants, commitments, permits, certificates, regulatory approvals, entitlements, service marks, trademarks and trade names owned or employed by the Obligated Group Sellers in conjunction with the ownership of their Facilities.

(c)    ***Excluded Assets***.  The Obligated Group Assets exclude certain assets (the "***Obligated Group Excluded Assets***"), including, but not limited to, the following assets of the Obligated Group Sellers:

(i)    cash, cash equivalents and short-term investments, including all pre-paid deposits held by any party;

(ii)    all entrance fees received and held in escrow pursuant to the *Final Order (I) Authorizing the Obligated Group Debtors to (A) Use Cash Collateral and (B) Incur Postpetition Secured Indebtedness; (II) Granting Liens and Providing Super-Priority Administrative Expense Status; (III) Granting Adequate Protection to Wells Fargo Bank, National Association, as Trustee; and (IV) Modifying the Automatic Stay* [Docket No. 23], entered by the Bankruptcy Court on July 28, 2014;

(iii)    all accounts receivable and proceeds therefrom for services provided prior to a date certain;

(iv)    assets owned and provided by vendors of services or goods to Parks, Wesley Court and Craig;

(v)    organizational record books and minute books;

(vi)     all bank accounts; and

(vii)    certain rights, claims and choses in action, and any payments, awards or other proceeds resulting therefrom.

The aforementioned Obligated Group Excluded Assets, with the exception of items iv, v and vii, are subject to the security interest of the Obligated Group Bond Trustee and will be distributed to the Holders of the Obligated Group Bond Claims.  Such encumbered Excluded Assets shall be referred to herein as the "***Obligated Group Encumbered Excluded Assets***."  The remaining unencumbered Obligated Group Excluded Assets, to the extent they are owned by the Obligated Group Sellers, will be transferred to the Liquidating Trust.

(d)     ***Assumed Liabilities***.  As part of the consideration for the Obligated Group Sale, pursuant to the Obligated Group APA, the Obligated Group Stalking Horse has agreed to assume the following liabilities of the Obligated Group Sellers:

(i)     all amounts payable pursuant to section 365 of the Bankruptcy Code for all of the Obligated Group Sellers' Executory Contracts and Unexpired Leases to be assumed and assigned to the Obligated Group Stalking Horse pursuant to the Obligated Group APA;

(ii)    certain employee obligations; and

(iii)   all obligations, including, without limitation, all refund obligations to current or former residents or their estates, heirs or assigns under the Residency Agreements related to Parks, Wesley Court and Craig.

(e)     ***Indemnification Trust Fund***.  Subject to the occurrence of the closing on the Obligated Group APA, and pursuant to the terms set forth therein, the Obligated Group Sellers have agreed to escrow a portion of the Obligated Group Purchase Price in an amount equal to Seven Hundred and Fifty Thousand Dollars ($750,000) to fund certain indemnification obligations of the Obligated Group Sellers for a period of one (1) year following the closing on the Obligated Group APA.  Upon expiration of the one year indemnification period, the amount remaining in the escrow fund shall constitute part of the Net Sale Proceeds of the Obligated Group Sale and shall be transferred to the Obligated Group Bond Trustee for distribution to the holders of the Obligated Group Bonds pursuant to the Obligated Group Bond Documents.

(f)     ***Auction***.  In order to ensure that the Obligated Group Sellers are maximizing their return on the Obligated Group Assets, the Obligated Group Sellers will conduct an auction of the Obligated Group Assets on January 21, 2015, to the extent other parties have expressed an interest in purchasing all or a portion of the Obligated Group Assets and have otherwise qualified to participate in the auction in accordance with the bid procedures outlined in the Obligated Group Sale Motion.  The party offering the highest or otherwise best offer at that

auction will be deemed the "*Obligated Group Successful Bidder*." The Obligated Group Sellers will thereafter seek Bankruptcy Court approval of the Obligated Group Sale to the Obligated Group Successful Bidder at a hearing scheduled on January 23, 2015 at 1:30 p.m. (prevailing Central Time). The Obligated Group Sellers intend to close on the Obligated Group Sale on or around February 27, 2015.

6.2     *Tyler Sale*.

(a)     *Selection of Stalking Horse*. On November 24, 2014, Tyler filed a motion [Docket No. 584] (the "*Tyler Sale Motion*") seeking an order authorizing and approving of, among other things, (i) the sale (the "*Tyler Sale*") of substantially all of Tyler's Assets and related business operations (the "*Tyler Assets*") free and clear of all liens, claims, interests and encumbrances to ER Propco CO, LLC, a Delaware limited liability company (the "*Tyler Stalking Horse*"), pursuant to that certain Asset Purchase and Sale Agreement with the Tyler Stalking Horse (the "*Tyler APA*"), (ii) certain bid procedures to be employed in connection with the Tyler Sale, and (iii) certain bid protections offered to the Tyler Stalking Horse, including the payment of a break-up fee in the amount of Six Hundred Thousand Dollars ($600,000) and an expense reimbursement in an amount of Fifty Thousand Dollars ($50,000) to be paid in accordance with the terms and conditions set forth in the Tyler APA. Pursuant to the Tyler APA, Tyler has agreed to sell the Tyler Assets for Twenty Million Dollars ($20,000,000) (the "*Tyler Purchase Price*") and to assume and assign certain Executory Contracts and Unexpired Leases to the Tyler Stalking Horse, subject to higher or otherwise better offers and the Tyler Bond Trustee's right to credit bid under section 363(k) of the Bankruptcy Code.

On December 24, 2014, the Bankruptcy Court entered an order approving and authorizing, among other things, Tyler's proposed bid procedures to be employed in connection with the Tyler Sale and the bid protections offered to the Tyler Stalking Horse [Docket No. 643].

(b)     *Purchased Assets*. As more fully described in section 1.1 of the Tyler APA, the Tyler Assets include, but are not limited to, the following:

(i)     certain real property located in Tyler, Texas, together with all buildings, structures, fixtures and other improvements located in, on, at, under, above or attached to such land;

(ii)     all inventory used or held for use at Meadow Lake;

(iii)     all furniture, fixtures, equipment, tools, machinery, vehicles and all other tangible personal property owned by Tyler and used in connection with Meadow Lake;

(iv)     to the extent assignable or transferable, all personal property leases with respect to ownership of Meadow Lake; and

(v)     to the extent assignable or transferable, all general intangibles related to the ownership, possession, lease or use of the Tyler Assets, including without limitation, lien waivers, surety agreements, bonds, warranties, guaranties, utility use agreements, covenants, commitments, permits, certificates, regulatory approvals, entitlements, service marks, trademarks and trade names owned or employed by Tyler in conjunction with the ownership of Meadow Lake.

(c)     ***Excluded Assets***.  The Tyler Assets exclude certain assets (the "***Tyler Excluded Assets***"), including, but not limited to, the following Assets of Tyler:

(i)     cash, cash equivalents and short-term investments;

(ii)    all entrance fees received and held in escrow pursuant to the *Stipulated Final Order: (1) Authorizing Sears Tyler Methodist Retirement Corporation to Use Cash Collateral; and (2) Granting Adequate Protection to the Trustee* [Docket No. 261], entered by the Bankruptcy Court on July 23, 2014, the *Final Order Authorizing Sears Tyler Methodist Retirement Corporation to Obtain Postpetition Financing on a Senior Secured SuperPriority Basis Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 364* [Docket No. 374], entered by the Bankruptcy Court on August 26, 2014 and the *Order Authorizing Debtors To Escrow Certain Entrance Deposits and Refund Certain Entrance Deposits* [Docket No. 56], entered by the Bankruptcy Court on June 12, 2014;

(iii)   all accounts receivable and proceeds therefrom for services provided prior to a date certain;

(iv)    assets owned and provided by vendors of services or goods to Meadow Lake;

(v)     organizational record books and minute books;

(vi)    all bank accounts; and

(vii)   certain rights, claims and choses in action, and any payments, awards or other proceeds resulting therefrom.

The aforementioned Tyler Excluded Assets, with the exception of items iv, v and vii, are subject to the security interest of the Tyler Bond Trustee and will be distributed to the Holders of the Tyler Bond Claims.  Such encumbered Excluded Assets shall be referred to herein as the "***Tyler Encumbered Excluded Assets***."  The remaining unencumbered Tyler Excluded Assets, to the extent they are owned by Tyler, will be transferred to the Liquidating Trust.

(d)     ***Assumed Liabilities***.  As part of the consideration for the Tyler Sale, pursuant to the Tyler APA, the Tyler Stalking Horse has agreed to assume the following liabilities of Tyler:

> (i)     all amounts payable pursuant to section 365 of the Bankruptcy Code for all of Tyler's Executory Contracts and Unexpired Leases to be assumed and assigned to the Tyler Stalking Horse pursuant to the Tyler APA;
>
> (ii)    certain employee obligations; and
>
> (iii)   all obligations to current or former residents or their estates, heirs or assigns under the Residency Agreements related to Meadow Lake, except those obligations related to the entrance fees escrowed pursuant to the *Order Authorizing Debtors To Escrow Certain Entrance Deposits and Refund Certain Entrance Deposits* [Docket No. 56].

(e)     ***Indemnification Trust Fund***.  Subject to the occurrence of the closing on the Tyler APA, and pursuant to the terms set forth therein, Tyler has agreed to escrow a portion of the Tyler Purchase Price in an amount equal to Four Hundred Thousand Dollars ($400,000) to fund certain indemnification obligations of Tyler for a period of one (1) year following the closing on the Tyler APA.  Upon expiration of the one year indemnification period, the amount remaining in the escrow fund shall constitute part of the Net Sale Proceeds of the Tyler Sale and shall be transferred to the Tyler Bond Trustee for distribution to the holders of the Tyler Bonds pursuant to the Tyler Bond Documents.

(f)     ***Auction***.  In order to ensure that Tyler is maximizing its return on the Tyler Assets, Tyler will conduct an auction of the Tyler Assets on January 21, 2015, to the extent other parties have expressed an interest in purchasing the Tyler Assets and have otherwise qualified to participate in the auction in accordance with the bid procedures outlined in the Tyler Sale Motion.  The party offering the highest or otherwise best offer at that auction will be deemed the "***Tyler Successful Bidder***."  Tyler will thereafter seek Bankruptcy Court approval of the Tyler Sale to the Tyler Successful Bidder at a hearing scheduled on January 23, 2015 at 1:30 p.m. (prevailing Central Time).  Tyler intends to close on the Tyler Sale on or around February 27, 2015.

    6.3     ***Caprock Sale.***

(a)     ***Selection of Stalking Horse***.  On October 28, 2014, Caprock filed a motion [Docket No. 533] (the "***Caprock Sale Motion***") seeking an order authorizing and approving of, among other things, (i) the sale (the "***Caprock Sale***") of substantially all of Caprock's Assets and related business operations (collectively, the "***Caprock Assets***") free and clear of all liens, claims, interests and encumbrances to Rio Mesa Health Holdings LLC, a Nevada limited liability company (the "***Caprock Stalking Horse***"), pursuant to that certain Asset Purchase and Sale Agreement with the Caprock Stalking Horse (the "***Caprock APA***"), (ii)

certain bid procedures to be employed in connection with the Caprock Sale, and (iii) certain bid protections offered to the Caprock Stalking Horse, including the payment of a break-up fee in the amount of One Hundred Ninety Thousand Dollars ($190,000) and an expense reimbursement in an amount up to Twenty Five Thousand Dollars ($25,000), subject to the terms and conditions of the Caprock APA.  Pursuant to the Caprock APA, Caprock has agreed to sell the Caprock Assets for Six Million Six Hundred Thousand Dollars ($6,600,000) (the "*Caprock Purchase Price*") and to assume and assign certain Executory Contracts and Unexpired Leases to the Caprock Stalking Horse, subject to higher or otherwise better offers and Caprock Secured Lender's right to credit bid under section 363(k) of the Bankruptcy Code.

(b)    *Purchased Assets*.  As more fully described in section 1.1 of the Caprock APA, the Caprock Assets include, but are not limited to, the following Assets of Caprock:

(i)    certain real property located in Abilene, Texas, together with all buildings, structures, fixtures and other improvements located in, on, at, under, above or attached to such land;

(ii)    all inventory used or held for use at Mesa Springs;

(iii)    all furniture, fixtures, equipment, tools, machinery, vehicles and all other tangible personal property owned by Caprock and used in connection with Mesa Springs;

(iv)    to the extent assignable or transferable, all personal property leases with respect to ownership of Mesa Springs; and

(v)    to the extent assignable or transferable, all general intangibles related to the ownership, possession, lease or use of the Caprock Assets, including without limitation, lien waivers, surety agreements, bonds, warranties, guaranties, utility use agreements, covenants, commitments, permits, certificates, regulatory approvals, entitlements, service marks, trademarks and trade names owned or employed by Caprock in conjunction with the ownership of Mesa Springs.

(c)    *Excluded Assets*.  The Caprock Assets exclude certain assets (the "*Caprock Excluded Assets*"), including, but not limited to, the following assets of Caprock:

(i)    cash, cash equivalents and short-term investments;

(ii)    all accounts receivable and proceeds therefrom for services provided prior to a date certain;

       (iii)     assets owned and provided by vendors of services or goods to Mesa Springs;

       (iv)     organizational record books and minute books;

       (v)     all bank accounts; and

       (vi)     certain rights, claims and choses in action, and any payments, awards or other proceeds resulting therefrom.

The aforementioned Caprock Excluded Assets, with the exception of items iii, iv and vi, are subject to the security interest of the Caprock Secured Lender and will be distributed to the Holder of the Caprock Secured Loan Claim. Such encumbered Excluded Assets shall be referred to herein as the "*Caprock Encumbered Excluded Assets*." The remaining unencumbered Caprock Excluded Assets, to the extent they are owned by Caprock, will be transferred to the Liquidating Trust.

     (d)    *Assumed Liabilities*. As part of the consideration for the Caprock Sale, the Caprock Stalking Horse has agreed to assume the following liabilities of Caprock:

       (i)     all amounts payable pursuant to section 365 of the Bankruptcy Code for all of Caprock's Executory Contracts and Unexpired Leases to be assumed and assigned to the Caprock Stalking Horse pursuant to the Caprock APA;

       (ii)     certain employee obligations; and

       (iii)     all obligations under the Residency Agreements related to Mesa Springs.

     (e)    *Indemnification Trust Fund*. Subject to the occurrence of the closing on the Caprock APA, and pursuant to the terms set forth therein, Caprock has agreed to escrow a portion of the Caprock Purchase Price in an amount equal to Two Hundred and Fifty Thousand Dollars ($250,000) to fund certain indemnification obligations of Caprock for a period of one (1) year following the closing on the Caprock APA. Upon expiration of the one year indemnification period, the amount remaining in the escrow fund shall constitute part of the Net Sale Proceeds of the Caprock Sale and shall be transferred to the Caprock Secured Lender.

     (f)    *Bankruptcy Court Approval of Caprock Sale*. After receiving no other qualified bids for the Caprock Assets, the Caprock Stalking Horse was deemed the "*Caprock Successful Bidder*" and Caprock thereafter sought and obtained Bankruptcy Court approval to sell the Caprock Assets to the Caprock Stalking Horse in accordance with the Caprock APA [Docket No. 639]. Caprock intends to close on the Caprock Sale on or around January 31, 2015.

6.4    ***Plains Sale***.

(a)    ***Selection of Stalking Horse***.  On September 18, 2014, Plains filed a motion [Docket No. 448] (the "***Plains Sale Motion***") seeking an order authorizing and approving of, among other things, (i) the sale (the "***Plains Sale***") of substantially all of Plains's Assets and related business operations (collectively, the "***Plains Assets***") free and clear of all liens, claims, interests and encumbrances to Knight Health Holdings LLC, a Nevada limited liability company (the "***Plains Stalking Horse***"), pursuant to that that certain Asset Purchase and Sale Agreement with the Plains Stalking Horse (the "***Plains APA***"), (ii) certain bid procedures to be employed in connection with the Plains Sale, and (iii) certain bid protections offered to the Plains Stalking Horse, including the payment of a break-up fee in the amount of One Hundred Eighty Thousand Dollars ($180,000) and an expense reimbursement in an amount up to Twenty Five Thousand Dollars ($25,000), subject to the terms and conditions set forth in the Plains APA. Pursuant to the Plains APA, Plains has agreed to sell the Plains Assets for Six Million Two Hundred and Forty Thousand Dollars ($6,240,000) (the "***Plains Purchase Price***") and to assume and assign certain Executory Contracts and Unexpired Leases to the Plains Stalking Horse, subject to higher or otherwise better offers and the Plains Secured Lender's right to credit bid under section 363(k) of the Bankruptcy Code.

(b)    ***Purchased Assets***.  As more fully described in section 1.1 of the Plains APA, the Plains Assets include, but are not limited to, the following Assets of Plains:

(i)    that certain Lease Agreement by and between Texas Tech University and Plains as lessee, dated August 1, 1999, as amended;

(ii)    all inventory used or held for use at Garrison;

(iii)    all furniture, fixtures, equipment, tools, machinery, vehicles and all other tangible personal property owned by Plains and used in connection with Garrison;

(iv)    to the extent assignable or transferable, all personal property leases with respect to ownership of Garrison; and

(v)    to the extent assignable or transferable, all general intangibles related to the ownership, possession, lease or use of the Plains Assets, including without limitation, lien waivers, surety agreements, bonds, warranties, guaranties, utility use agreements, covenants, commitments, permits, certificates, regulatory approvals, entitlements, service marks, trademarks and trade names owned or employed by Plains in conjunction with the ownership of Garrison.

(c)    ***Excluded Assets***.  The Plains Assets exclude certain assets (the "***Plains Excluded Assets***"), including, but not limited to, the following assets of Plains:

(i)      cash, cash equivalents and short-term investments;

(ii)     assets owned and provided by vendors of services or goods to Garrison;

(iii)    organizational record books and minute books;

(iv)    all bank accounts; and

(v)     certain rights, claims and choses in action, and any payments, awards or other proceeds resulting therefrom.

The aforementioned Plains Excluded Assets, with the exception of items ii, iii and v, are subject to the security interest of the Plains Secured Lender and will be distributed to the Holder of the Plains Secured Loan Claim. Such encumbered Excluded Assets shall be referred to herein as the "*Plains Encumbered Excluded Assets*." The remaining unencumbered Plains Excluded Assets, to the extent they are owned by Plains, will be transferred to the Liquidating Trust.

(d)    *Assumed Liabilities*. As part of the consideration for the Plains Sale, the Plains Stalking Horse has agreed to assume all amounts payable pursuant to section 365 of the Bankruptcy Code for all of Plains's Executory Contracts and Unexpired Leases to be assumed and assigned to the Plains Stalking Horse pursuant to the Plains APA.

(e)    *Indemnification Trust Fund*. Subject to the occurrence of the closing on the Plains APA, and pursuant to the terms set forth therein, Plains has agreed to escrow a portion of the Plains Purchase Price in an amount equal to Two Hundred and Fifty Thousand Dollars ($250,000) to fund certain indemnification obligations of Plains for a period of one (1) year following the closing on the Plains APA. Upon expiration of the one year indemnification period, the amount remaining in the escrow fund shall constitute part of the Net Sale Proceeds of the Plains Sale and shall be transferred to the Plains Secured Lender.

(f)    *Bankruptcy Court Approval of Plains Sale.* After receiving no other qualified bids for the Plains Assets, the Plains Stalking Horse was deemed the "*Plains Successful Bidder*" and Plains thereafter sought and obtained Bankruptcy Court approval to sell the Plains Assets to the Plains Stalking Horse in accordance with the Plains APA [Docket No. 559]. On December 31, 2014, Plains closed on the Plains Sale to the Plains Stalking Horse.

6.5    *Transfer of Undeveloped Properties to Liquidating Trust*. On the Effective Date, the Undeveloped Properties located in Waco and Abilene, Texas will be transferred to the Liquidating Trust, subject to the existing Liens and interests of TMF and the Obligated Group Bond Trustee, to be sold or otherwise disposed of with the consent of TMF and the Obligated Group Bond Trustee.

6.6    *Transition of Management and Operations Agreements for VLB Homes*. On December 5, 2014, SDI entered into that certain Management Transfer Agreement (as the same may be amended, modified, or supplemented from time to time, the "*Management Transfer Agreement*") with Touchstone Veterans Management, Ltd. ("*New Manager*"),

providing for (i) the termination of SDI's management responsibilities with respect to the VLB Homes, (ii) the assumption by the New Manager of the management and operation of the VLB Homes in accordance with the terms of new management agreements by and between the New Manager and VLB, and (iii) the cooperation of SDI and the New Manager in effecting the change of management to ensure the continued and uninterrupted operation of the VLB Homes in a manner that does not jeopardize the health, care, or welfare of the VLB Homes's residents. In furtherance of the Management Transfer Agreement, on December 17, 2014, the Bankruptcy Court approved of a stipulation reached between the Debtors and the VLB regarding (i) the transition of operations of the VLB Homes from SDI to the New Manager in accordance with the Management Transfer Agreement; and (ii) SDI's use of funds received from the VLB to (a) satisfy the SDI DIP Loan, (b) make payments to SMRS for post-petition shared services that have been deferred, and (c) make payments otherwise contemplated by a budget approved by the VLB [Docket No. 620].

      6.7    ***Sources of Consideration.***  All consideration necessary to make payments or distributions pursuant to this Plan shall be obtained from (i) Cash on hand; (ii) the Net Sale Proceeds of the Sales; (iii) the Excluded Assets; (iv) the Encumbered Excluded Assets; (v) the Causes of Action; (vi) the Undeveloped Properties; and (vii) all other unencumbered Assets of the Plan Debtors not otherwise sold pursuant to the Sales.

      6.8    ***Liquidating Trust***

      (a)    ***Establishment of Liquidating Trust***.  On the Effective Date, the Liquidating Trustee shall sign the Liquidating Trust Agreement and, in his capacity as Liquidating Trustee, accept all Liquidating Trust Assets on behalf of the Beneficiaries thereof, and be authorized to obtain, seek the turnover, liquidate, and collect all of the Liquidating Trust Assets not in his possession.  The Liquidating Trust will then be deemed created and effective without any further action by the Bankruptcy Court or any Person as of the Effective Date.  The Liquidating Trust shall be established for the purposes of (i) liquidating any non-Cash Liquidating Trust Assets; (ii) prosecuting and resolving the Causes of Action; (iii) maximizing recovery of the Liquidating Trust Assets for the benefit of the Beneficiaries; and (iv) distributing the proceeds of the Liquidating Trust Assets to the Beneficiaries in accordance with this Plan and the Liquidating Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except only in the event and to the extent necessary for, and consistent with, the liquidating purpose of the Liquidating Trust.

      (b)    ***Appointment of the Liquidating Trustee***.  The Liquidating Trustee shall be appointed pursuant to the Confirmation Order and subject to removal only by the Bankruptcy Court upon application or motion by a Beneficiary of the Liquidating Trust, after notice and a hearing, and for cause shown, including (i) the willful and continued refusal by the Liquidating Trustee to perform his duties under this Plan and the Liquidating Trust Agreement, and (ii) gross negligence, gross misconduct, fraud, embezzlement or theft.  The Liquidating Trustee will be chosen by the Plan Debtors, after consultation with the Beneficiaries.  During the term of the Liquidating Trust, the Liquidating Trustee shall be entitled to compensation payable from the Liquidating Trust Assets as set forth in the Liquidating Trust Agreement.

(c)     ***Beneficiaries of Liquidating Trust***.  The Holders of Allowed Deficiency Claims and General Unsecured Claims against the Plan Debtors entitled to Distributions shall be the Beneficiaries of the Liquidating Trust.  Such Beneficiaries shall be bound by the Liquidating Trust Agreement.  The interests of the Beneficiaries in the Liquidating Trust shall be uncertificated and nontransferable except upon death of the interest holder or by operation of law.

(d)     ***Vesting and Transfer of Liquidating Trust Assets to the Liquidating Trust***.  Pursuant to Bankruptcy Code section 1141(b), the Liquidating Trust Assets shall vest in the Liquidating Trust free and clear of all Liens, Claims and Interests, except as otherwise specifically provided in this Plan or in the Confirmation Order; *provided, however*, that the Liquidating Trustee may abandon or otherwise not accept any non-Cash Liquidating Trust Assets that the Liquidating Trustee believes, in good faith, have no value to the Liquidating Trust.  Any non-Cash Liquidating Trust Assets that the Liquidating Trustee so abandons or otherwise does not accept shall not be property of the Liquidating Trust.  The Liquidating Trust Assets primarily consist of claims against third parties.  These claims include, but are not limited to, claims against former directors and officers of the Plan Debtors (for which the Debtors have a five million dollar ($5,000,000) insurance policy), claims against former officers and directors, advisors or third parties (exclusive of the Obligated Group Bond Trustee and its former and current employees, agents, representatives, advisors, consultants and attorneys) involved in the 2013 Restructuring, claims against LCS and claims against certain entities with whom the Plan Debtors formerly did business, a list of which will be provided as a Plan Supplement.  These claims will be preserved and transferred to the Liquidating Trust.  The Plan Debtors have agreed to waive preference claims under section 547 of the Bankruptcy Code against third-party, non-insider vendors, except for certain vendors whose identities will be disclosed in the Plan Supplement.

(e)     ***Limited Substantive Consolidation.***  The formation and implementation of the Liquidating Trust is not, and shall not be deemed to constitute or cause in effect, a substantive consolidation of the Plan Debtors.  The Liquidating Trustee shall maintain separate accounts for each of the Plan Debtors, and shall not commingle Liquidating Trust Assets of the various Plan Debtors.  Except to the extent a Liquidating Trust Asset is allocable to a particular Plan Debtor, all Liquidating Trust Assets and the proceeds therefrom will be allocated to the Estates pursuant to the Shared Services Allocation for the period June 10, 2014 to December 31, 2014.

(f)     ***Retention of Professionals***.  The Liquidating Trustee shall have the right to retain the services of attorneys, accountants, and other professionals (collectively, the "***Liquidating Trust Professionals***") that are necessary to assist the Liquidating Trustee in the performance of his duties pursuant to this Plan, the Liquidating Trust Agreement and the Confirmation Order.  The reasonable fees and expenses of such professionals shall be paid by the Liquidating Trustee from the Liquidating Trust Assets upon submission of monthly statements ("***Liquidating Trust Monthly Fee Statements***") for services rendered and cost incurred to the Liquidating Trustee and Bond Trustees for review and approval.  The Liquidating Trustee and Bond Trustees will have thirty (30) days from receipt of each Liquidating Trust Monthly Fee Statement to object to the Liquidating Trust Monthly Fee Statement.  In the event that any

objection is received by the relevant Liquidating Trust Professional that cannot be promptly resolved by the Liquidating Trust Professional and the objecting party, the dispute will be submitted by the Liquidating Trustee to the Bankruptcy Court for adjudication.  The Bankruptcy Court will retain jurisdiction to adjudicate objections to Liquidating Trust Monthly Fee Statements.  In the event that no objection is raised to a Liquidating Trust Monthly Fee Statement within the thirty (30) day period, the requested amount in the Liquidating Trust Monthly Fee Statement will be promptly paid by the Liquidating Trustee, subject to any requirements under the Plan.

(g)     ***Liquidating Trust Expenses***.  Subject to the provisions of the Liquidating Trust Agreement, all costs, expenses and obligations incurred by the Liquidating Trustee in administering this Plan, the Liquidating Trust, or in any manner connected, incidental or related thereto, in effecting distributions from, as applicable, the Liquidating Trust shall be a charge against the Liquidating Trust Assets remaining from time to time in the hands of the Liquidating Trustee.  Such expenses shall be paid in accordance with the Liquidating Trust Agreement.

(h)     ***Certain Powers and Duties of the Liquidating Trust and Liquidating Trustee.***

(i)     ***General Powers of the Liquidating Trustee.***  The Liquidating Trustee shall be the exclusive trustee of the Liquidating Trust and the Liquidating Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3).  The powers, rights, and responsibilities of the Liquidating Trustee shall be specified in the Liquidating Trust Agreement and shall include the authority and responsibility to:  (a) receive, manage, invest, supervise, and protect the Liquidating Trust Assets; (b) pay taxes or other obligations incurred by the Liquidating Trust; (c) retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals and consultants to advise and assist in the administration, prosecution and distribution of Liquidating Trust Assets; (d) calculate and implement Distributions of Liquidating Trust Assets; (e) investigate, prosecute, compromise, and settle, in accordance with the specific terms of the Liquidating Trust Agreement, Causes of Action vested in the Liquidating Trust; (f) resolve issues involving Claims and Interests in accordance with this Plan; (g) undertake all administrative functions of the Plan Debtors' Chapter 11 Cases, including the payment of fees payable to the United States Trustee and the ultimate closing of the Plan Debtors' Chapter 11 Cases.  The Liquidating Trust is the successor to the Plan Debtors and their Estates.

(ii)     ***Books and Records***.  On the Effective Date, the Liquidating Trust shall:  (a) take possession of all books, records, and files of the Plan Debtors and their respective Estates; and (b) provide for the retention and storage of such books, records, and files until such time as the Liquidating Trust determines, in accordance with the Liquidating Trust Agreement, that retention of same is no longer necessary or required.

(iii)     ***Investments of Cash***.  The Liquidating Trust may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by Bankruptcy Code section 345 or in other prudent investments, *provided, however*, that such investments are

permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

(iv) **Claims Process**. The Liquidating Trust shall have the right to object to Claims not otherwise Allowed in connection with post-Effective Date Claims allowance process.

(v) **Reporting**. In no event later than thirty (30) Business Days after the end of the first full month following the Effective Date and on a quarterly basis thereafter until all Cash in the Liquidating Trust has been distributed in accordance with this Plan, the Liquidating Trustee shall file with the Bankruptcy Court a report setting forth the amounts, recipients and dates of all Distributions made by the Liquidating Trustee under this Plan through each applicable reporting period.

(vi) **Tax Reporting**. The Liquidating Trustee shall file tax returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Plan. The Liquidating Trust also shall annually (for tax years in which Distributions from the Liquidating Trust are made) send to each Beneficiary a separate statement setting forth the Beneficiary's share of items of income, gain, loss, deduction or credit and all such holders shall report such items on their federal income tax returns; *provided, however,* that no such statement need be sent to any Class that is not expected to receive any Distribution from the Liquidating Trust. The Liquidating Trust's taxable income, gain, loss, deduction or credit will be allocated to the Liquidating Trust's Beneficiaries in accordance with their relative beneficial interests in the Liquidating Trust.

As soon as possible after the Effective Date, the Liquidating Trust shall make a good faith valuation of assets of the Liquidating Trust, and such valuation shall be used consistently by all parties for all federal income tax purposes. The Liquidating Trust also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidating Trust that are required by any Governmental Unit for taxing purposes. The Liquidating Trust may request an expedited determination of taxes of the Plan Debtors or of the Liquidating Trust under Bankruptcy Code section 505(b) for all tax returns filed for, or on behalf of, the Plan Debtors and the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

The Liquidating Trust shall be responsible for filing all federal, state, and local tax returns for the Plan Debtors and the Liquidating Trust. The Liquidating Trust shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions made by the Liquidating Trust shall be subject to any such withholding and reporting requirements.

(vii) **Payment of Taxes**. The Liquidating Trust shall be responsible for payments of all Allowed tax obligations of the Plan Debtors, and any taxes imposed on the Liquidating Trust or the Liquidating Trust Assets.

(i) ***Preservation of Right to Conduct Investigations***. The preservation for the Liquidating Trust of any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 is necessary and relevant to the liquidation and administration of the Liquidating Trust Assets. Accordingly, any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 held by the Plan Debtors prior to the Effective Date shall vest with the Liquidating Trust and shall continue until dissolution of the Liquidating Trust.

(j) ***Prosecution and Resolution of Causes of Action***.

(i) ***The Liquidating Trust's Exclusive Authority to Pursue, Settle, or Abandon Causes of Action***. From and after the Effective Date, prosecution and settlement of all Causes of Action, including Avoidance Actions, transferred to the Liquidating Trust shall be the sole responsibility of the Liquidating Trust pursuant to the Plan and the Confirmation Order. From and after the Effective Date, the Liquidating Trust shall have the rights, powers, and interests of the Plan Debtors' Estates to pursue, settle or abandon such Causes of Action as the sole representative of the Plan Debtors' Estates pursuant to Bankruptcy Code section 1123(b)(3) and subject to the terms of the Plan, the Confirmation Order, and the Liquidating Trust Agreement. Notwithstanding the foregoing, before abandoning any Cause of Action, the Liquidating Trustee shall provide notice and an opportunity to object to such abandonment to all Beneficiaries. Proceeds recovered from all Causes of Action will be deposited into the Liquidating Trust and will be distributed by the Liquidating Trustee to the Beneficiaries in accordance with the provisions of the Plan and Liquidating Trust Agreement. All Causes of Action, including Avoidance Actions, that are not expressly released or waived under the Plan are reserved and preserved and vest in the Liquidating Trust in accordance with the Plan. No Person may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Plan Debtors or Liquidating Trustee will not pursue any and all available Causes of Action against such Person. The Liquidating Trustee expressly reserves all Causes of Action, except for any Causes of Action against any Person that are expressly released or waived under the Plan, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of confirmation or consummation of the Plan. No claims or Causes of Action against the Released Parties shall be transferred to the Liquidating Trust, the Liquidating Trustee shall not have standing to pursue such claims or Causes of Action, and all such claims and Causes of Action shall be waived, released and discharged pursuant to the Plan.

(ii) ***Settlement of Causes of Action***. Settlement by the Liquidating Trust of any Cause of Action transferred to the Liquidating Trust shall require: (i) approval only of the Liquidating Trustee if the amount claimed by the Liquidating Trust against a defendant is less than one million dollars ($1,000,000); and (ii) approval of the Liquidating Trustee and the Bankruptcy Court, upon notice and a hearing, if the amount claimed by the Liquidating Trust against a defendant is unliquidated or equals to or exceeds one million dollars ($1,000,000).

(k)     ***Federal Income Tax Treatment of the Liquidating Trust for the Liquidating Trust Assets***.  For federal income tax purposes, it is intended that the Liquidating Trust be classified as a liquidating trust under section 301.7701-4 of the Treasury regulations and that such trust be owned by its beneficiaries.  Accordingly, for federal income tax purposes, it is intended that the Beneficiaries be treated as if they had received a distribution from the Plan Debtors' Estates of an undivided interest in each of the Liquidating Trust Assets (to the extent of the value of their respective share in the applicable assets) and then contributed such interests to the Liquidating Trust, and the Liquidating Trust's Beneficiaries will be treated as the grantors and owners thereof.

(l)     ***Limitation of Liability.***  No recourse will ever be had, directly or indirectly, against the Liquidating Trustee, its members, officers, directors, employees, professionals, representatives, agents, successors or assigns, by legal or equitable proceedings or by virtue of any statute or otherwise, or any deed of trust, mortgage, pledge or note, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Liquidating Trust under this Plan or by reason of the creation of any indebtedness by the Liquidating Trust or the Liquidating Trustee under this Plan.  All such liabilities under this Plan will be enforceable only against, and will be satisfied only out of, the Liquidating Trust Assets.  The Liquidating Trust and the Liquidating Trustee and their respective officers, directors, employees, professionals, representatives, agents, successors or assigns will not be liable for any act they may do, or omit to do hereunder in good faith and in the exercise of their sound judgment; *provided, however*, that this section will not apply to any gross negligence or willful misconduct by the Liquidating Trust and the Liquidating Trustee or their respective officers, directors, employees, professionals, representatives, agents, successors or assigns.

(m)     ***Term of Liquidating Trust***.  The Liquidating Trustee shall be discharged and the Liquidating Trust shall be terminated, at such time as (i) all Disputed Claims have been resolved, (ii) all of the Liquidating Trust Assets have been liquidated, (iii) all duties and obligations of the Liquidating Trustee under the Liquidating Trust Agreement have been fulfilled, (iv) all Distributions required to be made by the Liquidating Trust under this Plan and the Liquidating Trust Agreement have been made, and (v) the Plan Debtors' Chapter 11 Cases have been closed; *provided, however*, that in no event shall the Liquidating Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the fifth anniversary (or the end of any extension period approved by the Bankruptcy Court), determines that a fixed period extension not to exceed one (1) year is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.

(n)     ***Conflicts Between the Liquidating Trust Agreement and the Plan***.  In the event of any inconsistencies or conflict between the Liquidating Trust Agreement and this Plan, the terms and provisions of this Plan shall control.

(o)     ***Excess Funds***.  In the event there is Liquidating Trust Distributable Cash remaining after all required Distributions under the Plan and the Liquidating Trust Agreement have been, such Cash will be turned over to the Attorney General for the State of Texas in accordance with Texas law.

## SECTION 7.    DISTRIBUTIONS

7.1    ***Distribution Record Date***.  As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Plan Debtors or their agents shall be deemed closed, and there shall be no further changes in the record Holders of any of the Claims or Interests.  The Plan Debtors or the Liquidating Trustee shall have no obligation to recognize any ownership transfer of the Claims or Interests occurring after the Distribution Record Date.  The Plan Debtors, the Liquidating Trustee, or any party responsible for making Distributions shall be entitled to recognize and deal for all purposes hereunder only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

7.2    ***Date of Distributions.***  Except as otherwise provided in this Plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such a Claim becomes an Allowed Claim or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Plan Debtors shall receive the full amount of the Distributions that this Plan provides for Allowed Claims in the applicable Class and in the manner provided herein.  Distributions made after the Effective Date to holders of Allowed Claims shall be deemed to have been made on the Effective Date and, except as otherwise provided in this Plan, no interest shall accrue or be payable with respect to such Claims or any Distribution related thereto.  In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, Distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in this Plan.  Except as otherwise provided herein, Holders of Claims shall not be entitled to interest, dividends or accruals on the Distributions provided for herein, regardless of whether such Distributions are delivered on or at any time after the Effective Date.

7.3    ***Disbursing Agent.***  Except as otherwise provided in this Plan, all Distributions under this Plan shall be made by the Plan Debtors or Liquidating Trustee as Disbursing Agent or such other Person designated by the Plan Debtors or Liquidating Trustee as a Disbursing Agent on the Effective Date.

7.4    ***Rights and Powers of Disbursing Agent.***  The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under this Plan; (b) make all Distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of this Plan.

7.5    ***Delivery of Distributions in General.***  Except as otherwise provided in this Plan, Distributions to Holders of Allowed Claims shall be made to Holders of record as of the Distribution Record Date by the Disbursing Agent.  Distributions to Holders of Allowed

Claims will be made at the address of each such Holder as set forth in the Plan Debtors' books and records, except that, in the case of Holders of Obligated Group Bond Claims and Tyler Bond Claims, the Obligated Group Bond Trustee and Tyler Bond Trustee shall be deemed to be the Holder of the Obligated Group Bond Claims and Tyler Bond Claims, respectively, for purposes of Distributions to be made hereunder, and all Distributions on account of such Claims shall be made to or at the direction of the Obligated Group Bond Trustee and Tyler Bond Trustee. As soon as practicable, the Obligated Group Bond Trustee and Tyler Bond Trustee shall arrange to deliver such distributions to or on behalf of the Holders of Allowed Obligated Group Bond Claims and Tyler Bond Claims, respectively, as provided for and pursuant to the terms of the applicable Obligated Group Bond Documents and the Tyler Bond Documents. None of the Plan Debtors or the Liquidating Trustee shall incur any liability whatsoever on account of any Distributions under this Plan except for gross negligence, willful misconduct or fraud.

7.6 ***Payments and Distributions on Disputed Claims.*** Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date. Notwithstanding any provision otherwise in this Plan and except as may be agreed to by the Plan Debtors or the Liquidating Trustee, on the one hand, and the Holder of a Disputed Claim, on the other hand, no partial payments and no partial Distributions shall be made with respect to any Disputed Claim until all Disputed Claims held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

7.7 ***Manner of Payment***. Any Distributions to be made by or on behalf of the Plan Debtors or the Liquidating Trustee, as applicable, pursuant to this Plan shall be made by checks drawn on accounts maintained by the Plan Debtors or the Liquidating Trustee, respectively, or by wire transfer if circumstances justify, at the option of the Plan Debtors or the Liquidating Trustee, as applicable; *provided, however*, all Distributions to the Obligated Group Bond Trustee and Tyler Bond Trustee shall be made by wire.

7.8 ***Undeliverable Distributions and Unclaimed Property.*** In the event that any Distribution to any Holder is returned as undeliverable, no Distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then current address of such Holder, at which time such Distribution shall be made as soon as practicable after such Distribution has become deliverable; *provided, however*, that such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and forfeited at the expiration of six months from the date of the Distribution. After such date, all "unclaimed property" or interests in property shall revert to the Liquidating Trust (notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary), and the Claim of any Holder to such property shall be discharged and forever barred.

7.9 ***Withholding and Reporting Requirements.*** In connection with this Plan and all instruments issued in connection therewith, the Disbursing Agent shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all Distributions under this Plan shall be subject to any such withholding or reporting requirements.

7.10     ***Surrender Instruments***.  Pursuant to Bankruptcy Code section 1143, as a condition precedent to receiving any Distribution under the Plan, each holder of a certificated instrument or note must surrender such instrument or note held by it to the Disbursing Agent or its designee.  Any holder of such instrument or note that fails to (i) surrender the instrument or note or (ii) execute and deliver an affidavit of loss and/or indemnity reasonably satisfactory to the Disbursing Agent, as applicable, before the fifth anniversary of the Confirmation Date shall be deemed to have forfeited all rights and claims and may not participate in any Distribution hereunder.  Any Distribution so forfeited shall become property of the Liquidating Trust.  This section is inapplicable to the holders of the Obligated Group Bonds and the Tyler Bonds.

7.11     ***Setoffs.***  The Plan Debtors and the Liquidating Trustee may, but shall not be required to, set off against any Claim (for purposes of determining the Allowed amount of such Claim on which a Distribution shall be made), any claims of any nature whatsoever that the Plan Debtors and the Liquidating Trustee may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Plan Debtors and the Liquidating Trustee of any such claim the Plan Debtors and the Liquidating Trustee may have against the Holder of such Claim.

7.12     ***Insurance Claims.***  No Distributions under this Plan shall be made on account of Allowed Claims until the Holder of such Allowed Claim has exhausted all remedies with respect to the Plan Debtors' Insurance Policies.  To the extent that one or more of the Plan Debtors' insurers agrees to satisfy in full a Claim, then immediately upon such insurers' agreement, such Claim may be expunged without a Claims objection having to be filed and without any further notice to or action, order or approval of the Bankruptcy Court.

7.13     ***Applicability of Insurance Policies.***  Except as otherwise provided in this Plan, Distributions to Holders of Allowed Claims shall be made in accordance with the provisions of any applicable Insurance Policy.  Nothing contained in this Plan shall constitute or be deemed a waiver of any Cause of Action that the Plan Debtors, Liquidating Trustee or any Person may hold against any insurers under any of the Plan Debtors' Insurance Policies, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

7.14     ***No Postpetition Interest***.  Unless otherwise specifically provided for herein or in the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims or Interests, and no Holder of a Claim or Interest shall be entitled to interest accruing on or after the Petition Date on such Claim.

7.15     ***Distributions Free and Clear***.  Except as may be otherwise provided herein, all Distributions under this Plan shall be free and clear of any Liens, Claims, encumbrances, and other interests.

7.16     ***Fractional Dollars; De Minimis Distributions***.  Notwithstanding any other provision of this Plan, Cash payments of fractions of dollars shall not be made.  Whenever any Distribution to a Holder of a Claim would otherwise call for Distribution of Cash in a fractional dollar amount, the actual Distribution of such Cash shall be rounded to the nearest

whole dollar (up or down), with half dollars (or less) being rounded down. Neither the Plan Debtors nor the Liquidating Trustee shall be required to make any Cash payment of less than ten dollars ($10.00) with respect to any Claim or Interest unless a request therefor is made in writing to the Plan Debtors or the Liquidating Trustee, as applicable; provided, however, that neither the Plan Debtor nor the Liquidating Trustee shall have any obligation to make any Distribution, whether final or not, unless and until the total amount of such Distribution to a specific Holder of an Allowed Claim or Interest is equal to or greater than five dollars ($5.00).

7.17 *Single Satisfaction of Claims.* Holders of Allowed Claims may assert such Claims against each Plan Debtor obligated with respect to such Claim, and such Claims shall be entitled to share in the recovery provided for the applicable Class of Claims against each obligated Plan Debtor based upon the full Allowed amount of the Claim. Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under this Plan on account of Allowed Claims exceed 100% of the underlying Allowed Claim.

## SECTION 8. PROCEDURES FOR DISPUTED CLAIMS

8.1 *Allowance of Claims and Interests*. Except as expressly provided herein, or in any order entered in the Plan Debtors' Chapter 11 Cases prior to the Effective Date, including the Confirmation Order, no Claim or Interest shall be deemed Allowed unless and until such Claim or Interest is deemed Allowed under this Plan or the Bankruptcy Code or Allowed by the Bankruptcy Court by entry of a Final Order allowing such Claim or Interest. Prior to and following the Effective Date, the Liquidating Trust shall be vested with any and all rights and defenses the Plan Debtors had with respect to any Claim or Interest immediately prior to the Effective Date.

8.2 *Objections to Claims*. The Plan Debtors (before the Effective Date) or the Liquidating Trustee (on or after the Effective Date), as applicable, shall have the exclusive authority to file, settle, compromise, withdraw or litigate to judgment any objections to General Unsecured Claims as permitted under this Plan. Any objections to claims shall be filed and served on or before the later of (i) one hundred eighty (180) days after the Effective Date or (ii) such date as may be fixed by the Bankruptcy Court. From and after the Effective Date, the Liquidating Trustee may settle or compromise any Disputed Claim without approval of the Bankruptcy Court. The Plan Debtors and the Liquidating Trustee reserve all rights to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

8.3 *Estimation of Claims.* The Plan Debtors (before the Effective Date) or the Liquidating Trustee (on or after the Effective Date) may, at any time, and from time to time, request that the Bankruptcy Court estimate any Contingent Claim or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to such objection. In the event that the Bankruptcy Court estimates any Contingent Claim or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a

maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Plan Debtors or the Liquidating Trustee may pursue supplementary proceedings to object to the allowance of such Claim; *provided, however*, the Liquidating Trustee may elect not to pursue such supplementary proceedings, instead electing to treat such maximum amount as the Allowed amount of such Claim.

8.4 ***No Distribution Pending Allowance***. Notwithstanding any other provision of this Plan, if any portion of a Claim is Disputed, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

8.5 ***Distributions after Allowance.*** At such time as a Contingent Claim or a Disputed Claim becomes an Allowed Claim, a Distribution shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Plan as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Contingent Claim or Disputed Claim becomes a Final Order. To the extent that all or a portion of a Contingent Claim or a Disputed Claim is disallowed, the Holder of such Claim shall not receive any Distribution on account of the portion of such Claim that is disallowed.

8.6 ***Preservations of Rights to Settle Claims***. In accordance with section 1123(b) of the Bankruptcy Code, the Liquidating Trustee shall have the discretion to retain and enforce, sue on, settle, or compromise all claims, rights, causes of action, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Plan Debtors or their Estates may hold against any person or entity without the approval of the Bankruptcy Court, subject to the terms of this Plan, the Confirmation Order, the Liquidating Trust Agreement, and any contract, instrument, release, indenture, or other agreement entered into in connection herewith. The Liquidating Trustee may pursue such retained claims, rights, or causes of action, suits, or proceedings, as appropriate, in accordance with the best interests of the Liquidating Trust and its Beneficiaries.

8.7 ***Disallowed Claims***. All Claims held by persons or entities against whom or which the Plan Debtors or Liquidating Trustee has commenced a proceeding asserting a cause of action under sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Bankruptcy Code shall be deemed Disallowed Claims pursuant to section 502(d) of the Bankruptcy Code and Holders of such Claims shall not be entitled to vote to accept or reject the Plan. Disallowed Claims pursuant to this Section shall continue to be Disallowed Claims for all purposes until the avoidance action against such party has been settled or resolved by Final Order and any sums due to the Plan Debtors or Liquidating Trustee from such party have been paid.

## SECTION 9. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

9.1 ***Assumption and Rejection of Executory Contracts and Unexpired Leases.*** Except as otherwise provided in this Plan, or in any contract, instrument, release, indenture or other agreement or document entered into in connection with this Plan, including, but not limited to, the Obligated Group APA, Tyler APA, Caprock APA, Plains APA and any

other asset purchase agreement entered into by the Plan Debtors in connection with the Sales, each of the Executory Contracts and Unexpired Leases of the Plan Debtors shall be deemed rejected as of the Effective Date, unless such Executory Contract or Unexpired Lease:  (1) was assumed or rejected previously by the applicable Plan Debtor; (2) expired or terminated pursuant to its own terms before the Effective Date; (3) is the subject of a motion to assume or reject filed on or before the Effective Date; or (4) is identified as an Executory Contract or Unexpired Lease to be assumed in connection with the Sales.

      9.2    ***Inclusiveness***.  Unless otherwise specified, each Executory Contract and Unexpired Lease assumed or rejected by the Plan Debtors shall include any and all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such Executory Contract or Unexpired Lease.

      9.3    ***Rejection Claims***.  Except as otherwise provided in orders entered by the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Bankruptcy Court and served on counsel to the Plan Debtors or the Liquidating Trustee on or before the date that is thirty (30) days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection; *provided, that* any such Claims arising from the rejection of an Unexpired Lease shall be subject to the cap on rejection damages imposed by Bankruptcy Code section 502(b)(6).  Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion and shall not be enforceable against the Plan Debtors or the Liquidating Trustee, the Plan Debtors' Estates or their property without the need for any objection by the Plan Debtors or the Liquidating Trustee or further notice to, or action, order or approval of the Bankruptcy Court.  All Allowed Claims arising from the rejection of the Plan Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims against the applicable Plan Debtor and shall be treated in accordance with this Plan.

      9.4    ***Cure of Defaults.***  Any monetary amounts by which any Executory Contract or Unexpired Lease to be assumed under this Plan or otherwise is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by Cure.  If there is a dispute regarding (i) the nature or amount of any Cure, (ii) the ability of the Successful Bidders to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed or (iii) any other matter pertaining to assumption, Cure shall occur following the entry of a Final Order of the Bankruptcy Court resolving the dispute and approving the assumption.

      9.5    ***Full Release and Satisfaction***.  Assumption of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of the assumption.

66

9.6 **Reservation of Rights.** Nothing contained in this Plan or the Plan Supplement shall constitute an admission by the Plan Debtors or the Liquidating Trustee that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Plan Debtors or the Liquidating Trustee have any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Plan Debtors or the Liquidating Trustee, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

## SECTION 10. CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

10.1 **Conditions Precedent to Confirmation.** Confirmation of this Plan shall not occur, and the Confirmation Order shall not be entered, until each of the following conditions precedent have been satisfied or waived pursuant to the provisions of this Plan:

(a) The Bankruptcy Court shall have entered an order, which shall not be subject to any stay or subject to an unresolved request for revocation under section 1144 of the Bankruptcy Code, in form and substance acceptable to the Plan Debtors, approving the Disclosure Statement with respect to this Plan and the solicitation of votes thereon as being in compliance with section 1125 of the Bankruptcy Code and applicable non-bankruptcy law;

(b) The proposed Confirmation Order shall be in form and substance satisfactory in all respects to the Plan Debtors and the Bond Trustees; and

(c) The Plan and the Plan Supplement, including any schedules, documents, supplements and exhibits thereto shall be, in form and substance, acceptable to the Plan Debtors.

10.2 **Conditions Precedent to the Effective Date.** The Effective Date shall not occur until each of the following conditions precedent have been satisfied or waived pursuant to the provisions of this Plan:

(a) The Bankruptcy Court shall have entered the Confirmation Order, in form and substance acceptable to the Plan Debtors and the Bond Trustees, and such Confirmation Order shall not be subject to any stay or an unresolved request for revocation under section 1144 of the Bankruptcy Code;

(b) The Bankruptcy Court shall have entered one or more orders, in form and substance acceptable to the Plan Debtors and the applicable Bond Trustee, (i) authorizing the Sales to the Successful Bidders pursuant to section 363 of the Bankruptcy Code and (ii) authorizing the assumption and assignment of Executory Contracts and Unexpired Leases by the Plan Debtors as contemplated by the asset purchase agreements governing the Sales;

(c) The Plan Debtors shall have closed on the Sales; and

(d)    All actions, documents, certificates, and agreements necessary to implement this Plan, including, without limitation, the Liquidating Trust Agreement, shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws.

10.3    *Waiver of Conditions.*  The conditions to confirmation and consummation of this Plan set forth herein may be waived at any time by the Plan Debtors without notice to any other parties in interest or the Bankruptcy Court and without a hearing; *provided, however*, that the Plan Debtors may not waive the conditions set forth in Section 10.1(b), 10.2(a), 10.2(b) or the entry of the Order approving the Disclosure Statement and the Confirmation Order.

10.4    *Effect of Failure of Conditions.*  If the consummation of this Plan does not occur, this Plan shall be null and void in all respects and nothing contained in this Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any claims by or Claims against the Plan Debtors; (2) prejudice in any manner the rights of the Plan Debtors, any Holders of Claims or any other Person; or (3) constitute an admission, acknowledgment, offer or undertaking by the Plan Debtors, any Holders or any other Person in any respect.

## SECTION 11.  EFFECT OF CONFIRMATION

11.1    *Immediate Binding Effect.*  Notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or any other Bankruptcy Rule, upon the occurrence of the Effective Date, the terms of this Plan and the Liquidating Trust Agreement shall be immediately effective and enforceable and deemed binding upon the Plan Debtors, the Liquidating Trustee, the Liquating Trust and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted this Plan), all Persons that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions described in this Plan, each Person acquiring property under this Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Plan Debtors.

11.2    *Compromise and Settlement of Claims, Interests and Controversies.*  Pursuant to sections 363 and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided pursuant to this Plan, the provisions of this Plan shall constitute a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any Distribution to be made on account of such Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Plan Debtors, their Estates and Holders of Claims and Interests and is fair, equitable and reasonable.

11.3    *Discharge of Claims and Termination of Interests.*  Except as otherwise provided herein or in the Confirmation Order, the rights afforded herein and the payments and Distributions to be made hereunder shall discharge all existing debts and Claims, and terminate all Interests in the Plan Debtors of any kind, nature, or description whatsoever against or in the

Plan Debtors or any of their Assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code. Except as provided herein, on the Effective Date, all existing Claims against the Plan Debtors and Interests in the Plan Debtors shall be deemed to be discharged and terminated, and all Holders of Claims and Interests shall be precluded and enjoined from asserting against the Plan Debtors or the Liquidating Trust or any of their Assets or properties, any other or further Claim or Interest based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such Holder has filed a Proof of Claim or proof of interest. Notwithstanding any provision herein, any valid setoff or recoupment rights held against any of the Plan Debtors shall not be affected by the Plan and shall be expressly preserved in the Confirmation Order.

   11.4 ***Releases by the Plan Debtors.*** Pursuant to section 1123(b) of the Bankruptcy Code and except as otherwise specifically provided in this Plan or the Plan Supplement, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious liquidation of the Plan Debtors and the consummation of the transactions contemplated by this Plan, on and after the Effective Date, the Released Parties are deemed released and discharged by the Plan Debtors and their Estates from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Plan Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Plan Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Plan Debtors, the Plan Debtors' Chapter 11 Cases, the Sales or the transactions or events giving rise to any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Plan Debtor and any Released Party, the restructuring of Claims and Interests before or during the Plan Debtors' Chapter 11 Cases, the negotiation, formulation or preparation of this Plan, the Disclosure Statement, any Plan Supplement or related agreements, instruments or other documents (collectively, the "***Plan Debtor Released Claims***"), other than Plan Debtor Released Claims against a Released Party arising out of the gross negligence, willful misconduct, intentional fraud, or criminal liability of any such person or entity.

   11.5 ***Releases by Holders of Claims.*** **ON THE EFFECTIVE DATE, EXCEPT AS OTHERWISE PROVIDED HEREIN AND EXCEPT FOR THE RIGHT TO ENFORCE THIS PLAN, ALL PERSONS WHO (I) VOTED TO ACCEPT THIS PLAN OR WHO ARE PRESUMED OR DEEMED TO HAVE VOTED TO ACCEPT THIS PLAN UNDER SECTION 1126(f) OF THE BANKRUPTCY CODE, (II) ARE ENTITLED TO VOTE TO ACCEPT OR REJECT THIS PLAN AND WHO VOTE TO REJECT THIS PLAN OR ABSTAIN FROM VOTING, AND (III) DO NOT MARK THEIR BALLOTS AS OPTING OUT OF THE RELEASES GRANTED UNDER THIS SECTION, SHALL, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, BE DEEMED TO FOREVER RELEASE, WAIVE AND DISCHARGE THE RELEASED PARTIES OF AND FROM ALL LIENS, CLAIMS, CAUSES OF ACTION, LIABILITIES, ENCUMBRANCES, SECURITY INTERESTS, INTERESTS OR CHARGES OF ANY NATURE OR DESCRIPTION WHATSOEVER RELATING TO THE PLAN DEBTORS, THE CHAPTER 11 CASES OR AFFECTING PROPERTY OF THE ESTATES,**

**WHETHER KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, SCHEDULED OR UNSCHEDULED, CONTINGENT OR NOT CONTINGENT, UNLIQUIDATED OR FIXED, ADMITTED OR DISPUTED, MATURED OR UNMATURED, SENIOR OR SUBORDINATED, WHETHER ASSERTABLE DIRECTLY OR DERIVATIVELY BY, THROUGH, OR RELATED TO ANY OF THE RELEASED PARTIES AND THEIR SUCCESSORS AND ASSIGNS WHETHER AT LAW, IN EQUITY OR OTHERWISE, BASED UPON ANY CONDITION, EVENT, ACT, OMISSION OCCURRENCE, TRANSACTION OR OTHER ACTIVITY, INACTIVITY, INSTRUMENT OR OTHER AGREEMENT OF ANY KIND OR NATURE OCCURRING, ARISING OR EXISTING PRIOR TO THE EFFECTIVE DATE IN ANY WAY RELATING TO OR ARISING OUT OF, IN WHOLE OR IN PART, THE PLAN DEBTORS, THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION OF THIS PLAN, THE NEGOTIATION AND CONSUMMATION OF THE SALES, THE CONSUMMATION OF THIS PLAN OR THE ADMINISTRATION OF THIS PLAN, INCLUDING WITHOUT LIMITATION, THE NEGOTIATION AND SOLICITATION OF THIS PLAN, ALL REGARDLESS OF WHETHER (A) A PROOF OF CLAIM OR EQUITY INTEREST HAS BEEN FILED OR IS DEEMED TO HAVE BEEN FILED, (B) SUCH CLAIM OR EQUITY INTEREST IS ALLOWED OR (C) THE HOLDER OF SUCH CLAIM OR EQUITY INTEREST HAS VOTED TO ACCEPT OR REJECT THIS PLAN, EXCEPT FOR WILLFUL MISCONDUCT OR GROSS NEGLIGENCE. FOR THE AVOIDANCE OF DOUBT, NOTHING CONTAINED HEREIN SHALL IMPACT THE RIGHT OF ANY HOLDER OF AN ALLOWED CLAIM TO RECEIVE A DISTRIBUTION ON ACCOUNT OF ITS ALLOWED CLAIM IN ACCORDANCE WITH SECTION 4 HEREOF.**

11.6 *Exculpation.* None of the Exculpated Parties shall have or incur any liability to any Holder of a Claim or Interest, or other party in interest, or any of their respective members, officers, directors, employees, advisors, professionals, attorneys or agents or any of their successors and assigns, with respect to any Exculpated Claim, including, without limitation, any act or omission in connection with, related to, or arising out of, in whole or in part, the Plan Debtors' Chapter 11 Cases, except for their willful misconduct or gross negligence as determined by a Final Order of a court of competent jurisdiction, and, in all respects, the Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.

11.7 *Injunction.* **FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS AGAINST OR INTEREST IN THE PLAN DEBTORS ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY CAUSE OF ACTION RELEASED OR TO BE RELEASED PURSUANT TO THIS PLAN OR THE CONFIRMATION ORDER.**

**FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASES AND EXCULPATION GRANTED IN THIS PLAN, THE RELEASING PARTIES SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THE**

**EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED PURSUANT TO THIS PLAN.**

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN, THE PLAN SUPPLEMENT OR RELATED DOCUMENTS, OR FOR OBLIGATIONS ISSUED PURSUANT TO THIS PLAN, ALL PERSONS WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED, DISCHARGED, OR ARE SUBJECT TO EXCULPATION, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS: (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (B) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST SUCH PERSONS ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (C) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH PERSONS OR THE PROPERTY OR ESTATES OF SUCH PERSONS ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; AND (D) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED, SETTLED OR DISCHARGED PURSUANT TO THIS PLAN.**

**THE RIGHTS AFFORDED IN THIS PLAN AND THE TREATMENT OF ALL CLAIMS AND INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF ALL CLAIMS AND INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE PLAN DEBTORS OR ANY OF THEIR ASSETS, PROPERTY OR ESTATES. ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST THE PLAN DEBTORS SHALL BE FULLY RELEASED AND DISCHARGED, AND THE INTERESTS SHALL BE CANCELLED (EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN).**

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR IN THIS PLAN OR IN OBLIGATIONS ISSUED PURSUANT HERETO FROM AND AFTER THE EFFECTIVE DATE, ALL CLAIMS AGAINST THE PLAN DEBTORS SHALL BE FULLY RELEASED AND DISCHARGED, AND ALL INTERESTS SHALL BE CANCELLED, AND THE PLAN DEBTORS' LIABILITY WITH RESPECT THERETO SHALL BE EXTINGUISHED COMPLETELY, INCLUDING ANY LIABILITY OF THE KIND SPECIFIED UNDER SECTION 502(g) OF THE BANKRUPTCY CODE.**

**ALL PERSONS SHALL BE PRECLUDED FROM ASSERTING AGAINST THE PLAN DEBTORS, THE PLAN DEBTORS' ESTATES, EACH OF THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, AND EACH OF THEIR ASSETS AND PROPERTIES, ANY OTHER CLAIMS OR INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE.**

11.8 *Term of Injunctions or Stays*. Unless otherwise provided in this Plan or Confirmation Order, all injunctions or stays provided for under this Plan and ordered in the Confirmation Order or pursuant to sections 105 or 362 of the Bankruptcy Code arising under or entered during the Chapter 11 Cases, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay and to the extent consistent with the terms and provisions of this Plan or the Confirmation Order, as applicable.

11.9 *Injunction Against Interference with Plan*. Upon the Bankruptcy Court's entry of the Confirmation Order, all Holders of Claims and Interests, the Plan Debtors, and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the Plan Debtors', the Liquidating Trust's, the Liquidating Trustee's, and their respective affiliates', employees', advisors', officers' and directors', and agents' implementation or consummation of this Plan.

11.10 *Release of Liens.* Except as otherwise provided in the Plan and the Confirmation Order, or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released and discharged. Except as otherwise provided in the Plan, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Plan Debtors' Estates shall be fully released and discharged on the Effective Date without any further action of any party, including, but not limited to, further order of the Bankruptcy Court or filing updated schedules or statements typically filed pursuant to the Uniform Commercial Code. The liens of the Secured Lenders on their respective Encumbered Excluded Assets shall not be released or discharged until such assets are distributed to the applicable Secured Lender in accordance with the Plan.

11.11 *Effectuating Documents and Further Transactions*. Upon entry of the Confirmation Order, the appropriate officers of the Plan Debtors and the Liquidating Trustee shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other agreements and/or documents, and take such acts and actions as may be reasonably necessary or appropriate to effectuate, implement, consummate, and/or further evidence the terms and conditions of this Plan and any transactions described in or contemplated by this Plan. The Plan Debtors or Liquidating Trustee, as

applicable, may, and all Holders of Allowed Claims or Interests receiving Distributions pursuant to this Plan, at the request or direction of the Plan Debtors or Liquidating Trustee, as applicable, shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

       11.12 ***Corporate Action.*** Upon the Effective Date, all actions contemplated by this Plan shall be deemed authorized and approved in all respects (whether to occur before, on or after the Effective Date). All matters provided for in this Plan involving the corporate structure of the Plan Debtors, and any corporate action required by the Plan Debtors in connection with this Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the directors or officers of the Plan Debtors.

       11.13 ***Cancellation of Documents***. On the Effective Date, except to the extent otherwise provided in this Plan, any and all notes, instruments, debentures, certificates and other documents evidencing Claims and Interests in the Plan Debtors including, without limitation, the Financing Documents shall be deemed inoperative and unenforceable against the Plan Debtors and the Plan Debtors shall have no continuing obligations thereunder; *provided, however*, that (a) the Bond Financing Documents shall continue in effect for purposes of allowing Holders of Obligated Group Bond Claims and Tyler Bond Claims to receive Distributions under the Plan and (b) the Bond Financing Documents shall remain operative and enforceable with respect to any Person, other than the Plan Debtors, which has rights and/or obligations thereunder. Without limiting the preceding sentence, as of the Effective Date, the Bonds shall be cancelled without further action by any party, and the Obligated Group Bonds, the Tyler Bonds and any other documents related to the Obligated Group Bonds and Tyler Bonds shall be deemed to continue in effect solely to the extent they relate to and are necessary to (i) allow applicable Distributions pursuant to the Plan and applicable Bond Financing Documents, (ii) permit the applicable Bond Trustee to be compensated for fees and reimbursed for expenses, including expenses of its professionals, assert its charging lien and enforce its indemnity and other rights and protections with respect to and pursuant to the Bond Financing Documents and any other documents related to the Obligated Group Bonds and the Tyler Bonds; (iii) permit the applicable Bond Trustees to set one or more record dates and distribution dates with respect to the distribution of funds to beneficial holders of the Obligated Group Bonds and the Tyler Bonds; (iv) permit the Bond Trustees to appear in the Chapter 11 Cases with respect to matters relevant to the Obligated Group Bonds and Tyler Bonds, (v) otherwise continue to govern relationships of the Bond Trustees and holders of the Obligated Group Bonds and Tyler Bonds; and (vi) permit the Bond Trustees to perform any functions that are necessary in connection with the foregoing clauses (i) through (v).

       11.14 ***Dissolution of the Plan Debtors***. On the Effective Date and upon the Plan Debtors causing the Liquidating Trust Assets to be transferred to the Liquidating Trust in accordance with section 6.8 of this Plan, the Plan Debtors shall have no further duties or responsibilities in connection with implementation of this Plan. Upon entry of a final decree closing the Plan Debtors' Chapter 11 Cases, the Plan Debtors shall be deemed dissolved for all purposes in accordance with applicable state law without the need to take any further action or

file any plan of dissolution, notice, or application with the Secretary of State of the State of Texas.

11.15 ***Preservation of Causes of Action of the Plan Debtors.*** In accordance with section 1123(b) of the Bankruptcy Code, and except where such Causes of Action have been expressly released (including, for the avoidance of doubt, pursuant to the releases by the Plan Debtors and exculpation provisions provided in the Plan), the Plan Debtors and Liquidating Trustee shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, including, but not limited to, any claims against former officers and directors, advisors or third parties (exclusive of the Obligated Group Bond Trustee and its former and current employees, agents, representatives, advisors, consultants and attorneys) involved in the 2013 Restructuring and the use of Garrison Restricted Cash as well as claims against LCS, whether arising before or after the Petition Date, and the Liquidating Trustee's rights to commence, prosecute or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Plan Debtors have agreed to waive preference claims under section 547 of the Bankruptcy Code against third party, non-insider vendors, except for certain vendors whose identities will be disclosed in the Plan Supplement. The Plan Debtors and Liquidating Trustee may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Creditors and Beneficiaries. No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Plan Debtors or Liquidating Trustee, as applicable, will not pursue any and all available Causes of Action against them. Except with respect to Causes of Action as to which the Plan Debtors and Liquidating Trustee have released any Person or Person on or before the Effective Date, the Plan Debtors and Liquidating Trustee, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Person, except as otherwise expressly provided in the Plan.

## SECTION 12.   MODIFICATION, REVOCATION OR WITHDRAWAL OF THIS PLAN

12.1 ***Modification and Amendments.*** This Plan or any exhibits thereto may be amended, modified, or supplemented by the Plan Debtors in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code. In addition, after the Confirmation Date, the Plan Debtors or Liquidating Trustee may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes and effects of this Plan.

12.2 ***Effect of Confirmation on Modifications.*** Entry of a Confirmation Order shall mean that all modifications or amendments to this Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

12.3 ***Revocation or Withdrawal of this Plan.*** The Plan Debtors reserve the right to, consistent with their fiduciary duties, revoke or withdraw this Plan before the Effective Date. If the Plan Debtors revoke or withdraw this Plan, or if the Confirmation Date does not

occur, then: (a) this Plan shall be null and void in all respects; (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; and (c) nothing contained in this Plan shall: (i) constitute a waiver or release of any Claims or Interests; (ii) prejudice in any manner the rights of the Plan Debtors or any other Person; or (iii) constitute an admission, acknowledgement, offer or undertaking of any sort by the Plan Debtors or any other Person.

## SECTION 13.  RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or related to, the Plan Debtors' Chapter 11 Cases and this Plan, including, but not limited to, jurisdiction to:

(a)     allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured or unsecured status or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount or allowance of Claims;

(b)     decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or this Plan;

(c)     resolve any matters related to: (i) the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which a Plan Debtor is party or with respect to which a Plan Debtor may be liable in any manner and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including rejection Claims and cure Claims, pursuant to section 365 of the Bankruptcy Code or any other matter related to such Executory Contract or Unexpired Lease; (ii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (iii) the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease in connection with the Sales; and (iv) any dispute regarding whether a contract or lease is or was executory or expired;

(d)     ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

(e)     adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, and grant or deny any applications involving a Plan Debtor that may be pending on the Effective Date;

(f)     adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, including, but not limited to, the Causes of Action, involving the Liquidating Trustee or the Liquidating Trust;

(g)     adjudicate, decide or resolve any and all matters related to any Cause of Action;

(h)     adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(i)     enter and enforce any order for the sale of property pursuant to sections 363, 1123 or 1146(a) of the Bankruptcy Code;

(j)     issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation or enforcement of this Plan;

(k)     resolve any cases, controversies, suits, disputes or Causes of Action with respect to the discharge, releases, injunctions, exculpations, indemnifications and other provisions contained in this Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions and other provisions;

(l)     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(m)     resolve any cases, controversies, suits, disputes or Causes of Action that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, the Liquidating Trust, the Liquidating Trust Agreement, any transactions or payments contemplated thereby, or any contract, instrument, release, indenture or other agreement or document relating to any of the foregoing;

(n)     adjudicate any and all disputes arising from or relating to Distributions under this Plan;

(o)     consider any modifications of this Plan, cure any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(p)     determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

(q)     hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(r)     hear and determine all disputes involving the existence, nature or scope of the Plan Debtors' discharge;

(s)     enforce all orders previously entered by the Bankruptcy Court;

       (t)      hear any other matter not inconsistent with the Bankruptcy Code; and

       (u)      enter final decrees closing the Plan Debtors' Chapter 11 Cases.

## SECTION 14.  MISCELLANEOUS PROVISIONS

14.1   ***Payment of Statutory Fees***.  All fees payable pursuant to 28 U.S.C. § 1930 shall be paid on the earlier of when due or the Effective Date by the Plan Debtors.  After the Effective Date, the Liquidating Trustee shall be liable for payment of any such fees until entry of final decrees closing the Plan Debtors' Chapter 11 Cases.

14.2   ***Dissolution of Creditors' Committee.***  On the Effective Date, the Creditors' Committee shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Debtors' Chapter 11 Cases.

14.3   ***Section 1125(e) Good Faith Compliance***.  As of and subject to the occurrence of the Confirmation Date, the Plan Debtors and their Related Persons shall be deemed to have solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation.

14.4   ***Substantial Consummation***.  On the Effective Date, the Plan shall be deemed to be substantially consummated within the meaning set forth in section 1101 and pursuant to section 1127(b) of the Bankruptcy Code.

14.5   ***Section 1146 Exemption***.  To the fullest extent permitted under section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any security under or pursuant to this Plan, and the execution, delivery, or recording of any instrument of transfer under or pursuant to this Plan, and the revesting, transfer, or sale of any property of or to the Liquidating Trust or the Successful Bidders at the Sales, shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city or other Governmental Unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, mortgage recording tax, intangible tax, or similar tax.

14.6   ***Closing of the Chapter 11 Cases.***  When all Liquidating Trust Assets have been liquidated and converted into Cash and such Cash has been distributed in accordance with the Liquidating Trust Agreement and the Confirmation Order, the Liquidating Trustee shall seek authority from the Bankruptcy Court to close the Plan Debtors' Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

14.7   ***Plan Supplement***.  Any exhibits or schedules not filed with this Plan may be contained in the Plan Supplement, if any, and the Plan Debtors hereby reserve the right to file such exhibits or schedules as a Plan Supplement.

14.8 ***Further Assurances.*** The Plan Debtors or the Liquidating Trustee may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan. The Plan Debtors, the Liquidating Trustee, and all Holders of Claims receiving Distributions pursuant to this Plan and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

14.9 ***Exhibits Incorporated***. All exhibits to the Plan, including the Plan Supplement, are incorporated into and are part of this Plan as if fully set forth herein.

14.10 ***Inconsistency***. In the event of any inconsistency among this Plan, the Disclosure Statement and any exhibit to the Disclosure Statement, the provisions of this Plan shall govern.

14.11 ***No Admissions***. If the Effective Date does not occur, this Plan shall be null and void in all respects, and nothing contained in this Plan shall (a) constitute a waiver or release of any Claims by or against, or any Interests in, the Plan Debtors, (b) prejudice in any manner the rights of the Plan Debtors or any other party in interest, or (c) constitute an admission of any sort by the Plan Debtors or other party in interest.

14.12 ***Reservation of Rights.*** Except as expressly set forth herein, this Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order and the Effective Date has occurred. None of this Plan, any statement or provision contained in this Plan or any action taken or not taken by any Plan Debtor with respect to this Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Plan Debtor with respect to the Holders of Claims or Interests before the Effective Date.

14.13 ***Successors and Assigns.*** The rights, benefits and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiaries or guardian, if any, of each Person.

14.14 ***Entire Agreement***. On the Effective Date, this Plan, supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

14.15 ***Notices***. All notices, requests, and demands to or upon the Plan Debtors in the Chapter 11 Cases shall be in writing and, unless otherwise provided herein, shall be deemed to have been duly given or made when actually delivered or, if by facsimile transmission, when received and telephonically confirmed to the below recipients:

SEARS METHODIST RETIREMENT SYSTEM, INC.
Attention: Paul Rundell

78

2100 Ross Avenue, 21st Floor
Dallas, Texas 75201

with copies to:

DLA PIPER LLP US
Attention:  Thomas R. Califano
1251 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 335-4500
Facsimile:  (212) 335-4501
E-mail: Thomas.califano@dlapiper.com

-and-

DLA PIPER LLP US
Attention:  Vincent P. Slusher
1717 Main Street, Suite 4600
Dallas, Texas 75201
Telephone:  (214) 743-4500
Facsimile:  (214) 743-4545
E-mail: vince.slusher@dlapiper.com

All notices and requests to Persons holding any Claim in any Class shall be sent to them at their last known address or to the last known address of their attorney of record in the Plan Debtors' Chapter 11 Cases.  Any such Holder of a Claim may designate in writing any other address for purposes of this Section, which designation will be effective upon receipt by the Plan Debtors.

14.16  *Severability*.  If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

14.17  *Governing Law*.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflicts of laws,

shall govern the rights, obligations, construction, and implementation of the Plan and the transactions consummated or to be consummated in connection therewith.

14.18 ***Request for Confirmation Pursuant to Bankruptcy Code Sections 1129(a) and 1129(b)***. The Plan Debtors request entry of the Confirmation Order under Bankruptcy Code section 1129(a) and, to the extent necessary, Bankruptcy Code section 1129(b).

Dated: February 26, 2015                              Respectfully submitted,


                                                      Sears Methodist Retirement System, Inc.
                                                      Sears Caprock Retirement Corporation
                                                      Sears Methodist Centers, Inc.
                                                      Sears Methodist Foundation
                                                      Sears Panhandle Retirement Corporation
                                                      Sears Permian Retirement Corporation
                                                      Sears Plains Retirement Corporation
                                                      Sears Tyler Methodist Retirement Corporation
                                                      Senior Dimensions, Inc.


                                                      By: /s/ Paul Rundell_____
                                                          Name: Paul Rundell
                                                          Title: Chief Restructuring Officer

**EXHIBIT A**

**Debtors' Current Officers and/or Directors**

| | | |
|---|---|---|
| Dub | Hawkins | SVP Risk Mgmt |
| Kathleen | Leedy | VP Project Mgmt |
| DeDe | Juel | VP HR |
| Terry | Huskey | VP IT |
| Cheryl | Harding | COO |
| Randal | Crosswhite | Interim CFO |
| Susan | Whittle | Interim CEO |

**SEARS METHODIST RETIREMENT SYSTEM, INC.**
**BOARD OF TRUSTEES**
**April 24, 2014 to April 2015**

| | |
|---|---|
| **Chairman:** | **Larry Dodson** |
| **Vice Chairman:** | **Rick Rhodes** |
| **Secretary:** | **Carol Denton** |
| **Treasurer:** | **David Lynn** |

**Quintan Chamness**

**Dan Olson**

**Rick Rhodes**

**Barbara Cherry**

**Carol Denton**

**Mike Sullivan**

**Larry Dodson**

**Ex-Officio Member**

**Susan Whittle**

**Bita Kash**

**David Lynn**

**EXHIBIT B**

**Debtors' Former Officers and/or Directors**

| | | |
|---|---|---|
| Gary | Anderson | EVP |
| Dennis | Briggs | VP Dining |
| Korby | Calley | AVP Foundation |
| Eugene | DuChamp | Development |
| Ken | Fincher | SVP Foundation |
| MaryJane | Fitts | VP Marketing |
| Robert | Haak | VP EVS |
| Mary | Goodin | VP Clinical |
| Holly | Hardin | VP Development Foundation |
| Mark | Horner | SVP Operations |
| Nancy | Johnson | CFO |
| Tim | Johnson | EVP |
| Marla | Knight | SVP Operations |
| Terry | Myers | CFO |
| James | Pearce | VP Development Foundation |
| Keith | Perry | CEO |
| Lawrence | Rugar | VP Risk Management |
| Mike | Sims | SVP Operations |
| Jennifer | Springer | AVP Development Foundation |
| Maria | Talamo | VP Clinical |
| Jan | Thompson | SVP General |
| Nany | Tyler | VP Marketing |
| Alva | West | Controller |
| Cheryl | Waters | AVP Med |
| Steve | Gibbs | SVP HR |
| Greg | Williams | CEO |

**SEARS METHODIST RETIREMENT SYSTEM, INC.**
**BOARD OF TRUSTEES**
**June 1, 2007 to April 24, 2008**

| | |
|---|---|
| **Chairman:** | **Charles King** |
| **Vice Chairman:** | **Vacant** |
| **Secretary:** | **Ross Jones** |
| **Treasurer:** | **David Ellis** |

VACANT                                    **Bob Gill** (June)  **Investments**

VACANT                                    **Vance Goddard** (Chris)  **Insurance Agent**

**Chuck Cowell** (Sally)  **Banker**      **Ross Jones** (Nancy)  **Attorney**

**David Ellis** (Marjorie)  **Banker**    **Charles King** (Jan)  **Attorney**

**Steve Exter** (Kathy)  **Banker**       **Howard Tobin** (Gail)  **Physician**

VACANT

**Ex-Officio Members**

**Raymond D. Brigham** (Virginia) Agronomist

**Randy Pat Russell** (Patsy) **Audiologist**

**Charles Black** (Leigh) **Attorney**

VACANT

**D. Keith Perry** (Sandy)

**Dr. Jeffrey A. Smith** (Leah) **Pastor**

**Bishop Max Whitfield**

**Quintan Chamness** (Billie) Rancher

**Jack Jackson** (Reva) Attorney

# SEARS METHODIST RETIREMENT SYSTEM, INC.
## BOARD OF TRUSTEES
### April 24, 2008 to November 30, 2009

| | |
|---|---|
| **Chairman:** | **Jeff Smith** |
| **Vice Chairman:** | **Bob Gill** |
| **Secretary:** | **Vance Goddard** |
| **Treasurer:** | **Steve Exter** |

**Quintan Chamness** (Billie)        Dan Olson

**Carol Denton**        **Rick Rhodes** (Pam)
1

**Steve Exter** (Kathy)

       **Dr. Jeffrey A. Smith** (Leah)

**Bob Gill** (June)

       **Howard Tobin** (Gail)

**Vance Goddard** (Chris)

**Kelly Kinard**

       **Ex-Officio Member**

       **D. Keith Perry** (Sandy)
1

**SEARS METHODIST RETIREMENT SYSTEM, INC.**
**BOARD OF TRUSTEES**
**November 11, 2010 to November 30, 2011**

Chairman:                          Jeff Smith
Vice Chairman:                     Rick Rhodes
Secretary:                         Vance Goddard
Treasurer:                         Steve Exter

**Quintan Chamness** (Billie)           **Rick Rhodes** (Pam)

**Barbara Cherry**
1
                                        **Dr. Jeffrey A. Smith** (Leah)

**Carol Denton** (Dick)

                                        **Howard Tobin** (Gail)
**Larry Dodson**

**Steve Exter** (Kathy)

                                        **Ex-Officio Member**

                                        **D. Keith Perry** (Sandy)

**Vance Goddard** (Chris)

**Dan Olson**

**SEARS METHODIST RETIREMENT SYSTEM, INC.**
**BOARD OF TRUSTEES**
**November 10, 2011 to April 25, 2013**

| | |
|---|---|
| **Chairman:** | **Jeff Smith** |
| **Vice Chairman:** | **Rick Rhodes** |
| **Secretary:** | **Vance Goddard** |
| **Treasurer:** | **Steve Exter** |

**Quintan Chamness** – Real Estate

**Dan Olson** – Business Exec

**Rick Rhodes** (Pam)
1

**Barbara Cherry** – Education/Clinical

**Carol Denton** – Business Exec/Medical Svcs

**Dr. Jeffrey A. Smith** (Leah)

**Larry Dodson** - CPA

**Steve Exter** – Attorney/Banker
Prosperity Bank

**Ex-Officio Member**

**D. Keith Perry** – President/CEO

**Vance Goddard** – Insurance

**David Lynn** – Business Exec

**SEARS METHODIST RETIREMENT SYSTEM, INC.**
**BOARD OF TRUSTEES**
**April 25, 2013 to April 2014**

| | |
|---|---|
| **Chairman:** | **Larry Dodson** |
| **Vice Chairman:** | **Rick Rhodes** |
| **Secretary:** | **Carol Denton** |
| **Treasurer:** | **David Lynn** |

**Quintan Chamness** – Real Estate
1

**Dan Olson** – Business Exec

**Rick Rhodes** - Legislative

**Barbara Cherry** – Education/Clinical

**Carol Denton** – Business Exec/Medical Svcs

**Mike Sullivan** – Education

**Larry Dodson** - CPA

**Ex-Officio Member**

**Greg Williams** – President/CEO

**David Lynn** – Business Exec