Kyung S. Lee
TBA No. 12128400
klee@diamondmccarthy.com
(713) 333-5125  Telephone
(713) 333-5195  Facsimile
Charles M. Rubio
TBA No. 24083768
crubio@diamondmccarthy.com
(713) 333-5127  Telephone
(713) 333-5195  Facsimile
909 Fannin, Suite 1500
Houston, TX 77010

COUNSEL TO TEXAS METHODIST
FOUNDATION

Daniel S. Bleck
dbleck@mintz.com
Charles W. Azano
cazano@mintz.com
Mintz, Levin, Cohn, Ferris and Popeo, P.C.
One Financial Center
Boston, Massachusetts 02111
Telephone: (617) 348-1843
Facsimile: (617) 542-2241


LEAD COUNSEL FOR WELLS FARGO
BANK, NATIONAL ASSOCIATION

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 14-32821-11 |
| | § | |
| SEARS METHODIST RETIREMENT | § | CHAPTER 11 |
| SYSTEM, INC., ET AL. | § | |
| | § | JOINTLY ADMINISTERED |
| DEBTORS. | § | |

## NOTICE OF AGREED UNDEVELOPED PROPERTIES SALE PROCEDURES

**PLEASE TAKE NOTICE** that pursuant to the *Findings of Fact, Conclusions of Law, and Order Confirming Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* (the "Confirmation Order") [Docket No. 800],[1] Texas Methodist Foundation ("TMF") and Wells Fargo Bank, N.A., as Trustee (the "Obligated Group Bond Trustee") agreed to file no later than March 19, 2015 agreed procedures that will govern the sale process for the Undeveloped Properties under section 363 of the Bankruptcy Code (the "Agreed Undeveloped Properties Sale Procedures").

---

[1] Capitalized terms used but not defined herein have the meanings assigned to such terms in the Confirmation Order.

**PLEASE TAKE FURTHER NOTICE** that TMF and the Obligated Group Bond Trustee have agreed to the Agreed Undeveloped Properties Sale Procedures attached hereto as Exhibit A.

**PLEASE TAKE FURTHER NOTICE** that the Liquidating Trustee has reviewed the Agreed Undeveloped Properties Sale Procedures and has agreed to sell the Undeveloped Properties in accordance with the Agreed Undeveloped Properties Sale Procedures and for the compensation set forth therein.

Dated:  March 19, 2015

DIAMOND McCARTHY LLP

By:  _/s/ Charles M. Rubio_
Kyung S. Lee
TBA No. 12128400
klee@diamondmccarthy.com
(713) 333-5125  Telephone
(713) 333-5195  Facsimile
Charles M. Rubio
TBA No. 24083768
crubio@diamondmccarthy.com
(713) 333-5127  Telephone
(713) 333-5195  Facsimile
909 Fannin, Suite 1500
Houston, TX 77010

COUNSEL TO TEXAS METHODIST
FOUNDATION

MINTZ, LEVIN, COHN, FERRIS AND
POPEO, P.C.

By:  _/s/ Charles W. Azano (w/p)_
Daniel S. Bleck
dbleck@mintz.com
Charles W. Azano
cazano@mintz.com
Mintz, Levin, Cohn, Ferris and Popeo, P.C.
One Financial Center
Boston, Massachusetts 02111
Telephone: (617) 348-1843
Facsimile: (617) 542-2241

LEAD COUNSEL FOR WELLS FARGO
BANK, NATIONAL ASSOCIATION

**Exhibit A**

Agreed Undeveloped Properties Sale Procedures

## SEARS MEHODIST RETIREMENT SYSTEM, INC.

### AGREED UNDEVELOPED PROPERTIES SALE PROCEDURES

These Agreed Undeveloped Properties Sale Procedures (the "Sale Procedures") set forth the process by which the Liquidating Trustee (as defined in the Findings of Fact, Conclusions of Law, and Order Confirming Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (the "Confirmation Order")[1/] [Docket No. 800]), will conduct the sale process and auction of (i) certain undeveloped land owned by Sears Methodist Foundation in Waco, Texas (the "Waco Property") and (ii) certain undeveloped land owned by Sears Methodist Centers, Inc. in Abilene, Texas (the "Abilene Property"; and together with the Waco Property, the "Undeveloped Properties").

## I.     Claims Secured by Undeveloped Properties

Texas Methodist Foundation ("TMF") has an allowed secured claim (the "TMF Allowed Claim") against the Debtors that is secured by a first lien and mortgage interest against the Undeveloped Properties. The TMF Allowed Claim is in the amount of $1,890,898.17, as of February 28, 2015, which consists of $1,703,949.94 in principal, $90,731.10 in interest and $96,217.13[2/] in reasonable attorney's fees and costs through February 28, 2015. The TMF Allowed Claim shall continue to accrue interest at the non-default rate of 5% per annum[3/] plus reasonable fees, costs and charges through and including the date the TMF Allowed Claim is satisfied in full. TMF waives any claim to default interest. For any fees, costs and charges incurred after February 28, 2015, TMF shall provide Obligated Group Bond Trustee (defined below) written notice of such amounts and the Obligated Group Bond Trustee shall have 14 days after receipt to file any objections to allowance of such additional fees, costs and charges.[4/] Any fees, costs and charges not objected to within such period shall become part of the TMF Allowed Claim.

Wells Fargo Bank, N.A., as Trustee (the "Obligated Group Bond Trustee") has an allowed secured claim (the "Obligated Group Bond Trustee Allowed Claim") that is secured by a second lien and mortgage interest against the Undeveloped Properties. The Obligated Group Bond Trustee Allowed Claim is in the amount of $95,858,814, which amount incudes (i) unpaid principal and (ii) accrued but unpaid interest as of the Petition Date. The Obligated Group Bond Trustee Allowed Claim shall continue to accrue interest and reasonable fees, costs and charges through and including the date the Obligated Group Bond Trustee Allowed Claim is satisfied in full.

---

[1/]     Capitalized terms not otherwise defined herein shall have the meaning given to them in the Confirmation Order.

[2/]     TMF has provided documentation of its fees and expenses through February 28, 2015 in the amount of $96,217.13, which amount shall be included in the TMF Allowed Claim.

[3/]     Interest is calculated as simple interest on the principal amount of $1,703,949.94 without compounding.

[4/]     Each of the parties reserves the right to bring any such objections before the Bankruptcy Court for determination.

1

Until entry of an order approving the transfer or other disposition of the Undeveloped Properties, the Undeveloped Properties shall remain property of their respective Debtors' estates and the Undeveloped Properties will remain subject to the existing Liens and interests of TMF and the Obligated Group Bond Trustee with the same validity, priority, force and effect such Liens and interests had as of the Petition Date.

## II.      Due Diligence

Any prospective purchasers desiring to obtain more information about the Waco Property may do so by contacting the following (together, the "Waco Broker"):

Jon W. Spelman Commercial Real Estate
Attn: Jon W. Spelman, CCIM
6600 Sanger Ave., Suite 4
Waco, TX 76710
Phone:  254-776-2592
Fax:  254-776-2447
Email:  jspelman@jspelman.com

- and –

Brad Harrell, CCIM
Broker/Owner
Harrell &Associates
Office: 254-870-0050
Email: brad@bradharrellccim.com

Any prospective purchasers desiring to obtain more information about the Abilene Property may do so by contacting the following (the "Abilene Broker"):

Senter, Realtors
Attn: Tom Niblo, CCIM
3401 Curry Ln
Abilene, Texas 79606
325-695-8000
325-695-8884 fax
325-668-5749 cell
Email: tniblo@senterrealtors.com

## III.     Terms and Conditions of the Sales and Bidding Procedures

The sale of each of the Undeveloped Properties is subject to competitive bidding as set forth herein and approval of the sale pursuant to section 363 of the United States Bankruptcy Code and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Sales"), as authorized by the Confirmation Order.

The sale of each of the Undeveloped Properties will be on an "as is, where is" basis and without surviving representations or warranties of any kind, nature, or description, except as may be set forth in the orders approving such sale.

All right, title, and interest in and to the Undeveloped Properties will be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests including, but not limited to any recoupment, offset, defenses, debts and obligations thereon and there against (collectively, the "Claims and Interests"); provided however, any sale or transfer of the Undeveloped Properties that does not result in payment of the outstanding ad valorem property taxes associated with such property shall be subject to the Liens that secure all amounts ultimately owed in connection with such taxes.

Notwithstanding anything else in these Sale Procedures, TMF and the Obligated Group Bond Trustee may agree to amend these Sale Procedures or adopt such other rules for the bidding process. Any such amendment shall require the consent of both TMF and the Obligated Group Bond Trustee, which each party may elect to provide in their absolute and sole discretion, but shall not require the approval or consent of any other party or approval from the Bankruptcy Court. In each instance, such rules, waivers or modifications shall be announced to all bidders on a timely basis.

## IV.    Distribution of Proceeds

Unless otherwise ordered by the Bankruptcy Court, the cash proceeds from the sales of the Abilene Property shall be distributed as follows:

     (i)     first, an amount equal to three percent of the successful bid for the Abilene Property (the "Abilene Broker Commission") to the Abilene Broker as the sales commission;[5]

     (ii)     second, to TMF to the extent of the TMF Allowed Claim,

     (iii)     third, to the Liquidating Trustee[6] on account of amounts owed to Life Care Services LLC ("LCS") as a result of TMF's draw upon a certain bank letter of credit, and

     (iv)     fourth, to the Obligated Group Bond Trustee.

In the event that TMF is the successful bidder of the Abilene Property with a credit bid, then TMF will have no obligation to satisfy the Abilene Broker Commission.

Unless otherwise ordered by the Bankruptcy Court, the cash proceeds from the sales of the Waco Property shall be distributed as follows:

---

[5]     It is anticipated that the Liquidating Trustee will enter into listing agreement with each of the Abilene Broker and the Waco Broker providing for payment of the Abilene Broker Commission and the Waco Broker Commission, as applicable. In each instance, such agreements shall be subject to the approval of each of TMF and the Obligated Group Bond Trustee.

[6]     Such amounts shall be paid to the Liquidating Trustee subject to further order of the Bankruptcy Court.

(i)     first, an amount equal to three percent of the successful bid for the Waco Property (the "Waco Broker Commission") to the Waco Broker as the sales commission (for avoidance of doubt, the two brokers designated as the Waco Broker are only entitled to one fee that they will share pursuant to a separate agreement);

(ii)    second,  to TMF to the extent of the remaining TMF Allowed Claim, and

(iii)   third, to the Obligated Group Bond Trustee.

In the event that TMF is the successful bidder of the Waco Property with a credit bid, then TMF will have no obligation to satisfy the Waco Broker Commission.

## V.      Selection of Stalking Horse Bidder

At any time, TMF and the Obligated Group Bond Trustee may agree to select a bidder (or bidders) to be the stalking horse bidder (each a "Stalking Horse Bidder") for either or both of the Abilene Property and the Waco Property and negotiate the terms of the stalking horse bid and the bid protections with each such Stalking Horse Bidder.  Any such selection and negotiation shall require the consent of both TMF and the Obligated Group Bond Trustee, which each party may elect to provide in their absolute and sole discretion, but shall not require the approval or consent of any other party or approval from the Bankruptcy Court.

To the extent a bidder is selected as a Stalking Horse Bidder for either (or both) of the Abilene Property or the Waco Property, such bidder shall be automatically deemed a Qualified Bidder.

## VI.     Qualified Bids and Qualified Bidders

In order to participate in the bidding process for either the Abilene Property or the Waco Property, each person or entity wishing to participate in the bidding process must submit by the Bid Deadline the following (a "Bid Package"):

a.     A deposit in the amount of $100,000.00 (the "Earnest Money Deposit") for each of the Abilene Property and the Waco Property, as applicable, made by cashier's check or by wire transfer of immediately available funds to the Liquidating Trustee.  Wire transfer instructions may be obtained from the Abilene Broker or the Waco Broker;

b.     A signed statement of the bidder (a) acknowledging and representing that the purchase is not subject to any financing contingency, any contingency relating to the completion of unperformed due diligence, any contingency relating to the approval of the bidder's board of directors or other similar internal approvals or consents, any contingency relating to a material adverse change, or any other condition precedent to the bidder's obligation to close; (b) acknowledging and representing that if becoming the Prevailing Bidder (defined below) or the Back-Up Bidder (defined below), such bidder can consummate the purchase of the of Abilene Property or the Waco Property, as applicable, within 14 days of the approval of the sale by the Bankruptcy Court; (c) acknowledging and representing that it

4

is bound by these Sale Procedures; (d) acknowledging and representing that it had an opportunity to inspect and examine the Abilene Property and/or Waco Property, as applicable, before submitting such bid and that each such bid is based solely on that review and upon each bidder's own investigation and inspection; (e) that it has consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Sale Procedures and/or Auction and the construction and enforcement of any transaction documents relating to the bid; and (f) in making its bid, such bidder is not relying upon any written or oral statements, representations or warranties of the Liquidating Trustee, TMF, the Obligated Group Bond Trustee, the Abilene Broker, the Waco Broker, or their respective agents; and

c.      The amount of the initial bid and a bank account statement or other records that show the source of funds for the purchase of Abilene Property or the Waco Property, as applicable.

A bid satisfying the foregoing requirements is defined herein as a "Qualified Bid" and the bidder is defined herein as a "Qualified Bidder".

## VII.    Bid Deadline

All Bid Packages (except for the Ernest Money Deposit) must be provided to the following parties: (i) Texas Methodist Foundation, c/o Charles Rubio, Diamond McCarthy LLP, 909 Fannin Street, 15th Floor, Two Houston Center, Houston, TX 77010; (ii) Daniel S. Bleck, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, PC, One Financial Center, Boston, MA 02111; and (iii) the Abilene Broker and/or the Waco Broker, as applicable, so as to be received not later than 5:00 p.m. (CST) on July 17, 2015 with respect to the Abilene Property and September 17, 2015 with respect to the Waco Property (each, a "Bid Deadline").

The Earnest Money Deposit for each bidder must be made so as to be received by the Liquidating Trustee not later than the Bid Deadline.

## VIII.   Auction

If more than one Qualified Bid is received for a particular property (i.e. either the Abilene Property or the Waco Property), the Liquidating Trustee shall conduct an auction for the sale of each of the Abilene Property and the Waco Property (each, an "Auction"). The Auction for the sale of the Abilene Property shall begin at 10:00 a.m. (CST) on July 31, 2015, at the offices of Diamond McCarthy LLP at Tower at Cityplace, 2711 N. Haskell Ave., Suite 3100, Dallas, Texas 75204 ("Diamond McCarthy Dallas Office"). The Auction for the sale of the Waco Property shall begin at 10:00 a.m. (CST) on September 30, 2015, at Diamond McCarthy Dallas Office.

Participation at the Auction shall be in person only. Only Qualified Bidders, the Brokers, the Liquidating Trustee, TMF and the Obligated Group Bond Trustee, and each of their respective representatives and advisors may attend the Auction. Participation by telephone or other electronic means will be prohibited.

The Auction shall proceed by permitting the Qualified Bidders to make successive bids, each of which must be at least $25,000 higher than the previous bid. The Auction shall continue until there is only one offer that is the highest offer from among the bids submitted by Qualified Bidders at the Auction. Such bid shall be termed the "Prevailing Bid". Bidding at the Auction will be transcribed or videotaped.

At the same time the Prevailing Bid is designated, TMF and the Obligated Group Bond Trustee may designate a bid submitted by a Qualified Bidder as a back-up bid for each property (each, a "Back-Up Bid") to protect against the Prevailing Bid not being consummated.

TMF and/or the Obligated Group Bond Trustee may submit a credit bid for the purchase of either the Abilene Property or the Waco Property (or both) pursuant to these Sale Procedures. If the Obligated Group Bond Trustee submits a credit bid, it must also make a cash bid sufficient to satisfy the remaining TMF Allowed Claim in full in cash at the closing of the sale of the property. Each of TMF and the Obligated Group Bond Trustee shall be considered a Qualified Bidder notwithstanding the requirements set forth in these Sale Procedures for other third-parties.

## ~~IX.~~ Hearing Regarding Successful Bid

If only one Qualified Bid is received by the Bid Deadline for a particular property (i.e. either the Abilene Property or the Waco Property), the Liquidating Trustee shall present such bid to TMF and the Obligated Bond Group Trustee and provide both parties three (3) business days to make a higher cash and/or credit bid. If both parties decline to make a higher bid, then the Liquidating Trustee shall present the one Qualified Bid to the Bankruptcy Court as the successful bid for the corresponding property no later than fourteen (14) days after the Bid Deadline.

If more than one Qualified Bid is received for a particular property (i.e. either the Abilene Property or the Waco Property), the Liquidating Trustee shall present the Prevailing Bid for the Abilene Property and the Waco Property to the Bankruptcy Court as the successful bid for the corresponding property no later than five (5) business days after the respective Auctions in order to obtain an order approving such sale (each, a "Sale Order"). The Sale Order for each the Abilene Property and the Waco Property shall be in the form attached hereto as Exhibit A. No offers or bids will be accepted or considered at any hearing related to such presentation.

Upon the failure to consummate the closing of the transaction contemplated by the Prevailing Bid because of the occurrence of a breach or default under the terms of the Prevailing Bid, the Back-Up Bid(s), as disclosed at the Sale Hearing, shall be deemed the successful bid without further order of the Bankruptcy Court and the parties shall be authorized and directed to consummate the transaction contemplated by the bidders of the Back-Up Bids.

## X. Earnest Money Deposit and Refund

Each Earnest Money Deposit shall be held in escrow by the Liquidating Trustee until three (3) business days after the closing of the Auction; provided, however, the Earnest Money

Deposit paid by the bidder submitting the Prevailing Bid and the Back-Up Bid shall continue to be held in escrow by the Liquidating Trustee for three (3) business days after the date the Sale Order for the Abilene Property or the Waco Property, as applicable, has become a final order. If the Prevailing Bidder defaults on its obligation to close, then the Earnest Money Deposit submitted by such Prevailing Bidder, together with any accrued interest, shall be deemed forfeited and shall be distributed pursuant to Section IV hereof.

**XI.**     **Closing of the Sales**

Except as otherwise agreed by the Prevailing Bidder, TMF and the Obligated Group Bond Trustee, the closing for the sale of the Abilene Property and the Waco Property shall take place at a place mutually agreed upon by such parties approximately fourteen (14) days after entry of the Sale Order.

**XII.**     **Fees and Expenses of the Liquidating Trustee**

The Liquidating Trustee shall be compensated for conducting the Auction and the other actions contemplated by these Sale Procedures by a single payment in the amount of $25,000 from the Obligated Group Bond Trustee. Other than such $25,000 payment, the Obligated Group Bond Trustee shall have no obligation of any kind to pay the Liquidating Trustee for the actions contemplated by these Sale Procedures, nor shall the Liquidating Trustee be entitled to any of the proceeds from the sale of the Undeveloped Properties.

Exhibit A

Form of Sale Order

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | **CASE NO. 14-32821-11** |
| | § | |
| **SEARS METHODIST RETIREMENT** | § | **CHAPTER 11** |
| **SYSTEM, INC.,** *et al.*[1] | § | |
| | § | **Jointly Administered** |
| Debtors. | § | |

### ORDER CONFIRMING SALE OF [ABILENE/WACO] PROPERTY

Pursuant to that certain Agreed Undeveloped Properties Sale Procedures (the "Sale Procedures")[2] between Texas Methodist Foundation ("TMF") and Wells Fargo Bank, N.A., as Trustee (the "Obligated Group Bond Trustee"), TMF and the Obligated Group Bond Trustee seek entry of an order authorizing and approving the sale (the "Sale") of all of [Sears Methodist

---

[1] The debtors in these Chapter 11 Cases, along with the last four (4) digits of their taxpayer identification numbers, are: Sears Methodist Retirement System, Inc. (6330), Canyons Senior Living, L.P. (8545), Odessa Methodist Housing, Inc. (9569), Sears Brazos Retirement Corporation (8053), Sears Caprock Retirement Corporation (9581), Sears Methodist Centers, Inc. (4917), Sears Methodist Foundation (2545), Sears Panhandle Retirement Corporation (3233), Sears Permian Retirement Corporation (7608), Sears Plains Retirement Corporation (8233), Sears Tyler Methodist Retirement Corporation (0571) and Senior Dimensions, Inc. (4016). The mailing address of each of the debtors, solely for purposes of notices and communications, is 2100 Ross Avenue, 21st Floor, c/o Paul Rundell, Dallas, Texas 75201.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Procedures.

Centers, Inc.'s/Sears Methodist Foundation's] (the "Debtors") rights and interests in the [Waco/Abilene] Property (the "Property"), in accordance with the Sale Procedures as provided for in *Findings of Fact, Conclusions of Law, and Order Confirming Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* (the "Confirmation Order") [Docket No. 800] entered by the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court"), and after due deliberation of the relief set forth herein; and finding that good and sufficient notice of the relief granted by this Order has been given and no further notice is required; and good and sufficient cause appearing to approve the relief herein, including for the reasons stated on the record at the hearing seeking approval of the Sale, the Bankruptcy Court hereby FINDS, DETERMINES, CONCLUDES, and ORDERS that:

1.      The bid submitted by [Purchaser] (the "Purchaser") constitutes the highest and best offer for the Property.  Other parties have had a reasonable opportunity to make a higher or otherwise better offer to purchase the Property.

2.      Pursuant to Sections 105(a) and 363 of the Bankruptcy Code, the Liquidating Trustee (the "Authorized Representative"), on behalf of the Debtor, is authorized to transfer the Property to the Purchaser pursuant to a deed substantially in the form attached hereto as Exhibit A.   The transfer of the Property to the Purchaser pursuant to the terms hereof shall constitute a legal, valid, binding, and effective transfer of the Property.

3.      Upon the closing of the Sale, pursuant to Section 363(f) of the Bankruptcy Code, the Purchaser shall take title to and possession of the Property free and clear of any and all liens, claims, interests, and encumbrances, except for the outstanding ad valorem property taxes associated with the Property is subject to the liens that secure all amounts owed in connection with such taxes.

4.      Upon the closing of the Sale, the proceeds of the Sale shall be distributed as follows [in accordance with the Sale Procedures].

5.      The Purchaser is purchasing the Property in good faith and is a good faith buyer within the meaning of Section 363(m) of the Bankruptcy Code.  The Purchaser proceeded in good faith in connection with all aspects of the Sale.  Accordingly, the Purchaser is entitled to all of the protections afforded under Section 363(m) of the Bankruptcy Code.

6.      All persons and entities are enjoined from taking any actions against Purchaser or any affiliate of the Purchaser to recover any claim that such person or entity has solely against the Debtor, save and except for taxing authorities holding outstanding ad valorem property taxes associated with the Property.

7.      The Authorized Representative is hereby authorized to take any and all actions necessary to consummate the transactions contemplated by this Order.

8.      Notwithstanding any provision in the Bankruptcy Rules to the contrary, the terms of this Order shall be immediately effective and enforceable upon its entry, notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or otherwise.

9.      This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

## Exhibit A to Sale Order

**Deed**

**NOTICE OF CONFIDENTIALITY RIGHTS:  IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

## SPECIAL WARRANTY DEED

STATE OF TEXAS             §
                          §          KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF _____          §

[SEARS METHODIST CENTERS, INC./SEARS METHODIST FOUNDATION] ("**Grantor**"), a Plan Debtor in the bankruptcy case styled as *In re Sears Methodist Retirement System, Inc. et al.*, in the United States Bankruptcy Court for the Northern District of Texas, Case No. 14-32821 (the "**Bankruptcy Case**"), for and in consideration of the sum of $10 and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, has GRANTED, BARGAINED, SOLD, and CONVEYED and by these presents does GRANT, BARGAIN, SELL, AND CONVEY unto [Purchaser] ("**Grantee**"), that certain land in [Taylor/ McLennan] County, Texas, fully described in Exhibit A hereto, together with all improvements, if any, thereon and all rights appurtenances appertaining thereto (collectively, the "**Property**") pursuant to that certain *Order Confirming Sale of [Abilene/Waco] Property* [Dkt. No. XXX] (as attached hereto as Exhibit B, the "**Bankruptcy Order**").

This Special Warranty Deed and the conveyance hereinabove set forth is executed by Grantor and accepted by Grantee subject to all matters of record to the extent the same are validly existing and applicable to the Property and not otherwise extinguished by the Bankruptcy Order, all subject and pursuant to the Bankruptcy Order (collectively, the "**Permitted Encumbrances**").

TO HAVE AND TO HOLD the Property, subject to the Permitted Exceptions as aforesaid, unto Grantee, and Grantee's successors and assigns, forever; and Grantor does hereby bind Grantor, and Grantor's successors and assigns, to WARRANT and FOREVER DEFEND, all and singular, the Property, subject to the Permitted Exceptions unto Grantee, and Grantee's successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof by, through or under Grantor, but not otherwise.

Except as specifically stated herein, Grantor hereby specifically disclaims any warranty, guaranty, or representation, oral or written, past, present or future, of, as, to, or concerning (i) the nature and condition of the Property, including but not by way of limitation, the water, soil, geology and the suitability thereof, and of the Property, for any and all activities and uses which Grantee may elect to conduct thereon or any improvements Grantee may elect to construct thereon, income to be derived therefrom or expenses to be incurred with respect thereto, or any obligations or any other matter or thing relating to or affecting the same; (ii) the manner of construction and condition and state of repair or lack of repair of any improvements located thereon; (iii) except for any warranties contained herein, the nature and extent of any easement,

right-of-way, lease, possession, lien, encumbrance, license, reservation, condition or otherwise; and (iv) the compliance of the Property or the operation of the Property with any laws, rules, ordinances, or regulations of any government or other body.   THE CONVEYANCE OF THE PROPERTY AS PROVIDED FOR HEREIN IS MADE ON AN "AS IS" BASIS, AND GRANTEE ACKNOWLEDGES THAT, IN CONSIDERATION OF THE AGREEMENTS OF GRANTOR HEREIN, EXCEPT AS OTHERWISE SPECIFIED HEREIN, GRANTOR MAKES NO WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, OR ARISING BY OPERATION OF LAW, INCLUDING, BUT IN NO WAY LIMITED TO, ANY WARRANTY OF CONDITION, HABITABILITY, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE OF THE PROPERTY.

Grantee, by its acceptance hereof, does hereby assume and agree to pay any and all outstanding ad valorem taxes pertaining to the Property.

[*signature page follows*]

EXECUTED as of _____ __, 2015.


[SEARS METHODIST CENTERS, INC./
SEARS METHODIST FOUNDATION]


By: _____
Name:
Title:   Liquidating Trustee


STATE OF _____§
                                      §
COUNTY OF _____§


This instrument was acknowledged before me on this ___ day of February, 2015, by _____, the authorized representative of [Sears Methodist Centers, Inc./Sears Methodist Foundation], on behalf of said corporation.


_____
Notary Public, State of _____

## Exhibit A

## Property Description

[Insert applicable description]

Being that certain tract of land calculated to contain 62.2460 acres, more or less and being all of that certain tract of land described as containing 63.39 acres, more or less, out of the H. Roberts Survey, Abst. No. 751, the L. C. Clemmons Survey, Abst. 239 and the B. F. Davis Survey, Abst. No. 287, McLennan County, Texas, as said tract is more particularly described by metes and bounds description in deed to Sears Methodist Foundation dated August 31, 2010 recorded in Document No. 2010027283 Official Public Records, McLennan County, Texas, reference to which is hereby made for all purposes, including the incorporation herein of said description by reference, SAVE AND EXCEPT THEREFROM, that certain tract of land described as containing 1.144 acres, more or less, out of the L. C. Clemmons Survey, Abst. No. 239, McLennan County, Texas as said 1.144 acre tract is more particularly described by metes and bounds description in deed to the State of Texas dated October 31, 2012 recorded in Document No. 2012038484 Official Public Records, McLennan County, Texas, reference to which is hereby made for all purposes, including the incorporation herein of said description by reference.

---

Tract Two:

Tract Two, Parcel A:
Being that certain tract of land stated to contain 17.34 acres, more or less, out of Survey No. 12 of the Alfred and Mary Fasshauer Dudvision of Survey No. 10 and Survey No. 12, Lunatic Asylum Land, Survey No. 65, Blind Asylum Land, Taylor County, Texas as said tract is more particularly described by metes and bounds as Tract One in deed to Sears Methodist Centers, Inc. dated November 14, 2003 recorded in Bol. 2902 Page 715 Official Public Records, Taylor County, Texas, reference to which is hereby made for all purposes, including the incorporation herein of said description by reference.

Tract Two, Parcel B:
Being that certain tract of land stated to contain 1.98 acres, more or less, out of Section Lunatic Asylum Land, Taylor County, Texas, as said tract is more particularly described by metes and bounds as Tract Two in deed to Sears Methodist Centers, Inc. dated November 14, 2003 recorded in Bol. 2902 Page 715 Official Public Records, Taylor County, Texas, reference to which is hereby made for all purposes, including the incorporation herein of said description by reference.

**Exhibit B**

**Bankruptcy Order**