**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | **CASE NO. 14-32821-11** |
| | § | |
| **SEARS METHODIST RETIREMENT** | § | **CHAPTER 11** |
| **SYSTEMS, INC.,** *et al.* | § | |
| | § | **JOINTLY ADMINISTERED** |
| **DEBTORS.** | § | |

**LIQUIDATING TRUSTEE'S MOTION FOR APPROVAL OF**
**PREVAILING BID OF TEXAS METHODIST FOUNDATION FOR**
**ABILENE PROPERTY PURSUANT TO AGREED UNDEVELOPED**
**PROPERTIES SALE PROCEDURES AND ENTRY OF ORDER**
**CONFIRMING SALE OF ABILENE PROPERTY**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE STACEY G. C. JERNIGAN:

Harold Kessler, the Liquidating Trustee (the "Liquidating Trustee") for the Liquidating Trust established pursuant to this Court's Findings of Fact, Conclusions of Law, and Order Confirming Debtors' Second Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code [Docket No. 800] (the "Confirmation Order"), files this Motion for Approval of Prevailing Bid of Texas Methodist Foundation for Abilene Property Pursuant to Agreed Undeveloped Properties Sale Procedures (the "Motion"). In support of the Motion, the Liquidating Trustee respectfully represents that:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are §§ 105 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (as amended, the "Bankruptcy Code").

## BACKGROUND

2. On March 19, 2015, Texas Methodist Foundation ("TMF") and Wells Fargo Bank, N.A., as Trustee (the "Obligated Group Bond Trustee") jointly filed the Notice of Agreed Undeveloped Properties Sale Procedures [Docket No. 819] (the "Sale Procedures").[1]

3. Pursuant to the Sale Procedures, the Abilene Property was marketed by Senter Realtors. Two Qualified Bids were received prior to the Bid Deadline—one from RSF Partners ("RSF") and the other by TMF.

4. On July 31, 2015, an auction for the Abilene Property was held at the Dallas, TX office of Diamond McCarthy LLP by the Liquidating Trustee (the "Auction Proceeding"). A transcript of the Auction Proceeding (the "Auction Transcript") is attached hereto as Exhibit A. During the Auction Proceeding, competitive bids were received from both TMF and RSF. At the request of RSF, TMF and the Obligated Bond Trustee both consented to the reduction of the minimum bid increment from $25,000 to $10,000 for the Abilene Property. Further, the Liquidating Trustee maintained a bid sheet reflecting each bid received from both TMF and RSF during the Auction Proceeding (the "Bid Sheet"). The Bid Sheet is attached hereto as Exhibit B.

5. The Prevailing Bid at the Auction Proceeding was a credit bid made by TMF in the total amount of $760,000.00.

6. Pursuant to the Sale Procedures, the Liquidating Trustee shall present the Prevailing Bid for the Abilene Property to the Bankruptcy Court as the successful bid no later than five (5) business days after the Auction Proceeding in order to obtain an order approving such sale.

---

[1] All capitalized terms not defined herein shall have the same meaning assigned to them in the Sale Procedures.

## RELIEF REQUESTED

7.     The Liquidating Trustee requests entry of and order substantially in the form of the attached proposed order.

## BASIS FOR RELIEF

8.     Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor, "after notice and hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b).

9.     Further, pursuant to § 363(f) of the Bankruptcy Code, a trustee may sell property free and clear of any lien, claim, or interest in such property if, among other things: (i) applicable non-bankruptcy law permits sale of such property free and clear of such interest; (ii) such entity consents; (iii) such interest is a lien and the price at which the property is sold is greater than all liens on such property; (iv) such interest is in bona fide dispute; or (v) such entity could be compelled, in a legal or equitable proceeding, to accept money satisfaction of such interest. 11 U.S.C. § 363(f). Because § 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements is sufficient to permit a sale to be free and clear of all liens, claims, encumbrances, and interests. Here, a "free and clear" sale is warranted because one or more of the standards set forth in §§ 363(f)(l)-(5) of the Bankruptcy Code will be satisfied.

10.     Section 363(m) of the Bankruptcy Code provides that:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

11.     The Sale Procedures allowed for sufficient time for the marketing of the Abilene Property and for the submission of Qualified Bids. The Auction Proceeding elicited competitive bids that culminated in the Prevailing Bid submitted by TMF. There was no collusion in the submission of bids at the Auction Proceeding.

12.     Accordingly, the Liquidating Trustee requests that the Court determine TMF to be acting in good faith and entitled to the protections of a good faith purchaser under § 363(m) of the Bankruptcy Code.

## CONCLUSION

WHEREFORE, the Liquidating Trustee respectfully requests that the Court enter an order, substantially in the form of the proposed order attached hereto, and grant such other and further relief as is just and proper.

Dated: August 7, 2015.

Respectfully submitted,

*/s/ Harold J. Kessler (w/p)*_____
Harold J. Kessler
BLACKBRIAR ADVISORS LLC
9506 Hill View Dr.
Dallas, TX 75231
Telephone: (214) 599-8600
Facsimile: (214) 755-6292
hkessler@blackbriaradvisors.com

LIQUIDATING TRUSTEE

APPROVED AS TO FORM AND SUBSTANCE:

| | |
|---|---|
| */s/ Charles M. Rubio*_____ | */s/ Charles W. Azano (w/p)*_____ |
| Kyung S. Lee | Daniel S. Bleck |
| TBA No. 12128400 | dbleck@mintz.com |
| klee@diamondmccarthy.com | Charles W. Azano |
| Charles M. Rubio | cwazano@mintz.com |
| TBA No. 24083768 | MINTZ, LEVIN, COHN, FERRIS AND |
| crubio@diamondmccarthy.com | POPEO, P.C. |
| DIAMOND MCCARTHY LLP | One Financial Center |
| 909 Fannin, Suite 1500 | Boston, Massachusetts 02111 |
| Houston, TX 77010 | Telephone: (617) 348-1843 |
| Telephone: (713) 333-5147 | Facsimile: (617) 542-2241 |
| Facsimile: (713) 333-5195 | |

COUNSEL FOR TEXAS METHODIST FOUNDATION

LEAD COUNSEL FOR WELLS FARGO BANK, NATIONAL ASSOCIATION

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 7, 2015, a true and correct copy of this Motion was served electronically on those parties registered to receive electronic notice via the Court's CM/ECF system and served on the parties listed below by first class mail, postage prepaid, within one business day of this filing.

RSF Partners
3899 Maple Avenue, Suite 250
Dallas, Texas 75219

Senter Realtors
Attn: Tom Niblo, CCIM
4301 Curry Ln
Abilene, TX 79606

*/s/ Charles M. Rubio*_____
Charles M. Rubio

# EXHIBIT A

Auction Transcript

Property Auction

**********************************************************

PROPERTY AUCTION

IN RE:  CASE NUMBER 14-32821-SGJ-11

DATE TAKEN:  July 31, 2015

**********************************************************

LOCATION:

      Diamond McCarthy, LLP
      Tower at Cityplace
      2711 N. Haskell Avenue
      Suite 3100
      Dallas, TX 75204

REPORTED BY:

      Judy Gamm, Texas CSR

Property Auction

Page 2

```
 1                 A P P E A R A N C E S
 2   LIQUIDATING TRUSTEE:
 3         MR. HAROLD J. KESSLER, CIRA
           BlackBriar Advisors, LLC
 4         901 Main Street
           Suite 600
 5         Dallas, Texas  75202
           Phone:  (214) 483-1261
 6         Fax:    (214) 483-1271
           hkessler@blackbriaradvisors.com
 7
 8   FOR RSF PARTNERS:
 9         MR. GREGORY G. HESSE
           Hunton & Williams, LLP
10         1445 Ross Avenue
           Suite 3700
11         Dallas, Texas  75202
           Phone:  (214) 979-3000
12         Fax:    (214) 740-7131
           ghesse@hunton.com
13
14         MR. SEBASTIAN BROWN
           MR. JAY ADAMOWITZ
15         RSF Partners
           3899 Maple Avenue
16         Suite 250
           Dallas, Texas  75219
17         Phone:  (214) 740-7643
           Fax:    (214) 855-9407
18         sbrown@rsfpartners.com
           jadamowitz@rsfpartners.com
19
20         MR. BRIAN E. DOWD
           ESLP Management, LLC
21         P.O. Box 2107
           Brentwood, Tennessee  37024
22         Office:  (201) 447-7006
           Cell:    (917) 838-5885
23         bdowd@evergreenslp.com
24
25
```

Property Auction

Page 3

```
 1   FOR TEXAS METHODIST FOUNDATION:

 2        MR. ALEXANDER R. PEREZ
          Diamond McCarthy, LLP
 3        Two Houston Center
          909 Fannin Street, 15th Floor
 4        Houston, Texas 77010
          Phone:  (713) 333-5147
 5        Fax:  (713) 333-5199
          aperez@diamondmccarthy.com

 6

 7        MR. THOMAS STANTON
          MR. ROBERT HOPPE
 8        Texas Methodist Foundation
          11709 Boulder Lane
 9        Suite 100
          Austin, Texas  78726-1808
10        Phone:  (512) 789-8470
          Main:   (800) 933-5502
11        tstanton@tmf-fdn.org
          rhoppe@tmf-fdn.org

12

13   FOR WELLS FARGO, N.A.:

14        MR. CHARLES W. AZANO (via telephone)
          Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, PC
15        One Financial Center
          Boston, Massachusetts  02111
16        Phone:  (617) 542-6000
          Fax:    (617) 542-2241
17        cwazano@mintz.com

18

19

20

21

22

23

24

25
```

Property Auction

Page 4

1                          INDEX

2                                              PAGE

3   Appearances........................................ 2-3

4   Proceedings........................................   5

5   Reporter's Certificate.............................  26

6

7                        EXHIBITS

8                        (None)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 5

1              P R O C E E D I N G S

2              MR. KESSLER:  I would like to get on the

3    record.  It is 10:06.  We're going to need a few minutes

4    to get some basic information on today's proceedings

5    into the court record, and then the parties of interest

6    will be allowed some time to bolster the record as they

7    see fit.

8              We are gathered this morning pursuant to an

9    order by the Honorable Stacey Jernigan, approving the

10   bid procedures for the sale of certain undeveloped land

11   in Abilene, Texas, owned by Sears Methodist Centers,

12   Inc., Sears Methodist Retirement, Inc., jointly

13   administered with Sears Caprock Retirement Corporation,

14   Sears Methodist Centers, Inc., Sears Methodist

15   Foundation, Sears Panhandle Retirement Corporation,

16   Sears Permian Retirement Corporation, Sears Plains

17   Retirement Corporation, Sears Tyler Methodist Retirement

18   Corporation, and Senior Dimensions, Inc., operating as

19   debtor in possession under Chapter 11 of the U.S.

20   Bankruptcy Code.  The case number is 14-32821-SGJ-11.

21             This auction is being conducted under

22   Section 363 of the Code, and our activities today will

23   be formally presented to Judge Jernigan at a final Sears

24   sales hearing to be scheduled on or about August 7th.

25   Judge Jernigan is the ultimate authority of whatever we

Property Auction

Page 6

1  do here today.

2            My name is Harold Kessler, liquidating

3  trustee of SMRS Liquidating Trust, and I am a managing

4  director of BlackBriar Advisors, LLC.

5            Please take notice that Texas Methodist

6  Foundation, further known as TMF, and Wells Fargo Bank,

7  N.A., as trustee, further known as the obligated group

8  bond trustee, have agreed to the agreed undeveloped

9  property sale procedures.

10            Attending today is Mr. Alex R. Perez of

11  Diamond McCarthy representing TMF; Charles Azano via

12  phone of Mintz, Levin, Cohn, Ferris, Glovsky & Popeo,

13  representing the obligated group bond trustee.

14            And I will ask Mr. Perez and Mr. Azano to

15  introduce themselves and their teams.

16            MR. PEREZ:  Good morning, everyone.  My

17  name is Alex Perez.  I'm with the law firm Diamond

18  McCarthy in the Houston office.  I represent Texas

19  Methodist Foundation.  And along with me here today are

20  Tom Stanton and Robert Hoppe as well.

21            MR. KESSLER:  Chip?

22            MR. AZANO:  Good morning.  My name is

23  Charles Azano with the law firm of Mintz Levin.  We

24  represent Wells Fargo, the bond trustee for the

25  obligated group.

Property Auction

1          MR. KESSLER:  Thank you.  On March 19th,

2     2015, TMF and the obligated group bond trustee filed

3     agreed procedures that govern the sales process for the

4     undeveloped properties under Section 363 of the

5     Bankruptcy Code, the agreed undeveloped properties sales

6     procedures Docket Number 819.

7          On July 15th, a qualified bid was received

8     from RSF Partners in the amount of $500,000 along with

9     an earnest money deposit of $100,000.  On July 17th, a

10    letter was received from TMF, a qualified bidder

11    pursuant to Section 13 of the sale procedures, providing

12    notice that TMF has submitted a credit bid for the

13    Abilene property in the amount of $525,000.

14          And now we ask TMF to designate a spokesman

15    for the auction.

16          MR. STANTON:  I'm Tom Stanton, and I will

17    be the spokesperson.

18          MR. KESSLER:  As stated above and

19    consistent with the bidding procedures, on July 15th, a

20    bid was submitted by RSF Partners.  After review by the

21    liquidating trustee, Diamond McCarthy, LLP, and the

22    obligated group bond trustee, it was determined that

23    RSF Partners' bid was a qualified bid under the bid

24    procedures.

25          RSF Partners is being represented by

Property Auction

1   Gregory Hesse of Hunton & Williams, LLP.  And I will ask

2   Mr. Hesse to introduce the RSF Partners team.

3           MR. HESSE:  Yes.  We have -- well,

4   actually, I'll have them introduce themselves here.

5           MR. BROWN:  Sebastian Brown with

6   RSF Partners.

7           MR. ADAMOWITZ:  Jay Adamowitz, RSF

8   Partners.

9           MR. DOWD:  Brian Dowd, Evergreen Senior

10  Living.

11          MR. KESSLER:  Thank you.  I will ask the

12  RSF Partners group to designate an official spokesperson

13  for the auction.

14          MR. HESSE:  Sebastian Brown will be that

15  person.

16          MR. KESSLER:  Thank you.  The auction shall

17  proceed by permitting the qualified bidders to make

18  successive bids, each of which must be at least $25,000

19  higher than the previous bid.  The auction shall

20  continue until there is only one offer that is the

21  highest offer from among the bids submitted by qualified

22  bidders at the auction.

23          I will give each group some time between

24  bids, if you need it.  We'll go off the record so you

25  can talk to your constituents and come back, if you need

Property Auction

Page 9

1    that time.

2              I'm not going to impose a time limit, but I

3    would kind of appreciate, if there is a hiccup in this

4    thing, you'll let us know.

5              I would also like to put on the record that

6    following the bid procedures, the liquidating trustee is

7    holding the deposit for RSF Partners.  Also, the

8    liquidating trustee has created a template spreadsheet

9    to provide transparency of each bid, which will -- and

10   will record each bid.

11             While it is ultimately the liquidating

12   trustee's document right now, this is a work in process,

13   and we designate and enter into the record our

14   disclaimer that these are put together for purposes of

15   this auction to evaluate and record the auction

16   proposals.  Participants are reminded that this matter

17   is subject to Federal Bankruptcy Court review and

18   approval.

19             At this time I invite the parties of

20   interest, if they so desire, to address the record with

21   anything that you may need to put on the record.

22             MR. PEREZ:  This is Alex Perez on behalf of

23   TMF.  I don't believe that we have any additional items

24   to add to the record at this moment.

25             MR. HESSE:  This is Greg Hesse on behalf of

Property Auction

1   RSF.  One clarification that we would ask from the --

2   with regard to the bid procedures:  While there will be

3   an order that will be entered authorizing the sale free

4   and clear of liens, claims, and encumbrances, I just

5   wanted clarification and representation from both TMF

6   and the obligated group that, if need be, that they will

7   file a release of lien on the -- of their lien interest

8   on the property.

9               MR. PEREZ:  I think that we're -- that's

10  acceptable.

11              MR. HESSE:  Okay.

12              MR. KESSLER:  Chip?

13              MR. AZANO:  Yes.  My reception wasn't great

14  on that.  What I believe I heard was that we would be

15  willing to release our lien -- cooperate to release our

16  lien with the winning bidder.

17              MR. HESSE:  That's correct.

18              MR. AZANO:  No objection, obviously.

19              MR. HESSE:  Thank you.

20              MR. KESSLER:  Okay.  Anybody else?

21              MR. HESSE:  I don't believe we have -- do

22  we have anything further?  No, we have nothing further.

23              MR. KESSLER:  Okay.

24              MR. STANTON:  Just a quick clarification.

25  I can speak for TMF, and my question would be to

Property Auction

Page 11

1    counsel.  In the event that we have an effective bid

2    from Sears today, am I right that there is no subsequent

3    board approval that's going to be required?  You-all

4    have authority to make that bid?

5              MR. BROWN:  Correct.

6              MR. HESSE:  That's correct.

7              MR. STANTON:  Thanks.

8              MR. KESSLER:  Lastly, just if you can

9    identify yourself before speaking for your official

10   designee.  We're a small group, and we'll be as

11   accommodating as we can, but the reporter probably -- it

12   would helpful to her if she knows who is speaking at the

13   time.

14              If that is all we have, nobody has any

15   questions?  I think right now we have a bid on the table

16   of 525,000 from Texas Methodist Foundation, TMF.

17              MR. BROWN:  RSF would obviously like to

18   increase the bid to 550.  We have done quite a bit of

19   research on what we feel market value is --

20              MR. KESSLER:  Excuse me.  Sebastian Brown

21   is speaking.

22              MR. BROWN:  -- on the market value of the

23   land.  The net usable acreage there, we kind of feel to

24   be 8 acres.  We are very open to kind of talking about

25   the methodology of how we got to that.

Property Auction

1         You know, for us, owning the adjacent

2    property, there's a certain amount of kind of protection

3    value that we want to make sure we -- you know, that

4    there is an adjacent use that's not unfavorably

5    developed next to us.  Obviously, there's a limit to how

6    much we would want to do on that front.  And, obviously,

7    we still have quite a bit of work to do on our existing

8    asset today.  And, you know, our scope and mindset of

9    the usable acreage and what to do in that market does

10   have some of its constraints.

11        Brian, I don't know if you want to add

12   anything else to that.

13        MR. DOWD:  I would agree that, I mean,

14   given the power lines that run down the property,

15   there's -- you know, there is some sort of limit as to

16   how far over we can go with some of our cottages and,

17   you know, for the development potential.  So as

18   Sebastian said, it has a little bit of an impact on, you

19   know, where we can go in terms of our valuation of the

20   property.  But it would be great to have that as a

21   protection, take us all the way to the road, and allow

22   us to, you know, build more cottages and maybe some

23   additional product there.

24        But as you know, the shape of the land

25   is -- there's only some -- you know, there's -- the

Property Auction

Page 13

1    front part is more usable than the back, so. . .

2              MR. STANTON:  And Tom Stanton for TMF.  We

3    are grateful for your interest and your approach to it.

4    And TMF is not interested or in the business of holding

5    property, and so we certainly have taken a business

6    approach to this, and we're certainly here very

7    interested.

8              We are -- but we have some strong views

9    about the value and marketability of the property, so

10   we'll respond to the bid with 600,000.  I would indicate

11   that -- that we do believe, with all due respect, we're

12   a way away at 600 from -- I believe quite a distance

13   from what we think we would need to get from this

14   property.

15             MR. BROWN:  To be up front here, we also --

16   this is Sebastian Brown again with RSF Partners.  We're

17   not going to be participating in, obviously, the Waco

18   auction.  It's not something that we have interest in.

19   We understand that you're spreading out your credit bid

20   between those two designee sites.

21             For us, you know, again, just to reiterate,

22   we only have interest in the Abilene site.  We are very

23   open to discussing how we came to that methodology of

24   valuation and appreciate your guys's also kind of

25   openness as well in what you frankly think value is.

Page 14

1                    I think, you know, as we progress and do

2     this -- and we do have our limits that we're going to

3     reach here quickly.  We will continue to be of interest.

4     We hope you just be mindful of, there's kind of a

5     secondary phase of transaction costs, right?  So if you

6     guys do take it through your credit bid and you pay out

7     all the necessary third parties and then, you know, we

8     stand there kind of at where we were before, we think

9     we're the only interested party and the top interested

10    party, that it's never been official to anybody to have

11    kind of secondary transaction costs occur for where we

12    would have otherwise been today.

13                   MR. STANTON:  I appreciate that, and I

14    think that's well said.  So our bid is 600.  But I would

15    like to ask Mr. Kessler if we could have a break in a

16    few minutes for me to visit with Robert about their

17    invitation to speak more specifically about how they

18    came to the property value.

19                   MR. KESSLER:  That's fine.  We're off the

20    record for a few minutes.

21                   (Break taken from 10:19 a.m. to 10:25 a.m.)

22                   MR. KESSLER:  All right.  It is 10:25, and

23    we're back on the record.  I believe we have, what, an

24    offer of 600,000 from TMF.

25                   MR. BROWN:  So RSF Partners will go up to

Property Auction

Page 15

1   625,000. And I'm going to give a little bit more

2   methodology of how we came to, again, value the site.

3            We actually used the broker that was

4   involved and engaged on this transit listing and asked

5   him to send over all the comps that he had in the last

6   three or four years. And they basically ranged for

7   multifamily acreage, 25 acres, and the last high was

8   about a buck 35, and the low was about a buck.

9            And so we -- I mean, our methodology of net

10  usable acreage of 8 acres, we applied that $1.35, which

11  is excluding the time value of money component of how

12  long we would have to hold it and everything else, if

13  there was to be an alternative use, and derived at a

14  rough valuation of $470,000 initially.

15           We're the first to admit, you know, our

16  methodology for net usable acreage is -- you know,

17  could fall to 10 acres as well, right? I mean, it's

18  kind of all in how a good architect designs things

19  versus 8 acres versus 10 acres, and kind of brought us

20  to an upper limit valuation of somewhere close to

21  $600,000.

22           I'm not going to sit here today and tell

23  you that I'm, you know, an exact scientist. I'm a

24  former MAI appraiser, and so I do things kind of in a

25  very methodical manner whenever I look at things and try

Property Auction

 1  to be as scientific as possible.  But the reality is,

 2  right, there's -- you stick your thumb out a little bit

 3  at the end of the day and -- to try to figure it out.

 4              So we are willing to go up to $625,000,

 5  and, you know, at that point in time we'll recess.

 6              MR. DOWD:  And I would just -- this is

 7  Brian Dowd.  I would just add, you know, in evaluating

 8  this number, it's -- you know, it's a very -- it's a

 9  quick close.  There's no entitlement risk.  We're not

10  looking to rezone it.  We're not going to be -- you

11  know, the reps and warrants are minimal, at best.  There

12  is no financing contingency.

13              You know, as Sebastian said earlier, you're

14  not re-marketing it.  You're not going to -- you know, I

15  would guess that most people who look at this might try

16  to rezone it or change -- do something and ask you for

17  your patience while they do that.  And this is a very

18  quick close and, again, no reps.  The reps and warrants

19  are almost nonexistent.  So I think we stated that in

20  our term sheet as well, but I just wanted to reiterate

21  that --

22              MR. STANTON:  Thank you.

23              MR. DOWD:  -- you know, in looking at this

24  versus a normal transaction, which may have a longer

25  time frame and other contingencies to it.  So. . .

Property Auction

Page 17

 1                    MR. STANTON:  Thanks.

 2                    MR. KESSLER:  Okay.  We currently have a

 3   bid of 625.  Back to you.

 4                    MR. STANTON:  And Tom Stanton for TMF.  We

 5   respond at 650.

 6                    MR. BROWN:  Sebastian Brown with RSF.

 7   We're going to have to recess.  And, actually, I would

 8   like to ask:  Is there the ability to bid in smaller

 9   increments than the 25 court-ordered?  I may make a

10   motion for that.  Greg?

11                    MR. HESSE:  I believe the bid procedures --

12                    MR. KESSLER:  These procedures are clear at

13   the 25.

14                    MR. HESSE:  Well, the bid procedures also

15   provide that at the consent of the two secured lenders,

16   TMF and the obligated group, that the bid procedures can

17   be changed without further order of the court.

18                    MR. STANTON:  Tom Stanton.  I respect,

19   really, the -- the really thoughtful work that you're

20   doing.  We wouldn't object to that.

21                    MR. KESSLER:  Chip?  Charles?  Hey, Chip?

22                    MR. AZANO:  Yes.

23                    MR. KESSLER:  Did you hear that request?

24                    MR. AZANO:  No.  I'm sorry.  Could you

25   repeat that?

Property Auction

Page 18

1                    MR. KESSLER:  Yes.  The RSF Partners has

2      requested that instead of going with the 25,000-dollar

3      increment of bid raise that we go with something

4      smaller.  TMF had no objections to that.

5                    MR. AZANO:  That's fine.  I have no

6      objection to that.

7                    MR. KESSLER:  Okay.  Thank you.

8                    Do you have a suggestion of what you want

9      that to be?  I don't want to get too small here.

10                    MR. BROWN:  If we could go down to 10,000.

11                    MR. KESSLER:  Is 10,000 okay with everyone?

12                    MR. STANTON:  Yes.  No objection.

13                    MR. KESSLER:  Chip, is 10 okay with you?

14                    MR. AZANO:  10,000 is acceptable.

15                    MR. KESSLER:  Okay.

16                    MR. BROWN:  If we can get a five-minute

17      recess as well.

18                    MR. KESSLER:  You can.  We are off the

19      record at 10:30.

20                    (Break taken from 10:30 a.m. to 10:47 a.m.)

21                    MR. KESSLER:  It is 10:47, and I guess

22      we're back on the record.

23                    MR. BROWN:  Before we respond, can we

24      inquire, if you would be so inclined to advise us, kind

25      of what your plans or intentions would be if you guys

Property Auction

Page 19

1    ultimately take possession of the land?

2              MR. STANTON:  Well, that's a good question.

3    I don't think that -- I don't think we can be too

4    specific other than to tell you that we don't have right

5    now anybody else that we are talking with and that we

6    are certainly open to -- because of our commitment and

7    responsibility we owe to the board and to the work of

8    the foundation, to get what we think is a good, fair

9    price for this property and because of having a large

10   indebtedness in another property where we tend to be

11   risk-adverse with respect to this asset, and we

12   certainly would be willing to talk with you.

13             I appreciate your comment, sir, about that

14   there is an elegance and simplicity about this.  I think

15   that we may be going another route, depending on where

16   you-all take this discussion now.  But that also has

17   some opportunities and some openness for some more

18   flexibility with respect to terms and financing and ways

19   of getting everything done.

20             So our interest is in working to get this

21   property marketed after this process is over, if we have

22   deed to it, and do it in a fairly good businesslike

23   environment.

24             I did want to share with you, if you were

25   wondering, we are not necessarily feeling that we have a

Property Auction

Page 20

1  fire-sale need to liquidate this asset in the coming

2  days, weeks, or months.  We certainly can take a

3  premeasured approach to the market, if you were

4  wondering about that.

5          And so we appreciate you-all and the

6  thoughtfulness and the real skill and appreciate that

7  you-all are next to our people, and we absolutely are

8  interested in, either this procedure or beyond, working

9  with you on this sale.

10         MR. BROWN:  Okay.  I mean, you're real

11  estate people as well, so there's a certain time value

12  of money.  And, frankly, we have no idea what we would

13  do.  I mean, we have general thoughts and ideas, and

14  implementing those things takes time.  You know, it's a

15  little bit of an accelerator, if you will, to the

16  overall business plan that we had originally.  So I

17  think it's just good for us to know.  I guess that would

18  be true.

19         With that, we will increase our bid to

20  $660,000 with that.

21         MR. STANTON:  Okay.  Mr. Kessler?

22         MR. KESSLER:  Yes, sir.

23         MR. STANTON:  I promise we're looking at a

24  two-minute discussion with Mr. Hoppe in the hallway.

25         MR. KESSLER:  That's fine.

Property Auction

Page 21

1          MR. STANTON:  Good.

2          MR. KESSLER:  We're off the record.

3          (Break taken from 10:50 a.m. to 10:54 a.m.)

4          MR. KESSLER:  It is 10:54, and we are back.

5          MR. STANTON:  Thank you, Mr. Kessler.  Tom

6  Stanton for TMF.  We respond with a credit bid of

7  700,000.

8          MR. BROWN:  We need a recess.

9          MR. KESSLER:  That's fine.

10         (Break taken from 10:55 a.m. to 11:08 a.m.)

11         MR. KESSLER:  It is 11:08, and we are back

12  on the record.

13         MR. BROWN:  I have a couple of questions.

14  You guys finance real estate transactions.  Do you guys

15  do that to for-profit groups as well, or is it

16  exclusively for nonprofit in your real estate

17  transactions?

18         MR. STANTON:  I think I can be kind of

19  direct on that.  For a new lender -- a new borrower

20  coming to us, it would need to be fit within the

21  charitable not-for-profit group, but in connection with

22  the sale of a property that originated properly for a

23  proper tax-exempt purpose, we have more flexibility.

24         MR. BROWN:  Okay.

25         MR. STANTON:  And so we could hold a note

Property Auction

Page 22

1    on a property that we acquired through this process.

2                   MR. BROWN:  Okay.

3                   MR. STANTON:  And I do the tax work for our

4    organization, and I look at that, but, certainly, we're

5    open to that.

6                   MR. BROWN:  Okay.  And does your tax-exempt

7    status today provide -- do you believe it'll provide you

8    tax-exempt status with the property taxes if you

9    maintain and hold it for a period of time as well on the

10   property, or is that --

11                  MR. STANTON:  Good question.  I'm not going

12   to be able to answer that right now.  I won't -- I'm not

13   going to venture that far from --

14                  MR. BROWN:  Okay.

15                  MR. STANTON:  -- and give you that view of

16   it.

17                  MR. BROWN:  Okay.  We will increase our bid

18   at 710.

19                  MR. KESSLER:  Chip, did you hear that?

20                  MR. AZANO:  Was that 710?

21                  MR. KESSLER:  710.

22                  MR. AZANO:  Thank you.

23                  MR. STANTON:  And our response is 725.

24                  MR. BROWN:  We will have to recess -- I

25   apologize -- one more time.

Property Auction

Page 23

1                    MR. KESSLER:  That's fine.  11:10, we're

2     off.

3                    (Break taken from 11:10 a.m. to 11:18 a.m.)

4                    MR. KESSLER:  It is 11:18, and we are back

5     on the record.

6                    MR. BROWN:  So I think we want to be the

7     best possible neighbors as possible, and we -- if this

8     was under any other pretense, we would have been

9     reaching out to you guys not in these confines, and we

10    would be having the same conversation we are here today

11    and be kind of moving in this direction.

12                   So, I mean, the nature of what's occurred

13    here has kind of caused us to be in a little bit of a

14    different setting, but I think, you know -- again,

15    honesty is always kind of the best approach.  Even when

16    you're playing poker, sometimes it's the best way to do

17    things.

18                   So making it open here, we're going to just

19    go to our max, which is 750.  We think that's more than

20    fair for the upper market value of this property.  We've

21    crunched numbers so many different ways now.  Our hopes

22    are, you know, even if, you know, we don't take

23    possession, that we can contact you at some point at a

24    later date, but just to let you know kind of where we've

25    reached our max on the limit at, so. . .

Property Auction

Page 24

1              MR. STANTON:  Okay.  I really appreciate

2     the candor and appreciate the opportunity for you-all to

3     meet Robert.  Robert and his colleague, David McCastle,

4     are the guys that will be lead for the TMF and

5     discussions forward, if there are any.

6              But for today's purposes, then our response

7     bid is -- your final bid was 750?

8              MR. BROWN:  That's our, yeah, final.

9              MR. STANTON:  Yeah.  Yeah.  Then our final

10    bid is 760.

11             MR. BROWN:  Okay.  There will be no

12    subsequent bidding from RSF.

13             MR. KESSLER:  All right.  I appreciate

14    everyone's help and attendance.  I'm going to bring the

15    auction to a close and thank everybody for their time

16    but just ask:  Would anyone else like to put anything on

17    the record at this time.

18             MR. PEREZ:  This is Alex Perez on behalf of

19    TMF.  We don't have anything to add to the record.

20             MR. HESSE:  This is Greg Hesse on behalf of

21    RSF.  There's nothing further to add.

22             MR. KESSLER:  Okay.  Officially, we are

23    adjourning the record at 11:20 and appreciate everybody

24    being here and appreciate everybody's cooperation today.

25             Thank you.  We are done.

Property Auction

Page 25

1                    (Proceedings adjourned at 11:20 a.m.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1 THE STATE OF TEXAS )

2 COUNTY OF DALLAS )

3

4    I, Judy Gamm, Certified Shorthand Reporter in

and for the State of Texas, do hereby certify that the

5

above and foregoing contains a true and correct

6

transcription of all portions of the proceedings which

7

occurred and were reported by me.

8

9    I further certify that I am neither counsel

for, related to, nor employed by any of the parties or

10

attorneys in the action in which this proceeding was

11

taken, and further that I am not financially or

12

otherwise interested in the outcome of the action.

13

14    Certified to by me this 4th day of August,

2015.

15

16

17

18    _____
     Judy Gamm, Texas CSR 9200
19    Expiration Date: 12/31/16
     Firm Registration No. 769
20    TERIS
     11811 North Freeway, 5th Floor,
21    Houston, Texas 77060
     (512) 476-3371
22

23

24

25

Property Auction

**A**

**a.m** 14:21,21
  18:20,20 21:3
  21:3,10,10
  23:3,3 25:1
**Abilene** 5:11
  7:13 13:22
**ability** 17:8
**able** 22:11
**absolutely** 20:7
**accelerator**
  20:15
**acceptable**
  10:10 18:14
**accommodating**
  11:11
**acquired** 22:1
**acreage** 11:23
  12:9 15:7,10
  15:16
**acres** 11:24 15:7
  15:10,17,19,19
**action** 26:10,12
**activities** 5:22
**Adamowitz** 2:14
  8:7,7
**add** 9:24 12:11
  16:7 24:19,21
**additional** 9:23
  12:23
**address** 9:20
**adjacent** 12:1,4
**adjourned** 25:1
**adjourning**
  24:23
**administered**
  5:13
**admit** 15:15
**advise** 18:24
**Advisors** 2:3 6:4
**agree** 12:13
**agreed** 6:8,8 7:3
  7:5
**Alex** 6:10,17
  9:22 24:18

**ALEXANDER**
  3:2
**allow** 12:21
**allowed** 5:6
**alternative**
  15:13
**amount** 7:8,13
  12:2
**answer** 22:12
**anybody** 10:20
  14:10 19:5
**aperez@diam...**
  3:5
**apologize** 22:25
**Appearances**
  4:3
**applied** 15:10
**appraiser** 15:24
**appreciate** 9:3
  13:24 14:13
  19:13 20:5,6
  24:1,2,13,23
  24:24
**approach** 13:3,6
  20:3 23:15
**approval** 9:18
  11:3
**approving** 5:9
**architect** 15:18
**asked** 15:4
**asset** 12:8 19:11
  20:1
**attendance**
  24:14
**Attending** 6:10
**attorneys** 26:10
**auction** 1:9 5:21
  7:15 8:13,16
  8:19,22 9:15
  9:15 13:18
  24:15
**August** 5:24
  26:13
**Austin** 3:9
**authority** 5:25

  11:4
**authorizing** 10:3
**Avenue** 1:19
  2:10,15
**Azano** 3:14 6:11
  6:14,22,23
  10:13,18 17:22
  17:24 18:5,14
  22:20,22

**B**

**back** 8:25 13:1
  14:23 17:3
  18:22 21:4,11
  23:4
**Bank** 6:6
**Bankruptcy**
  5:20 7:5 9:17
**basic** 5:4
**basically** 15:6
**bdowd@everg...**
  2:23
**behalf** 9:22,25
  24:18,20
**believe** 9:23
  10:14,21 13:11
  13:12 14:23
  17:11 22:7
**best** 16:11 23:7
  23:15,16
**beyond** 20:8
**bid** 5:10 7:7,12
  7:20,23,23,23
  8:19 9:6,9,10
  10:2 11:1,4,15
  11:18 13:10,19
  14:6,14 17:3,8
  17:11,14,16
  18:3 20:19
  21:6 22:17
  24:7,7,10
**bidder** 7:10
  10:16
**bidders** 8:17,22
**bidding** 7:19

  24:12
**bids** 8:18,21,24
**bit** 11:18 12:7
  12:18 15:1
  16:2 20:15
  23:13
**BlackBriar** 2:3
  6:4
**board** 11:3 19:7
**bolster** 5:6
**bond** 6:8,13,24
  7:2,22
**borrower** 21:19
**Boston** 3:15
**Boulder** 3:8
**Box** 2:21
**break** 14:15,21
  18:20 21:3,10
  23:3
**Brentwood** 2:21
**Brian** 2:20 8:9
  12:11 16:7
**bring** 24:14
**broker** 15:3
**brought** 15:19
**Brown** 2:14 8:5
  8:5,14 11:5,17
  11:20,22 13:15
  13:16 14:25
  17:6,6 18:10
  18:16,23 20:10
  21:8,13,24
  22:2,6,14,17
  22:24 23:6
  24:8,11
**buck** 15:8,8
**build** 12:22
**business** 13:4,5
  20:16
**businesslike**
  19:22

**C**

**C** 2:1 5:1
**candor** 24:2

**Caprock** 5:13
**case** 1:10 5:20
**caused** 23:13
**Cell** 2:22
**Center** 3:3,15
**Centers** 5:11,14
**certain** 5:10
  12:2 20:11
**certainly** 13:5,6
  19:6,12 20:2
  22:4
**Certificate** 4:5
**Certified** 26:3
  26:13
**certify** 26:4,8
**change** 16:16
**changed** 17:17
**Chapter** 5:19
**charitable** 21:21
**Charles** 3:14
  6:11,23 17:21
**Chip** 6:21 10:12
  17:21,21 18:13
  22:19
**CIRA** 2:3
**Cityplace** 1:18
**claims** 10:4
**clarification**
  10:1,5,24
**clear** 10:4 17:12
**close** 15:20 16:9
  16:18 24:15
**Code** 5:20,22
  7:5
**Cohn** 3:14 6:12
**colleague** 24:3
**come** 8:25
**coming** 20:1
  21:20
**comment** 19:13
**commitment**
  19:6
**component**
  15:11
**comps** 15:5

Property Auction

conducted 5:21
confines 23:9
connection 21:21
consent 17:15
consistent 7:19
constituents 8:25
constraints 12:10
contact 23:23
contains 26:5
contingencies 16:25
contingency 16:12
continue 8:20 14:3
conversation 23:10
cooperate 10:15
cooperation 24:24
Corporation 5:13,15,16,17 5:18
correct 10:17 11:5,6 26:5
costs 14:5,11
cottages 12:16 12:22
counsel 11:1 26:8
COUNTY 26:2
couple 21:13
court 5:5 9:17 17:17
court-ordered 17:9
created 9:8
credit 7:12 13:19 14:6 21:6
crunched 23:21
CSR 1:25 26:18

currently 17:2
cwazano@mi... 3:17

**D**

D 5:1
Dallas 1:20 2:5 2:11,16 26:2
date 1:11 23:24 26:19
David 24:3
day 16:3 26:13
days 20:2
debtor 5:19
deed 19:22
depending 19:15
deposit 7:9 9:7
derived 15:13
designate 7:14 8:12 9:13
designee 11:10 13:20
designs 15:18
desire 9:20
determined 7:22
developed 12:5
development 12:17
Diamond 1:18 3:2 6:11,17 7:21
different 23:14 23:21
Dimensions 5:18
direct 21:19
direction 23:11
director 6:4
disclaimer 9:14
discussing 13:23
discussion 19:16 20:24
discussions 24:5
distance 13:12
Docket 7:6
document 9:12

doing 17:20
Dowd 2:20 8:9,9 12:13 16:6,7 16:23
due 13:11

**E**

E 2:1,1,20 5:1,1
earlier 16:13
earnest 7:9
effective 11:1
either 20:8
elegance 19:14
employed 26:9
encumbrances 10:4
engaged 15:4
enter 9:13
entered 10:3
entitlement 16:9
environment 19:23
ESLP 2:20
estate 20:11 21:14,16
evaluate 9:15
evaluating 16:7
event 11:1
Evergreen 8:9
everybody 24:15 24:23
everybody's 24:24
everyone's 24:14
exact 15:23
excluding 15:11
exclusively 21:16
Excuse 11:20
EXHIBITS 4:7
existing 12:7
Expiration 26:19

**F**

fair 19:8 23:20
fairly 19:22
fall 15:17
Fannin 3:3
far 12:16 22:13
Fargo 3:13 6:6 6:24
Fax 2:6,12,17 3:5,16
Federal 9:17
feel 11:19,23
feeling 19:25
Ferris 3:14 6:12
figure 16:3
file 10:7
filed 7:2
final 5:23 24:7,8 24:9
finance 21:14
Financial 3:15
financially 26:11
financing 16:12 19:18
fine 14:19 18:5 20:25 21:9 23:1
fire-sale 20:1
firm 6:17,23 26:19
first 15:15
fit 5:7 21:20
five-minute 18:16
flexibility 19:18 21:23
Floor 3:3 26:20
following 9:6
for-profit 21:15
foregoing 26:5
formally 5:23
former 15:24
forward 24:5
foundation 3:1,8 5:15 6:6,19 11:16 19:8

four 15:6
frame 16:25
frankly 13:25 20:12
free 10:3
Freeway 26:20
front 12:6 13:1 13:15
further 6:6,7 10:22,22 17:17 24:21 26:8,11

**G**

G 2:9 5:1
Gamm 1:25 26:3 26:18
gathered 5:8
general 20:13
getting 19:19
ghesse@hunt... 2:12
give 8:23 15:1 22:15
given 12:14
Glovsky 3:14 6:12
go 8:24 12:16,19 14:25 16:4 18:3,10 23:19
going 5:3 9:2 11:3 13:17 14:2 15:1,22 16:10,14 17:7 18:2 19:15 22:11,13 23:18 24:14
good 6:16,22 15:18 19:2,8 19:22 20:17 21:1 22:11
govern 7:3
grateful 13:3
great 10:13 12:20
Greg 9:25 17:10

24:20
**Gregory** 2:9 8:1
**group** 6:7,13,25
7:2,22 8:12,23
10:6 11:10
17:16 21:21
**groups** 21:15
**guess** 16:15
18:21 20:17
**guys** 14:6 18:25
21:14,14 23:9
24:4
**guys's** 13:24

**H**
**hallway** 20:24
**Harold** 2:3 6:2
**Haskell** 1:19
**hear** 17:23 22:19
**heard** 10:14
**hearing** 5:24
**help** 24:14
**helpful** 11:12
**Hesse** 2:9 8:1,2
8:3,14 9:25,25
10:11,17,19,21
11:6 17:11,14
24:20,20
**Hey** 17:21
**hiccup** 9:3
**high** 15:7
**higher** 8:19
**highest** 8:21
**hkessler@blac...**
2:6
**hold** 15:12 21:25
22:9
**holding** 9:7 13:4
**honesty** 23:15
**Honorable** 5:9
**hope** 14:4
**hopes** 23:21
**Hoppe** 3:7 6:20
20:24
**Houston** 3:3,4

6:18 26:21
**Hunton** 2:9 8:1

**I**
**idea** 20:12
**ideas** 20:13
**identify** 11:9
**impact** 12:18
**implementing**
20:14
**impose** 9:2
**inclined** 18:24
**increase** 11:18
20:19 22:17
**increment** 18:3
**increments** 17:9
**indebtedness**
19:10
**INDEX** 4:1
**indicate** 13:10
**information** 5:4
**initially** 15:14
**inquire** 18:24
**intentions** 18:25
**interest** 5:5 9:20
10:7 13:3,18
13:22 14:3
19:20
**interested** 13:4,7
14:9,9 20:8
26:12
**introduce** 6:15
8:2,4
**invitation** 14:17
**invite** 9:19
**involved** 15:4
**it'll** 22:7
**items** 9:23

**J**
**J** 2:3
**jadamowitz@...**
2:18
**Jay** 2:14 8:7
**Jernigan** 5:9,23

5:25
**jointly** 5:12
**Judge** 5:23,25
**Judy** 1:25 26:3
26:18
**July** 1:11 7:7,9
7:19

**K**
**Kessler** 2:3 5:2
6:2,21 7:1,18
8:11,16 10:12
10:20,23 11:8
11:20 14:15,19
14:22 17:2,12
17:21,23 18:1
18:7,11,13,15
18:18,21 20:21
20:22,25 21:2
21:4,5,9,11
22:19,21 23:1
23:4 24:13,22
**kind** 9:3 11:23
11:24 12:2
13:24 14:4,8
14:11 15:18,19
15:24 18:24
21:18 23:11,13
23:15,24
**know** 9:4 12:1,3
12:8,11,15,17
12:19,22,24,25
13:21 14:1,7
15:15,16,23
16:5,7,8,11,13
16:14,23 20:14
20:17 23:14,22
23:22,24
**known** 6:6,7
**knows** 11:12

**L**
**land** 5:10 11:23
12:24 19:1
**Lane** 3:8

**large** 19:9
**Lastly** 11:8
**law** 6:17,23
**lead** 24:4
**lender** 21:19
**lenders** 17:15
**letter** 7:10
**Levin** 3:14 6:12
6:23
**lien** 10:7,7,15,16
**liens** 10:4
**limit** 9:2 12:5,15
15:20 23:25
**limits** 14:2
**lines** 12:14
**liquidate** 20:1
**liquidating** 2:2
6:2,3 7:21 9:6
9:8,11
**listing** 15:4
**little** 12:18 15:1
16:2 20:15
23:13
**Living** 8:10
**LLC** 2:3,20 6:4
**LLP** 1:18 2:9
3:2 7:21 8:1
**LOCATION**
1:17
**long** 15:12
**longer** 16:24
**look** 15:25 16:15
22:4
**looking** 16:10,23
20:23
**low** 15:8

**M**
**MAI** 15:24
**Main** 2:4 3:10
**maintain** 22:9
**making** 23:18
**Management**
2:20
**managing** 6:3

**manner** 15:25
**Maple** 2:15
**March** 7:1
**market** 11:19,22
12:9 20:3
23:20
**marketability**
13:9
**marketed** 19:21
**Massachusetts**
3:15
**matter** 9:16
**max** 23:19,25
**McCarthy** 1:18
3:2 6:11,18
7:21
**McCastle** 24:3
**mean** 12:13 15:9
15:17 20:10,13
23:12
**meet** 24:3
**methodical**
15:25
**Methodist** 3:1,8
5:11,12,14,14
5:17 6:5,19
11:16
**methodology**
11:25 13:23
15:2,9,16
**mindful** 14:4
**mindset** 12:8
**minimal** 16:11
**Mintz** 3:14 6:12
6:23
**minutes** 5:3
14:16,20
**moment** 9:24
**money** 7:9 15:11
20:12
**months** 20:2
**morning** 5:8
6:16,22
**motion** 17:10
**moving** 23:11

multifamily 15:7

**N**

N 1:19 2:1 5:1
N.A 3:13 6:7
name 6:2,17,22
nature 23:12
necessarily 19:25
necessary 14:7
need 5:3 8:24,25 9:21 10:6 13:13 20:1 21:8,20
neighbors 23:7
neither 26:8
net 11:23 15:9 15:16
never 14:10
new 21:19,19
nonexistent 16:19
nonprofit 21:16
normal 16:24
North 26:20
not-for-profit 21:21
note 21:25
notice 6:5 7:12
number 1:10 5:20 7:6 16:8
numbers 23:21

**O**

O 5:1
object 17:20
objection 10:18 18:6,12
objections 18:4
obligated 6:7,13 6:25 7:2,22 10:6 17:16
obviously 10:18 11:17 12:5,6 13:17

occur 14:11
occurred 23:12 26:7
offer 8:20,21 14:24
office 2:22 6:18
official 8:12 11:9 14:10
Officially 24:22
okay 10:11,20 10:23 17:2 18:7,11,13,15 20:10,21 21:24 22:2,6,14,17 24:1,11,22
open 11:24 13:23 19:6 22:5 23:18
openness 13:25 19:17
operating 5:18
opportunities 19:17
opportunity 24:2
order 5:9 10:3 17:17
organization 22:4
originally 20:16
originated 21:22
outcome 26:12
overall 20:16
owe 19:7
owned 5:11
owning 12:1

**P**

P 2:1,1 5:1
P.O 2:21
PAGE 4:2
Panhandle 5:15
part 13:1
Participants 9:16

participating 13:17
parties 5:5 9:19 14:7 26:9
Partners 2:8,15 7:8,20,25 8:2,6 8:8,12 9:7 13:16 14:25 18:1
Partners' 7:23
party 14:9,10
patience 16:17
pay 14:6
PC 3:14
people 16:15 20:7,11
Perez 3:2 6:10 6:14,16,17 9:22,22 10:9 24:18,18
period 22:9
Permian 5:16
permitting 8:17
person 8:15
phase 14:5
phone 2:5,11,17 3:4,10,16 6:12
Plains 5:16
plan 20:16
plans 18:25
playing 23:16
Please 6:5
point 16:5 23:23
poker 23:16
Popeo 3:14 6:12
portions 26:6
possession 5:19 19:1 23:23
possible 16:1 23:7,7
potential 12:17
power 12:14
premeasured 20:3
presented 5:23

pretense 23:8
previous 8:19
price 19:9
probably 11:11
procedure 20:8
procedures 5:10 6:9 7:3,6,11,19 7:24 9:6 10:2 17:11,12,14,16
proceed 8:17
proceeding 26:10
proceedings 4:4 5:4 25:1 26:6
process 7:3 9:12 19:21 22:1
product 12:23
progress 14:1
promise 20:23
proper 21:23
properly 21:22
properties 7:4,5
property 1:9 6:9 7:13 10:8 12:2 12:14,20 13:5 13:9,14 14:18 19:9,10,21 21:22 22:1,8 22:10 23:20
proposals 9:16
protection 12:2 12:21
provide 9:9 17:15 22:7,7
providing 7:11
purpose 21:23
purposes 9:14 24:6
pursuant 5:8 7:11
put 9:5,14,21 24:16

**Q**

qualified 7:7,10

7:23 8:17,21
question 10:25 19:2 22:11
questions 11:15 21:13
quick 10:24 16:9 16:18
quickly 14:3
quite 11:18 12:7 13:12

**R**

R 2:1 3:2 5:1 6:10
raise 18:3
ranged 15:6
re-marketing 16:14
reach 14:3
reached 23:25
reaching 23:9
real 20:6,10 21:14,16
reality 16:1
really 17:19,19 24:1
received 7:7,10
reception 10:13
recess 16:5 17:7 18:17 21:8 22:24
record 5:3,5,6 8:24 9:5,10,13 9:15,20,21,24 14:20,23 18:19 18:22 21:2,12 23:5 24:17,19 24:23
regard 10:2
Registration 26:19
reiterate 13:21 16:20
related 26:9
release 10:7,15

10:15
reminded 9:16
repeat 17:25
reported 1:24
26:7
reporter 11:11
26:3
Reporter's 4:5
represent 6:18
6:24
representation
10:5
represented
7:25
representing
6:11,13
reps 16:11,18,18
request 17:23
requested 18:2
required 11:3
research 11:19
respect 13:11
17:18 19:11,18
respond 13:10
17:5 18:23
21:6
response 22:23
24:6
responsibility
19:7
Retirement 5:12
5:13,15,16,17
5:17
review 7:20 9:17
rezone 16:10,16
rhoppe@tmf-f...
3:11
right 9:12 11:2
11:15 14:5,22
15:17 16:2
19:4 22:12
24:13
risk 16:9
risk-adverse
19:11

road 12:21
Robert 3:7 6:20
14:16 24:3,3
Ross 2:10
rough 15:14
route 19:15
RSF 2:8,15 7:8
7:20,23,25 8:2
8:6,7,12 9:7
10:1 11:17
13:16 14:25
17:6 18:1
24:12,21
run 12:14

**S**
S 2:1 5:1
sale 5:10 6:9
7:11 10:3 20:9
21:22
sales 5:24 7:3,5
sbrown@rsfp...
2:18
scheduled 5:24
scientific 16:1
scientist 15:23
scope 12:8
Sears 5:11,12,13
5:14,14,15,16
5:16,17,23
11:2
Sebastian 2:14
8:5,14 11:20
12:18 13:16
16:13 17:6
secondary 14:5
14:11
Section 5:22 7:4
7:11
secured 17:15
see 5:7
send 15:5
Senior 5:18 8:9
setting 23:14
shape 12:24

share 19:24
sheet 16:20
Shorthand 26:3
simplicity 19:14
sir 19:13 20:22
sit 15:22
site 13:22 15:2
sites 13:20
skill 20:6
small 11:10 18:9
smaller 17:8
18:4
SMRS 6:3
sorry 17:24
sort 12:15
speak 10:25
14:17
speaking 11:9
11:12,21
specific 19:4
specifically
14:17
spokesman 7:14
spokesperson
7:17 8:12
spreading 13:19
spreadsheet 9:8
Stacey 5:9
stand 14:8
Stanton 3:7 6:20
7:16,16 10:24
11:7 13:2,2
14:13 16:22
17:1,4,4,18,18
18:12 19:2
20:21,23 21:1
21:5,6,18,25
22:3,11,15,23
24:1,9
State 26:1,4
stated 7:18
16:19
status 22:7,8
stick 16:2
Street 2:4 3:3

strong 13:8
subject 9:17
submitted 7:12
7:20 8:21
subsequent 11:2
24:12
successive 8:18
suggestion 18:8
Suite 1:19 2:4
2:10,16 3:9
sure 12:3

**T**
table 11:15
take 6:5 12:21
14:6 19:1,16
20:2 23:22
taken 1:11 13:5
14:21 18:20
21:3,10 23:3
26:11
takes 20:14
talk 8:25 19:12
talking 11:24
19:5
tax 22:3
tax-exempt
21:23 22:6,8
taxes 22:8
team 8:2
teams 6:15
telephone 3:14
tell 15:22 19:4
template 9:8
tend 19:10
Tennessee 2:21
TERIS 26:20
term 16:20
terms 12:19
19:18
Texas 1:25 2:5
2:11,16 3:1,4,8
3:9 5:11 6:5,18
11:16 26:1,4
26:18,21

thank 7:1 8:11
8:16 10:19
16:22 18:7
21:5 22:22
24:15,25
Thanks 11:7
17:1
thing 9:4
things 15:18,24
15:25 20:14
23:17
think 10:9 11:15
13:13,25 14:1
14:8,14 16:19
19:3,3,8,14
20:17 21:18
23:6,14,19
third 14:7
THOMAS 3:7
thoughtful
17:19
thoughtfulness
20:6
thoughts 20:13
three 15:6
thumb 16:2
time 5:6 8:23 9:1
9:2,19 11:13
15:11 16:5,25
20:11,14 22:19
22:25 24:15,17
TMF 6:6,11 7:2
7:10,12,14
9:23 10:5,25
11:16 13:2,4
14:24 17:4,16
18:4 21:6 24:4
24:19
today 5:22 6:1
6:10,19 11:2
12:8 14:12
15:22 22:7
23:10 24:24
today's 5:4 24:6
Tom 6:20 7:16

13:2 17:4,18
21:5
**top** 14:9
**Tower** 1:18
**transaction** 14:5
14:11 16:24
**transactions**
21:14,17
**transcription**
26:6
**transit** 15:4
**transparency**
9:9
**true** 20:18 26:5
**Trust** 6:3
**trustee** 2:2 6:3,7
6:8,13,24 7:2
7:21,22 9:6,8
**trustee's** 9:12
**try** 15:25 16:3
16:15
**tstanton@tmf...**
3:11
**two** 3:3 13:20
17:15
**two-minute**
20:24
**TX** 1:20
**Tyler** 5:17

_____
**U**
**U.S** 5:19
**ultimate** 5:25
**ultimately** 9:11
19:1
**understand**
13:19
**undeveloped**
5:10 6:8 7:4,5
**unfavorably**
12:4
**upper** 15:20
23:20
**usable** 11:23
12:9 13:1

15:10,16
**use** 12:4 15:13

_____
**V**
**valuation** 12:19
13:24 15:14,20
**value** 11:19,22
12:3 13:9,25
14:18 15:2,11
20:11 23:20
**venture** 22:13
**versus** 15:19,19
16:24
**view** 22:15
**views** 13:8
**visit** 14:16

_____
**W**
**W** 3:14
**Waco** 13:17
**want** 12:3,6,11
18:8,9 19:24
23:6
**wanted** 10:5
16:20
**warrants** 16:11
16:18
**wasn't** 10:13
**way** 12:21 13:12
23:16
**ways** 19:18
23:21
**we'll** 8:24 11:10
13:10 16:5
**we're** 5:3 10:9
11:10 13:6,11
13:16 14:2,9
14:19,23 15:15
16:9,10 17:7
18:22 20:23
21:2 22:4 23:1
23:18
**we've** 23:20,24
**weeks** 20:2
**Wells** 3:13 6:6

6:24
**Williams** 2:9 8:1
**willing** 10:15
16:4 19:12
**winning** 10:16
**wondering**
19:25 20:4
**work** 9:12 12:7
17:19 19:7
22:3
**working** 19:20
20:8
**wouldn't** 17:20

_____
**X**

_____
**Y**
**yeah** 24:8,9,9
**years** 15:6
**you-all** 11:3
19:16 20:5,7
24:2

_____
**Z**

_____
**0**
**02111** 3:15

_____
**1**
**1.35** 15:10
**10** 15:17,19
18:13
**10,000** 18:10,11
18:14
**10:06** 5:3
**10:19** 14:21
**10:25** 14:21,22
**10:30** 18:19,20
**10:47** 18:20,21
**10:50** 21:3
**10:54** 21:3,4
**10:55** 21:10
**100** 3:9
**100,000** 7:9
**11** 5:19
**11:08** 21:10,11

**11:10** 23:1,3
**11:18** 23:3,4
**11:20** 24:23 25:1
**11709** 3:8
**11811** 26:20
**12/31/16** 26:19
**13** 7:11
**14-32821-SGJ...**
1:10 5:20
**1445** 2:10
**15th** 3:3 7:7,19
**17th** 7:9
**19th** 7:1

_____
**2**
**2-3** 4:3
**201** 2:22
**2015** 1:11 7:2
26:14
**2107** 2:21
**214** 2:5,6,11,12
2:17,17
**25** 15:7 17:9,13
**25,000** 8:18
**25,000-dollar**
18:2
**250** 2:16
**26** 4:5
**2711** 1:19

_____
**3**
**31** 1:11
**3100** 1:19
**333-5147** 3:4
**333-5199** 3:5
**35** 15:8
**363** 5:22 7:4
**3700** 2:10
**37024** 2:21
**3899** 2:15

_____
**4**
**447-7006** 2:22
**470,000** 15:14
**476-3371** 26:21
**483-1261** 2:5

**483-1271** 2:6
**4th** 26:13

_____
**5**
**5** 4:4
**500,000** 7:8
**512** 3:10 26:21
**525,000** 7:13
11:16
**542-2241** 3:16
**542-6000** 3:16
**550** 11:18
**5th** 26:20

_____
**6**
**600** 2:4 13:12
14:14
**600,000** 13:10
14:24 15:21
**617** 3:16,16
**625** 17:3
**625,000** 15:1
16:4
**650** 17:5
**660,000** 20:20

_____
**7**
**700,000** 21:7
**710** 22:18,20,21
**713** 3:4,5
**725** 22:23
**740-7131** 2:12
**740-7643** 2:17
**750** 23:19 24:7
**75202** 2:5,11
**75204** 1:20
**75219** 2:16
**760** 24:10
**769** 26:19
**77010** 3:4
**77060** 26:21
**78726-1808** 3:9
**789-8470** 3:10
**7th** 5:24

_____
**8**

Property Auction

**8** 11:24 15:10,19
**800** 3:10
**819** 7:6
**838-5885** 2:22
**855-9407** 2:17

---

**9**

**901** 2:4
**909** 3:3
**917** 2:22
**9200** 26:18
**933-5502** 3:10
**979-3000** 2:11

# **<u>EXHIBIT B</u>**

Bid Sheet

| | **Abilene Property** | | | |
| | **July 31, 2015** | | | |
| **Bid Amount** | **Bidding Party** | **Bid Increase** | **Date/Time** | **Comments** |
| $   500,000 | RSF Partners | | 07/15/15 | Letter rec. from RSF Partners |
| 525,000 | Texas Methodist Foundation ("TMF") | 25,000 | 07/17/15 | Credit Bid Letter rec. from TMF |
| 600,000 | TMF | 75,000 | 10:18 | |
| 625,000 | RSF Partners | 25,000 | 10:26 | |
| 650,000 | TMF | 25,000 | 10:28 | |
| 660,000 | RSF Partners | 10,000 | 10:50 | Successive bid increase was reduced to $10,000 from $25,000 as was approved by both TMF & the Obligated Group Bond Trustee |
| 700,000 | TMF | 40,000 | 10:55 | |
| 710,000 | RSF Partners | 10,000 | 11:10 | |
| 725,000 | TMF | 15,000 | 11:10 | |
| 750,000 | RSF Partners | 25,000 | 11:19 | |
| 760,000 | TMF | 10,000 | 11:20 | Final bid |

**$   260,000**   **Increase from original bid**

# **PROPOSED ORDER**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | CASE NO. 14-32821-11 |
| | § | |
| **SEARS METHODIST RETIREMENT** | § | CHAPTER 11 |
| **SYSTEM, INC.,** *et al.*[1] | § | |
| | § | Jointly Administered |
| Debtors. | § | |

## ORDER CONFIRMING SALE OF ABILENE PROPERTY

Pursuant to that certain Agreed Undeveloped Properties Sale Procedures (the "Sale Procedures")[2] between Texas Methodist Foundation ("TMF") and Wells Fargo Bank, N.A., as Trustee (the "Obligated Group Bond Trustee"), TMF and the Obligated Group Bond Trustee seek entry of an order authorizing and approving the sale (the "Sale") of all of Sears Methodist Centers, Inc.'s (the "Debtors") rights and interests in the Abilene Property (the "Property"), in accordance with the Sale Procedures as provided for in *Findings of Fact, Conclusions of Law, and Order Confirming Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* (the "Confirmation Order") [Docket No. 800] entered by the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court"), and after due deliberation of the relief set forth herein; and finding that good and sufficient notice of the relief granted by this Order has been given and no further notice is required; and good and sufficient cause appearing to approve the relief herein, including for the reasons stated on the record at the

---

[1]    The debtors in these Chapter 11 Cases, along with the last four (4) digits of their taxpayer identification numbers, are: Sears Methodist Retirement System, Inc. (6330), Canyons Senior Living, L.P. (8545), Odessa Methodist Housing, Inc. (9569), Sears Brazos Retirement Corporation (8053), Sears Caprock Retirement Corporation (9581), Sears Methodist Centers, Inc. (4917), Sears Methodist Foundation (2545), Sears Panhandle Retirement Corporation (3233), Sears Permian Retirement Corporation (7608), Sears Plains Retirement Corporation (8233), Sears Tyler Methodist Retirement Corporation (0571) and Senior Dimensions, Inc. (4016).  The mailing address of each of the Debtors, solely for purposes of notices and communications, is 2100 Ross Avenue, 21st Floor, c/o Paul Rundell, Dallas, Texas 75201.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Procedures.

hearing seeking approval of the Sale, the Bankruptcy Court hereby FINDS, DETERMINES, CONCLUDES, and ORDERS that:

1.      The bid submitted by TMF (in the capacity as purchaser, the "<u>Purchaser</u>") constitutes the highest and best offer for the Property.  Other parties have had a reasonable opportunity to make a higher or otherwise better offer to purchase the Property.

2.      Pursuant to §§ 105(a) and 363 of the Bankruptcy Code, the Liquidating Trustee (the "<u>Authorized Representative</u>"), on behalf of the Debtor, is authorized to transfer the Property to the Purchaser pursuant to a deed substantially in the form attached hereto as Exhibit 1.  The transfer of the Property to the Purchaser pursuant to the terms hereof shall constitute a legal, valid, binding, and effective transfer of the Property.

3.      Upon the closing of the Sale, pursuant to § 363(f) of the Bankruptcy Code, the Purchaser shall take title to and possession of the Property free and clear of any and all liens, claims, interests, and encumbrances, except for the outstanding ad valorem property taxes associated with the Property is subject to the liens that secure all amounts owed in connection with such taxes.

4.      Upon the closing of the Sale, TMF's secured claims will be reduced by $760,000.00.

5.      The Purchaser is purchasing the Property in good faith and is a good faith buyer within the meaning of Section 363(m) of the Bankruptcy Code.  The Purchaser proceeded in good faith in connection with all aspects of the Sale.  Accordingly, the Purchaser is entitled to all of the protections afforded under Section 363(m) of the Bankruptcy Code.

6.      All persons and entities are enjoined from taking any actions against Purchaser or any affiliate of the Purchaser to recover any claim that such person or entity has solely against

the Debtor, save and except for taxing authorities holding outstanding ad valorem property taxes associated with the Property.

7.      The Authorized Representative is hereby authorized to take any and all actions necessary to consummate the transactions contemplated by this Order.

8.      Notwithstanding any provision in the Bankruptcy Rules to the contrary, the terms of this Order shall be immediately effective and enforceable upon its entry, notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or otherwise.

9.      This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

SIGNED this ___ day of _____, 2015.

_____
**Stacey G.C. Jernigan,**
**U.S. Bankruptcy Judge**

# <u>EXHIBIT 1</u>

**NOTICE OF CONFIDENTIALITY RIGHTS:  IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

STATE OF TEXAS                            §
                                         §          KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF TAYLOR                          §

<u>SPECIAL WARRANTY DEED</u>

SEARS METHODIST CENTERS, INC., ("**Grantor**"), a Plan Debtor in the bankruptcy case styled as *In re Sears Methodist Retirement System, Inc. et al.*, in the United States Bankruptcy Court for the Northern District of Texas, Case No. 14-32821 (the "**Bankruptcy Case**"), for and in consideration of the sum of $10 and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, has GRANTED, BARGAINED, SOLD, and CONVEYED and by these presents does GRANT, BARGAIN, SELL, AND CONVEY unto Texas Methodist Foundation ("**Grantee**"), that certain land in Taylor County, Texas, fully described in <u>Exhibit A</u> hereto, together with all improvements, if any, thereon and all rights appurtenances appertaining thereto (collectively, the "**Property**") pursuant to that certain *Order Confirming Sale of Abilene Property* [Docket No. ___] (as attached hereto as <u>Exhibit B</u>, the "**Bankruptcy Order**").

This Special Warranty Deed and the conveyance hereinabove set forth is executed by Grantor and accepted by Grantee subject to all matters of record to the extent the same are validly existing and applicable to the Property and not otherwise extinguished by the Bankruptcy Order, all subject and pursuant to the Bankruptcy Order (collectively, the "**Permitted Exceptions**").

TO HAVE AND TO HOLD the Property, subject to the Permitted Exceptions as aforesaid, unto Grantee, and Grantee's successors and assigns, forever; and Grantor does hereby bind Grantor, and Grantor's successors and assigns, to WARRANT and FOREVER DEFEND, all and singular, the Property, subject to the Permitted Exceptions unto Grantee, and Grantee's successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof by, through or under Grantor, but not otherwise.

Except as specifically stated herein, Grantor hereby specifically disclaims any warranty, guaranty, or representation, oral or written, past, present or future, of, as, to, or concerning (i) the nature and condition of the Property, including but not by way of limitation, the water, soil, geology and the suitability thereof, and of the Property, for any and all activities and uses which Grantee may elect to conduct thereon or any improvements Grantee may elect to construct thereon, income to be derived therefrom or expenses to be incurred with respect thereto, or any obligations or any other matter or thing relating to or affecting the same; (ii) the manner of construction and condition and state of repair or lack of repair of any improvements located thereon; (iii) except for any warranties contained herein, the nature and extent of any easement, right-of-way, lease, possession, lien, encumbrance, license, reservation, condition or otherwise;

6

and (iv) the compliance of the Property or the operation of the Property with any laws, rules, ordinances, or regulations of any government or other body. THE CONVEYANCE OF THE PROPERTY AS PROVIDED FOR HEREIN IS MADE ON AN "AS IS" BASIS, AND GRANTEE ACKNOWLEDGES THAT, IN CONSIDERATION OF THE AGREEMENTS OF GRANTOR HEREIN, EXCEPT AS OTHERWISE SPECIFIED HEREIN, GRANTOR MAKES NO WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, OR ARISING BY OPERATION OF LAW, INCLUDING, BUT IN NO WAY LIMITED TO, ANY WARRANTY OF CONDITION, HABITABILITY, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE OF THE PROPERTY.

Grantee, by its acceptance hereof, does hereby assume and agree to pay any and all outstanding ad valorem taxes pertaining to the Property.

EXECUTED effective the _____ day of _____, 2015.

GRANTOR:

SEARS METHODIST CENTERS, INC.,
a Texas non-profit corporation

By: _____
Name: Harold Kessler
Title: Liquidating Trustee

STATE OF TEXAS
COUNTY OF_____

This instrument was acknowledged before me on the _____ day of _____, 2015 by _____, the _____ of SEARS METHODIST CENTERS, INC., a Texas non-profit corporation, on behalf of said corporation.

_____
Notary Public, State of Texas
Printed Name: _____
Commission Expires: _____

(Seal)

Grantee's Address for tax notices:

Texas Methodist Foundation
11709 Boulder Lane #100
Austin, TX 78726-1808

7

Exhibit A
Property Description

Tract Two:

Tract Two, Parcel A:
Being that certain tract of land stated to contain 17.34 acres, more or less, out of Survey No. 12 of the Alfred and Mary Fasshauer Dudvision of Survey No. 10 and Survey No. 12, Lunatic Asylum Land, Survey No. 65, Blind Asylum Land, Taylor County, Texas as said tract is more particularly described by metes and bounds as Tract One in deed to Sears Methodist Centers, Inc. dated November 14, 2003 recorded in Bol. 2902 Page 715 Official Public Records, Taylor County, Texas, reference to which is hereby made for all purposes, including the incorporation herein of said description by reference.

Tract Two, Parcel B:
Being that certain tract of land stated to contain 1.98 acres, more or less, out of Section Lunatic Asylum Land, Taylor County, Texas, as said tract is more particularly described by metes and bounds as Tract Two in deed to Sears Methodist Centers, Inc. dated November 14, 2003 recorded in Bol. 2902 Page 715 Official Public Records, Taylor County, Texas, reference to which is hereby made for all purposes, including the incorporation herein of said description by reference.

Exhibit B
Bankruptcy Order

[TO BE INSERTED]