UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | ) | CASE NO. 14-32821-11 |
| | ) | CHAPTER 11 |
| SEARS METHODIST RETIREMENT | ) | |
| SYSTEMS, INC., *et al.* | ) | |
| | ) | OBJECTION TO MOTION FOR ENTRY |
| Debtors. | ) | OF SUPPLEMENTAL ORDER |
| | ) | CONFIRMING SALE OF ABILENE |
| | ) | PROPERTY |

Life Care Services LLC ("LCS") files this Objection to Motion for Entry of Supplemental Order Confirming Sale of Abilene Property (the "Motion") [Docket No. 1336] filed by Texas Methodist Foundation ("TMF") and states as follows:

## INTRODUCTION

1. TMF claims it has brought the Motion[1] to "provide the title company [auditing TMF's own sale] comfort that the Abilene Property was transferred to TMF free and clear of the [lien] of [LCS]" -- concerns that are not only warranted but that support denial of the Motion. Among its failings, TMF never received title free of LCS' lien because TMF failed to comply with the notice procedures of Bankruptcy Code § 363 as required by due process and paragraph 1 of the Confirmation Order ("Paragraph 1") itself. Among its fundamental flaws, TMF (i) did not serve LCS with bidding procedures, (ii) did not serve LCS with the sale motion, and (iii) did not serve LCS with a negative notice language to approve the Abilene Sale Order. In fact, after Plan confirmation and until this Motion, TMF appears to have failed to serve LCS with any materials about the sale process.

2. Moreover, there is no reason the Court should approve this matter on an expedited time frame. In fact, it should be noted that LCS' primary counsel, who is new to the case, has been dealing with a death in her family. To better understand the background and this difficult personal time, counsel sought a brief consensual continuation of the objection deadline and hearing. Notwithstanding such requests, TMF's counsel refused to participate in a meet and confer conference call.

3. Furthermore, even apart from the procedural defects noted above, the Court should deny the relief on the basis of jurisdictional concerns. TMF cites no authority why it

---

[1] Unless otherwise defined here, capitalized terms shall have the same meaning as in the Supplemental Motion.

1

should be able to avail itself of this Court to provide a "comfort" order for its own botched sale when these cases have already been administered.

## FACTUAL BACKGROUND

4. Although new to this case, undersigned counsel has been able to discern the following relevant case-related facts.

**I. The Confirmation Order Carved Out LCS's Secured Claim, And Provides For A Section 363 Sale Process.**

5. On March 5, 2015, the Court entered the Confirmation Order confirming the Plan [Docket No. 800]. The Plan acknowledged LCS's lien on the Abilene Property and included the defined term of the "LCS Secured Claim" as "mean[ing] the third Lien on the undeveloped property located in Abilene, Texas and owned by SMC." Plan at 9.[2]

6. The Supplemental Motion correctly states that the "Confirmation Order set up a process for the sale of [the "Abilene Property"], but *incorrectly* described this process. The Supplemental Motion cites the Plan, at section 6.5, as transferring the Abilene Property to the Liquidating Trust. However, Paragraph 1 of the Confirmation Order states something very different:

> [T]he Undeveloped Properties will not be deeded over to TMF on the Effective Date *__nor will they be transferred to the Liquidating Trust as provided in [section 6.5 of] the Plan__*. Rather, the Obligated Group Bond Trustee and TMF have agreed to file by no later than March 19, 2015 agreed procedures that will govern a sale process for the Undeveloped Properties under section 363 of the Bankruptcy Code (the "Agreed Undeveloped Properties Sale Procedures"). If the Obligated Group Bond Trustee and TMF do

---

[2] At the request of TMF, on May 8, 2013, LCS provided a letter of credit to provide credit enhancement for the benefit of Sears Methodist Retirement System, Inc. and, in consideration of such credit support, Sears Methodist Centers, Inc. executed a Deed of Trust (with Security Agreement and Assignment of Rents and Leases) covering the Abilene Property in favor of LCS as security for such credit support. The Deed of Trust in favor of LCS was a second lien on the Abilene Property, with a first lien also dated May 8, 2013, executed in favor of TMF. At the same time, Wells Fargo Bank, N.A., as trustee pursuant to the Amended and Restated Master Indenture dated as of August 1, 1998, and effective as of May 1, 2013, agreed to a third lien position, behind the indebtedness owed to TMF and LCS. TMF subsequently drew on the letter of credit supported by LCS.

2

> not file such Agreed Undeveloped Properties Sale Procedures with the Bankruptcy Court by March 19, 2015, then the automatic stay with respect to the Undeveloped Properties will automatically be lifted, the Undeveloped Properties will be deemed abandoned by the Plan Debtors, the Undeveloped Properties will remain subject to the existing Liens and interests of TMF and the Obligated Group Bond Trustee with the same validity, priority, force and effect such Liens and interests had as of the Petition Date, and _**all parties in interest may exercise remedies against the Undeveloped Properties under applicable state law**_.[3]

Accordingly, in Paragraph 1, the "Undeveloped Properties," including the Abilene Property, were carved out from other treatment under the Plan and, rather, were to be dealt with through a sale process under section 363 of the Bankruptcy Code. 11 U.S.C. § 363 ("section 363"). Under that process, TMF would propose and seek approval of the sale(s) via motion practice and in compliance with § 363's requirements, including providing notice to all parties with a property interest, including lienholders such as LCS.

## II. LCS Does Not Receive Notice of the Section 363 Process.

7. TMF did not provide any notice to LCS as TMF acquired the Abilene Property. On March 19, 2015, TMF filed the *Notice of Agreed Undeveloped Properties Sale Procedures* [Docket No. 819] (the "Unserved Notice") **but, critically, did not provide notice of it to LCS**. The docket does not reflect any notice of the Unserved Notice given to LCS, and LCS was not, before the filing of this Objection, a party receiving ECF notices.

8. TMF knew about LCS' lien, because, although LCS was not included in the negotiation of the Agreed Undeveloped Properties Sale Procedures, in the proposed distribution of the proceeds of the Abilene Property in the Unserved Notice, TMF and the Obligated Group Bond Trustee specifically recognized the second lien of LCS as a result of TMF's draw upon a certain bank letter of credit financially supported by LCS -- second in priority immediately

---

[3] Emphasis Added.

3

following the first lien of TMF and ahead of the third lien in favor of the Obligated Group Bond Trustee [Docket No. 819, Exhibit A, IV].

9. On August 7, 2015, after an apparent marketing process overseen by the winning bidder (TMF), the Liquidating Trustee, with TMF and the Obligated Bond Trustee signing in agreement, filed (i) the *Liquidating Trustee's Motion For Approval of Prevailing Bid of Texas Methodist Foundation for Abilene Property Pursuant to Agreed Undeveloped Properties Sale Procedures and Entry of Order Confirming Sale of Abilene Property* [Docket No. 941] (the "Unserved Sale Motion") and (ii) *Notice of Liquidating Trustee's Motion For Approval of Prevailing Bid of Texas Methodist Foundation for Abilene Property Pursuant to Agreed Undeveloped Properties Sale Procedures and Entry of Order Confirming Sale of Abilene Property* [Docket No. 942] (the "Unserved Notice of Sale Motion"), which Unserved Notice of Sale Motion included negative notice language for the sale of the Abilene Property subject to LCS's second lien.

10. **Neither the Unserved Sale Motion nor the Unserved Notice of Sale Motion was served on LCS,** and the certificates of service, **signed by TMF's counsel** provide that notice was served only upon (i) "RSF Partner," "(ii) "Senter Realtors" and (iii) those parties receiving service via ECF. Unserved Sale Motion at 5; Unserved Notice of Sale Motion at 3.

11. On September 14, 2015, the Court entered the Abilene Sale Order [Docket No. 980] pursuant to the negative notice procedures outlined in the Unserved Notice. Again, LCS was not served.

### III. LCS Learns of TMF's Sale to Itself Because of the Legitimate Concerns of the Independent Title Company, but TMF Refuses to Engage

12. Because LCS did not receive proper notice, its lien on the real-property was never altered. In fact, until now, LCS had no reason to believe that its lien was allegedly stripped. In

4

117441938\V-4

fact, only through the proxy of the "title company" that the Supplemental Motion mentions, has LCS and its newly-retained counsel learned that, in fact, TMF has undertook a sale aimed at stripping LCS of its property right without providing appropriate notice to LCS.

13. LCS has sought to resolve these issues, but TMF has been intransigent and refused to constructively engage. In an email sent on March 4, 2021, counsel for TMF stated:

> As a follow up to our call today, the sale process for the Abilene Property was set forth in the Debtor's Chapter 11 Plan. Section 6.5 of the Chapter 11 Plan provides:
>
>> Transfer of Undeveloped Properties to Liquidating Trust. On the Effective Date, the Undeveloped Properties located in Waco and Abilene, Texas will be transferred to the Liquidating Trust, subject to the existing Liens and interests of TMF and the Obligated Group Bond Trustee, to be sold or otherwise disposed of with the consent of TMF and the Obligated Group Bond Trustee.[4]
>
> LCS Secured Claim was addressed in the Chapter 11 Plan. The LCS Secured Claim is defined to mean the third Lien on the undeveloped property located in Abilene, Texas and owned by SMC. LCS's treatment under the Plan is that LCS received no distribution and its claim was deemed to have no value.
>
> As set forth in Section 6.5 in the Plan, the Abilene Property was transferred to the Liquidating Trustee subject to the liens of TMF and the Obligated Group Bond Trustee, not LCS.
>
> The notice of the motion to approve the chapter 11 plan with the treatment of LCS's claim and the provisions transferring the Abilene Property to the Liquidating Trustee are the relevant notice for the impairment of LCS's claim and interest."[5]

14. Primary counsel for LCS suffered a death in her family (her father), immediately preceding a wedding (her daughter) the weekend of March 14, 2021, and has been making

---

[4] Of course, this is wrong. Paragraph 1 explicitly overrides section 6.5 of the Plan.
[5] *See* Exhibit 1-A.

wedding and funeral arrangements. In an effort to better understand the case background she asked for a brief continuance and asked for a call. Movant then declined the call.[6]

## ARGUMENT

### I. The Confirmation Order Required TMF to Comply with Section 363 to Strip LCS' Lien

15. Paragraph 1 of the Confirmation Order specifically preserved the rights and interests of LCS (and other parties in interest) in the Abilene Property. Thus, notwithstanding what language may have appeared in the Plan dealing with LCS' lien, which at best was ambiguous, it was altered by the terms of the Confirmation Order. *See* Confirmation Order at ¶ 43 (Confirmation Order controls over Plan).

16. Specifically Paragraph 1 establishes a process whereby such lien rights were to be addressed through the parameters of a section 363 transaction. Thus, any assertion by TMF that the Undeveloped Properties were transferred to the Liquidating Trust and that LCS's lien and property interest in the Abilene Property were extinguished because of the *Plan* is without merit.[7] To the contrary, the Abilene Property rode through with state law rights preserved for "all parties in interest." Under the Confirmation Order, the only way for LCS's lien to be affected was through "a sale process for the Undeveloped Properties under section 363 of the Bankruptcy Code." However, TMF did not comply with section 363 because it failed to provide notice of LCS.

### II. The Stringent Notice Requirements of Section 363 and Article V of the Constitution Limit Lien Stripping By Fiat.

---

[6] Exhibit 1-B.
[7] Further, LCS's lien would have survived regardless of Paragraph 1. "Ordinarily, liens and other secured interests survive bankruptcy." *Farrey v. Sanderfoot*, 500 U.S. 291, 297 (1991). Therefore a Chapter 11 Plan may not ordinarily strip a lien and, in *Acceptance Loan Co., Inc. v. S. White Transp., Inc. (In re S. White Transp., Inc.)*, 2013 BL 207801 (5th Cir. Aug. 5, 2013), the Fifth Circuit ruled that the level of participation necessary to trigger extinguishment of a lien under section 1141(c) "requires more than mere passive receipt of effective notice" of the chapter 11 case. Here, LCS was not an active participant in the Plan process.

117441938\V-4

17. Notice is at the heart of section 363, and "interrelated Code sections and Rules have been deliberately crafted to provide procedural assurance that a party holding or claiming an interest in real property in a debtor's estate will receive timely notice of the intention to sell specific property free and clear of liens." *In re Metzger*, 346 B.R. 806, 815 (Bankr. N.D. Cal. 2006). As the Fifth Circuit has stated, "[w]e recognize that a sale free and clear is ineffective to divest the claim of a creditor who did not receive notice...." *Mooney Aircraft Corp. v. Foster (In re Mooney Aircraft, Inc.)*, 730 F.2d 367, 375 (5th Cir.1984)), and a sale order is void to the extent it strips the lien of a party that did not receive notice of a sale the purported to clear its lien. *In re Metzger*, 346 B.R. at 819 (voiding sale order entered fourteen years earlier to the extent it extinguished a lien when lienholder not noticed).

18. As referenced above, a section 363 proponent has to meet strict notice requirements. "Strict compliance with procedural matters when presenting a motion to sell free and clear of liens and interests is especially important because the trustee is disposing of the secured party's collateral … without the consent of the secured party … The starting point for the required procedural steps is Federal Rule of Bankruptcy Procedure 6004. Rule 6004(a) addresses the required notice of a proposed sale not in the ordinary course of business. Subsection (c) designates a motion to sell free and clear as a contested matter and requires that the lienholders and interest holders be served with the motion." *In re Takeout Taxi Holdings, Inc.*, 307 B.R. 525, 530 (Bankr. E.D. Va. 2004) (citations omitted).

19. "Rule 9014 governs contested matters. Relief is requested by motion upon reasonable notice and an opportunity for a hearing. …Service of the motion is required to be in a manner provided in F. R .Bankr. P. 7004. Rule 7004(b)(1) permits … [a corporate entity like LCS to be] served under Rule 7004(b)(3) by mailing a copy of the motion to the attention of an

officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process [and] there are additional modes of service available [under] See F. R. Bankr. P. 7004(a) and (b)(8)." *Id.*[8]

20. Further, beyond the failure to comply with section 363 and the Bankruptcy Rules, "[d]ue process under the Fifth Amendment requires that a secured party whose collateral is about to be sold free and clear of his lien be given fair notice of the intended action and an opportunity to be heard." *Id.* at 531. Before stripping someone's property interest, under section 363 and the Fifth Amendment, they are entitled to be presented with the exact means of where, why, when and how it will be done.

### III. TMF did not Serve LCS, and is not Entitled to an Expedited Comfort Order

21. "The message to be derived from these rules [governing notice for section 363 sales] is that notice is to be taken particularly seriously when liens are being affected in bankruptcy. Holders of liens that may be adversely affected are entitled to unambiguous notice and an adequate opportunity to reflect and to respond." *In re Loloee*, 241 B.R. 655, 662 (9th Cir. BAP 1999). Quite simply, TMF, who volunteered to run a section 363 sale, dropped the ball on notice and did not follow the rules.

22. LCS had no such opportunity to "reflect and respond" and TMF did not provide "unambiguous notice" of the sale. The Confirmation Order set up a process for *noticed bidding procedures and a noticed sale under section 363* -- with details to come later. The Confirmation Order also left the option open for this sale process not to take place. Without notice, parties were free to assume that their state-law property rights were still undisturbed -- as LCS did here. TMF's position that LCS was adequately served with notice because of a Plan provision that was

---

[8] Further, under Fed. R. Bankr. P. 2002(a)(2), the moving party must provide 21-days written notice to "all creditors" of "a proposed use, sale, or lease of property of the estate other than in the ordinary course of business, unless the court for cause shown shortens the time or directs another method of giving notice."

8

trumped by the Confirmation Order is squirmy -- and demonstrates why the rules are so strict. When stripping a property interest under section 363 (and the Due Process Clause), notice means notice.

23. Here, TMF, as evidenced by the certificates of service (and lack thereof) failed to serve LCS with any of the section 363 papers. This disregard of the rules and due process disqualifies TMF from getting an expedited comfort order that its title company understandably wants.

24. In addition, TMF has failed to establish why this Court has jurisdiction over the Supplemental Motion. TMF is not the debtor and not a successor of the debtor, and the Plan was confirmed six years ago. LCS concedes that its claim *against the debtors* is discharged.[9] TMF, who already gave the estate consideration in the sale, was the party responsible for the botched sale process -- and cannot come into this Court seeking "comfort" on an expedited basis.

WHEREFORE, LCS requests this Court enter an Order denying the Motion and for such other and further relief as the court deems just and equitable.

Dated this 17th day of March, 2021.

                     */s/ Casey Doherty*
                   Casey Doherty, Texas Bar No. 24078431
                   Dentons US LLP
                   2000 McKinney Ave., Suite 1900
                   Dallas, TX  77201
                   Telephone: (214) 259-0999
                   Facsimile: (713) 739-0834
                   Email: casey.doherty@dentons,com

                   Julie Johnson McLean, IA ID. AT#0005185
                   (*pro hac vice application pending*)
                   Davis, Brown, Koehn, Shors & Roberts, P.C.
                   215 10th Street, Suite 1300
                   Des Moines, IA 50309

---

[9] But the underlying debt cannot be discharged and LCS's *in rem* claim to the Abilene Property remains.

                              Telephone:  (515) 288-2500
                              Facsimile:  (515) 243-0654
                              Email: juliemclean@davisbrownlaw.com

                              ATTORNEYS FOR LIFE CARE SERVICES LLC

## CERTIFICATE OF SERVICE

       I hereby certify that on March 17, 2021, a copy of the foregoing document was served electronically on those parties registered to receive electronic notice via the Court's CM/ECF system and by email to the following:

Charles M. Rubio
Parkins Lee & Rubio LLP
50 Main Street, Suite 1000
White Plains, NY  10606
Email: crubio@parkinslee.com

Wells Fargo Bank, National Association
c/o Charles W. Azano, Esq.
Mintz Levin
One Financial Center
Boston, MA  02111-2657
Email: CWAzano@mintz.com

                                                */s/ Casey Doherty*
                                                Casey Doherty

117441938\V-4